**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| **PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN**<br>301 N. Olive Avenue<br>West Palm Beach, FL 33401<br><br>– Individually and on Behalf of All Others Similarly Situated –<br><br>**Plaintiff,**<br><br>**v.**<br><br>**EMERGENT BIOSOLUTIONS INC.**<br>400 Professional Drive, Suite 400<br>Gaithersburg, MD 20879<br>(Montgomery County)<br><br>**ROBERT G. KRAMER SR.**<br>400 Professional Drive, Suite 400<br>Gaithersburg, MD 20879<br>(Montgomery County)<br><br>**RICHARD S. LINDAHL**<br>400 Professional Drive, Suite 400<br>Gaithersburg, MD 20879<br>(Montgomery County)<br><br>**SYED T. HUSAIN**<br>400 Professional Drive, Suite 400<br>Gaithersburg, MD 20879<br>(Montgomery County)<br><br>**Defendants.** | **Case No.: 21-cv-955**<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

i

Plaintiff Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan ("Plaintiff") alleges the following upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included: (a) review and analysis of public filings with the United States Securities and Exchange Commission ("SEC") made by Emergent BioSolutions Inc. ("Emergent") and other related parties and non-parties; (b) review and analysis of press releases and other publications disseminated by certain of the Defendants and other related non-parties; (c) review of news articles, shareholder communications, conference calls and postings on Emergent's website concerning the Company's public statements; and (d) review of other publicly available information concerning Emergent and the Individual Defendants (as defined below). Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.     This is a federal securities class action brought on behalf of all persons or entities that purchased or otherwise acquired Emergent common stock from July 6, 2020 through March 31, 2021, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  The action alleges that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price in violation of Sections 10(b) and 20(a) of the Exchange Act.

2.     Emergent is a specialty biopharmaceutical company that develops vaccines and antibody therapeutics for infectious diseases. In response to the COVID-19 pandemic, Emergent signed deals with Johnson & Johnson ("J&J") and AstraZeneca worth a combined $875 million to provide contract development and manufacturing organization ("CDMO") services to produce

the companies' COVID-19 vaccine candidates, and received another $628 million from the United States government as a part of Operation Warp Speed, for a total of $1.5 billion in COVID-19 deals.

3.      Following the deals, Emergent's President and CEO, Robert G. Kramer Sr. ("Kramer"), stated that the Company was "***uniquely prepared to answer the call for [the] COVID-19 pandemic***" because of its "***proven manufacturing capabilities in place***."  Indeed, throughout the Class Period, Defendants repeatedly assured investors of Emergent's ability and capacity to mass manufacture COVID-19 vaccines at its Baltimore manufacturing site.  The Company's Senior Vice President, Syed T. Husain ("Husain") touted that "Emergent stands ready alongside leading innovators to rapidly deploy our [CDMO] services to help meet the substantial demand for a vaccine – anchored on our foundational expertise in development and manufacturing and propelled by our commitment to our mission – to protect and enhance life."

4.      The announced deals sent the Company's stock soaring – peaking at over $134 per share on August 13, 2020.  As discussed further below, however, the Company failed to disclose to investors myriad issues at its Baltimore facility that would detrimentally affect its ability to manufacture the vaccine.  For example, in April 2020, the FDA conducted an inspection of the Company's Baltimore Bayview facility, revealing a host of problems that led the regulator to conclude the facility was not scaled to make the drug substance for millions of vaccines. The FDA inspection found that Emergent had "deficient" containment areas for holding rejected manufacturing components "to prevent contamination or mix-ups." The FDA further concluded that upgrades to technology and personnel were required before the Company could even begin making the drug substance. The FDA's lead investigator cited the Company for

failing to train employees "in the particular operations they perform as part of their function and current good manufacturing practices."

5.　　Investors began to learn the truth on March 31, 2021, after the close of markets, when media reports revealed that employees at Emergent's Baltimore manufacturing facility "mixed up" ingredients for the J&J and AstraZeneca vaccines, contaminating up to 15 million doses of the J&J vaccine.  It was further revealed that this was not an isolated incident and part of a history of manufacturing issues at the Company's plant.

6.　　Media outlets called the massive contamination a "significant setback and public relations debacle" and highlighted longstanding contamination risks and quality control issues at the Company's facilities, leading to a string of FDA citations, including a persistent problem with mold, poor disinfection of some plant equipment leading to growth of bacteria, the repeated approval of raw materials that had not been fully tested, and poor employee training.

7.　　Additionally, it was further reported that by December 2020, Emergent was forced to discard the equivalent of millions of AstraZeneca vaccine doses after they were spoiled by bacterial contamination of equipment at the same Baltimore facility.  In response to these revelations, the Biden administration took the extraordinary action of placing J&J in charge of Emergent's Baltimore plant and prohibiting it from producing the AstraZeneca vaccine.  To date, not a single dose of any COVID-19 vaccine produced at the site has been released by the FDA for distribution.

8.　　In response to this news, shares of Emergent's stock price fell $14.29 per share, or over 15% over the next two trading days, from a close of $92.91 per share on March 31, 2021, to close at $78.62 on April 5, 2021.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and the other Class members have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

10.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

12.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)). A substantial portion of the acts in furtherance of the alleged fraud, including the preparation and dissemination of materially false and misleading information and the effects of the fraud, have occurred in this Judicial District. In addition, the Company's headquarters is located in this District at 400 Professional Drive, Suite 400, Gaithersburg, Montgomery County, Maryland, 20879.

13.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## III.    PARTIES

14.      Plaintiff Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan, as set forth in the accompanying certification, purchased Emergent common stock during the Class Period, and suffered damages as a result of the federal securities law violations and the

4

false and/or misleading statements and/or material omissions alleged herein.  Plaintiff's address is 301 N. Olive Avenue, West Palm Beach, Palm Beach County, Florida, 33401.

15.     Defendant Emergent is a Maryland corporation with its headquarters located at 400 Professional Drive, Suite 400, Gaithersburg, Montgomery County, Maryland, 20879. Emergent's common stock is traded on the NYSE under the symbol "EBS."

16.     Defendant Robert G. Kramer Sr., at all relevant times, has served as the Chief Executive Officer ("CEO") and President of Emergent, and is a member of the Company's Board of Directors.  Defendant Kramer's address is 400 Professional Drive, Suite 400, Gaithersburg, Montgomery County, Maryland, 20879.

17.     Defendant Richard S. Lindahl ("Lindahl"), at all relevant times, has served as the Chief Financial Officer ("CFO") of Emergent.  Defendant Lindahl's address is 400 Professional Drive, Suite 400, Gaithersburg, Montgomery County, Maryland, 20879.

18.     Defendant Syed T. Husain, at all relevant times, has served as a Senior Vice President and Head of the Company's CDMO business unit.  Defendant Husain's address is 400 Professional Drive, Suite 400, Gaithersburg, Montgomery County, Maryland, 20879.

19.     Defendants Kramer, Lindahl, and Husain are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, throughout the Class Period, because of their positions with the Company, possessed the power and authority to control the contents of Emergent's reports to the SEC, as well as its press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each Individual Defendant, while serving as a senior executive of Emergent, was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them

to be corrected. Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, and were the result of the collective actions of the Individual Defendants.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

20.    Emergent, headquartered in Gaithersburg, Maryland, provides a variety of products and solutions that address public health threats, including manufacturing for the development of new vaccines.  In April 2020, during the initial months of the COVID-19 pandemic, Emergent entered an agreement with J&J to provide its manufacturing facilities to support J&J's goal of supplying one billion doses of a COVID-19 vaccine. Under the deal, valued at $135 million, Emergent would provide drug substance manufacturing services and reserve large-scale manufacturing capacity for J&J.

21.    On June 1, 2020, as part of Operation Warp Speed, the national program to accelerate the development, manufacturing, and distribution of COVID-19 vaccines, therapeutics, and diagnostics (medical countermeasures), the U.S. government awarded Emergent an approximately $628 million contract to reserve manufacturing space and upgrade its facilities.  The government's press release stated that "[b]efore a vaccine is even approved, Emergent's manufacturing capabilities will pave the way for drug companies with candidates approaching approval to begin turning out doses."  The $628 million no-bid contract was one of

the largest such awards at the time, leading *Bloomberg* to call Emergent "the ultimate Operation Warp Speed company."

22.    On June 11, 2020 Emergent announced that it had signed yet another agreement. Under this agreement, valued at $87 million, Emergent agreed to provide contract development and manufacturing services and secure large-scale manufacturing capacity through 2020 to support AstraZeneca's COVID-19 vaccine candidate. In announcing this deal, Emergent's President and CEO Kramer stated, "[w]ith this agreement, we bring to our facilities two of the five leading candidates being developed with U.S. government funding."

### B.    Defendants' False and Misleading Statements

23.    The Class Period starts on July 6, 2020, when Emergent issued a press release announcing that it had officially signed a five-year agreement for large-scale drug substance manufacturing for J&J's lead COVID-19 vaccine candidate. Under the agreement, valued at $480 million for the first two years, Emergent would begin manufacturing J&J's COVID-19 vaccine in 2021 at the Company's manufacturing facility in Baltimore.  In announcing the agreement, Defendant Kramer highlighted the Company's "manufacturing strength to address the COVID-19 pandemic." Defendant Husain added that Emergent had "the expertise and capabilities to meet the long-term needs of [its] customers and provide ongoing commercial manufacturing to benefit patients."

24.    Shortly thereafter, on July 27, 2020, Emergent issued a press release announcing another deal with AstraZeneca to provide services to support production of its COVID-19 vaccine candidate.  This deal, valued at approximately $174 million, also contracted Emergent to produce drug substance manufacturing services at its Baltimore facility, beginning in 2020, at a large scale for commercial supply.  In the press release, Defendant Husain stated, "Emergent

stands ready alongside leading innovators to rapidly deploy our [CDMO] services to help meet the substantial demand for a vaccine – anchored on our foundational expertise in development and manufacturing and propelled by our commitment to our mission – to protect and enhance life."

25.     On July 30, 2020, the Company issued a press release reporting financial results for its second quarter and six months ended June 30, 2020 and conducted an investor conference call.  During the call, Defendant Kramer asserted that "Emergent is uniquely prepared to answer the call for [the] COVID-19 pandemic" with the Company's "proven manufacturing capabilities in place."

26.     On September 14, 2020, the Company presented at the Morgan Stanley Annual Global Healthcare Conference, where Defendant Lindahl boasted that J&J and AstraZeneca chose Emergent due to the Company's "high-quality manufacturing…primarily in the Bayview facility that we have, which was designed expressly for the purpose in partnership with the government of dealing with an emergency just like COVID."  Lindahl added that Emergent's manufacturing sites can "handle a different set of applications and be set up to move very rapidly, and that's exactly what we're doing right now."

27.     On November 5, 2020, Emergent reported financial results for the third quarter and nine-month period ending September 30, 2020 and conducted an investor conference call.  In response to an analyst inquiry regarding Emergent's ability to handle multiple COVID-19 vaccine clients, Defendant Husain assured during the call that the Company's facilities are "designed to handle multiple products… [the] facility in Baltimore, which is known as our Bayview facility, so right now, that is predicated on multiple products being in there."

28.     On February 18, 2021, the Company reported financial results for the fourth quarter and year ended December 31, 2020.  During Emergent's conference call with investors, Defendant Kramer stated that Emergent was "playing a critical role in the fight against COVID-19 with the development and manufacturing of clinical and commercial materials across our 3 CDMO service pillars for a variety of customers, most notably Johnson & Johnson, AstraZeneca…"  In response to analyst inquiry, Defendant Kramer stated, "Specific to J&J, you know what they said in terms of their short-term goal is to provide as many as 100 million doses to the U.S. government in the first half of 2021. And we're right on schedule to support that."

29.     The above statements in ¶¶23-28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) Emergent's Baltimore plant had a history of manufacturing issues increasing the likelihood for massive contaminations; (ii) these longstanding contamination risks and quality control issues at Emergent's facility led to a string of FDA citations; (iii) the Company previously had to discard the equivalent of millions of doses of COVID-19 vaccines after workers at the Baltimore plant deviated from manufacturing standards; and (iv) as a result of the foregoing, Defendants' public statements about Emergent's ability and capacity to mass manufacture multiple COVID-19 vaccines at its Baltimore manufacturing site were materially false and/or misleading and/or lacked a reasonable basis.

**C.     The Truth is Revealed**

30.     On March 31, 2021, after the close of markets, the *New York Times* published an article reporting on the accidental contamination of COVID-19 vaccines developed by J&J and AstraZeneca at the Emergent manufacturing plant in Baltimore. The *New York Times* article stated that in late February 2021, employees at Emergent's Baltimore manufacturing plant

9

inconceivably "mixed up" ingredients of the two different COVID-19 vaccines, contaminating up to 15 million doses of J&J's vaccine and forcing regulators to delay authorization of the plant's production lines.

31.     Further, the March 31, 2021 *New York Times* article noted that Emergent's massive vaccine lot contamination went undiscovered for days until J&J's quality control checks uncovered it, raising questions about Emergent's failed training and supervision of its employees during the production process.

32.     On April 1, 2021, the *Associated Press* reported on Emergent's "history of violations," noting that the FDA has repeatedly cited Emergent for problems such as poorly trained employees, cracked vials and problems managing mold and other contamination in its facilities.   The April 1, 2021 article highlighted that the FDA's inspection of Emergent's Baltimore plant had faulted the Company for a series of quality control shortcomings.

33.     Two days later, on April 3, the *New York Times* reported that the Biden administration took the extraordinary action of putting J&J in charge of Emergent's Baltimore plant and prohibiting it from producing the AstraZeneca vaccine, an incredible blow for a Company that had touted its "unique" preparedness and "proven manufacturing capabilities" only months prior.   The article called the "ingredient mix-up" and stripping of Emergent's control over its own plant "a significant setback and a public relations debacle."

34.     On this news, Emergent's stock price declined precipitously from $92.91 at close on March 31, 2021 down to $80.46 at the close of trading on April 1, 2021—a $12.45 drop equating to over a 13% decline in share price. As more facts unfolded in the media, the Company's stock price continued to decline, closing at $78.62 on April 5, 2021.

35.     Additionally, on April 6, 2021, the *New York Times* published another report, citing undisclosed internal documents and interviews with current and former federal officials, as well as Company employees.  The April 6, 2021 *New York Times* article found Emergent to be ill-equipped to take on the important manufacturing task of producing COVID-19 vaccines, despite having received a $163 million federal contract to improve its facility and prepare for high-volume production. Audits and investigations — including ones conducted in 2020 by J&J, AstraZeneca, two federal agencies and Emergent's own quality evaluators — found that Emergent had not followed basic industry standards at its Baltimore facility, and identified repeated shortcomings in efforts to disinfect and prevent contamination. Specifically, an audit conducted for AstraZeneca highlighted the risks of viral cross-contamination, which experts believe was responsible for tainting the millions of J&J doses.

36.     Tellingly, the April 6, 2021 *New York Times* article also noted that the loss of the J&J doses was not the first time Emergent had to throw out coronavirus vaccine for fear of contamination, as between October 2020 and January 2021, Emergent discarded five lots of AstraZeneca vaccine — each the equivalent of two million to three million doses — because of contamination or suspected contamination. In November 2020, production of a batch of J&J vaccine was also discarded after workers "hooked up" the wrong gas line and accidentally "suffocated" the cells where the virus for the vaccine is grown. The next month, workers making AstraZeneca's vaccine deviated from manufacturing standards on average more than three times a day, and about one-fifth of the deviations were classified as major.

## V.     CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired Emergent common stock during the Class Period and who were damaged

thereby (the "Class").  Excluded from the Class are Defendants, members of the immediate family of each of the Individual Defendants, any subsidiary or affiliate of Emergent and the directors, officers and employees of the Company or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

38.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Throughout the Class Period, Emergent's common stock was actively traded on the New York Stock Exchange ("NYSE"), an open and efficient market, under the symbol "EBS." Millions of Emergent shares were traded publicly during the Class Period on the NYSE.  As of April 12, 2021, Emergent had approximately 53.5 million shares of common stock outstanding.  Record owners and the other members of the Class may be identified from records maintained by Emergent and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.     Plaintiff will fairly and adequately protect the interests of the other members of the Class, and has retained counsel competent and experienced in class and securities litigation.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

    a.   Whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

    b.   Whether Defendants participated in and pursued the common course of conduct complained of herein;

    c.   Whether documents, press releases, and other statements disseminated to the investing public and the Company's stockholders during the Class Period misrepresented material facts about the business, finances, and prospects of Emergent;

    d.   Whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose facts about the business, finance, value, and performance of Emergent;

    e.   Whether the market price of Emergent common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

    f.   The extent to which the members of the Class have been damaged and the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.     UNDISCLOSED ADVERSE FACTS

43.     The market for Emergent common stock was an open, well-developed and efficient market at all relevant times. As a result of these materially false and misleading statements and failures to disclose described herein, Emergent common stock traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased or otherwise acquired Emergent shares relying upon the integrity of the market price of the Company's stock and market information relating to Emergent, and have been damaged thereby.

44.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Emergent common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse non-public information and misrepresented the truth about the Company, as well as its business and operations, as alleged herein.

45.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and the other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Emergent's ability and capacity to mass manufacture COVID-19 vaccines at its Baltimore facility.

46.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's stock price to be overvalued and artificially inflated and/or maintained at all relevant times.  Defendants' materially false and misleading statements made during the Class Period resulted in Plaintiff and the other members of the Class purchasing the Company's stock at artificially inflated prices, thus causing the damages complained of herein.

## VII.    LOSS CAUSATION

47.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Emergent stock and operated as a fraud or deceit on Class Period purchasers of Emergent's stock by failing to disclose to investors that the Company had issues at its plant tasked with manufacturing vaccines. When Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Emergent stock fell precipitously as the prior inflation came out of the Company's stock price. As a result of their purchases of Emergent stock during the Class Period, Plaintiff and the other Class members suffered economic loss.

48.     By failing to disclose the true state of the Company's business operations and financial prospects, investors were not aware of the true state of the Company's status. Therefore, Defendants presented a misleading picture of Emergent's business practices and procedures. Thus, instead of truthfully disclosing during the Class Period the true state of the Company's business, Defendants caused the Company to conceal the truth.

49.     Defendants' false and misleading statements had the intended effect and caused Emergent's common stock to trade at artificially inflated levels throughout the Class Period. The

stock price drops discussed herein caused real economic loss to investors who purchased the Company's common stock during the Class Period.

50.     The declines in the price of Emergent common stock after the truth came to light were a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Emergent's common stock price declines negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of Emergent's common stock and the subsequent decline in the value of Emergent stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## VIII.   SCIENTER ALLEGATIONS

51.     As alleged herein, the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

52.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Emergent, their control over, receipt and/or modification of Emergent's allegedly materially misleading statements and omissions, and/or their position with the Company which made them privy to confidential information concerning Emergent, participated in the fraudulent scheme alleged herein.

IX.    **APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE**

53.    At all relevant times, the market for Emergent common stock was an efficient market for the following reasons, among others:

a.  Emergent's common stock met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient market;

b.  As a regulated issuer, Emergent filed periodic public reports with the SEC;

c.  Emergent common stock was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace; and

d.  Emergent regularly issued press releases which were carried by national newswires. Each of these releases was publicly available and entered the public marketplace.

54.    As a result of the foregoing, the market for Emergent common stock promptly digested current information regarding Emergent from all publicly available sources and reflected such information in Emergent's stock price. Under these circumstances, all purchasers of Emergent common stock during the Class Period suffered similar injury through their purchase of Emergent common stock at artificially inflated prices and a presumption of reliance applies.

55.    A Class-wide presumption of reliance is also appropriate in this action under the U.S. Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because Plaintiff's fraud claims are grounded in Defendants' omissions of material fact of which there is a duty to disclose. As this action involves Defendants' failure to disclose

material adverse information regarding Emergent's business practices, financial results and condition, and the Company's internal financial controls—information that Defendants were obligated to disclose during the Class Period but did not—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered such information important in the making of investment decisions.

## X.    NO SAFE HARBOR

56.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

57.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Emergent who knew that the statement was false when made.

## XI.  COUNTS AGAINST DEFENDANTS

### COUNT I
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein. This claim is asserted against all Defendants.

59.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Emergent common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Emergent common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

60.     These Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Emergent's common stock in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Defendants are sued as primary participants in the wrongful and illegal conduct charged herein. The Individual Defendants are also sued herein as controlling persons of Emergent, as alleged herein.

61.     Emergent and the Individual Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, operations and merger discussions of

Emergent as specified herein. These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Emergent's business practices, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about Emergent and its business, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Emergent common stock during the Class Period.

62.     The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period; (ii) the Individual Defendants, by virtue of their responsibilities and activities as senior executive officers of the Company, were privy to and participated in the creation, development and reporting of the Company's public statements; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other and had access to other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

63.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were readily available to them.

Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Emergent's true business practices and future business prospects from the investing public and supporting the artificially inflated and/or artificially maintained price of its common stock. As demonstrated by their overstatements and misstatements of the Company's business activities throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

64.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Emergent common stock was artificially inflated or maintained during the Class Period. In ignorance of the fact that the market price of Emergent common stock was artificially inflated or maintained, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other members of the Class acquired Emergent common stock during the Class Period at artificially inflated prices and were damaged thereby.

65.     At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the true performance, business practices, future prospects and intrinsic value of Emergent, Plaintiff and the other members of the Class would not have purchased or otherwise acquired Emergent common stock during the

Class Period, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated or maintained prices which they paid.

66.     By virtue of the foregoing, Defendants each violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     The Individual Defendants were and acted as controlling persons of Emergent during the Class Period within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In addition, each of the Individual Defendants had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control

or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Emergent and the Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## XII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment as follows:

a.   Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b.   Awarding Plaintiff and the other members of the Class damages in an amount which may be proven at trial, together with interest thereon;

c.   Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d.   Awarding such other relief as this Court deems appropriate.

## XIII.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: April 19, 2021                        Respectfully Submitted,

                                             _____/s/_____

                                             Mark Hanna (Federal Bar No. 16031)
                                             Roseann R. Romano (Federal Bar No. 19843)
                                             Charles A. Sinks (Federal Bar No. 21185)
                                             MURPHY ANDERSON PLLC
                                             1401 K Street NW, Suite 300
                                             Washington, DC 20005
                                             Phone: (202) 223-2620
                                             Fax: (202) 296-9600
                                             mhanna@murphypllc.com
                                             rromano@murphypllc.com
                                             csinks@murphypllc.com

                                             *Local Counsel for Plaintiff*

                                             Maya Saxena (*pro hac vice* forthcoming)
                                             Joseph E. White, III (*pro hac vice* forthcoming)
                                             Lester R. Hooker (*pro hac vice* forthcoming)
                                             **SAXENA WHITE P.A.**
                                             7777 Glades Road, Suite 300
                                             Boca Raton, FL 33434
                                             Telephone: (561) 394-3399
                                             msaxena@saxenawhite.com
                                             jwhite@saxenawhite.com
                                             lhooker@saxenawhite.com

                                             Steven B. Singer (*pro hac vice* forthcoming)
                                             **SAXENA WHITE P.A.**
                                             10 Bank Street, 8th Floor
                                             White Plains, New York 10606
                                             Telephone: (914) 437-8551
                                             ssinger@saxenawhite.com

                                             *Counsel for Plaintiff*