## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, AND SYED T. HUSAIN,<br><br>Defendants. | Case No.: 8:21-cv-00955-PX<br><br>CLASS ACTION |
| ALAN I. ROTH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER, RICHARD S. LINDAHL, AND SYED T. HUSAIN,<br><br>Defendants. | Case No.: 8:21-cv-01189-PX<br><br>CLASS ACTION |
| STEPHEN M. WEISS, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER, RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Case No.: 8:21-cv-01368-PX<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF LAWRENCE EDLUND TO:
(1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND
(3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Movant Lawrence Edlund ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    consolidating the above-captioned actions;

(b)    appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of Emergent BioSolutions Inc. ("Emergent" or the "Company") securities between April 24, 2020 and April 16, 2021,[1] both dates inclusive (the "Class Period"); and

(c)    approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class and Murphy, Falcon & Murphy as Liaison Counsel.

## INTRODUCTION AND BACKGROUND

On April 19, 2021, the first-filed action was commenced, styled as *Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan v. Emergent BioSolutions Inc., et al.*, Case No. 8:21-cv-00955-PX, against the Company and certain of its current and/or former officers, for violations under the Exchange Act. That same day, an early notice pursuant to the PSLRA was issued, advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Ex. 1 hereto.

---

[1] The instant action, *Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan v. Emergent BioSolutions Inc., et al.*, case no. 8:21-cv-00955-PX, has a class period of July 6, 2020 through March 31, 2021, inclusive. However, both related actions—*Roth v. Emergent BioSolutions Inc., et al.*, case no. 8:21-cv-01189-PX, and *Weiss v. Emergent BioSolutions Inc., et al.*, case no. 8:21-cv-01368-PX—have class periods of April 24, 2020 through April 16, 2021, inclusive. A more inclusive class period is favored at the lead plaintiff stage. *See Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

The second-filed related action was filed on May 5, 2021, styled as *Roth v. Emergent BioSolutions Inc., et al.*, case no. 8:21-cv-01189-PX, alleging the same Exchange Act claims against the same defendants. The third related action was filed on June 2, 2021, styled as *Weiss v. Emergent BioSolutions Inc., et al.*, case no. 8:21-cv-01368-PX, also alleging the same Exchange Act claims against the same defendants.

Defendant Emergent is a specialty biopharmaceutical company that develops vaccines and antibody therapeutics for infectious diseases. In response to the COVID-19 pandemic, Emergent signed a series of deals with Johnson & Johnson ("J&J") and AstraZeneca worth a combined $876 million to provide contract development and manufacturing organization services to produce the companies' COVID-19 vaccine candidates. Emergent received a further $628 million from the U.S. government as a part of the Warp Speed Program, for a total of over $1.5 billion in COVID-19 deals.

On April 23, 2020, the Company first announced the announced that it had entered into an agreement with J&J to be the U.S. manufacturing partner for J&J's COVID-19 vaccine candidate based out of Emergent's manufacturing facility in Baltimore, Maryland. At that time, the Defendants touted the Company's Baltimore facility's "unique capabilities across four independent suites to produce at clinical scale to get candidates rapidly into the clinic, while at the same time scaling up to enable large-scale manufacturing . . . to prepare for production of commercial volumes to meet customer demand." In the following months, the Defendants continued to tout the Company's ability and capacity to mass manufacture COVID-19 vaccines at its Baltimore facility.

The complaints allege that throughout the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) Emergent's Baltimore facility had a history of manufacturing issues increasing the likelihood for massive contaminations; (2) the

Baltimore facility had received a series of FDA citations as a result of these contamination risks and quality control issues; (3) Emergent had been forced to discard millions of doses of COVID-19 vaccines after workers at the facility deviated from manufacturing standards; and (4) as a result of the foregoing, the defendants' public statements about Emergent's ability and capacity to mass manufacture multiple COVID-19 vaccines at its Baltimore facility were materially false and/or misleading and/or lacked a reasonable basis.

Investors began to learn the truth, after the close of markets on March 31, 2021, when media reports revealed that employees at Emergent's Baltimore facility had "mixed up" ingredients for the J&J and AstraZeneca vaccines, contaminating up to 15 million doses of the J&J vaccine. Reports further indicated that the Food and Drug Administration ("FDA") had "repeatedly . . . cited Emergent for problems such as poorly trained employees, cracked vials and problems managing mold and other contamination around one of its facilities." Further, it was revealed that an April 2020 FDA inspection of Emergent's Baltimore facility had uncovered "a series of quality control shortcomings" including, among other things, the "fail[ure] to ensure that electronic data generated through testing of drug ingredients 'was protected from deletion or manipulation,'" the failure to "follow proper testing and lab procedures," and "carelessness in the handling of rejected materials in the [Baltimore] Bayview plant."

On this news, Emergent's stock price fell $12.45 per share, or over 13%, from a close of $92.91 per share on March 31, 2021 to close at $80.46 per share on April 1, 2021.

It was subsequently revealed that between October 2020 and January 2021, Emergent was forced to discard millions of doses of the AstraZeneca vaccine after they were spoiled by bacterial contamination of equipment at the same Baltimore facility, and that a June 2020 report had concluded that Emergent had a record of problems with quality control, and as such, was poorly equipped to handle larger scale projects, such as the COVID-19 vaccine projects. Then, on April

3

19, 2021, the Company revealed that, "at the request of the FDA, Emergent agreed not to initiate the manufacturing of any new material at its [Baltimore] facility and to quarantine existing material manufactured at the [Baltimore] facility pending completion of the [FDA's] inspection and remediation of any resulting findings."

On this news, Emergent's stock price fell $9.77 per share, or more than 12%, from a close of $77.64 per share on April 16, 2021 to close at $67.87 per share on April 19, 2021.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

The above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising

from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A.    Movant Is Willing to Serve as Class Representative

Movant has timely filed the instant motion in response to a PSLRA early notice (*see* Mendrinos Decl., Ex. 1) and has filed herewith a PSLRA certification attesting that he is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Mendrinos Decl., Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

**B. Movant Has the Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

Movant lost approximately $291,707.39 in connection with Class Period purchases of Emergent stock. *See* Mendrinos Decl., Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Emergent securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *See Miraglia v. Human Genome Scis., Inc.*, C.A. No. 8:11-03231, 2012 WL 987502, at *3 (D. Md. Mar. 22, 2012) (movant "only required to make a *prima facie* showing of [Rule 23] typicality and adequacy requirement"); *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

#### 1.    Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*,

210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.    Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained financial losses from investments in Emergent securities and is therefore extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

Movant is a sophisticated investor with approximately 60 years of investing experience. He is retired and resides in University Place, Washington.  Movant holds a bachelor's in business administration and a degree in accounting and has earned the following designations: Certified Public Accountant, Chartered Life Underwriter, and Chartered Financial Consultant.  He worked for 32 years as a Chief Financial Officer for a regional insurance company, where he was in charge of investments, financial planning, accounting, and state and federal compliance.

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore, subject to rebuttal. Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

## III.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel and Murphy, Falcon & Murphy as Liaison Counsel. Rosen Law has been actively researching Movant's and Class Plaintiffs' claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against the Defendants. Furthermore, the firms are experienced in the area of securities litigation and class actions, and have successfully prosecuted securities litigation, securities fraud class actions, and other complex litigation, and have obtained substantial

recoveries on behalf of investors. *See* Mendrinos Decl., Exs. 4 and 5. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3) approving the Movant's selection of Rosen Law as Lead Counsel and Murphy, Falcon & Murphy as Liaison Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: June 21, 2021

Respectfully submitted,

By:  /s/ Nikoletta S. Mendrinos
Nikoletta S. Mendrinos (Bar No. 18961)
**MURPHY, FALCON & MURPHY**
One South Street, 30th Floor
Baltimore, Maryland 21202
Telephone: (410) 539-6500
Fax: (202) 539-6599
Email: nikoletta.mendrinos@murphyfalcon.com

 *[Proposed] Liaison Counsel for Lead Plaintiff and Class*

**THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)

275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served by the Court's CM/ECF on counsel of record on this 21st day of June, 2021.

Dated: June 21, 2021                                    Respectfully Submitted,

                                                       /s/Nikoletta S. Mendrinos
                                                       Nikoletta S. Mendrinos

12