**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>    v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>       Defendants. | Civil No. 8:21-cv-00955-PX |
| ALAN I. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>    v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>       Defendants. | Civil No. 8:21-cv-01189-PX |
| STEPHEN M. WEISS, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>    v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>       Defendants. | Civil No. 8:21-cv-01368-PX |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN AND THE CITY OF FORT LAUDERDALE POLICE & FIREFIGHTERS' RETIREMENT SYSTEM FOR CONSOLIDATION, <u>APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................................1

STATEMENT OF FACTS .............................................................................................................4

ARGUMENT .................................................................................................................................8

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
           PURPOSES.................................................................................................................8

    II.    NSHEPP AND FORT LAUDERDALE P&F SHOULD BE APPOINTED
           LEAD PLAINTIFFS FOR THE CLASS...................................................................9

           A.      NSHEPP and Fort Lauderdale P&F Are Willing to Serve as Class
                   Representatives .........................................................................................10

           B.      NSHEPP and Fort Lauderdale P&F Are the Most Adequate
                 Plaintiffs Within the Meaning of the PSLRA ...........................................12

                a.      NSHEPP and Fort Lauderdale P&F Have the Largest Financial
                        Interest in the Action................................................................. 13

                b.      NSHEPP and Fort Lauderdale P&F Otherwise Satisfy the
                        Requirements of Rule 23 ............................................................ 15

    III.   LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE
           APPROVED ...........................................................................................................20

CONCLUSION.............................................................................................................................22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ash v. PowerSecure Int'l, Inc.*, No. 4:14-92-D,
2014 U.S. Dist. LEXIS 145443 (E.D.N.C. Oct. 10, 2014) ......................................................15

*Brady v. Top Ships Inc.*,
324 F. Supp. 3d 335 (E.D.N.Y. 2018) ...................................................................................17

*Chamblee v. Terraform Power, Inc.*, No. PX 16-981,
2016 U.S. Dist. LEXIS 98619 (D. Md. July 28, 2016)..............................................15, 16, 20

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018).........................................................................................................19

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).......................................................14

*Goldberger v. PXRE Grp., Ltd.*, No. 06-3410KMK,
2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30, 2007) ...................................................3, 17

*Haung v. Acterna Corp.*,
220 F.R.D. 255 (D. Md. 2004)............................................................................................3, 17

*Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303,
2017 U.S. Dist. LEXIS 103799 (M.D.N.C. July 5, 2017) ...................................................8, 15

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) ....................................................17

*In re Cable & Wireless, PLC, Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. 2003) .........................................................................................13

*In re E.spire Commc'ns, Sec. Litig.*,
231 F.R.D. 207 (D. Md. 2000)...........................................................................................3, 18

*In re Krispy Kreme Doughnuts, Sec. Litig.*, No. 1: 04CV00416,
2004 U.S. Dist. LEXIS 26282 (M.D.N.C. Oct. 6, 2004)........................................................19

*In re Mun. Mortg. & Equity, LLC*, MDL 08-MD-1961,
2008 U.S. Dist. LEXIS 128610 (D. Md. Aug. 27, 2008) .......................................................20

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
219 F.R.D. 343 (D. Md. 2003)..............................................................................................9

*Johnson v. Pozen, Inc.*, No. 1:07CV599,
2008 U.S. Dist. LEXIS 12004 (M.D.N.C. Feb. 15, 2008)......................................................21

*Klugmann v. Am. Capital Ltd.*, No. PJM 09-5,
2009 U.S. Dist. LEXIS 71895 (D. Md. Aug. 12, 2009) ..........................................................20

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)..........................................................13

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-cv-05368-LHK,
2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014) .......................................................14

*Morrison v. National Australia Bank Ltd.*,
561 U.S. 247 (2010)...............................................................................................................18

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ...........................................................................................14

*Rice v. Genworth Fin. Inc.*, No. 3:17cv59,
2017 U.S. Dist. LEXIS 137110 (E.D. Va. Aug. 25, 2017)................................................19, 20

*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Ill. 1986)................................................................................................16

*Shah v. Genvec, Inc.*, No. DKC 12-0341,
2012 U.S. Dist. LEXIS 58509 (D. Md. Apr. 26, 2012) ..........................................................21

*Simmons v. Spencer*, No. 13 Civ. 8216 (RWS),
2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 25, 2014).......................................................19

*Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG,
2019 U.S. Dist. LEXIS 33329 (D. Md. Feb. 28, 2019) .......................3, 8, 9, 13, 15, 17, 19, 20

*Yousefi v. Lockheed Martin Corp.*,
70 F. Supp. 2d 1061 (C.D. Cal. 1999) .................................................................................3, 18

*Zaltzman v. Manugistics Group, Inc.*, Civ. No. S-98-1881,
1998 U.S. Dist. LEXIS 22867 (D. Md. Oct. 8, 1998)..............................................................18

## <u>Statutes</u>

5 U.S.C. §6103..........................................................................................................................10

15 U.S.C. §78u-4(a)(3)(A)(i)(II)....................................................................................................9

15 U.S.C. §78u-4(a)(3)(B) .......................................................................................................9, 12

15 U.S.C. §78u-4(a)(3)(B)(i) ...................................................................................................9, 13

15 U.S.C. §78u-4(a)(3)(B)(i) & (ii) ...............................................................................................9

15 U.S.C. § 78u-4(a)(3)(B)(iii) .............................................................................10, 13, 20, 21

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................................2, 19

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc) ...............................................................................10

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................................15

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).......................................................................................15

## **Rules**

Fed. R. Civ. P. 6.........................................................................................................................10

Fed. R. Civ. P. 23............................................................................................2, 10, 15, 16

Fed. R. Civ. P. 42....................................................................................................................1, 8

Movants the Nova Scotia Health Employees' Pension Plan ("NSHEPP") and the City of Fort Lauderdale Police & Firefighters' Retirement System ("Fort Lauderdale P&F") respectfully submit this Memorandum of Law in support of their motion (the "Lead Plaintiff Motion"), pursuant to Federal Rule of Civil Procedure 42 and Section 21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (i) consolidating the above-captioned securities fraud class actions (the "Related Actions"); (ii) appointing NSHEPP and Fort Lauderdale P&F as Lead Plaintiffs to oversee the consolidated action on behalf of a class of all persons who purchased or otherwise acquired the common stock of Emergent BioSolutions Inc. ("Emergent") during the Class Period at issue in this consolidated action, as may be adjusted, currently extending from April 24, 2020 to April 16, 2021, both dates inclusive (respectively, the "Class Period" and the "Class")[1]; and (iii) approving proposed Lead Plaintiffs NSHEPP's and Fort Lauderdale P&F's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that Emergent and certain of its officers defrauded investors in violation of the Exchange Act.  Emergent investors, including NSHEPP

---

[1] The Complaint in *Palm Tran, Inc. – Amalgamated Transit Union Local 157 Plan v. Emergent BioSolutions Inc., et al.*, No. 8:21-cv-00955-PX ("*Palm Tran*"), Dkt. No. 1 ("*Palm Tran* Complaint"), alleges a Class Period extending from July 6, 2020 through March 31, 2021, both dates inclusive. *Palm Tran* Complaint ¶1.  The Complaints in *Roth v. Emergent BioSolutions Inc., et al.*, No. 8:21-cv-01189-PX ("*Roth*"), Dkt. No. 1 ("*Roth* Complaint"), and *Weiss v. Emergent BioSolutions Inc., et al.*, No. 8:21-cv-01368-PX ("*Weiss*"), Dkt. No. 1 ("*Weiss* Complaint"), both allege a longer Class Period extending from April 24, 2020 through April 16, 2021, both dates inclusive. *Roth* Complaint ¶1; *Weiss* Complaint at 1.  Consistent with PSLRA jurisprudence (as discussed *infra* at Section B.II.a.), the Court should adopt the longer *Roth* and *Weiss* Class Period for purposes of assessing financial interest, and all capitalized references to the "Class Period" herein refer to the class period alleged in *Roth* and *Weiss*.

and Fort Lauderdale P&F, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of Emergent securities to fall sharply, damaging NSHEPP, Fort Lauderdale P&F, and other Emergent investors.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiffs the movant or group of movants that possess the largest financial interest in the outcome of the Action and that satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, NSHEPP and Fort Lauderdale P&F collectively: (1) purchased 17,797 shares of Emergent stock; (2) expended $1,448,350 on their purchases of Emergent stock; (3) retained 17,137 shares of Emergent stock; and (4) incurred losses of approximately $$325,839 calculated on a first-in, first-out ("FIFO") basis or $285,632 calculated on a last-in, first-out ("LIFO") basis.  *See* Declaration of Matthew L. Tuccillo in Support of Motion ("Tuccillo Decl."), Exhibit ("Ex.") A.  Accordingly, NSHEPP and Fort Lauderdale P&F believe that they have the largest financial interest in the relief sought in this litigation.

Beyond their considerable financial interests, NSHEPP and Fort Lauderdale P&F also meet applicable Rule 23 requirements because their claims are typical of absent Class members and they will fairly and adequately represent the Class's interests.  As sophisticated institutional investors, NSHEPP and Fort Lauderdale P&F are paradigmatic lead plaintiffs under the PSLRA, and their appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  Courts in the Fourth Circuit and this Judicial District have found that the PSLRA "was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market" would serve as lead plaintiffs in

2

securities class actions. *Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *14-15 (D. Md. Feb. 28, 2019), quoting *Goldberger v. PXRE Grp., Ltd.*, No. 06-3410KMK, 2007 U.S. Dist. LEXIS 23925, at *10 (S.D.N.Y. Mar. 30, 2007) (internal quotations omitted)). *See also Haung v. Acterna Corp.*, 220 F.R.D. 255, 258 (D. Md. 2004) ("Ideally, courts will appoint institutional investors with large holdings in the stock as lead plaintiff. As Congress and academics have noted, institutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees." (quoting *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1066 (C.D. Cal. 1999)); *In re E.spire Commc'ns, Sec. Litig.*, 231 F.R.D. 207, 212 (D. Md. 2000) ("not[ing] that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors").

To fulfill their obligations as lead plaintiffs and vigorously prosecute the Action on behalf of the Class, NSHEPP and Fort Lauderdale P&F have selected Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel. Both firms are highly experienced in the areas of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes and discussed below. Among its prior litigation successes, Pomerantz has successfully represented NSHEPP in individual and class action securities fraud litigation against BP p.l.c. and McDermott International, Inc. Cohen Milstein's attorneys also have extensive experience with the local civil rules and practices of this Judicial District, making Cohen Milstein well qualified to serve as Liaison Counsel for the Class.

Accordingly, NSHEPP and Fort Lauderdale P&F respectfully request that the Court enter an Order appointing them as Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel, and Cohen Milstein as Liaison Counsel, for the Class.

### STATEMENT OF FACTS

As alleged in the Complaints filed in the Related Actions, Emergent is a specialty biopharmaceutical company that develops vaccines and antibody therapeutics for infectious diseases. *Palm Tran* Complaint ¶2; *Roth* Complaint ¶3. In response to the COVID-19 pandemic, Emergent signed deals with Johnson & Johnson ("J&J") and AstraZeneca plc ("AstraZeneca") worth a combined ~$875 million to provide contract development and manufacturing organization ("CDMO") services to produce J&J's and AstraZeneca's urgently needed COVID-19 vaccine candidates. *Id.*; *Weiss* Complaint ¶2. Emergent received a further $628 million for such services from the U.S. government as part of the Operation Warp Speed Program designed to develop vaccines and bring them quickly to market to combat the pandemic, for a total of over $1.5 billion in COVID-19 deals. *Id.*

On April 23, 2020, Emergent first announced that it had entered into an agreement with J&J to be the U.S. manufacturing partner for J&J's COVID-19 vaccine candidate, based out of Emergent's manufacturing facility in the Bayview neighborhood of Baltimore, Maryland (the "Bayview Facility"). *Roth* Complaint ¶4. At the time of the announcement, Emergent touted the Bayview Facility's "unique capabilities across four independent suites to produce at clinical scale to get candidates rapidly into the clinic, while at the same time scaling up to enable large-scale manufacturing . . . to prepare for production of commercial volumes to meet customer demand." *Id.* In the following months, as the J&J deal expanded and Emergent signed a similar agreement

with AstraZeneca, Emergent continued to tout its ability and capacity to mass manufacture COVID-19 vaccines at the Bayview Facility.  *See, e.g.*, *id.* ¶5.

The Complaints allege that throughout the Class Period, Defendants failed to disclose that: (i) Emergent's Bayview Facility had a history of manufacturing issues that increased the likelihood of massive contaminations; (ii) the Bayview Facility had received a series of U.S. Food and Drug Administration ("FDA") citations as a result of these contamination risks and quality control issues; (iii) Emergent was forced to discard millions of doses of COVID-19 vaccines after workers at the facility deviated from manufacturing standards; and (iv) as a result of the foregoing, Defendants' public statements about Emergent's ability and capacity to mass manufacture multiple COVID-19 vaccines at its Bayview Facility were materially false and/or misleading and/or lacked a reasonable basis.  *Palm Tran* Complaint ¶29; *Roth* Complaint ¶37; *Weiss* Complaint ¶1.

On March 31, 2021, after the close of the markets, *The New York Times* published an article reporting on the accidental contamination at Emergent's Bayview Facility of COVID-19 vaccines developed by J&J and AstraZeneca.  *Palm Tran* Complaint ¶30; *Roth* Complaint ¶38; *Weiss* Complaint ¶6.  *The New York Times* article stated that in late February 2021, Emergent employees at the Bayview Facility mixed up ingredients of the two different COVID-19 vaccines, contaminating up to 15 million doses of J&J's vaccine and forcing regulators to delay authorization of the facility's production lines.  *Id.*  Also, "[f]urther shipments of the Johnson & Johnson vaccine—expected to total 24 million doses in the next month—were supposed to come from the giant plant in Baltimore" but "[t]hose deliveries are now in question while the quality control issues are sorted out."  *Roth* Complaint ¶38.  *The New York Times* article further noted that Emergent's massive vaccine contamination went undiscovered for days until J&J's quality control checks

5

uncovered it, raising questions about Emergent's training and supervision of its employees during the production process. *Palm Tran* Complaint ¶31; *Roth* Complaint ¶39.

On or around April 1, 2021, the Associated Press ("AP") reported on Emergent's "history of violations," noting that the FDA repeatedly cited Emergent for problems such as poorly trained employees, cracked vials, and problems managing mold and other facility contamination. *Palm Tran* Complaint ¶32; *Roth* Complaint ¶40; *Weiss* Complaint ¶7. The AP article highlighted that the FDA's inspection of the Bayview Facility had faulted Emergent for a series of quality control shortcomings. *Id.*

On this news, Emergent's stock price substantially declined from a close of $92.91 per share on March 31, 2021, to $80.46 per share at the close of trading on April 1, 2021—a drop of $12.45, or over 13%, per share. *Palm Tran* Complaint ¶34; *Roth* Complaint ¶42; *Weiss* Complaint ¶9.

On April 3, 2021, *The New York Times* reported that the Biden administration had made the "extraordinary move" of putting J&J in charge of Emergent's "troubled Baltimore manufacturing plant" and "moved to stop the plant from making [the] vaccine by AstraZeneca." *Palm Tran* Complaint ¶33; *Roth* Complaint ¶43; *Weiss* Complaint ¶8. The article cited the "mixed up ingredients" and noted that "[b]y moving the AstraZeneca vaccine out . . . the plant can be solely devoted to the [J&J] single-dose vaccine and avoid future mishaps. *Id.* The article called the stripping of Emergent's control over its own plant "a significant setback and a public relations debacle." *Id.*

On April 6, 2021, *The New York Times* published another report, citing undisclosed internal documents and interviews with current and former federal officials, as well as Emergent employees. *Palm Tran* Complaint ¶35; *Roth* Complaint ¶44; *Weiss* Complaint ¶10. According to

6

*The New York Time*s, its "examination . . . of manufacturing practices at the [Bayview] Baltimore facility found serious problems, including a corporate culture that often ignored or deflected missteps and a government sponsor, the Biomedical Advanced Research and Development Authority, that acted more as a partner than a police officer." *Roth* Complaint ¶44. Further, based on its investigation, the report "depict[ed] a factory operation that was ill-equipped to take on such a mammoth manufacturing task" and noted that the recent contamination "was not the first time the company threw out coronavirus vaccine for fear of contamination." *Palm Tran* Complaint ¶35; *Roth* Complaint ¶44.

Also on April 6, 2021, *The New York Times* reported that Carlo de Notaristefani, a manufacturing expert overseeing production of COVID-19 vaccines for the federal government since May 2020, issued a report in June 2020 concluding that Emergent's Bayview Facility lacked enough trained staff and had a record of quality control problems. *Roth* Complaint ¶46. According to Notaristefani, the Bayview Facility—which was typically used for smaller projects—was poorly equipped to handle larger scale projects and would need to expend "significant resources" and "strengthen" its quality controls to handle the COVID-19 manufacturing projects. *Id.*

The consequences of Emergent's deficiencies further emerged on April 19, 2021, when it announced that, "at the request of the FDA, Emergent agreed not to initiate the manufacturing of any new material at its Bayview facility and to quarantine existing material manufactured at the Bayview facility pending completion of [FDA's] inspection and remediation of any resulting findings." *Roth* Complaint ¶47; *Weiss* Complaint ¶12.

On this news, the price of Emergent common stock declined an additional $9.77 per share, or more than 12%, from a close of $77.64 per share on April 16, 2021, to close at $67.87 per share on April 19, 2021. *Roth* Complaint ¶48; *Weiss* Complaint ¶13.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Emergent's securities, plaintiffs in the Related Actions and other Class members, including NSHEPP and Fort Lauderdale P&F, have suffered significant losses and damages.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication with risks of conflicting rulings.   Pursuant to Federal Rule of Civil Procedure 42(a), consolidation is appropriate when the "actions before the court involve common questions of law *or* fact."  *Id.* (emphasis added); *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *7 ("Rule 42 gives a court discretion to consolidate actions that involve a common question of law or fact.") (quotations and citations omitted); *Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303, 2017 U.S. Dist. LEXIS 103799, at *4 (M.D.N.C. July 5, 2017) (same).

The Related Actions at issue here clearly involve common questions of law ***and*** fact.  Each action was brought against Emergent, as well as three of its top officers, in connection with alleged violations of the same provisions of the federal securities laws.  *See generally Palm Tran* Complaint; *Roth* Complaint; *Weiss* Complaint.   Accordingly, the Related Actions allege substantially the same wrongdoing—namely that Defendants issued materially false and misleading statements that artificially inflated the price of Emergent's common stock and subsequently damaged the Class members when Emergent's stock price plunged as the truth began to emerge. *Id.*  Consolidation of the Related Actions is therefore appropriate.  *See Cempra*, 2017 U.S. Dist. LEXIS 103799, at *4-5 (consolidation of securities fraud class actions appropriate where cases "involve many of the same factual allegations regarding [defendant corporation] Cempra's

misrepresentations and failures to disclose information" and "[t]he individual Defendants in each case are officers or directors of Cempra, and Cempra's liability in each case will be determined under the same law, that is, the Securities Exchange Act of 1934"); *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at \*9 (notwithstanding minor differences between overlapping class periods in related actions, "[c]onsolidation is often appropriate, regardless, where the securities fraud actions 'are based on the same public statements and reports'") (quoting *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003)).

## II.    NSHEPP AND FORT LAUDERDALE P&F SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of notice of the action, which in this case was published on April 19, 2021 (*see* Tuccillo Decl., Ex. B). *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II). The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of publication (30 days after the motion deadline), or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) & (ii). NSHEPP's and Fort Lauderdale P&F's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i). NSHEPP and Fort Lauderdale P&F are the "most adequate plaintiffs" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiffs.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a

lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc). As set forth below, NSHEPP and Fort Lauderdale P&F satisfy all three of these criteria and thus believe that they are entitled to the rebuttable presumption that they are the most adequate plaintiffs within the meaning of the PSLRA. Specifically, NSHEPP and Fort Lauderdale P&F, both sophisticated institutional investors that are willing to serve as lead plaintiffs, have the largest financial interest in the Related Actions to their knowledge and otherwise strongly satisfy the requirements of Rule 23.

For all these reasons, as set forth in greater detail below, NSHEPP and Fort Lauderdale P&F respectfully urge the Court to appoint them to serve as Lead Plaintiffs overseeing this Action.

## A. NSHEPP and Fort Lauderdale P&F Are Willing to Serve as Class Representatives

On April 19, 2021, counsel for Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan, the initial plaintiff in the first of the Related Actions to be filed, caused a notice (the "Notice") to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and advised investors in Emergent common stock that they had until June 18, 2021—*i.e.*, 60 days—to file a motion to be appointed as lead plaintiff. *See* Tuccillo Decl., Ex. B. Because the U.S. District Court for the District of Maryland was closed on June 18, 2021 (a Friday) in observance of Juneteenth, a federal holiday (*see* 5 U.S.C. §6103, as amended by S.475 - Juneteenth National Independence Day Act), pursuant to Federal Rule of Civil Procedure 6(a)(1), the deadline to seek appointment as Lead Plaintiff in this litigation became June 21, 2021 (the following Monday). NSHEPP and Fort Lauderdale P&F have filed the instant motion pursuant to that Notice and have attached Certifications signed on their behalf—respectively, by NSHEPP's Chief Executive

10

Officer and by Fort Lauderdale P&F's Plan Administrator—attesting that NSHEPP and Fort Lauderdale P&F are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Under the PSLRA, NSHEPP's and Fort Lauderdale P&F's actions were timely and legally sufficient. Accordingly, NHSEPP and Fort Lauderdale P&F readily satisfy the first requirement to serve as Lead Plaintiffs for the Class.

NSHEPP and Fort Lauderdale P&F are, in every respect, exactly the sort of well-managed, sophisticated institutional investors that Congress intended to fulfill the lead plaintiff role created by the PSLRA. NSHEPP is a comprehensive, defined benefit pension plan established in 1961 and jointly sponsored by Health Association Nova Scotia and four unions. NSHEPP is one of the largest registered pension plans in the Canadian Province of Nova Scotia, serving over 47,000 people, including 32,000 active members who work for 87 participating employers at over 150 sites throughout Nova Scotia, as well as 13,000 pensioners who receive a monthly income from NSHEPP and over 1,500 former employees who have elected a deferred pension. NSHEPP's oversight and administration is well-defined, multitiered, and robust. It is administered by a Board of eight Trustees, half selected by Health Association Nova Scotia and half selected by the four unions to which its members belong. The Board of Trustees is responsible for the Plan's overall operation, with day-to-day operations overseen by a Chief Executive Officer (who signed NSHEPP's Certification). As of December 2020, NSHEPP had over CAD $10.6 billion in assets, which it invests in a diversified manner, including over 40% in equities.

Significantly, NSHEPP is experienced in the prosecution of complex securities fraud claims, both as a court-appointed PSLRA lead plaintiff and in an individual capacity. Currently, NSHEPP serves as the court-appointed PSLRA lead plaintiff overseeing all Exchange Act §10(b) and SEC Rule 10b5-1 claims – the same claims at issue here – against McDermott International,

11

Inc., its CEO, and its CFO. *See Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-04330 (S.D. Tex.). In that capacity, NSHEPP has overseen litigation of class-wide claims estimated at more than \$2 billion successfully past a motion to dismiss and into discovery. NSHEPP also reached a confidential, favorable monetary settlement in the first quarter of 2021 to resolve securities litigation against BP p.l.c. arising from BP's 2010 Gulf of Mexico oil spill, after eight years of litigation in which NSHEPP survived multiple motions to dismiss and pursued its claims deep into discovery. *See Nova Scotia Health Employees' Pension Plan* v. *BP, plc, et al.*, No. 4:13-cv-03397 (S.D. Tex.). In both of these litigations, NSHEPP has been represented by its choice of counsel here, Pomerantz, which represented 32 institutional investor plaintiffs in the *BP* litigation and which is serving as court-appointed §10(b) lead counsel in the *McDermott* litigation.

Fort Lauderdale P&F is a defined benefit plan sponsored by the City of Fort Lauderdale. The plan serves 793 active members and 1,167 retired members and beneficiaries, for a total of 1,830 plan participants. All Fort Lauderdale sworn police officers and firefighters are eligible to participate in the plan. A seven-member Board of Trustees, either elected by the employees or appointed by the Mayor, administers the plan, while Plan Administrator Lynn Wenguer oversees Fort Lauderdale P&F's operations. As of June 2020, Fort Lauderdale P&F had \$927.3 million in assets, which it invests in a diversified manner, including approximately 50% in equities.

NSHEPP and Fort Lauderdale P&F have thus proffered evidence as to their *prima facie* suitability to serve as Lead Plaintiffs overseeing this litigation.

### B. NSHEPP and Fort Lauderdale P&F Are the Most Adequate Plaintiffs Within the Meaning of the PSLRA

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class

members (hereinafter … the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i).

NSHEPP and Fort Lauderdale P&F are the "most adequate plaintiffs" within the meaning of the

PSLRA and should therefore be appointed as Lead Plaintiffs.

### a.   NSHEPP and Fort Lauderdale P&F Have the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate

plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the

largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii).  To the

best of their knowledge, NSHEPP and Fort Lauderdale P&F have the largest financial interest of

any Emergent investor or investor group seeking to serve as lead plaintiff.  For claims arising under

Exchange Act §10(b), courts frequently assess financial interest based upon the four factors

articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares

purchased during the class period; (2) the number of net shares purchased during the class period

(also referred to as "retained shares"); (3) the total net funds expended during the class period; and

(4) the approximate losses suffered.  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-18

(N.D. Ill. Aug. 6, 1997).  In accord with courts nationwide, these so-called *Lax* factors have been

adopted by courts in the Fourth Circuit, including in this District.  *See*, *e.g.*, *Tchatchou*, 2019 U.S.

Dist. LEXIS 33329, at *11; *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375 n.4

(E.D. Va. 2003).

As a threshold matter, the Court should assess financial interest at this stage of the litigation

with reference to the broader Class Period alleged in both *Roth* and *Weiss* (April 24, 2020 through

April 16, 2021), rather than the shorter and less inclusive class period alleged in *Palm Tran*  (July

6, 2020 through March 31, 2021).  At the lead plaintiff appointment stage of PSLRA actions, where

different class periods are alleged among related actions that are the subject of consolidation

13

motions, courts generally adopt the longest and most inclusive of the possible class periods for the purposes of assessing financial interest and appointing a lead plaintiff. *See*, *e.g.*, *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) ("courts usually . . . use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period"); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, No. 13-cv-05368-LHK, 2014 U.S. Dist. LEXIS 80141, at *7 n.3 (N.D. Cal. June 10, 2014) ("For purposes of appointing a lead plaintiff, the longest class period governs."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) ("Though a shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation."). Here, *Roth* and *Weiss* allege a Class Period beginning 83 days earlier, and ending 16 days later, than that alleged in *Palm Tran*. Accordingly, the Court should adopt the longer *Roth* and *Weiss* Class Period for the purposes of financial interest assessment and lead plaintiff appointment.

During the Class Period, NSHEPP and Fort Lauderdale P&F collectively: (1) purchased 17,797 shares of Emergent stock; (2) expended $1,448,350 in net funds on their purchases of Emergent stock; (3) retained 17,137 of their shares of Emergent stock; and (4) as a result of the disclosure of the fraud, suffered a loss of approximately $325,839 on a FIFO basis or $285,632 on a LIFO basis in connection with their transactions in Emergent stock. *See* Tuccillo Decl., Ex. A.[2] Thus, under the *Lax* factors, NSHEPP and Fort Lauderdale P&F believe they have the largest financial interest among any potential lead plaintiff movants in this litigation, thereby entitling

---

[2]    Of these totals, NSHEPP individually purchased 10,976 Emergent shares, expended $865,286 in net funds on those Emergent stock purchases, retained 10,976 Emergent shares, and suffered approximately $190,726 in losses calculated on either a FIFO or LIFO basis in connection with its transactions in Emergent stock. *See id.*

NSHEPP and Fort Lauderdale P&F to a rebuttable presumption that they are the "most adequate plaintiffs" within the PSLRA's meaning (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), given that they also satisfy the requirements of Fed. R. Civ. P. 23.

### b.  NSHEPP and Fort Lauderdale P&F Otherwise Satisfy the Requirements of Rule 23

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that it is the "most adequate plaintiff," it must also demonstrate that it "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  At this stage of the inquiry, "the relevant portions of Rule 23 are those that aid the court in assessing 'whether the movant will be an appropriate class representative.'  Accordingly, the court 'need only determine (1) whether the movant's claims or defenses are typical of the class's claims or defense, and (2) whether the movant will fairly and adequately protect the interests of the class.'" *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *18 (quoting *Ash v. PowerSecure Int'l, Inc.*, No. 4:14-92-D, 2014 U.S. Dist. LEXIS 145443, at *11 (E.D.N.C. Oct. 10, 2014)).  A *prima facie* showing suffices for this determination.  *Chamblee v. Terraform Power, Inc.*, No. PX 16-981, 2016 U.S. Dist. LEXIS 98619, at *4-5 (D. Md. July 28, 2016); *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *18.  NSHEPP and Fort Lauderdale P&F readily pass muster.

NSHEPP and Fort Lauderdale P&F satisfy the threshold for Rule 23(a)(3) typicality.  "The typicality requirement of the rule requires that a lead plaintiff suffer the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Cempra*, 2017 U.S. Dist. LEXIS 103799, at *8-9.  NSHEPP and Fort Lauderdale P&F's claims are typical of those of the Class members.  Like all Class members, NSHEPP and Fort Lauderdale P&F allege that: (1) Defendants violated the Exchange Act by knowingly or recklessly making false or misleading statements of material facts and/or omitting to disclose material facts concerning

15

Emergent; (2) NSHEPP, Fort Lauderdale P&F, and the Class members purchased Emergent stock during the Class Period at prices allegedly inflated by Defendants' misrepresentations or omissions; and (3) NSHEPP, Fort Lauderdale P&F, and the Class members were damaged upon the revelation of Defendants' alleged fraud through partial corrective disclosures that drove Emergent's stock price downward.  These shared claims, which are based on the same legal theories and arise from the same underlying facts and course of conduct, demonstrate NSHEPP's and Fort Lauderdale P&F's typicality under Rule 23(a)(3).

NSHEPP and Fort Lauderdale P&F also satisfy the Rule 23(a)(4) adequacy requirement. In determining whether that requirement is met, courts in the Fourth Circuit consider whether a movant has "demonstrated that they will 'fairly and adequately protect the interests of the class,' and 'ensure vigorous advocacy[.]'"  *Terraform Power*, 2016 U.S. Dist. LEXIS 98619, at *5 (quoting *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986)).  Here, NSHEPP and Fort Lauderdale P&F have submitted signed Certifications declaring their commitment to protecting the interests of the Class.  *See* Tuccillo Decl., Ex. C.  NSHEPP and Fort Lauderdale P&F have no conflicts of interest or antagonism with the Class of Emergent investors they seek to represent. NSHEPP's and Fort Lauderdale P&F's significant losses from their Class Period trades in Emergent securities demonstrate that they have a sufficient interest in the outcome of this litigation that aligns with the interests of Class members.

NSHEPP and Fort Lauderdale P&F have further demonstrated their adequacy by submitting a Joint Declaration executed on their behalf, attesting to, *inter alia*, their discussions with one another and with counsel regarding their joint motion; their understanding of the responsibilities of court-appointed PSLRA lead plaintiffs; and their readiness to undertake those responsibilities on behalf of the Class, including by supervising counsel.  *See* Tuccillo Decl. Ex.

16

D.    Courts generally consider such declarations as evidence of adequacy in appointing lead plaintiffs. *See*, *e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *22 (appointing investor group that submitted a declaration that "signals to [the court] that [the group's] members are prepared to play an active role in this litigation and to monitor the actions of their selected counsel"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531, at *12 (E.D.N.Y. Dec. 15, 2017) (appointing group of four investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class"); *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 346 (E.D.N.Y. 2018) (appointing group of three investors as lead plaintiff, finding the group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class").

NSHEPP and Fort Lauderdale P&F are sophisticated institutional investors with significant assets under management. As such, their service as Lead Plaintiffs would satisfy the PSLRA's preference for appointment of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"). Indeed, courts in this Circuit consistently recognize that Congress intended the PSLRA to place institutional investors in charge of securities class actions, recognizing the advantages of doing so. *See*, *e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *14-15 (PSLRA "was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation") (quoting *Goldberger*, 2007 U.S. Dist. LEXIS 23925, at *10) (internal quotations omitted)); *Haung*, 220 F.R.D. at 258 ("Ideally, courts will appoint institutional investors with large

17

holdings in the stock as lead plaintiff.") (quoting *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1066 (C.D. Cal. 1999)); *E.spire Commc'ns*, 231 F.R.D. at 212 ("not[ing] that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors."); *Zaltzman v. Manugistics Group, Inc.*, Civ. No. S-98-1881, 1998 U.S. Dist. LEXIS 22867, at *13 (D. Md. Oct. 8, 1998) ("Congress . . . endeavored to promote the active participation of institutional investors in these cases.").

Indeed, NSHEPP's track record in prior, hard-fought, multiyear securities fraud litigations demonstrates its competence and readiness to vigorously pursue recovery in complex securities fraud actions. Specifically, NSHEPP has achieved the following successes:

• NSHEPP currently serves as court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, in a $2 billion class action lawsuit against McDermott International, Inc., its CEO, and its CFO, where, after securing important class-wide protections in McDermott's bankruptcy proceeding, NSHEPP successfully opposed a motion to dismiss, thereby obtaining rulings that validated an amended pleading that alleged three separate threads of fraud spanning a 22-month class period. That litigation, *Edwards v. McDermott International, Inc.*, No. 4:18-cv-04330 (S.D. Tex.), is currently in discovery.

• NSHEPP successfully pursued individual claims within Multidistrict Litigation 2185, *In re BP p.l.c. Securities Litigation*, 4:10-md-02185 (S.D. Tex.), to recover investment losses stemming from BP plc's 2010 Gulf of Mexico oil spill. Represented by Pomerantz during eight years of litigation, NSHEPP's claims survived multiple motions to dismiss and set ground-breaking precedent, including, *inter alia*: (1) the first rulings allowing foreign investors to pursue foreign law claims, seeking recovery for losses in a foreign company's foreign-traded securities, in a U.S. court since the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*,

561 U.S. 247 (2010), which barred application of the U.S. federal securities laws to claims arising from securities traded outside the U.S.; and (2) a decision rejecting BP's proposed extension of the Securities Litigation Uniform Standards Act of 1998, which extinguishes U.S. state law claims in deference to the U.S. federal securities laws, to foreign common law claims.  NSHEPP and Pomerantz's other 32 institutional investor clients pursuing BP litigation claims obtained a confidential, favorable monetary settlement of those claims in the first quarter of 2021.

Moreover, NSHEPP and Fort Lauderdale P&F constitute an appropriate group of the type routinely appointed to serve as PLSRA lead plaintiffs.  The PSLRA expressly provides that the Court may appoint a "group of persons" as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Supreme Court recently affirmed the propriety of permitting investor groups to serve as lead plaintiffs in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), noting that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups" in PSLRA actions.  *Id.* at 1807 n.3.  Courts in the Fourth Circuit and nationwide generally permit groups of investors to serve as lead plaintiffs when such groups are relatively small and cohesive—*i.e.*, where nothing about the group's size or composition raises concerns as to "whether the members of [the] group . . . could effectively work as one."  *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at \*20; *see also Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110, at \*34 n.14 (E.D. Va. Aug. 25, 2017) (finding that even "[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small . . . and therefore presumptively cohesive," noting that "the choice . . . to work together since the inception of the litigation was based on the parties' mutual shared interests") (quoting *Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743, at \*13 (S.D.N.Y. Apr. 25, 2014) (ellipsis in original)); *In re Krispy Kreme Doughnuts, Sec. Litig.*, No. 1: 04CV00416, 2004 U.S. Dist. LEXIS 26282, at \*1-

4 (M.D.N.C. Oct. 6, 2004) (appointing group comprised of four unrelated retirement funds as lead plaintiff).[3]

Here, NSHEPP and Fort Lauderdale P&F constitute exactly the type of small and cohesive investor group that courts in the Fourth Circuit routinely appoint as lead plaintiffs – just two pension funds that can "effectively work as one." *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *20. Each of the two movants is a sophisticated institutional investor that possesses a pre-litigation relationship with their counsel in this litigation. As set forth in their Joint Declaration (*see* Tuccillo Decl., Ex. D), NSHEPP and Fort Lauderdale P&F each independently evaluated and discussed with counsel the merits of the claims against Defendants and only then opted to seek appointment as Lead Plaintiffs jointly with one another, recognizing their "mutual shared interests" in maximizing the Class's recovery. *Rice*, 2017 U.S. Dist. LEXIS 137110, at *34 n.14. The appointment of these two institutional investors as Lead Plaintiffs would thus ensure that control of this litigation remains in the hands of competent, sophisticated Emergent investors, not their attorneys, thereby furthering "the PSLRA's policy of remedying lawyer-driven litigation." *Mun. Mortg. & Equity*, 2008 U.S. Dist. LEXIS 128610, at *18-19.

## III.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *Terraform Power*, 2016 U.S. Dist. LEXIS 98619, at *3; *Klugmann v. Am. Capital Ltd.*, No. PJM 09-5, 2009 U.S. Dist. LEXIS 71895,

---

[3]    By contrast, courts generally decline to appoint investor groups that were constructed by counsel without meaningful involvement from the group's members and thus lack cohesion. *In re Mun. Mortg. & Equity, LLC*, MDL 08-MD-1961, 2008 U.S. Dist. LEXIS 128610, at *18-19 (D. Md. Aug. 27, 2008) (declining to appoint movant group "assembled by putative class action counsel from persons responding to a lawyer advertisement placed on the Internet," finding that the "assemblage of respondents in a plaintiff group is precisely the type of action that contravenes the PSLRA's policy of remedying lawyer-driven litigation").

at *15-16 (D. Md. Aug. 12, 2009).  The Court should not interfere with lead plaintiffs' selection unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *Shah v. Genvec, Inc.*, No. DKC 12-0341, 2012 U.S. Dist. LEXIS 58509, at *5 (D. Md. Apr. 26, 2012) ("In the exercise of its discretion, '[t]he court has an obligation to assure that Lead Plaintiff's choice of representation best suits the needs of the class.'" (quoting *Johnson v. Pozen, Inc.*, No. 1:07CV599, 2008 U.S. Dist. LEXIS 12004, at *9 (M.D.N.C. Feb. 15, 2008)).

NSHEPP and Fort Lauderdale P&F have selected Pomerantz to serve as Lead Counsel for the Class.  Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume.  *See* Tuccillo Decl., Ex. E. Pomerantz is based in New York, with offices in Chicago, Los Angeles, and Paris, France, and the firm regularly litigates federal securities fraud class actions in courts nationwide.  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of Petrobras investors, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *Id. Petrobras* is part of a long line of record setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *Id.*  The Pomerantz partner who will oversee this litigation, Matthew L. Tuccillo, has more than 20 years of relevant experience and has represented NSHEPP for over eight years, including as lead litigation counsel in both the *BP* and *McDermott* litigations discussed herein.  He regularly appears before courts nationwide in securities litigation matters similar to the Related Actions.

21

Cohen Milstein is also well-qualified to serve as Liaison Counsel in this action. As its firm resume reflects, Cohen Milstein is also highly experienced in the areas of securities litigation and class action lawsuits. Cohen Milstein maintains an office in Washington, D.C., and its attorneys, who regularly practice in this Judicial District, have extensive familiarity with its Local Civil Rules and practices. *See id.*, Ex. F.

As a result of their extensive experience in similar litigation, NSHEPP's and Fort Lauderdale P&F's choice of counsel, Pomerantz and Cohen Milstein, have the skill, knowledge, expertise, resources, and experience that will enable them to prosecute this litigation effectively and expeditiously. The Court may be assured that by approving NSHEPP's and Fort Lauderdale P&F's selection of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel, the Class members will receive the best legal representation available. Thus, NSHEPP and Fort Lauderdale P&F respectfully urge the Court to appoint their choice of counsel, Pomerantz and Cohen Milstein, to serve as Lead Counsel and Liaison Counsel, respectively.

## CONCLUSION

For the foregoing reasons, NSHEPP and Fort Lauderdale P&F respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing NSHEPP and Fort Lauderdale P&F as Lead Plaintiffs for the Class; and (3) approving Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated:   June 21, 2021

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Daniel S. Sommers*

Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 500, East Tower

22

Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman*
Matthew L. Tuccillo*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti*
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and City of Fort Lauderdale Police & Firefighters' Retirement System and Proposed Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner*
Stuart Kaufman*
7080 NW 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232

23

bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Fort
Lauderdale Police & Firefighters'
Retirement System*

**\****pro hac vice* applications forthcoming

24

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by the Court's

CM/ECF system on counsel of record on this 21st day of June, 2021.

Dated: June 21, 2021                    /s/ Daniel S. Sommers
                                        Daniel S. Sommers