UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>EMERGENT BIOSOLUTIONS INC., et al.,<br><br>            Defendants. | Civil No. PX-21-00955<br><br>CLASS ACTION |
| ALAN I. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>EMERGENT BIOSOLUTIONS INC., et al.,<br><br>            Defendants. | Civil No. PX-21-01189<br><br>CLASS ACTION |
| STEPHEN WEISS Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>EMERGENT BIOSOLUTIONS INC., et al.,<br><br>            Defendants. | Civil No. PX-21-01368<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

4830-2936-9073.v1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ....................................................................................................................1

II.     ARGUMENT...........................................................................................................................3

      A.      The Western Pennsylvania Funds Possess the Largest Financial Interest...............3

      B.      The Western Pennsylvania Funds Meet All of the PSLRA's Requirements
          and Should be Appointed Lead Plaintiff..................................................................11

III.    CONCLUSION......................................................................................................................11

4830-2936-9073.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Ahnefeldt v. Dickson*,
No. 4:20-cv-02539 (S.D. Tex. Oct. 7, 2020) ..............................................................................5

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) .......................................................................................1

*Bhojwani v. Pistiolis*,
2007 WL 2197836 (S.D.N.Y. June 26, 2007)
*adopted by* 2007 WL 9228588 (S.D.N.Y. July 31, 2007) .........................................................4

*Chauhan v. Intercept Pharm.*,
2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) ...............................................................................9

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...........................................................................4

*Haideri v. Jumei Int'l Holding Ltd.*,
2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ...........................................................................10

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)................................................................................4

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)................................................................2, 4, 8, 10

*In re E.Spire Commc'ns, Inc., Sec. Litig.*,
231 F.R.D. 207 (D. Md. 2000)............................................................................................2, 5, 6

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ...............................................................................................4

*In re Peregrine Sys., Inc. Sec. Litig.*,
2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ..........................................................................4

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)........................................................................................4

*In re Pfizer Inc. Sec. Litig*,
233 F.R.D. 334 (S.D.N.Y. 2005) ...............................................................................................4

*In re Stitch Fix, Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019) ..................................................................................8, 10

4830-2936-9073.v1

**Page**

*Jakobsen v. Aphria, Inc.*,
    2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ...........................................................................10

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019)......................................................................................10

*Makhlouf v. Tailored Brands, Inc.*,
    2017 WL 1092311 (S.D. Tex. Mar. 23, 2017)..........................................................................4

*McDermid v. Inovio Pharm., Inc.*,
    467 F. Supp. 3d 270 (E.D. Pa. 2020) ......................................................................................10

*Melucci v. Corcept Therapeutics Inc.*,
    No. 5:19-cv-1372-LHK (N.D. Cal. July 9, 2019) .....................................................................5

*Mullen v. Wells Fargo & Co.*,
    2021 WL 965344 (N.D. Cal. Mar. 15, 2021)............................................................................9

*Pardi v. Tricida, Inc.*,
    2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ............................................................................9

*Ross v. Abercrombie & Fitch Co.*,
    2007 WL 895073 (S.D. Ohio Mar. 22, 2007)...........................................................................8

*Sakhrani v. Brightpoint, Inc.*,
    78 F. Supp. 2d 845 (S.D. Ind. 1999) .......................................................................................4

*Sponn v. Emergent BioSolutions, Inc.*,
    No. 8:16-cv-02625 (D. Md.) ..................................................................................................11

*Tan v. NIO Inc.*,
    2020 WL 1031489 (S.D.N.Y. Mar. 3, 2020) ...................................................................3, 7, 9

*Tchatchou v. India Globalization Caital, Inc.*,
    2019 WL 1004591 (D. Md. Feb. 28, 2019) ..................................................................... *passim*

*Teran v. Subaye, Inc.*,
    2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011)..........................................................................4

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
    2021 WL 533518 (S.D. Cal. Feb. 12, 2021) .............................................................................9

*Williams v. Block.One*,
    2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020)............................................................................9

4830-2936-9073.v1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B)(iii)(I)...................................................................................................1, 2, 4, 11
  §78u-4(a)(3)(B)(iii)(II) .................................................................................................11


Federal Rules of Civil Procedure
  Rule 23 ..........................................................................................................................1, 2, 11

4830-2936-9073.v1

Western Pennsylvania Electrical Employees Insurance Trust Fund and Western Pennsylvania Electrical Employees Pension Fund (the "Western Pennsylvania Funds") respectfully submit this memorandum of law in opposition to the competing motions for appointment as lead plaintiff.

## I.    INTRODUCTION

Five motions were timely filed by class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  Under the PSLRA, courts are to "adopt a presumption that the most adequate plaintiff" is the person that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. §78u-4(a)(3)(B)(iii)(I).   With a loss of $237,384, the Western Pennsylvania Funds – two related institutional investors – suffered the single largest loss[2] of any movant that has sought to be appointed as lead plaintiff:

---

[1]    The motions were filed by: (i) Western Pennsylvania Funds; (ii) the unrelated group of Nova Scotia Health Employees' Pension Plan ("NSHEPP") and City of Fort Lauderdale Police & Firefighters' Retirement Systems ("Fort Lauderdale P&F"); (iii) Grand Slam Asset Management, LLC; (iv) Lawrence Edlund; and (v) Stephen M. Weiss.  *See* ECF Nos. 13, 14, 15, 16, 18.  Mr. Edlund filed a Notice of Errata and Correction on June 24, 2021.  *See* ECF No. 21.

[2]    Although Western Pennsylvania Electrical Employees Insurance Trust Fund and Western Pennsylvania Electrical Employees Pension Fund are legally distinct entities, they are "essentially one person for purposes of the Reform Act."  *See, e.g*., *Aronson v. McKesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal. 1999) ("Although the Funds are separate entities, the court is satisfied that they are essentially one person for purposes of the Reform Act, because they are all under the jurisdiction of New York City Comptroller's Office, and are represented in their dealings with private counsel through one 'in-house' counsel, the Corporation Counsel of the City of New York.").  Indeed, the Western Pennsylvania Funds submitted a single Certification executed by a single individual.  *See* ECF No. 20-2.

4830-2936-9073.v1

| Movant | Loss |
|---|---|
| Western Pennsylvania Funds | $237,384 |
| ~~Grand Slam Asset Management, LLC[3]~~ | ~~$203,686~~ |
| NSHEPP | $190,726 |
| ~~Lawrence Edlund[4]~~ | ~~$187,259~~ |
| Fort Lauderdale P&F | $135,113 |
| ~~Stephen M. Weiss[5]~~ | ~~$14,076~~ |

The Western Pennsylvania Funds also satisfy the Rule 23 requirements. *See* ECF No. 19 at 6-7. Accordingly, the Western Pennsylvania Funds' motion should be granted.

By contrast, counsel for NSHEPP and Fort Lauderdale F&P – two unrelated institutional investors with no pre-existing relationship based in two different countries – cobbled their losses together in an attempt to ***collectively*** assert a loss larger than the Western Pennsylvania Funds. And, while the PSLRA expressly contemplates the appointment of a "person or group of persons" as lead plaintiff, (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), "'[c]ourts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019).[6] Otherwise, "a court runs the risk that attorneys will seek to put together a group of unrelated plaintiffs for the sole purpose of having that group qualify as the group with the 'largest financial interest,' in turn leading to such attorneys' appointment as

---

[3]   Grand Slam Asset Management, LLC filed a Notice of Non-Opposition to the competing motions for appointment as lead plaintiff and approval of lead counsel on July 6, 2021. *See* ECF No. 32.

[4]   Mr. Edlund filed a Notice of Non-Opposition to the competing motions to consolidate related actions, for appointment as lead plaintiff, and approval of lead plaintiff's selection of counsel on July 6, 2021. *See* ECF No. 33.

[5]   Mr. Weiss withdrew his motion for consolidation of related actions, appointment as lead plaintiff, and approval of selection of counsel on July 2, 2021. *See* ECF No. 31.

[6]   Unless otherwise noted, all emphasis is added and citations are omitted.

4830-2936-9073.v1

lead counsel," thereby running counter to the purpose of the PSLRA in preventing lawyer-driven securities litigation. *In re E.Spire Commc'ns, Inc., Sec. Litig.,* 231 F.R.D. 207, 212-13 (D. Md. 2000); *but see Tchatchou v. India Globalization Caital, Inc.*, 2019 WL 1004591, at *1 (D. Md. Feb. 28, 2019) (appointing unrelated investors as lead plaintiff in distinguishable circumstances).

Although NSHEPP and Fort Lauderdale F&P submitted a joint declaration here in an attempt to substantiate their aggregation, their scant declaration replete with boilerplate assertions actually confirms that their group was lawyer-driven. For example, the joint declaration is silent as to any pre-litigation relationship between the two investors and references just one joint call with their attorneys prior to the filing of the motion. The joint declaration is also silent in addressing procedural disputes should disagreements arise. At bottom, NSHEPP and Fort Lauderdale F&P has failed to provide the Court with any assurances that the group will act cohesively in litigating this case and the joint declaration cannot remedy the group's inadequacy. *See, e.g.*, *Tan v. NIO Inc.*, 2020 WL 1031489, at *4 (S.D.N.Y. Mar. 3, 2020) ("[T]he group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward . . . represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate.").

NSHEPP and Fort Lauderdale F&P (the only remaining movants) – each of whom suffered losses smaller than the Western Pennsylvania Funds – cannot be appointed lead plaintiff because they cannot prove that the Western Pennsylvania Funds should not be appointed. Accordingly, their motion should be denied.

## II.    ARGUMENT

### A.    The Western Pennsylvania Funds Possess the Largest Financial Interest

Although NSHEPP and Fort Lauderdale P&F claim a ***collectively*** larger financial interest, each individually possesses a smaller financial interest than the Western Pennsylvania Funds:

- 3 -

4830-2936-9073.v1

| Movant | Loss |
|---|---|
| Western Pennsylvania Funds | $237,384 |
| NSHEPP | $190,726 |
| Fort Lauderdale P&F | $135,113 |

NSHEPP and Fort Lauderdale P&F – two unaffiliated entities based in two different countries – seemingly ratified their counsel's joinder of them for the sole purpose of increasing the likelihood that they would satisfy the largest financial interest requirement. While the PSLRA expressly contemplates the appointment of a "person or group of persons" as lead plaintiff, (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), "'[c]ourts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Cloudera*, 2019 WL 6842021, at *6.[7] This is so because

---

[7]   *See also In re Petrobras Sec. Litig*., 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) (finding groups of unrelated institutions "lawyer-driven" and stating that "many courts, including this one, are skeptical of such arrangements when they are the product of an artificial grouping designed merely to qualify as lead plaintiff") (citing cases); *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *3-*4 (S.D.N.Y. Sept. 16, 2011) (declining to aggregate the loss of a group where another movant possessed the single largest financial interest); *In re Gentiva Sec. Litig*., 281 F.R.D. 108, 119 (E.D.N.Y. 2012) ("The Court is particularly skeptical of the proposed amalgamation, because this is not the situation where there is a pre-existing relationship or where the incurred losses of the separate institutional investors individually exceed the losses of any other."); *Bhojwani v. Pistiolis*, 2007 WL 2197836, at *6 (S.D.N.Y. June 26, 2007) ("That [the] PSLRA does not explicitly prohibit a group of persons from being appointed lead [plaintiff] is not, in the Court's view, a sufficient reason to allow otherwise unrelated group members to aggregate their losses for the sole purpose of claiming to have the largest financial interest in the relief sought by the class."), *adopted by* 2007 WL 9228588 (S.D.N.Y. July 31, 2007); *In re Pfizer Inc. Sec. Litig*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (declining to appoint a group of unrelated institutional investors because "[n]othing before the Court indicates that this aggregation is anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA . . . and I reject it"); *Makhlouf v. Tailored Brands, Inc*., 2017 WL 1092311, at *6-*8 (S.D. Tex. Mar. 23, 2017) (declining to aggregate the losses of two unrelated institutional investors, and instead appointing the institution with single largest loss); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008) (declining to aggregate the losses of groups of unrelated entities because doing so would be "acting contrary to the purposes of the PSLRA"); *In re Bally Total Fitness Sec. Litig*., 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("Accordingly, we will consider the individual investors in the groups separately as lead plaintiff candidates, but we will not recognize the artificial aggregations of the [groups].") (citing *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845 (S.D. Ind. 1999)); *In re Peregrine Sys., Inc. Sec. Litig*., 2002 WL 32769239, at *52 (S.D. Cal. Oct. 11, 2002) ("nothing in

- 4 -

one of the purposes of the PSLRA was to prevent lawyer-driven litigation, and "by allowing any group of plaintiffs to aggregate their losses to satisfy the 'largest financial interest' prong of the presumption, a court runs the risk that attorneys will seek to put together a group of unrelated plaintiffs for the sole purpose of having that group qualify as the group with the 'largest financial interest,' in turn leading to such attorneys' appointment as lead counsel." *E.Spire*, 231 F.R.D. at 212-13. Accordingly, "[r]ecognizing this risk and its inconsistency with the PSLRA, courts have held that both the context and the structure of the PSLRA demonstrate that a 'group of persons,' within the meaning of the statute, should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys." *Id.* at 213.

The Western Pennsylvania Funds appreciate that this Court has previously appointed a group of unrelated individuals as lead plaintiff, but respectfully submit that the circumstances here do not warrant the appointment of two unrelated institutional investors as lead plaintiff.[8] *See Tchatchou,* 2019 WL 1004591, at *1. While the PSLRA "expressly provides that the presumptively 'most adequate plaintiff' may be a 'person or group of persons,'" this Court recognized that "it is generally understood that not just any 'group of persons' may qualify as the 'most adequate plaintiff.'" *Id.* at *5. In *Tchatchou*, this Court determined that a group comprised of seven individuals could

---

the PSLRA authorizes institutional plaintiffs to consolidate their losses for the sole purpose of leapfrogging other movants").

[8]   In seeking appointment as lead plaintiff in other cases, NSHEPP itself has argued that in certain circumstances, the grouping of unrelated investors to aggregate losses is inappropriate. *See Ahnefeldt v. Dickson*, No. 4:20-cv-02539, ECF No. 34 at 12-14 (S.D. Tex. Oct. 7, 2020) (arguing against a group of individual investors where "the majority of whom appear to lack any meaningful relationship predating this litigation") (attached hereto); *Melucci v. Corcept Therapeutics Inc.*, No. 5:19-cv-1372-LHK, ECF No. 57 at 2 (N.D. Cal. July 9, 2019) ("Courts often decline to appoint proposed groups of investors as lead plaintiffs absent a proffer that the group can effectively and efficiently prosecute the litigation on behalf of the class.") (attached hereto).

- 5 -

appropriately aggregate their losses based on several factors that do not exist here.  For example, the Court gave weight to the fact that the group was comprised of, in part, two sets of married couples "who presumably have some experience making decisions as a unit."  *Id.* at *7.  Here, the two members of the group are previously unaffiliated institutional investors – based in two different countries – that do not appear to have any experience working with each other.  Indeed, NSHEPP and Fort Lauderdale P&F's memorandum in support of their motion for lead plaintiff highlighted that each "possesses a ***pre-litigation relationship with their counsel*** in this litigation," but is silent as to any pre-litigation relationship between the two funds.  ECF No. 16-2 at 20.  These two institutional investors have nothing more in common than the fact that they share the same attorneys and "is the precise type of group whose appointment as lead plaintiffs 'should be rare.'"  *E.Spire*, 231 F.R.D. at 213.  Like in *E.Spire*, NSHEPP and Fort Lauderdale P&F's group "is an artificial one, and it has not been shown that the members share business or other relationships.  Had the [] Group been able to show that its members had a relationship with each other based upon factors independent of this class action, there would then be more support for their argument that they should be presumed to be the most adequate lead plaintiff."  *Id.*

In *Tchatchou*, this Court also found that "the individual members' relative stakes in the litigation are both significant and fairly comparable, a fact I view as an indicator that these investors 'can be counted on to monitor counsel in a sufficient manner.'"  2019 WL 1004591 at *7.  Six of the seven members in the group appointed lead plaintiff in *Tchatchou* claimed similar losses of between $108,000 - $167,000.  Here, NSHEPP's ***losses are more than double*** the losses of Fort Lauderdale P&F – raising the question of why NSHEPP would consent to diluting their decision-making authority by agreeing to join this group.  Moreover, given that NSEHPP is a sophisticated institutional investor with extensive successful securities litigation experience serving both as a lead

plaintiff and in pursuing individual claims, there is no reason here as to why NSHEPP would be willing to group up with another institutional investor if not for the sole purpose of aggregating losses to claim the largest financial interest.  *See* ECF No. 16-2 at 18-19.

Additionally, in assessing whether the group can "fairly and adequately protect the interests of the class,"  this Court took into consideration the group's comprehensive declaration submitted in *Tchatchou*, which included, *inter alia*, details on how the members "have attested that they were in communication before they filed their motion, have remained in communication since, and have put in place a voting process to resolve any disagreements that might arise."  2019 WL 1004591 at *8. The declaration in *Tchatchou* is in stark contrast to the boilerplate recitals contained in the two-page joint declaration submitted by NSHEPP and Fort Lauderdale P&F here.  *See* ECF No. 16-7.

*Tan* is instructive.  In *Tan*, the court noted that while the "group appears to consist of reasonably sophisticated and experienced investors, the declaration is entirely silent as to any pre-litigation relationship that may have existed among them.  The declaration refers to a group conference call . . . but there is no indication that any of [the] group's members . . . had communicated with one another prior to that.  In other words, like many similar declarations that courts have found insufficient, 'the Joint Declaration does not provide any information regarding how these apparent strangers from different states [and countries] found each other.'"  *Id.* at *4. Accordingly, "the group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward . . . represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate."  *Id.*

Like in *Tan*, the joint declaration here is silent to any pre-litigation relationship between the two institutional investors and references just one joint conference call between the two institutional investors and their attorneys.  *See* ECF No. 16-7.  Moreover, unlike the joint declaration in

- 7 -

*Tchatchou*, NSHEPP and Fort Lauderdale's joint declaration is silent as to any process addressing the resolution of any disputes between the two investors.  Given that there is an even number of members in this group, having a process in place to resolve any potential disputes is crucial, as there is not an odd number to break any ties.  At bottom, the joint declaration submitted by NSHEPP and Fort Lauderdale P&F does nothing more than to confirm that this group is nothing more than an inappropriate lawyer-driven amalgamation and is therefore inadequate to serve as lead plaintiff.  *See also In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) ("Nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application."); *Cloudera*, 2019 WL 6842021, at \*7 (The court "declined to appoint a lead plaintiff group that was unable to substantiate its claim that the group members would be able to work well together. . . .  The group had provided a 'joint declaration' that merely confirmed that the members were "unrelated and were introduced to one another by their lawyers.'. . .  As in the instant case, Judge Chen found that the group members were connected by nothing more than 'one joint call prior to filing the motion for appointment.'").

The joint declaration – signed by outside counsel to Fort Lauderdale P&F rather than a fund fiduciary – is also double hearsay with "no evidentiary value" as to the group's adequacy.  *See Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at \*3 (S.D. Ohio Mar. 22, 2007) ("Leaving aside the fact that any declaration or affidavit submitted to the Court is hearsay because it represents a statement made out of court, the contents of Mr. Nespole's declaration are themselves hearsay because he has related statements made by the three members of the Gianetti Group to him (which is classic hearsay) and has argued that the Court should accept those representations as true. Consequently, even though the Court is willing to accept a single level of hearsay (e.g. the affidavit) the Nespole declaration is double hearsay. While the Court will not strike it from the record, it agrees

- 8 -

with Dearborn that the affidavit essentially has no evidentiary value on the question of whether the Gianetti Group is sufficiently cohesive and has adopted sufficient procedures to insure that this litigation will not be 'lawyer-driven.'").

Finally, since this Court's decision in *Tchatchou*, the Western Pennsylvania Funds respectfully submit that numerous courts across the country have declined to appoint lawyer-driven artificially created groups of unrelated individuals or entities as lead plaintiff. As set forth above, similar circumstances warrant denial here, as the improper aggregation of NSHEPP and Fort Lauderdale P&F's losses are solely for the purpose of claiming the largest financial interest and there is no proof that the group can function cohesively. *See, e.g.*, *Pardi v. Tricida, Inc.*, 2021 WL 1381271, at \*1 (N.D. Cal. Apr. 2, 2021) ("[R]ather than function as a cohesive group, the Tricida Investor Group 'ha[s] been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel.'"); *Mullen v. Wells Fargo & Co.*, 2021 WL 965344, at \*4 (N.D. Cal. Mar. 15, 2021) (declining to appoint co-lead plaintiff, as "[t]he issue with appointing a disparate, unrelated group is that it would encourage lawyers to direct the litigation, as opposed to allowing plaintiffs to seek out the lawyers as the PSLRA intended"); *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at \*5 (S.D. Cal. Feb. 12, 2021) ("When unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation."); *Chauhan v. Intercept Pharm.*, 2021 WL 235890, at \*5 (S.D.N.Y. Jan. 25, 2021) ("The facts thus contradict their contention that they were not 'cobbled together' by counsel simply to win the position of lead plaintiff and lead counsel, and not because they believed as a group they could best serve the class."); *Tan*, 2020 WL 1031489, at \*4 ("the group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward . . . represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate");

- 9 -

*Williams v. Block.One*, 2020 WL 4505569, at \*3 (S.D.N.Y. Aug. 4, 2020) ("The Williams Group has failed also to explain why the putative class would benefit from having five lead plaintiffs authorized to make decisions on its behalf.  While large leadership groups occasionally may offer advantages, the application here creates an unnecessary risk of having too many cooks in the kitchen – or, perhaps worse, a risk of having disinterested cooks."); *Haideri v. Jumei Int'l Holding Ltd.*, 2020 WL 5291872, at \*5 (N.D. Cal. Sept. 4, 2020) ("The Court therefore does not find the Huang Group to be an adequate lead plaintiff.  The evidence of record reflects that it is not a client-driven group but rather a lawyer-driven one."); *McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 279 (E.D. Pa. 2020) (declining to appoint group as lead plaintiff after observing that "lawyers seemingly shepherded some members into the Inovio Group"); *Cloudera*, 2019 WL 6842021, at \*6 ("'Courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'"); *Stitch Fix*, 393 F. Supp. 3d at 836 ("To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions. . . .  Consequently, the Court declines to aggregate the Stitch Fix Investor Group members' losses or to consider their individual losses."); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("Neither group's members have a preexisting relationship, and while this factor is not dispositive, 'courts have typically required that plaintiffs lacking such a relationship present a more compelling showing.'. . .  Vague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation."); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at \*2 (S.D.N.Y. Mar. 27, 2019) ("[B]ecause the Wan Group's members are unrelated investors without a pre-litigation relationship, they may not be jointly appointed as lead plaintiffs.").

- 10 -

While there may be some cases or situations in which more than one entity serving as lead plaintiff is desirable (or even necessary), NSHEPP and Fort Lauderdale P&F have not demonstrated why *this* is such a case – particularly where another institutional investor with the single largest loss (and prior experience serving as lead plaintiff) has also filed a motion.  Consequently, the Court should decline to allow NSHEPP and Fort Lauderdale to aggregate their losses for the purpose of triggering the largest financial interest inquiry.

### B.   The Western Pennsylvania Funds Meet All of the PSLRA's Requirements and Should be Appointed Lead Plaintiff

As set forth above, the Western Pennsylvania Funds possess the largest financial interest in the relief sought by the class.  Additionally, the Western Pennsylvania Funds satisfy the typicality and adequacy requirements of Rule 23.  *See* ECF No. 19 at 6-7.  Moreover, the Western Pennsylvania Funds have selected qualified counsel to serve as Lead Counsel for the proposed class.  Robbins Geller has significant experience litigating against Emergent BioSolutions Inc., having defeated defendants' motion to dismiss and obtained certification of the class, culminating in a successful resolution of the case in 2019 in *Sponn v. Emergent BioSolutions, Inc.*, No. 8:16-cv-02625 (D. Md.).  Because the Western Pennsylvania Funds meet all of the PSLRA's requirements, they are the presumptively "most adequate plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  In order to rebut the presumption, competing movants are required to submit proof that the Western Pennsylvania Funds are either subject to a unique defense or are unable to adequately represent the class.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Because there is no such proof, the Western Pennsylvania Funds should be appointed Lead Plaintiff.

### III.   CONCLUSION

The Western Pennsylvania Funds meet all of the PSLRA's lead plaintiff requirements.  Accordingly, the Western Pennsylvania Funds respectfully request that the Court appoint them as

- 11 -

4830-2936-9073.v1

Lead Plaintiff and approve their selection of lead counsel.  By contrast, NSHEPP and Fort

Lauderdale P&F do not possess the largest financial interest in the relief sought by the class, and as

such their motion should be denied.

DATED:  July 6, 2021                                    Respectfully submitted,

                                                                        SILVERMAN THOMPSON SLUTKIN
                                                                           & WHITE LLC
                                                                        ANDREW C. WHITE (VSB No. 08821)
                                                                        WILLIAM N. SINCLAIR (VSB No. 28833)


                                                                                  s/ William N. Sinclair
                                                                        WILLIAM N. SINCLAIR

                                                                        201 N. Charles Street, 26th Floor
                                                                        Baltimore, MD  21201
                                                                        Telephone:  410/385-2225
                                                                        410/547-2432 (fax)
                                                                        awhite@mdattorney.com
                                                                        bsinclair@mdattorney.com

                                                                        [Proposed] Local Counsel

                                                                        ROBBINS GELLER RUDMAN
                                                                           & DOWD LLP
                                                                        DANIELLE S. MYERS (*pro hac vice* to be filed)
                                                                        JENNIFER N. CARINGAL(*pro hac vice* to be
                                                                        filed)
                                                                        655 West Broadway, Suite 1900
                                                                        San Diego, CA  92101
                                                                        Telephone:  619/231-1058
                                                                        619/231-7423 (fax)
                                                                        dmyers@rgrdlaw.com
                                                                        jcaringal@rgrdlaw.com

                                                                        [Proposed] Lead Counsel for [Proposed] Lead
                                                                        Plaintiffs

- 12 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July, 2021, a copy of the foregoing was electronically filed with Clerk of the Court by using the CM/ECF system, which will furnish electronic copies to all counsel.

Dated:  July 6, 2021

/s/ William N. Sinclair
William N. Sinclair, VSB No. 28833
bsinclair@mdattorney.com

4830-2936-9073.v1