**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Civil No. 8:21-cv-00955-PWG |
| ALAN I. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Civil No. 8:21-cv-01189-PWG |
| STEPHEN M. WEISS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Civil No. 8:21-cv-01368-PWG |

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN AND THE CITY OF FORT LAUDERDALE POLICE & FIREFIGHTERS' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................4

I.      THE NS-FL GROUP IS THE "MOST ADEQUATE PLAINTIFF" WITHIN THE
        MEANING OF THE PSLRA AND SHOULD BE APPOINTED LEAD
        PLAINTIFF..................................................................................................................4

        A.      The NS-FL Group Has the Largest Financial Interest in This Litigation................4

        B.      The NS-FL Group Strongly Satisfies Both the Adequacy and Typicality
                Requirements of Rule 23 ......................................................................................5

        C.      The NS-FL Group Is an Appropriate Movant Group ............................................6

        D.      The NS-FL Group's Members Are Institutional Investors.....................................8

        E.      The Presumption in Favor of the NS-FL Group Has Not Been and Cannot
                Be Rebutted.......................................................................................................10

II.     THE COMPETING MOTIONS SHOULD BE DENIED ................................................11

        A.      None of the Competing Movants Possesses the Largest Financial Interest..........11

        B.      None of the Competing Movants Has Made a *Prima Facie* Showing of
                Adequacy ...........................................................................................................11

CONCLUSION...........................................................................................................................14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)................................................................................................6

*Goldberger v. PXRE Grp., Ltd.*, No. 06-3410KMK,
   2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30, 2007) ..........................................8

*Gross v. AT&T Inc.*, No. 19-CV-2892,
   2019 U.S. Dist. LEXIS 225777 (S.D.NY. June 24, 2019)........................................11

*Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC,
   2020 U.S. Dist. LEXIS 162510 (N.D. Cal. Sept. 4, 2020) .......................................11

*Haung v. Acterna Corp.*,
   220 F.R.D. 255 (D. Md. 2004)....................................................................................8

*Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303,
   2017 U.S. Dist. LEXIS 103799 (M.D.N.C. July 5, 2017) ..........................................2

*In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394,
   2019 U.S. Dist. LEXIS 298359 (N.D. Ill. Nov. 15, 2019)........................................12

*In re Cable & Wireless, PLC, Sec. Litig.*,
   217 F.R.D. 372 (E.D. Va. 2003) ...............................................................................2, 4

*In re Cendant Corp. Litig.*,
   265 F.3d 201 (3d Cir. 2001)......................................................................................13

*In re E.spire Commc'ns, Inc. Sec. Litig.*,
   231 F.R.D. 207 (D. Md. 2000)....................................................................................9

*In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1: 04CV00416,
   2004 U.S. Dist. LEXIS 26282 (M.D.N.C. Oct. 6, 2004)............................................6

*Knurr v. Orbital ATK, Inc.*,
   220 F. Supp. 3d 353 (E.D. Va. 2016) ........................................................................10

*Lax v. First Merchants Acceptance Corp*, No. 97 C 2715,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .........................................2, 4

*Piven v. Sykes Enters., Inc.*,
   137 F. Supp. 2d 1295 (M.D. Fla. 2000).....................................................................12

ii

*Rice v. Genworth Fin. Inc.*, No. 3:17cv59,
2017 U.S. Dist. LEXIS 137110 (E.D. Va. Aug. 25, 2017) ........................................................6

*Simmons v. Spencer*, No. 13 Civ. 8216 (RWS),
2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 25, 2014) ........................................................6

*Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB,
2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) .........................................................................12

*Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG,
2019 U.S. Dist. LEXIS 33329 (D. Md. Feb. 28, 2019) .................................................... *passim*

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................................7

*Yousefi v. Lockheed Martin Corp.*,
70 F. Supp. 2d 1061 (C.D. Cal. 1999) .....................................................................................9

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii) ....................................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................1, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .......................................................................................2, 3, 10

## Rules

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Movants NSHEPP[1] and Fort Lauderdale P&F (collectively, the "NS-FL Group") respectfully submit this Memorandum of Law in further support of their motion for consolidation of the Related Actions, appointment as Lead Plaintiffs and approval of their selections of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class (Dkt. No. 16); and in opposition to the competing motion of Western Pennsylvania Electrical Employees Insurance Trust Fund and Western Pennsylvania Electrical Employees Pension Fund (together, the "Electrical Employees Group") (Dkt. No. 18).[2]

## PRELIMINARY STATEMENT

This is a federal class action securities fraud lawsuit against Emergent and certain of its officers, where a lead plaintiff must be appointed. The PSLRA, which governs that process, instructs the Court to appoint the "most adequate plaintiff," defined by the statute as "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute creates a strong presumption that the "most adequate plaintiff" is the movant or group of movants with the greatest financial interest in the outcome of the action; *and* who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-

---

[1]    All capitalized terms herein are defined in NS-FL Group's motion brief, unless otherwise indicated. *See* Dkt. No. 16-2.

[2]    Initially three other members of the putative Class also filed competing lead plaintiff motions: (i) Stephen M. Weiss ("Weiss") (Dkt. No. 14); (ii) Grand Slam Asset Management, LLC ("Grand Slam") (Dkt. No. 13); and (iii) Lawrence Edlund ("Edlund") (Dkt. No. 15). On July 2, 2021, Weiss filed a Notice of Withdrawal of his motion, acknowledging that "[h]aving reviewed the competing motions, [Weiss] does not appear to have alleged the largest financial interest in the Related Actions within the meaning of the PSLRA." Dkt. No. 31. Then, on July 6, 2021, Grand Slam and Edlund both filed Notices of Non-Opposition to the competing motions, similarly acknowledging that they appeared to lack the largest financial interest in this litigation. *See* Dkt. Nos. 32-33.

1

4(a)(3)(B)(iii)(I).  This presumption having been established, it may only be rebutted by "proof" of the presumptive lead plaintiff's inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Of the two competing movants or movant groups before the Court, only the NS-FL Group satisfies both of the statutory criteria.  ***First***, the NS-FL Group has the largest financial interest among the competing movants.  For Exchange Act Section 10(b) claims, courts frequently assess financial interest under the four factors articulated in *Lax v. First Merchants Acceptance Corp*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-18 (N.D. Ill. Aug. 6, 1997).  Of the so-called *Lax* factors, courts generally give estimated losses the greatest weight, followed by net shares purchased (*i.e.*, retained shares).  *See*, *e.g.*, *Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *11 (D. Md. Feb. 28, 2019) (estimated loss "is widely considered the most important" factor); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 375 n.4 (E.D. Va. 2003) (considering retained shares alongside losses suffered in assessing financial interest).  Here, the NS-FL Group incurred aggregate losses of $285,632[3] and retained 17,127 shares at the time of the first disclosure of the alleged fraud and 17,137 shares at the end of the Class Period—significantly more than the Electrical Employees Group.  Under either of the foregoing metrics, the NS-FL Group thus has the largest financial interest within the meaning of the PSLRA of any movant.

***Second***, in addition to having the largest financial interest, the NS-FL Group readily satisfies the adequacy and typicality requirements of Rule 23.  The NS-FL Group, like all Class members, purchased Emergent stock at prices artificially inflated by Defendants' alleged fraud,

---

[3]    All loss figures herein are calculated on a LIFO basis, the methodology that courts generally use to calculate losses for purposes of lead plaintiff appointment.  *See*, *e.g.*, *Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303, 2017 U.S. Dist. LEXIS 103799, at *7 n.4 (M.D.N.C. July 5, 2017).

was damaged upon the disclosure of those misrepresentations and omissions, and is pursuing the same claims based on the same legal theories arising from the same events and course of conduct. NSHEPP and Fort Lauderdale P&F have both detailed their respective compositions, structures, governance, membership, and assets, as well as their relationship with Pomerantz, their chosen counsel. The Electrical Employees Group has not made a comparable showing. NSHEPP and Fort Lauderdale P&F are both sophisticated institutional investors, the type of paradigmatic lead plaintiffs that Congress intended to serve as class representatives when it enacted the PSLRA. Finally, as a cohesive partnership of two institutional investors, the NS-FL Group is an appropriate movant group of the type that courts in the Fourth Circuit routinely appoint to lead PSLRA actions.

By contrast, the Electrical Employees Group has failed to demonstrate its *prima facie* adequacy within the meaning of Rule 23. Unlike the NS-FL Group, whose two members have both provided the Court with detailed information about, *inter alia*, themselves (*see* Dkt. No. 16-2 at 11-12), their reasons for seeking appointment jointly as Lead Plaintiffs, their understanding of their responsibilities of a PSLRA lead plaintiff, and their readiness to undertake those responsibilities (*see generally* Dkt. No. 16-7), the Electrical Employees Group's members have provided the Court with no information about themselves whatsoever beyond their names and Class Period transaction history in Emergent stock. Irrespective of the Electrical Employees Group's financial interest, this failure to demonstrate its adequacy alone suffices to disqualify it from consideration as the "most adequate plaintiff."

Having satisfied the PSLRA's criteria, the NS-FL Group is entitled to the statutory presumption that it is the "most adequate plaintiff" to lead the class. This presumption may only be rebutted upon "proof" that the NS-FL Group is inadequate to represent the class. 15 U.S.C. §

78u-4(a)(3)(B)(iii)(II).  Here, the NS-FL Group respectfully submits that no such proof exists. The NS-FL Group thus submits that it should be appointed Lead Plaintiff, and that the group's chosen counsel, Pomerantz and Cohen Milstein, should be appointed Lead and Liaison Counsel, respectively.

## ARGUMENT

I.    **THE NS-FL GROUP IS THE "MOST ADEQUATE PLAINTIFF" WITHIN THE MEANING OF THE PSLRA AND SHOULD BE APPOINTED LEAD PLAINTIFF**

A.    **The NS-FL Group Has the Largest Financial Interest in This Litigation**

The first criterion for the PSLRA's "most adequate plaintiff" presumption is having "the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  For Exchange Act Section 10(b) claims, courts frequently assess financial interest based upon the four *Lax* factors: (1) shares purchased during the class period; (2) net shares purchased during the class period ("retained shares"); (3) net funds expended during the class period; and (4) approximate losses suffered.  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17-18 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Fourth Circuit, including in this District.  *See*, *e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *11; *Cable & Wireless*, 217 F.R.D. at 375 n.4.  Of the *Lax* factors, courts generally emphasize approximate losses suffered, followed by net shares purchased (*i.e.*, retained shares), in assessing the financial interests of competing lead plaintiff movants.  *See*, *e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *11 (estimated loss "is widely considered the most important" factor); *Cable & Wireless*, 217 F.R.D. at 375 n.4 (considering retained shares alongside losses suffered in assessing financial interest).

Assessed with reference to either losses suffered or retained shares, the NS-FL Group's financial interest in this litigation is significantly larger than those of the Electrical Employees Group, the only competing movant.

| Movant | Loss | Retained Shares | |
|---|---|---|---|
| | | 3/31/2021 (1st Corrective Disclosures) | 4/16/2021 (2nd Corrective Disclosures – End of Class Period) |
| NS-FL Group | $285,632 | 17,127 | 17,137 |
| Electrical Employees Group | $240,024 | 4,530 | 5,330 |

As the chart illustrates, assessed in terms of either losses or retained shares, the NS-FL Group has the largest financial interest in this litigation by a significant margin. The group's aggregate loss of $285,632 is more than $45,500 larger than the loss incurred by the Electrical Employees Group. Likewise, the NS-FL Group retained a total of 17,127 shares of Emergent stock at the time of the initial corrective disclosure of the alleged fraud and 17,137 shares at the end of the Class Period, more than three times as many as the Electrical Employees Group in each instance.

**B.** **The NS-FL Group Strongly Satisfies Both the Adequacy and Typicality Requirements of Rule 23**

The second criterion for the "most adequate plaintiff" presumption is satisfying the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). For purposes of appointment of a lead plaintiff, only the Rule 23(a)(3) typicality and Rule 23(a)(4) adequacy requirements are relevant. *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *18.

The NS-FL Group strongly satisfies both the typicality and adequacy requirements of Rule 23. *See* Dkt. No. 16-2 at 15-20. With respect to adequacy, the NS-FL Group's two members, NSHEPP and Fort Lauderdale P&F, have both provided detailed information concerning their respective compositions, structures, governance, membership, and assets under management. *See*

5

*id.* at 11-12. In addition, NSHEPP has already demonstrated its ability to pursue securities fraud claims while supervising its choice of counsel, Pomerantz, in both the *BP* and *McDermott* actions. *See id.* at 11-12, 18-19. The NS-FL Group also readily satisfies Rule 23(a)(4) typicality. The group is pursuing the same legal claims, on the same theories of liability, as all other class members, and it is subject to no unique defenses.

### C. The NS-FL Group Is an Appropriate Movant Group

The NS-FL Group is an appropriate movant group, the propriety of which the Supreme Court recently endorsed, and of precisely the type that courts in the Fourth Circuit routinely appoint to lead PSLRA actions. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (noting that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups" in PSLRA actions); *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *20 (appointing group upon considering "whether the members of [the] group . . . could effectively work as one."); *Rice v. Genworth Fin. Inc.*, No. 3:17cv59, 2017 U.S. Dist. LEXIS 137110, at *34 n.14 (E.D. Va. Aug. 25, 2017) (finding that even "[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small . . . and therefore presumptively cohesive," noting that "the choice . . . to work together since the inception of the litigation was based on the parties' mutual shared interests") (quoting *Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743, at *13 (S.D.N.Y. Apr. 25, 2014) (ellipsis in original)); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1: 04CV00416, 2004 U.S. Dist. LEXIS 26282, at *1-4 (M.D.N.C. Oct. 6, 2004) (appointing group comprised of four unrelated retirement funds as lead plaintiff).

This Court's decision in *Tchatchou* is instructive. There, the Court considered a motion to appoint a seven-member investor group in a PSLRA action. The Court concluded that the group's

size "was not 'so cumbersome as to deliver the control of the litigation into the hands of the lawyers'"; "that the individual members' relative stakes in the litigation are both significant and fairly comparable, . . . an indicator that these investors 'can be counted on to monitor counsel in a sufficient manner[]'"; and that the group's submission of a detailed joint declaration "signals . . . that [the group's] members are prepared to play an active role in this litigation and to monitor the actions of their selected counsel." *Id.* at *20-22 (citing and quoting *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)).  On this basis, the Court found the group to be permissible under the PSLRA and adequate within the meaning of Rule 23 and appointed the group lead plaintiff.  *Id.* at *22-23.

By these standards, the NS-FL Group readily passes muster as an appropriate investor group.  The group consists of only two members, NSHEPP and Fort Lauderdale P&F, each of which independently possesses a significant and comparable financial stake in the outcome of the litigation, such that each can be counted upon to monitor counsel and aggressively prosecute this litigation.  NSHEPP and Fort Lauderdale P&F are both sophisticated institutional investors that have attested in their Joint Declaration to independently evaluating participation in this action and then discussing the matter with one another and with counsel before the filing of their joint motion.  *See* Dkt. No. 16-7 at ¶¶4-5.  In the same Joint Declaration, NSHEPP and Fort Lauderdale P&F have attested to being "confident that [they] can effectively collaborate with one another and . . . efficiently and effectively oversee this litigation for the benefit of the [Class]" and to their readiness to work together to supervise counsel and otherwise oversee the prosecution of this litigation on behalf of the Class.  *See id.* at ¶¶6-8.  There can thus be no question that NSHEPP's and Fort Lauderdale P&F's decision to seek appointment as Lead Plaintiffs was based on a recognition of their shared mutual interests, rather than orchestrated by counsel, and that the group is small enough to effectively function as one and effectively monitor their counsel.  In sum, the

7

NS-FL Group is precisely the type of investor group that the PSLRA permits and that this Court has previously appointed.

The only other movant, the Electrical Employees Group, is also a group, and there is thus no distinction in status—*i.e.*, as between a group versus a single lead plaintiff—that would make the Electrical Employees Group a "more adequate" Lead Plaintiff than the NS-FL Group or otherwise elevate the Electrical Employees Group's motion over that of the NS-FL Group. Rather, as discussed *infra* at Section II.B., the Electrical Employees Group has in fact provided zero information that would enable the Court to evaluate even its *prima facie* adequacy, in contrast with the NS-FL Group's detailed proffer in this regard.

### D.    The NS-FL Group's Members Are Institutional Investors

NSHEPP and Fort Lauderdale P&F are both exactly the type of institutional investor that Congress intended to serve as lead plaintiffs under the PSLRA, which Congress enacted to ensure that federal securities class actions are led by sophisticated institutional investors, capable of overseeing their counsel and vigorously pursuing recovery on behalf of classes of investors. Courts in the Fourth Circuit have consistently recognized this important legislative goal by endorsing the appointment of institutional investors as lead plaintiffs in PSLRA actions. *See*, *e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *14-15 (the PSLRA "was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market" would serve as lead plaintiffs in securities class actions) (quoting *Goldberger v. PXRE Grp., Ltd.*, No. 06-3410KMK, 2007 U.S. Dist. LEXIS 23925, at *10 (S.D.N.Y. Mar. 30, 2007) (internal quotations omitted)); *see also Haung v. Acterna Corp.*, 220 F.R.D. 255, 258 (D. Md. 2004) ("Ideally, courts will appoint institutional investors with large holdings in the stock as lead plaintiff. As Congress and academics have noted, institutional

investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees." (quoting *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1066 (C.D. Cal. 1999)); *In re E.spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207, 212 (D. Md. 2000) ("not[ing] that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors").

As institutional investors, the NS-FL Group's members are precisely the type of lead plaintiffs that Congress intended courts to appoint as lead plaintiffs under the PSLRA. Both NSHEPP and Fort Lauderdale P&F are sophisticated, have significant assets under management, and have demonstrated their ability and readiness to supervise counsel in the prosecution of this action via the submission of their Joint Declaration, which attests to, *inter alia*, the conference call that took place among NSHEPP's CEO, Fort Lauderdale P&F's General Counsel, and attorneys from Pomerantz prior to the filing of the NS-FL Group's lead plaintiff motion. *See generally* Dkt. No. 16-7.

It is crucial that such sophisticated investors serve as Lead Plaintiffs in this litigation, which concerns a massive fraud perpetrated upon Emergent shareholders. As the litigation moves forward, the presence of institutional investors as Lead Plaintiffs would reassure other institutional investors in the putative class that the litigation is under the direction of sophisticated parties that are able to supervise counsel to prosecute the action efficiently and maximize the class's recovery. The NS-FL Group's involvement is also likely to minimize the number of opt-out actions filed by institutional investors, also to the benefit of the class.

While one other institutional investor, the Electrical Employees Group, also seeks appointment as Lead Plaintiff, the Electrical Employees Group should not be considered for

appointment ahead of the NS-FL Group.  First, as discussed *supra* at Section I.A., the Electrical Employees Group has not alleged a larger financial interest in this litigation than the NS-FL Group. Second, as addressed *infra* at Section II.B., the Electrical Employees Group's members have made no proffer whatsoever regarding, *inter alia*, their assets, structure, management, or decision-making processes—in other words, anything that would allow the Court to assess whether they are indeed the type of investors that Congress intended to lead securities class actions when it passed the PSLRA.  By contrast, the NS-FL Group's robust proffer in this regard demonstrates that its two members are paradigmatic Lead Plaintiffs of precisely the type that Congress envisioned.  *See* Dkt. No. 16-2 at 11-12, 18-19.  Third, whereas NSHEPP has ample securities litigation experience from its participation in the *BP* and *McDermott* actions, the Electrical Employees Group has not described any prior securities litigation experience in its motion brief (Dkt. No. 19), nor attested to any recent securities litigation experience in its Certification (Dkt. No. 20-2).  This further illustrates that the appointment of the NS-FL Group, not the Electrical Employees Group, would entrust leadership of this litigation to the type of experienced institutional litigants that Congress intended.

### E.    The Presumption in Favor of the NS-FL Group Has Not Been and Cannot Be Rebutted

To overcome the strong presumption entitling the NS-FL Group to appointment as Lead Plaintiff, the PSLRA requires "proof" of its inadequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  *See also Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 353, 658 (E.D. Va. 2016).  No such proof exists and any speculation to the contrary should be flatly rejected.  Indeed, both the movants and their choice of Lead and Liaison Counsel, Pomerantz and Cohen Milstein, readily pass muster.

## II.     THE COMPETING MOTION OF THE ELECTRICAL EMPLOYEES GROUP SHOULD BE DENIED

### A.     The Electrical Employees Group Does Not Possesses the Largest Financial Interest

The Electrical Employees Group may not be appointed as Lead Plaintiff in this litigation because it does not possess the "largest financial interest" as required by the PSLRA (15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)), and thus does not satisfy the first of the statutory criteria to be entitled to the "most adequate plaintiff" presumption.  Here, as discussed above, the NS-FL Group clearly possesses the largest financial interest in this litigation, and it is thus self-evident that the Electrical Employees Group does not possess the largest financial interest.  This fact alone mandates denial of the Electrical Employees Group's motion.

### B.     The Electrical Employees Group Has Not Made a *Prima Facie* Showing of Adequacy

Assuming *arguendo* that the Electrical Employees Group had a larger financial interest in this litigation than the NS-FL Group, the PSLRA would still mandate denial of its motion for failure to meet the second statutory criteria by demonstrating its adequacy within the meaning of Rule 23.  While the standard for evaluating adequacy at the lead plaintiff appointment stage is *prima facie*, courts have nevertheless denied motions by movants that have provided no meaningful information about themselves.  *See*, *e.g.*, *Haideri v. Jumei Int'l Holding, Ltd.*, No. 20-cv-02751-EMC, 2020 U.S. Dist. LEXIS 162510, at *12-13 (N.D. Cal. Sept. 4, 2020) (denying motion by investors who "provided *no* information about themselves" with their motion papers, finding that group's subsequent proffer in additional filings was "conclusory and problematic" and reflected a "lack of involvement" in the litigation) (emphasis in original); *Gross v. AT&T Inc.*, No. 19-CV-2892, 2019 U.S. Dist. LEXIS 225777, at *5-6 (S.D.N.Y. June 24, 2019) (denying motion by movant that "failed to provide any information, beyond the name of a director, as to its business

11

management, structure, or its experience with securities litigation"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *11-12 (N.D. Cal. Jan. 12, 2006) (rejecting investor's motion for appointment as lead plaintiff, despite a presumption in its favor for having the greatest financial interest in the litigation, after concluding that it "will not adequately represent the interests of the plaintiff class" where questions existed as to, *inter alia*, its "authority, transparency, and structure"); *Piven v. Sykes Enters., Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (finding movant inadequate to serve as lead plaintiff where it "has not proffered any information regarding its identity, resources, and experience"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 U.S. Dist. LEXIS 298359, at *13 (N.D. Ill. Nov. 15, 2019) (denying motion where "[t]he complete dearth of information accompanying the [movants'] lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation").

Here, in stark contrast to the NS-FL Group's detailed proffer regarding, *inter alia*, its members' respective structures and management (*see* Dkt. No. 16-2 at 11-12), their reasons for seeking appointment as Lead Plaintiff jointly, the steps they undertook both separately and jointly before filing their motion, their understanding of the significance of their motion and the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to supervise counsel (*see generally* Dkt. No. 16-7), the Electrical Employees Group has submitted no comparable information, having provided no information regarding their backgrounds, structures, or investment activities.  This non-existent proffer falls short of even the modest *prima facie* adequacy showing required at this stage of the litigation, thus mandating denial of the Electrical Employees Group's motion.

12

The Electrical Employees Group's failure in this regard is particularly conspicuous in light of the position that its counsel in this litigation, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), recently took in the PSLRA action *Wasa Medical Holdings v. Sorrento Therapeutics, Inc., et al.*, No. 3:20-cv-00966 (S.D. Cal.) ("*Sorrento*").  There, faced with a competing movant who—unlike the Electrical Employees Group—submitted a detailed declaration with her motion, Robbins Geller nonetheless attacked the movant's adequacy, claiming that a "dearth of relevant information" regarding the movant "raises questions as to whether [movant] can meaningfully oversee and control the prosecution of this consolidated class action and monitor counsel's performance to make sure that adequate representation is delivered." *Sorrento*, Dkt. No. 21 at 6 (internal quotations and punctuation omitted).  The Electrical Employees Group's failure to provide the Court with any comparable information here would disqualify it from appointment as Lead Plaintiff in this litigation under the standard that its own counsel articulated in *Sorrento*.

The Rule 23 adequacy inquiry involves assessing whether a movant is prepared to capably litigate the claims of the class—that is, "whether the movant 'has the ability and incentive to represent the claims of the class vigorously.'" *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *16 (quoting *In re Cendant Corp. Litig.*, 265 F.3d 201, 266 (3d Cir. 2001)).  Here, the Electrical Employees Group has submitted no evidence whatsoever that it is prepared to vigorously litigate the claims of the Class in this action.  The NS-FL Group, by contrast, has amply demonstrated its preparedness.  That the NS-FL Group has already unquestionably demonstrated its adequacy at this early stage of the litigation only underscores the deficiencies of the Electrical Employees Group, who have failed to meet even the relatively modest *prima facie* standard required at this juncture.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in their motion brief (Dkt. No. 16-2), the NS-FL Group respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the NS-FL Group as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated:   July 6, 2021

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Daniel S. Sommers*
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
Matthew L. Tuccillo
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
mltuccillo@pomlaw.com

14

ahood@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti
(admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and City of Fort Lauderdale Police & Firefighters' Retirement System and Proposed Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner*
Stuart Kaufman*
7080 NW 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Fort Lauderdale Police & Firefighters' Retirement System*

**\****pro hac vice* applications forthcoming

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by the Court's

CM/ECF system on counsel of record on this 6th day of July, 2021.


Dated: July 6, 2021                              /s/ Daniel S. Sommers
                                               Daniel S. Sommers

16