# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVIS NICHOLS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>Defendants. | Case No.  1:21-CV-03362-LGS [rel. 1:21-cv-04058-LGS]<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF MOTASSEM YOUSEF AND MOATH MAJED YOUSEF FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |
| VICTOR J. TONER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>Defendants. | Case No.  1:21-cv-04058-LGS [rel. 1:21-cv-03362-LGS] |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................ 4

    I.    The "Most Adequate Plaintiff" Presumption in Favor of the Yousef Brothers Has Not Been Rebutted .................................................................................................. 4

        A.    *Dura* Principles Are Not Applied to Assess Financial Interest at the Lead Plaintiff Appointment Stage ...................................................................... 4

        B.    The Timing of Moatassem Yousef's Stock Sales Does Not Subject Him to a Unique Defense ....................................................................................... 8

        C.    Moath Majed Yousef's Short Sales Do Not Subject Him to Unique Defenses ... 11

    II.    The Competing Movants Are Ineligible for Appointment as Lead Plaintiff ........ 12

CONCLUSION .................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blitz v. AgFeed Indus.*,
    2012 U.S. Dist. LEXIS 49849 (M.D. Tenn. Apr. 10, 2012)....................................................2, 5

*Bodri v. GoPro, Inc.*, Nos. 16-cv-00232-JST *et al.*,
    2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) ........................................................4

*Cohen v. Luckin Coffee Inc.*, 1:20-cv-01293-LJL,
    2020 U.S. Dist. LEXIS 103647 (S.D.N.Y. June 12, 2020).....................................................12

*Cook v. Allergan PLC*,
    2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ....................................................2, 5

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ....................................................................................................... *passim*

*Elstein v. Net 1 UEPS Techs., Inc.*, 13 Civ. 9100 (ER),
    2014 U.S. Dist. LEXIS 100574 (S.D.N.Y. July 23, 2014) .....................................................12

*Fialkov v. Celladon Corp.*, No. 15cv1458 AJB (DHB),
    2015 U.S. Dist. LEXIS 192311 (S.D. Cal. Dec. 9, 2015).........................................................6

*Fields v. Biomatrix, Inc.*,
    198 F.R.D. 451 (D.N.J. 2000)................................................................................................3, 11

*Foley v. Transocean, Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................................1

*In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394,
    2020 U.S. Dist. LEXIS 15012 (N.D. Ill. Jan. 28, 2020) ........................................................13

*In re Concord EFS, Inc., Sec. Litig.*,
    2002 U.S. Dist. LEXIS 29610 (W.D. Tenn. Nov. 29, 2002) ...............................................3, 11

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) ..............................................................................................6

*In re Hebron Tech. Co. Sec. Litig.*, 20 Civ. 4420 (PAE) *et al.*,
    2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sept. 16, 2020).....................................................10

*In re Herley Indus. Secs. Litig.*, No. 06-2596,
    2009 U.S. Dist. LEXIS 91600 (E.D. Pa. 2009) .................................................................3, 12

*In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW),
  2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007) ............................................................13

*In re Watchguard Sec. Litig.*, No. C05-678JLR,
  2005 U.S. Dist. LEXIS 40923 (W.D. Wash. July 13, 2005) ............................................5, 6, 8

*Juliar v. Sunopta Inc.*, Nos. 08 Civ. 933 (PAC) *et al.*,
  2009 U.S. Dist. LEXIS 58118 (S.D.N.Y. Jan. 30, 2009)..........................................................6

*Kux-Kardos v. VimpelCom, Ltd.*,
  151 F. Supp. 3d 471 (S.D.N.Y. 2016)........................................................................................6

*Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*,
  2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013)...........................................................5

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ..............................................................................................5

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...............................................................................................4

*Tomaszewski v. Trevena, Inc.*,
  383 F. Supp. 3d 409 (E.D. Pa. 2019) .......................................................................................13

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)..............................................................................................1, 11

PSLRA ..................................................................................................................... *passim*

## Rules

Fed. R. Civ. P. 23.................................................................................................................1, 2, 3, 4

Movants the Yousef Brothers[1] respectfully submit this memorandum of law in further support of their motion for consolidation of the Related Actions, appointment as Lead Plaintiffs, and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 40); and in opposition to the competing motions of (i) the Yao Group (Dkt. No. 37); (ii) Davison (Dkt. No. 34); and Castleberg (Dkt. No. 25).[2]

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can ***only*** be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See*, *e.g.*, *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 131-33 (S.D.N.Y. 2011) (finding that the presumption "may only be rebutted upon 'proof'" of inadequacy or atypicality and rejecting challenge founded on speculation).

Here, the presumptive most adequate plaintiffs—*i.e.*, the presumptive Lead Plaintiffs—are the Yousef Brothers, who suffered combined losses of nearly $435,000 in connection with their Class Period purchases of Romeo securities. *See* Dkt. No. 43-1. The only movant claiming a larger loss than the Yousef Brothers is the Yao Group, but as an attorney-created assemblage of

---

[1] All capitalized terms herein are defined in the Yousef Brothers' moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 42, 56.

[2] Three other putative Class members, Farah, the Sung Group, and Bianouni, also initially filed motions seeking appointment as Lead Plaintiff. *See* Dkt. Nos. 24, 30 45. On June 28, 2021, both Farah and the Sung Group filed notices of non-opposition to the competing motions, while Bianouni filed a notice of withdrawal of her motion, each acknowledging that they did not appear to possess the largest financial interest in this litigation within the meaning of the PSLRA. *See* Dkt. Nos. 51-53.

unrelated investors, the Yao Group is inadequate under Rule 23 and impermissible under the PSLRA and thus ineligible for the "most adequate plaintiff" presumption—a point on which all competing movants agree.  *See* Dkt. Nos. 54 at 5-9, 56 at 8-10, 58 at 3-4.

Two competing movants, Davison and Castleberg, argue that the Court should adopt a loss-causation methodology premised on principles articulated in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), which, conveniently enough, would significantly reduce the Yousef Brothers' losses relative to those of both Davis and Castleberg.  *See* Dkt. Nos. 56 at 9-13, 58 at 5-6.  Yet *Dura* articulated a pleading standard, not an accounting methodology, and courts generally decline to assess financial interest with reference to the principles articulated in *Dura* at this stage of the litigation.  *See*, *e.g.*, *Cook v. Allergan PLC*, 2019 U.S. Dist. LEXIS 51962, at *9 (S.D.N.Y. Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at lead plaintiff appointment stage); *Blitz v. AgFeed Indus.*, 2012 U.S. Dist. LEXIS 49849, at *12 (M.D. Tenn. Apr. 10, 2012).  Here, Romeo's stock price had already steadily declined from a Class Period high of $34.00 per share on December 24, 2020 to close at $10.37 per share on March 30, 2021, suggesting that news of the challenges that the Company faced with respect to sourcing adequate supplies of battery cells was gradually leaking into the market even prior to Romeo's announcements of these issues on the March 30, 2021 earnings call.  Given the likelihood of such leakage, the Court should not disregard losses that the Yousef Brothers incurred prior to March 30 in assessing their financial interest in this litigation.

Davison and Castleberg also argue that certain trading activity by the Yousef Brothers subjects them to unique defenses that threaten to become a focus of this litigation.  Castleberg claims without evidence that Moatassem Yousef's Romeo stock sales on March 30 occurred before the earnings call on which the Company's CEO disclosed that Romeo had been unable to source

adequate supplies of battery cells, and that the Defendants will attempt to place the timing of these transactions at issue.  Dkt. No. 58 at 6.  Davison, for his part, asserts that Moath Majed Yousef's short sale of 14,089 shares weeks before the end of the Class Period will permit the "Defendants to challenge the Yousef Brothers' reliance on the Company's misstatements and [their] ability to represent the Class."  Dkt. No. 54 at 13.

Neither of these arguments has merit.  As shown herein, given the timing of the Company's conference call on March 30 and the price at which Moatassem Yousef sold his Romeo shares on that day, Moatassem Yousef clearly sold his Romeo shares *after* the Company's disclosures regarding its difficulties sourcing battery cells on the March 30 earnings call, and as such, there is no risk that this non-issue will become a distraction later in the litigation.  Nor do Moath Majed Yousef's short sales, which represent only a small percentage of his total trading activity, subject him to a unique defense.  Indeed, courts commonly appoint investors with short sales as lead plaintiffs in PSLRA actions.  *See*, *e.g.*, *In re Concord EFS, Inc., Sec. Litig.*, No. 02-2697 Ma, 2002 U.S. Dist. LEXIS 29610, at *16 (W.D. Tenn. Nov. 29, 2002) (collecting cases); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 461 (D.N.J. 2000); *In re Herley Indus. Secs. Litig.*, No. 06-2596 2009 U.S. Dist. LEXIS 91600, at *40 (E.D. Pa. 2009).

None of the competing movants is eligible for appointment as Lead Plaintiff.  Castleberg has alleged a loss less than half the size of that incurred by the Yousef Brothers and thus cannot claim to have the "largest financial interest" in this litigation.  As noted above, the Yao Group is an impermissible attorney-created assemblage of unrelated investors, and thus inadequate under Rule 23.  Irrespective of his lesser financial interest, Davison is also inadequate, having submitted an erroneous certification under penalty of perjury.

Accordingly, the Yousef Brothers respectfully submit that their motion should be granted in its entirety, and that the competing motions of the Yao Group, Davison and Castleberg should be denied.

## ARGUMENT

**I.  The "Most Adequate Plaintiff" Presumption in Favor of the Yousef Brothers Has Not Been Rebutted**

**A.  *Dura* Principles Are Not Applied to Assess Financial Interest at the Lead Plaintiff Appointment Stage**

Both Davison and Castleberg claim that the Yousef Brothers "have grossly inflated their financial interest by including trading losses realized before Romeo's corrective disclosures occurring after trading hours on March 30, 2020." Dkt. No. 54 at 3; *see also* Dkt. No. 58 at 5. Rather than calculating the movants' respective Class Period losses on a simple LIFO basis, Davison and Castleberg instead urge the Court to employ a *Dura*-derived loss-causation methodology that, conveniently, would significantly reduce the Yousef Brothers' losses relative to those of the competing movants. *Id.*

As an initial matter, neither Davison nor Castleberg made any reference to *Dura* principles in describing their claimed financial interests in their motion papers. Rather, Davison and Castleberg only began to advocate for the use of a *Dura*-based methodology in their opposition briefs—that is, only because they perceived an advantage to doing so after reviewing the Yousef Brothers' motion papers. The Court should be wary of Davison and Castleberg's self-serving shift to a different methodology in the middle of motion briefing. *See*, *e.g.*, *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 477 (S.D.N.Y. 2011) (denying motion by movant whose position "changed and adjusted, depending on conditions, so that the lead plaintiff status (and the right to select counsel) may be achieved."); *Bodri v. GoPro, Inc.*, Nos. 16-cv-00232-JST *et al.*, 2016 U.S. Dist. LEXIS 57559, at *12 (N.D. Cal. Apr. 28, 2016) (refusing to use the "retained shares"

4

methodology when the moving parties initially focused solely on LIFO: "This fact alone counsels in favor of adopting the LIFO methodology"); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 U.S. Dist. LEXIS 29876, at *18-20 (N.D. Cal. Mar. 4, 2013) (finding that "[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO') methodology. . . . Tellingly, VRS itself made no reference to net shares purchased or a retained shares calculation in its opening motion, . . . shifting its argument only after PGGM came forward with larger LIFO losses").

Moreover, courts generally do *not* employ a loss-causation methodology premised on *Dura* principles in assessing financial interest. *See*, *e.g.*, *Allergan*, 2019 U.S. Dist. LEXIS 51962, at *9 (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [LIFO] calculations" at lead plaintiff appointment stage); *Blitz*, 2012 U.S. Dist. LEXIS 49859, at *12 (*Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss FIFO or LIFO losses"); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, at *14-*15 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620 (E.D. Wis. 2009).

*Dura* does not provide an accounting methodology. Rather, the case merely articulates a pleading standard for securities fraud claims alleging violations of Section 10(b) of the Exchange Act—namely, that "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura*, 544 U.S. at 346. In *Watchguard*, the court expressly declined to look to *Dura* in assessing the financial interest of a Lead Plaintiff movant, explaining its reasoning as follows:

> [The movant's] citation to the discussion of securities class action damages in *Dura* . . . is inapposite. The *Dura* court held that a plaintiff needed to do more than allege the purchase of stock at a fraud-inflated price in order to plead loss causation. The Supreme Court recognized, as does this court, that numerous factors may affect the

5

price of a security. The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue.

*Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6.

A review of Romeo's stock chart during the Class Period, alongside the allegations in the Complaints in the Related Actions, illustrates why calculation of financial interest with reference to the pleading standard articulated in *Dura* is inappropriate at this stage of the litigation. In assessing financial interest for the purposes of Lead Plaintiff appointment, courts routinely consider whether there was "substantial leakage of [defendants'] misconduct prior" to the primary corrective disclosure alleged. *Juliar v. Sunopta Inc.*, Nos. 08 Civ. 933 (PAC) *et al.*, 2009 U.S. Dist. LEXIS 58118, at *2 (S.D.N.Y. Jan. 30, 2009). *See also In re Gentiva Sec. Litig.*, 281 F.R.D. 108 (E.D.N.Y. 2012); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471 (S.D.N.Y. 2016) ("a plaintiff['s] theory of 'loss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior statements' where the partial disclosure 'somehow reveals to the market that a defendant's prior statements were not entirely true.'" (quoting *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008)); *Fialkov v. Celladon Corp.*, No. 15cv1458 AJB (DHB), 2015 U.S. Dist. LEXIS 192311, at *15 (S.D. Cal. Dec. 9, 2015) (rejecting *Dura* analysis where there were partial corrective disclosures: "At this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff.").

Here, a review of the Company's stock chart during the Class Period strongly suggests that the fraud premium varied through the Class Period, presumably as a result of, *inter alia*, gradual leakage into the market of information regarding Romeo's difficulties sourcing adequate supplies

6

of battery cells, prior to the full disclosure of the extent and impact of those challenges on the

Company's March 30, 2021 earnings call.



As the chart above illustrates, after peaking at a Class Period high of $34.00 per share on

December 24, 2020, Romeo's stock price steadily declined by a staggering **$25.67** per share over

the following three months, closing at only $10.37 per share on March 30, 2021—*i.e.*, immediately

before the Company's corrective disclosures.  Thus, even prior to the corrective disclosure of

March 30, 2021, it appears likely that news of the challenges that Romeo faced with respect to

sourcing adequate supplies of battery cells was reaching the market.

The Lead Plaintiff ultimately appointed by the Court will file a Consolidated Amended

Complaint, which will be based upon, *inter alia*, an in-depth review of all corrective disclosures

and partial corrective disclosures regarding Romeo's difficulties in sourcing adequate supplies of

battery cells.  Considering that Romeo's stock price fell, over three months, from a Class Period

high of $34.00 per share to $10.37 per share even ***before*** the earnings call of March 30, 2021,

7

Davison and Castleberg's advocacy for a *Dura*-derived loss causation methodology at this early stage of the litigation asks the Court to simply "guess about the effect of . . . as-yet-unknown factors in selecting a lead plaintiff", *Watchguard*, 2005 U.S. Dist. LEXIS 40923, at *15 n.6—which, again, is ***not*** the holding of *Dura*. The Yousef Brothers respectfully submit that the Court should decline this invitation and simply assess financial interest in terms of the competing movants' losses calculated on a LIFO basis.

> **B.**  **The Timing of Moatassem Yousef's Stock Sales Does Not Subject Him to a Unique Defense**

One competing movant, Castleberg, further argues that the Yousef Brothers are subject to a unique defense because Moatassem Yousef purportedly sold his Romeo shares prior to the disclosure of the Defendants' alleged fraud on March 30, 2021 and thus did not suffer any economic loss traceable to the fraud at issue, going so far to speculate that "[w]hile Moatassem Yousef might try to claim his sales on March 30, 2021 occurred after the corrective disclosure, this does not appear to be the case[.]"  Dkt. No. 58 at 6 n.5.

Castleberg is wrong.  Conspicuously, he has given no basis for his assertion that Yousef's sales "[did] not appear" to have occurred after the corrective disclosure.[3]  *Id.*  In fact, Moatassem Yousef's sales of Romeo stock on March 30 demonstrably ***did*** occur ***after*** the disclosure of the Company's fraud, as set forth below:

Romeo's earnings call for the fourth quarter and full year 2020 took place on March 30, 2021, beginning at 5:00 p.m. ET, after market hours.[4]  As of 5:00 p.m. ET, Romeo's stock was

---

[3] Davison, for his part, has not disputed that Moatassem Yousef sold his shares after the Company's disclosure on March 30, 2021.  *See* Dkt. No. 54 at 4 ("Moatassem Yousef actually sold his remaining shares on the day of the disclosure, but does ***not*** claim to have sold ***before*** the disclosure that same day.") (emphases added).

[4] While publicly traded companies commonly issue earnings releases at least several hours in advance of quarterly earnings calls, the press release announcing Romeo's earnings for the fourth quarter and full year 2021 was not released until 5:16 p.m. ET, after the earnings call was already

trading at approximately $10.70 per share. During the call, Romeo's CEO immediately—approximately 2 minutes and seven seconds after the call started, per the timestamp on the Company's archived webcast of the call—began to disclose the negative information that laid bare Romeo's theretofore unrevealed fraud:

> As most of you are undoubtedly aware, currently the worldwide market for battery sales is experiencing a significant shortage of certain high quality performance cells. That shortage has ***affected our ability to source adequate supplies of key battery cells critical to our specialized, high density battery solutions.***
>
> ***As a result, we are making material updates to our production and revenue outlook for 2021.***

*See* Lieberman Reply Decl., Ex. A at 3 (emphasis added).

The market reacted to these disclosures instantly. By 5:10 p.m. ET, less than eight minutes after the foregoing disclosures, the Company's stock price had fallen to $10.00 per share, representing a rapid decline of nearly 7%. It was at that time, clearly ***after*** the Company's fraud had been disclosed, that Moatassem sold his shares. As the chart below illustrates, Moatassem could not have sold his shares for $10.00 per share any earlier in the day on March 30 because Romeo stock only fell to $10.00 per share ***after*** the Company's fraud was disclosed.

---

in progress, a fact that a Company spokesperson noted at the start of the call. *See* Redply Declaration of Jeremy A. Lieberman ("Lieberman Reply Decl."), Ex. A at 2 ("Apologies, we had a few technical difficulties and our earnings release should be coming out shortly. It will be posted on our website romeopower.com and on the Investor Relations home page.").



In support of his attempt to disqualify the Yousef Brothers, Castleberg repeatedly cites *In re Hebron Tech. Co. Sec. Litig.*, 20 Civ. 4420 (PAE) *et al.*, 2020 U.S. Dist. LEXIS 169480 (S.D.N.Y. Sept. 16, 2020), another case in which the specific timing of a lead plaintiff movant's trades on the last day of the class period were at issue.  Castleberg fundamentally misrepresents the holding of *Hebron*, which he incorrectly cites to support his argument that "the issue itself"— that is, the mere fact that Castleberg himself has made a baseless assertion regarding the timing of Moatassem Yousef's stock trades—"demonstrates that the Yousef Brothers are subject to unique defenses".  Dkt. No. 58 at 6 n.5.  In *Hebron*, however, Judge Engelmayer found that the "most adequate plaintiff" presumption in favor of the movant who had alleged the largest loss, Michael Clynes, and *prima facie* demonstrated his adequacy and typicality was rebutted because a competing movant "***adduced proof—i.e., non-speculative evidence***" that Clynes' purchases—not sales—occurred after the alleged partial corrective disclosure.  *Hebron*, 2020 U.S. Dist. LEXIS 169480, at *18 (emphases added).

Here, by contrast, Castleberg has ***not*** adduced proof that Moatassem Yousef ***sold*** his Romeo shares ***before*** the revelation of the Company's alleged fraud on March 30—nor could he adduce any such proof, because, as the Yousef Brothers have illustrated herein, Moatassem Yousef sold his shares at approximately 5:10 p.m. on March 30, more than seven minutes ***after*** Romeo's CEO revealed the challenges that the Company was facing with respect to "sourc[ing] adequate supplies of key battery cells" and the resulting necessary "updates to [the Company's] production and revenue outlook for 2021." Castleberg's position—in effect, that the mere fact that a competing movant has raised an issue, no matter how baselessly, illustrates a likelihood that a related unique defense will arise later in the litigation—is clearly wrong. If Castleberg were correct, then any movant could disqualify another competing movant by mere innuendo. This is ***precisely*** why the PSLRA requires ***proof*** to rebut the "most adequate plaintiff" presumption. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## C.  Moath Majed Yousef's Short Sales Do Not Subject Him to Unique Defenses

Davison also argues that the Yousef Brothers will be subject to unique defenses because Moath Majed Yousef sold Romeo shares short on March 16 and March 17, 2021. *See* Dkt. No. 54 at 13. Not so. The 14,098 shares of Romeo stock that Moath Majed Yousef sold short constitutes a mere fraction of his total Class Period trading activity, which included total purchases of ***238,890*** shares. *See* Dkt. No. 43-1. Indeed, "[m]ost courts have found that some short-selling should not be an obstacle to an otherwise qualified party with the largest financial interest serving as Lead Plaintiff", as such sales are merely conservative hedging strategies employed by investors to protect themselves if the share price suffers an unanticipated significant decline. *In re Concord EFS, Inc., Sec. Litig.*, 2002 U.S. Dist. LEXIS 29610, at *16 (W.D. Tenn. Nov. 29, 2002) (collecting cases). *See also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 461 (D.N.J. 2000) ("find[ing] that the fact that [movant] may have made some short sales does not render its claims atypical of the other

11

plaintiffs in the putative class or subject to unique defenses such that it is incapable of adequately representing the case."); *In re Herley Indus. Secs. Litig.*, 2009 U.S. Dist. LEXIS 91600, at *40 (E.D. Pa. 2009) ("Short sales do not give rise to a valid defense and are not inconsistent with a fraud-on-the-market theory."). This is particularly the case here where the overwhelming majority of the Yousef brothers' transactions were long positions, meaning that they stood far more to gain if the stock price increased as opposed to decreased.

**II.     The Competing Movants Are Ineligible for Appointment as Lead Plaintiff**

None of the three competing movants—the Yao Group, Davison, and Castleberg—is eligible for appointment. The Yao Group has alleged the largest losses among the various Lead Plaintiff movants, but its claim to the "largest financial interest" depends entirely on the impermissible aggregation of the losses of its unrelated members. *See*, *e.g.*, *Cohen v. Luckin Coffee Inc.*, 1:20-cv-01293-LJL, 2020 U.S. Dist. LEXIS 103647, at *9-*10 (S.D.N.Y. June 12, 2020) (denying motion by a "self-titled 'Group' [that] is in fact a random assemblage of unlike individuals and a company that . . . not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them."); *Elstein v. Net 1 UEPS Techs., Inc.*, 13 Civ. 9100 (ER), 2014 U.S. Dist. LEXIS 100574, at *18 (S.D.N.Y. July 23, 2014) (denying motion by group "despite [movants'] assurances that they are united in their goals and objectives and are willing and able to serve the Class", citing "concern that this group has simply been 'cobbled together' for the purposes of achieving the lead plaintiff designation."). The only point on which all other competing movants agree is that the Yao Group is inadequate. *See* Dkt. Nos. 54 at 5-9, 56 at 8-10, 58 at 3-4.

Davison, meanwhile, submitted an erroneous Certification (Dkt. No. 36-1), which, as Davison subsequently acknowledged by filing a corrected Certification (Dkt. No. 59-1, listed both

the incorrect year and day with respect to purchases of 11,000 shares of stock. Courts routinely disqualify movants from lead plaintiff appointment on the basis of such errors. *See*, *e.g.*, *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *23, *28 n.8 (D.N.J. Sept. 6, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2020 U.S. Dist. LEXIS 15012, at *16-*17 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (denying lead plaintiff motion where errors in loss charts "speak to a level of carelessness" that raises doubt that applicant possesses "the necessary adequacy and sophistication to be lead plaintiff").

Finally, Castleberg has alleged the smallest loss among the remaining competing movants, and thus plainly cannot satisfy the "largest financial interest" criterion necessary to be entitled to the PSLRA's "most adequate plaintiff" presumption.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in their moving and opposition briefs (Dkt. Nos. 42, 56), the Yousef Brothers respectfully request that the Court grant their motion in its entirety and deny the competing motions.

Dated: July 6, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano

13

600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Moatassem Yousef and Moath Majed Yousef and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Moatassem Yousef and Moath Majed Yousef*

14