**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Civil No. 8:21-cv-00955-PWG |
| ALAN I. ROTH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Civil No. 8:21-cv-01189-PWG |
| STEPHEN M. WEISS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EMERGENT BIOSOLUTIONS INC., ROBERT G. KRAMER SR., RICHARD S. LINDAHL, and SYED T. HUSAIN,<br><br>Defendants. | Civil No. 8:21-cv-01368-PWG |

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF MOTION OF THE NOVA SCOTIA HEALTH**
**EMPLOYEES' PENSION PLAN AND THE CITY OF FORT LAUDERDALE POLICE &**
**FIREFIGHTERS' RETIREMENT SYSTEM FOR CONSOLIDATION, APPOINTMENT**
**AS LEAD PLAINTIFFS AND APPROVAL OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT..............................................................................................................................4

I.    There Is No Basis to Disaggregate the NS-FL Group While Upholding the
      Electrical Employees Group .........................................................................................4

      A.    The NS-FL Group Has the Largest Financial Interest Between the Two
            Groups Consisting of Legally Distinct Entities .........................................................4

      B.    The NS-FL Group's Declaration Is Legally Sufficient............................................5

      C.    The NS-FL Group Aligns With the Rulings in *Tchatchou* .....................................9

      D.    The Electrical Employees Group's Cited Authority Is Distinguishable................12

II.   The NS-FL Group Has the Largest Financial Interest in This Litigation..........................16

III.  The NS-FL Group Has Demonstrated Its Adequacy and Typicality Under Rule 23 ........17

CONCLUSION..........................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis,*
2007 U.S. Dist. LEXIS 96246 (S.D.N.Y. July 30, 2007) ........................................................15

*Chauhan v. Intercept Pharm.,*
2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) .....................................................................15, 16

*Eichenholtz v. Verifone Holdings, Inc.,*
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .........................................................................16

*Haideri v. Jumei Int'l Holding Ltd.,*
2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) ...........................................................................15

*Hirtenstein v. Cempra, Inc.,* No. 1:16cv1303,
2017 U.S. Dist. LEXIS 103799 (M.D.N.C. July 5, 2017) ..........................................................3

*Howard v. GE Money*, No. 1:12CV895,
2014 U.S. Dist. LEXIS 166911 (M.D.N.C. Dec. 2, 2014) ..........................................................9

*In re Bally Total Fitness Sec. Litig.,*
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)........................................................................4, 15

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3rd Cir. 2001) ...................................................................................................18

*In re Cloudera, Inc. Sec. Litig.,*
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019).........................................................................15

*In re E.Spire Commc'ns, Inc. Sec. Litig.,*
231 F.R.D. 207 (D. Md. 2000).............................................................................................12, 13

*In re Gentiva Sec. Litig.,*
281 F.R.D. 108 (S.D.N.Y. 2012) ..............................................................................................16

*In re Peregrine Sys., Inc. Sec. Litig.,*
2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ........................................................................15

*In re Petrobras Sec. Litig.,*
104 F. Supp. 3d 618 (S.D.N.Y. 2015)......................................................................................16

*In re Pfizer Inc. Sec. Litig,*
233 F.R.D. 334 (S.D.N.Y. 2005) ..............................................................................................16

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d 833 (N.D. Cal. 2019) .................................................................................15

*Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBC),
    2019 U.S. Dist. LEXIS 64440 (S.D.N.Y. Mar. 27, 2019) ...............................................14, 15

*Klugmann v. Am. Capital Ltd.*, No. PJM 09-5,
    2009 U.S. Dist. LEXIS 71895 (D. Md. Aug. 12, 2009) ........................................................7, 9

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019).................................................................................15

*Makhlouf v. Tailored Brands, Inc.*,
    2017 WL 1092311 (S.D. Tex. Mar. 23, 2017).........................................................................15

*McDermid v. Inovio Pharm., Inc.*,
    467 F. Supp. 3d 270 (E.D. Pa. 2020) ................................................................................15, 16

*Mullen v. Wells Fargo & Co.*,
    2021 WL 965344 (N.D. Cal. Mar. 15, 2021)..........................................................................16

*Pardi v. Tricida, Inc.*,
    2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ...........................................................................15

*Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819,
    2007 U.S. Dist. LEXIS 24903 (S.D. Ohio Mar. 22, 2007)...............................................8, 9, 15

*Tan v. NIO Inc.*, No. 19-CV-1424 (NGG) (VMS),
    2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020)................................................7, 14, 15

*Tchatchou v. India Globalization Capital Inc.*, No. 8:18-cv-03396-PWG,
    2019 U.S. Dist. LEXIS 33329 (D. Md. Feb. 28, 2019) ...............................6, 9, 10, 11, 12, 18

*Teran v. Subaye*, No. 11 Civ. 2614 (NRB),
    2011 U.S. Dist. LEXIS 105774 (S.D.N.Y. Sept. 16, 2011)................................................5, 15

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................14, 15

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
    2021 WL 533518 (S.D. Cal. Feb. 12, 2021).........................................................................15

*Williams v. Block.One*,
    2020 WL 4505569 (S.D.N.Y. Aug. 4, 2020).........................................................................15

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...............................................................................................18

**<u>Rules</u>**

Fed. R. Civ. P. 23 .......................................................................................................4, 17, 18

Movant the NS-FL Group[1] respectfully submits this Reply Memorandum of Law in further support of its motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of its selections of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class (Dkt. No. 16).  For the additional reasons below, the NS-FL Group respectfully requests that the Court grant the NS-FL Group's motion in its entirety and deny the sole remaining competing motion, filed by the Electrical Employees Group (Dkt. No. 18).

## PRELIMINARY STATEMENT

The Electrical Employees Group's opposition (Dkt. No. 34) urges a self-servingly inconsistent legal argument based on a single, irrelevant fact, which should be rejected under any faithful, consistent application of the PSLRA and its jurisprudence.  If the Court upholds the well-established validity of investor groups with a small number of institutional investors, and consistently applies that standard to both movant groups here, the NS-FL Group has the largest financial interest and is the presumptive lead plaintiff.  If the Court instead opts to reject the grouping of investors permitted by the PSLRA, consistently, and thus considers the losses of each group's members separately, then the remaining single movant with the largest individual losses is NSHEPP, which would then benefit from the PSLRA's "most adequate plaintiff" presumption. Either approach is intellectually and legally consistent, and both would lead to the Electrical Employees Group's motion being denied.  That group's only path forward is if this Court *inconsistently* approaches the two groups, rejecting one while upholding the other, so that its members' separate losses are aggregated and compared against only the *individual* losses of the NS-FL Group's members.  Boiled down, the Electrical Employees Group's argument urging this

---

[1]    All capitalized terms herein are defined in the NS-FL Group's opening or opposition briefs, unless otherwise indicated.  *See* Dkt. No. 16-2, 35.

1

legal inconsistency is based on the notion that it is somehow a "better" group, simply because the same signatory signed a Certification for both its members—a meaningless fact absent from the PSRLA's text and the cited case law. The argument is so strained that the Electrical Employees Group criticizes the quality and content of the NS-FL Group's sworn declaration—despite not having submitted *any* sworn declaration of its own and having provided *no proffer whatsoever* to the Court as to its own leadership structure, decision-making processes, and securities litigation experience. The NS-FL Group respectfully submits that these legal gymnastics should be rejected for four reasons.

First, the Electric Employees Group lacks a credible basis for self-servingly urging the Court to selectively disregard the NS-FL Group's grouping and to disaggregate its members' losses, while upholding the Electrical Employees Group's grouping and considering its members' losses *in toto*. The Electrical Employees Group has conceded that, like the NS-FL Group, it consists of *two distinct legal entities* (*see* Dkt. No. 34 at 1 n.2). That fact is determinative, not whether one or two signatories execute the accompanying Certifications. Moreover, the Electrical Employees Group failed to make any proffer as to, *inter alia*, its members' litigation experience, leadership, board composition, decision-making processes, or dispute-resolution mechanisms.

Second, under any consistent application of PSLRA jurisprudence regarding lead plaintiff movant groups, the NS-FL Group is the presumptive lead plaintiff and the Electrical Employees Group's motion fails. If the Court upholds both groups and considers the losses of each group's members in the aggregate, then the NS-FL Group has the largest financial interest, with a loss of $285,632, more than $45,500 larger than the Electrical Employees Group's loss of $240,024.[2] In

---

[2]   Unless otherwise specified, all loss calculations are presented on a LIFO basis, the methodology that courts generally use to calculate losses for purposes of lead plaintiff

2

the alternative, if the Court were to disaggregate both groups and consider their members' losses separately, then NSHEPP individually would have the largest financial interest, with a loss of $190,726, larger than either of the two Electrical Employees Group members considered individually ($114,760 and $95,265, respectively). Only by asking the Court to selectively uphold its own group while disaggregating the NS-FL Group can the Electrical Employees Group claim the purportedly "largest financial interest" in this litigation.

Third, the Electrical Employees Group failed to present any *evidence* rebutting the PSLRA's presumption favoring the NS-FL Group (or NSHEPP individually). Its brief wrongly claims that the NS-FL Group failed to "provide the Court with any assurance that [it] will act cohesively in litigating this case[.]" Dkt. No. 34 at 3. To the contrary, the NS-FL Group's Joint Declaration, consisting of sworn attestations under penalty of perjury by NSHEPP's CEO and Fort Lauderdale P&F's General Counsel, directly addresses the purported concerns and explains why they decided to join forces to pursue this lawsuit on behalf of the class of investors (*see* Dkt. No. 16-7), and the group's prior securities litigation experience remains uncontested. The Electrical Employees Group's brief also self-servingly flip-flops between loss metrics, alternatively describing NSHEPP's losses as "more than double" Fort Lauderdale P&F's losses (*see* Dkt. No. 34 at 6), while twice depicting their losses as $190,726 and $135,113, respectively (*id.* at 2, 4). Moreover, the Electrical Employees Group relies nearly entirely on readily distinguishable authority from outside the Fourth Circuit, involving groups of individual, rather than institutional, investors; unwieldy, large groups of investors; groups that failed to demonstrate cohesiveness; and/or groups apparently engineered by multiple law firms—facts not present here.

---

appointment. *See, e.g., Hirtenstein v. Cempra, Inc.*, No. 1:16cv1303, 2017 U.S. Dist. LEXIS 103799, at *7 n.4 (M.D.N.C. July 5, 2017).

3

Fourth, even assuming, *arguendo*, that the Court somehow found that the Electrical Employees Group has the largest financial interest (it does not), the PSLRA would still require denial of its motion for failure to make the requisite *prima facie* Rule 23 showing, given its *total* non-proffer with respect to its leadership, structure, assets, litigation experience, or *any facts* that would demonstrate its adequacy.  By contrast, the NS-FL Group has made a robust, uncontested proffer with respect to all those points, well exceeding the *prima facie* showing required at this juncture.

In sum, the NS-FL Group, not the Electrical Employees Group, has alleged the largest financial interest in this litigation, while demonstrating its satisfaction of the Rule 23 adequacy and typicality requirements.  Pursuant to the PSLRA, the NS-FL Group is thus the presumptive "most adequate plaintiff" from among the movants seeking to represent the Class.  The Electrical Employees Group has not even attempted to adduce "proof" that the NS-FL Group is unsuitable to represent the Class, and the "most adequate plaintiff" presumption in the NS-FL Group's favor thus remains unrebutted.  Accordingly, the NS-FL Group respectfully urges the Court to grant its motion in its entirety and deny the competing motion of the Electrical Employees Group.

## ARGUMENT

**I.      There Is No Basis to Disaggregate the NS-FL Group While Upholding the Electrical Employees Group**

**A.      The NS-FL Group Has the Largest Financial Interest Between the Two Groups Consisting of Legally Distinct Entities**

The Electrical Employees Group has provided no legitimate reason why the Court should inconsistently treat it as "essentially one person" (Dkt. No. 34 at 1 n.2) and consider its two members' losses in the aggregate, while disaggregating the NS-FL Group and its two members' losses.  Both of the two movant groups consist of two institutional investors that are "legally distinct entities," an obvious point which the Electrical Employees Group *concedes* (*see* Dkt. No.

4

34 at 1 n.2).  Comparing the aggregate losses of each group's members, the NS-FL Group incurred a loss of $285,632, while the Electrical Employees Group incurred a lesser loss of $240,024.

| Movant | LIFO Loss |
|---|---|
| **NS-FL Group** | **$285,632** |
| *NSHEPP* | *$190,726* [3] |
| *Fort Lauderdale P&F* | *$94,906* |
| Electrical Employees Group | $240,024 |
| *Western Pennsylvania Electrical Employees Insurance Trust Fund* | *$144,760* |
| *Western Pennsylvania Electrical Employees Pension Fund* | *$95,264* |

B.      **The NS-FL Group's Declaration Is Legally Sufficient**

Instead, the Electrical Employees Group baselessly characterizes the NS-FL Group as an improper group that "failed to provide the Court with any assurances that [it] will act cohesively in litigating this case" (Dkt. No. 34 at 3) and urges the Court to reject an 'apples to apples' comparison of the two groups' losses and instead to compare the Electrical Employees Group's aggregate loss ($240,024) to the separated losses of NSHEPP ($190,726) and Fort Lauderdale P&F ($94,906).  Only under this inconsistent and transparently self-serving approach does Electrical Employees Group claim to possess the "largest financial interest" in this litigation.  However, contrary to that argument, the NS-FL Group's Joint Declaration, consisting of sworn statements made under penalty of perjury by NSHEPP's CEO and Fort Lauderdale P&F's General Counsel

---

[3]      As the chart illustrates, if the Court were to disaggregate both groups, then NSHEPP would have the largest single loss among the four institutions considered separately.  Under the Electrical Employees Group's cited authority, NSHEPP would thus be the single remaining non-group litigant with the largest loss and thus the presumptive lead plaintiff.  *See Teran v. Subaye*, No. 11 Civ. 2614 (NRB), 2011 U.S. Dist. LEXIS 105774, at *14 (S.D.N.Y. Sept. 16, 2011) (declining to aggregate the losses of a group's members where another movant possessed the single largest financial interest).  The Electrical Employees Group also sidesteps this alternative, consistent approach.

(*see* Dkt. No. 16-7 at 4-5), does, in fact, assure the Court that NSHEPP and Ft. Lauderdale P&F will act cohesively in litigating this case.  NSHEPP and Fort Lauderdale P&F attest to, *inter alia*:

- being "informed of and understand[ing] the requirements and duties imposed by the PSLRA" (*id.* ¶2);

- their shared belief in the merits of the claims in this litigation and their "commit[ment] to maximizing the recovery on behalf of the class of investors" (*id.* ¶4);

- their "recogni[tion] that they are like-minded institutional investors . . . which have mutual shared interests in seeking to recover their losses and those of the other class members" (*id.*);

- their discussion with one another of "the merits of this action, the status of the proceedings, the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, [their] ability to work together and to jointly fill the lead plaintiff role, and efforts to facilitate future communication and collaboration" (*id.* ¶ 5); and

- their preparedness "to supervise counsel and actively oversee the prosecution of the action for the benefit of the class of investors by, among other things, hav[ing] personnel of NSHEPP and Fort Lauderdale P&F review pleadings, monitor the litigation and significant developments, instruct counsel, attend hearings as warranted, and oversee any future resolution-oriented discussions or negotiations." *Id.* ¶ 7.

Given the foregoing, the NS-FL Group members' readiness to act cohesively in prosecuting this litigation cannot reasonably be questioned.

The Electrical Employees Group challenges the sufficiency of the Joint Declaration—despite not submitting one of its own—highlighting the absence of any attestation to a pre-litigation relationship between NSHEPP and Fort Lauderdale P&F or any pre-arranged dispute resolution mechanism and mischaracterizing the declaration as "double hearsay with no evidentiary value as to the group's adequacy." Dkt. No. 34 at 8.  These arguments fail.  There is no requirement in the PSLRA that a lead plaintiff group's members have a pre-litigation relationship with one another, and courts—including this Court—routinely appoint groups comprised of unrelated movants.  *See*, *e.g.*, *Tchatchou v. India Globalization Capital Inc.*, No. 8:18-cv-03396-PWG, 2019 U.S. Dist. LEXIS 33329, at *19-21 (D. Md. Feb. 28, 2019) (appointing

6

group comprised of unrelated investors); *Klugmann v. Am. Capital Ltd.*, No. PJM 09-5, 2009 U.S. Dist. LEXIS 71895, at *11 (D. Md. Aug. 12, 2009) (same, noting that "[t]he text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss") (citing and quoting Alba Conte & Herbert Newberg, Newberg on Class Actions § 22:2 (4th ed. 2002)).

In addition, the NS-FL Group respectfully notes that the Electrical Employees Group's counsel, Robbins Geller, currently serves as Co-Lead Counsel with the NS-FL Group's counsel, Pomerantz, in *Chun v. Fluor Corporation*, No. 3:18-cv-01338 (N.D. Tex.) ("*Fluor*"). In *Fluor*, the two firms are counsel to court-appointed PSLRA co-lead institutional plaintiffs—the Town of Fairfield Employees Retirement Plan and the Town of Fairfield Police and Firemen's Retirement Plan represented by Pomerantz and Wayne County Employees' Retirement System represented by Robbins Geller—that had no prior relationship with one another whatsoever prior to that litigation and that made no proffer of any communications with one another prior to their appointment as co-lead plaintiffs in that action. The co-lead plaintiff structure in *Fluor* thus rested upon even less of a relationship and proffer than existed between the group members in *Tan v. NIO Inc.*, No. 19-CV-1424 (NGG) (VMS), 2020 U.S. Dist. LEXIS 36623 (E.D.N.Y. Mar. 3, 2020), a case that the Electrical Employees Group considers "instructive" (as discussed *infra* at 13-14). Dkt. No. 34 at 7.

Moreover, contrary to the Electrical Employees Group's suggestion, there is nothing problematic about the fact that NSHEPP and Fort Lauderdale P&F are "based in two different countries." Dkt. No. 34 at 4. The Electrical Employees Group has cited no authority to the effect that this fact is even relevant, let alone disqualifying. Respectively based in Bedford, Nova Scotia

7

and Fort Lauderdale, Florida, the two movants are located only one time zone apart and have already attested to their prior telephonic discussions, and there is no reason to believe that their respective locations will present any challenges to the coordination of their efforts in this litigation.

The absence of an attestation in the Joint Declaration specifically describing a dispute-resolution mechanism is irrelevant. In the Joint Declaration, the NS-FL Group's members attested at length and in detail to understanding the duties of Lead Plaintiffs, their shared interests in securing a recovery on behalf of the Class, and their commitment to communication, collaboration, and efficiency, as set forth above. Through these attestations, the group's members have evidenced a posture that would naturally include a commitment to resolving any future disagreements (if any) in a productive manner that benefits the class's interests. There is no need for NSHEPP and Fort Lauderdale P&F to describe a specific mechanism for addressing diverging opinions as to any future, theoretical litigation steps, and, indeed, any such pre-ordained process might yield new arguments that it somehow prioritized one institution over the other, which would actually undermine, not demonstrate, group cohesion. Finally, it is hard to credit the Electrical Employees Group's claim that the lack of a dispute resolution mechanism is fatal to a group with an even number of members, considering that the Electrical Employees Group is *itself* a two-member group whose members have not explained how *they* intend to resolve disputes, either between the two institutions or among the respective leadership of each.

The Electrical Employees Group's description of the Joint Declaration as "double hearsay with no evidentiary value" is simply wrong. The only case that the Electrical Employees Group cites in support, *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819, 2007 U.S. Dist. LEXIS 24903 (S.D. Ohio Mar. 22, 2007), involved the submission of a declaration by an attorney of the movant group's chosen lead counsel, attesting to statements made by his clients with respect to,

8

*inter alia*, their understanding of the responsibilities of a PSLRA lead plaintiff, acceptance of those responsibilities, and readiness to work together. *Id.* at *6-8. Here, the NS-FL Group's Joint Declaration contains sworn attestations, by NSHEPP's CEO and Fort Lauderdale P&F's General Counsel—not by Pomerantz attorneys—to information within the knowledge of the two declarants, including their communications with one another and their understanding of and intentions concerning this litigation. *See* Dkt. No. 16-7 at 4-5. Such declarations have evidentiary value, *see*, *e.g.*, *Howard v. GE Money*, No. 1:12CV895, 2014 U.S. Dist. LEXIS 166911, at *11-13 (M.D.N.C. Dec. 2, 2014) (rejecting hearsay objection to admissibility of declarations, finding "declarations submitted . . . under penalty of perjury, [and] based on first-hand knowledge" of the declarant to be "present in a form that would be admissible in evidence"), and courts regularly consider precisely these types of declarations in assessing the adequacy of lead plaintiff movants in PSLRA actions. *See*, *e.g.*, *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *22 (movant group's submission of a "declaration signals to me that [the group's members are prepared to play an active role in this litigation and to monitor the actions of their selected counsel"); *Klugmann*, 2009 U.S. Dist. LEXIS 71895, at *13 (D. Md. Aug. 12, 2009) (considering movant group's submission of "a detailed declaration" in finding "aggregation [of the members' financial interests] appropriate").[4]

C.      **The NS-FL Group Aligns With the Rulings in *Tchatchou***

The Electrical Employees Group fails to distinguish this Court's decision in *Tchatchou*, a PSLRA action in which the Court appointed a group of ***seven*** largely unrelated ***individuals*** as lead plaintiff. First, the Electrical Employees Group suggests that because the seven-member group in

---

[4]      The assertion that Fort Lauderdale P&F's signatory of the Joint Declaration is not a "fund fiduciary" is puzzling, considering that Fort Lauderdale P&F's General Counsel, with authority to litigate on behalf of Fort Lauderdale P&F, signed it. *See* Dkt. No. 16-7 at 5. Moreover, the Electric Employees Group fails to cite authority specifying any titular requirements for the signatories of Certifications or Joint Declarations in PSLRA actions.

*Tchatchou* included "two married couples and three other individuals," the Court's finding that the group was appropriate rested on a meaningful pre-litigation relationship among the group members. Yet the Court did not appear to consider the involvement of married couples as evidence of a pre-existing relationship among the group members, but rather considered this fact in the context of evaluating the size of the group, suggesting that each married couple ought to be considered as a single decision-making unit rather than as two individuals in counting the number of group members. *See Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at \*20 (following discussion of appropriate size of movant group, "find[ing] it relevant to note that the group includes two married couples, who presumably have some experience making decisions as a unit"). The *Tchatchou* group thus effectively consisted of ***five*** distinct decision-makers (two married couples plus three individuals) ***without pre-litigation relationships***, whereas the NS-FL Group consists of only two members (NSHEPP and Fort Lauderdale P&F)—a favorable comparison.

The Electrical Employees Group also cites *Tchatchou* for the Court's finding that "the individual members' relative stakes in the litigation are both significant and fairly comparable" and were "an indicator that these investors can be counted on to monitor counsel in a sufficient manner," *id.* at \*20-21, positing that NSHEPP's and Fort Lauderdale P&F's losses are less comparable. Yet, the Electrical Employees Group alternatively and inconsistently describes NSHEPP's losses as both "more than double the losses of Fort Lauderdale P&F" (Dkt. No. 34 at 6), and also as $190,726 for NSHEPP as compared to $135,113 for Fort Lauderdale P&F (*id.* at 2, 4). This latter comparison, apparently based on the NS-FL Group's FIFO losses, presents a virtually identical (or slightly better) ratio to that blessed by the Court in *Tchatchou*, which the

10

Electrical Employees Group concedes is acceptable.[5]  So, the Electrical Employees Group has apparently abandoned reference to FIFO losses for this single argument attempting to distinguish *Tchatchou*.

Yet even on a LIFO basis, the respective LIFO losses of NSHEPP ($190,726) and Fort Lauderdale P&F ($94,096) are both significant and comparable, as in *Tchatchou*, falling within a range of less than $100,000 of one another.  *See* Dkt. No. 16-4.  The Electrical Employees Group cites no authority for the proposition that while a $58,573 difference in high-low losses, as blessed in *Tchatchou*, is permissible, a $96,630 high-low gap, as exists here, is impermissible.  Indeed, the NS-FL Group members themselves have considered that they "each purchased a significant number of shares of Emergent common stock during the alleged class period and suffered substantial losses" and "recognize that they are like-minded institutional investors, which suffered substantial losses in their Emergent stock investments and which have mutual shared interests in seeking to recover their losses and those of the other class members through this litigation."  Dkt. No. 16-7 ¶¶3-4.[6]

---

[5]     In *Tchatchou*, the lowest loss, $108,360, was 64.9% as large as the largest loss of $166,933. *Id.* at *12.  Here, using the FIFO figures set forth in the Electrical Employees Group's brief at 2 and 4, Fort Lauderdale P&F's lower loss of $135,113 is 70.8% the size of NSHEPP's larger loss of $190,726.

[6]     The Electrical Employees Group also questions NSHEPP's motivation for joining with Fort Lauderdale P&F and claims that there is "no reason" to do so.  Dkt. No. 34 at 7.  Not so. NSHEPP and Fort Lauderdale P&F explained their reasons for seeking appointment as co-lead plaintiffs, after each "separately assessed the merits of the litigation," stating, "The Funds believe that the securities class action claims against Emergent are meritorious and should be led by dedicated and sophisticated institutional investors that are committed to maximizing the recovery on behalf of the class of investors [and] recognize that they are like-minded institutional investors, which suffered substantial losses in their Emergent stock investments and which have mutual shared interests in seeking to recover their losses and those of the other class members through this litigation. *It is for these reasons that the Funds decided to seek joint appointment as Lead Plaintiff in this action.*"  Dkt. No. 16-7 ¶¶4-5 (emphasis added).

11

The Electrical Employees Group also claims the *Tchatchou* group's declaration was more "comprehensive" than the NS-FL Group's Joint Declaration, noting that its members attested to being "in communication before they filed their motion" and "remain[ing] in communication since, and hav[ing] put in place a voting process to resolve any disagreements that might arise." Dkt. No. 34 at *7 (citing *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *24). However, in *Tchatchou*, the group failed to submit a declaration with its initial motion papers, so the referenced declaration was filed with its opposition. *See Tchatchou v. India Globalization Capital, Inc.*, No. 8:18-cv-03396-PWG (D. Md.), Dkt. No. 32-1. Accordingly, in attesting to being "in communication before" and "since" filing their motion, the members were not describing a greater degree of communication than that of the NS-FL Group, but merely *belatedly* describing the *same* level of communication. Moreover, "dispute resolution" issues are more pronounced in a large, seven-member group of unrelated individuals, where the Court itself had to devote a portion of its decision to deciphering how to "count" married couples within the group's head count.

### D.    The Electrical Employees Group's Cited Authority Is Distinguishable

The Electrical Employees Group otherwise cites inapposite and distinguishable authority in support of its challenge to the NS-FL Group. Only *In re E.Spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207 (D. Md. 2000), is from a Fourth Circuit district court, and *E.Spire* is distinguishable. There, the court considered a lead plaintiff motion by a group of five individuals, represented by two different law firms. *Id.* at 214. Finding that evaluation of a movant group's propriety "must be made on a case-by-case basis, taking account of the unique circumstances of each case," the court "note[d] that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors" and that the PSLRA was enacted to curb attorney-driven litigation. *Id.* at 210-11. The court accordingly denied the group's motion, noting that "only individual investors are involved," five group members "would be hampered in their

12

collective ability to supervise the conduct of counsel," the group failed to demonstrate cohesiveness, and the involvement of two law firms raised the likelihood of attorney-directed litigation. *Id.* at 212-14. Here, by contrast, the NS-FL Group consists of only two members, both precisely the types of institutional investors that Congress wished to serve as lead plaintiffs, who have attested to and demonstrated their cohesiveness and have selected only one law firm to serve as Lead Counsel. The NS-FL Group respectfully submits that it passes muster under the *E.Spire* court's analysis.

The Electrical Employees Group also cites two cases, *Ahnefeldt v. Dickson*, No. 4:20-cv-02539 (S.D. Tex.) ("*Ahnefeldt*"), and *Melucci v. Corcept Therapeutics Inc.*, No. 5:19-cv-01372 (N.D. Cal.) ("*Corcept*"), in which one NS-FL Group member, NSHEPP, argued against the appointment of investor groups. Yet in *Ahnefeldt*,[7] the investor group at issue consisted of a staggering **21** unrelated, individual, retail investors and was thus far too large and unwieldy to act cohesively, and **19** of its members had preemptively relinquished the core responsibilities of lead plaintiffs by attesting that they had delegated all litigation decisions and supervision of counsel to only two members. *See Ahnefeldt*, Dkt. No. 21-1 at *85-96. In *Corcept*, the group at issue consisted of a retail investor and an apparent charitable foundation, which had provided no information regarding its members' backgrounds or the foundation's leadership, and no proffer as to its cohesiveness. *See Corcept*, Dkt. Nos. 17, 19. Here, by contrast, the NS-FL Group consists of only two sophisticated institutional investors and made detailed proffers regarding their backgrounds, experience, and readiness to undertake the PSLRA lead plaintiff responsibilities.

---

[7]    It bears noting that *Ahnefeldt* itself was a tagalong action, belatedly filed during the litigation of a motion to dismiss, which sought to co-opt a portion of the Exchange Act claims that NSHEPP was court-appointed to oversee, and that NSHEPP later successfully moved to consolidate the *Ahnefeldt* action.

13

The Electrical Employees Group also cites *Tan*, 2020 U.S. Dist. LEXIS 36623, in mischaracterizing the NS-FL Group's Joint Declaration as deficient and its lack of a pre-litigation relationship as fatal. Dkt. No. 34 at 7-8. Yet *Tan* is easily distinguished. There, the court expressly assessed the propriety of the movant group at issue with reference to the five so-called *Varghese* factors, which district courts of the Second Circuit sometimes use to evaluate groups. *Id.* at *12.[8] The court expressly noted that the lack of a pre-litigation relationship need not be dispositive, but absent one, "'courts have typically required that plaintiffs . . . present a more compelling showing' that they will be able to work cohesively for the benefit of the class." *Id.* at *14 (quoting *Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBC), 2019 U.S. Dist. LEXIS 64440, at *9 (S.D.N.Y. Mar. 27, 2019)). The *Tan* group failed to meet these standards, as its four members were all retail investors, who lacked any pre-litigation relationship and sought the appointment of two firms as co-lead counsel. *Id.* at *5, *14. It was also unclear from the group's declaration whether one member had even participated in the only conference call among the group's members. *Id.* at *13. Nor did the *Tan* group's members attest to any prior litigation experience. *See generally In re: NIO Inc. Sec. Litig. (Tan v. NIO Inc.)*, No. 1:19-cv-01424 (E.D.N.Y.), Dkt. No. 14. Here, by contrast, the NS-FL Group has only two members, both sophisticated institutional investors, who attested to their communications with one another and seek appointment of only a single firm, Pomerantz, as Lead Counsel, and one group member, NSHEPP, has extensive securities litigation experience from its roles in the *BP* and *McDermott* actions, represented in both by Pomerantz.

---

[8]    The *Varghese* factors are: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.* at *12 (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)).

14

Thus, the NS-FL Group passes muster even under the Second Circuit's *Varghese* factors, as applied in *Tan*.

The Electrical Employees Group's other out-of-Circuit cases (Dkt. No. 34 at 4, 8-10) likewise offer no support. Most involved groups consisting entirely or partially of individual investors, thus raising concerns over attorneys assembling passive litigants into investor groups, at odds with the PSLRA's goal of curbing lawyer-driven litigation.[9] Here, by contrast, the NS-FL Group's members are both sophisticated institutional investors, each of which independently assessed the merits of this litigation and of seeking appointment as Lead Plaintiff before opting to seek appointment jointly with one another. In some cases, the courts found the evidentiary proffers in support of the groups' motions to be non-substantive, conclusory, or otherwise problematic,[10] while in others, the proposed groups were larger than the two-member NS-FL Group, thus implicating concerns about whether they could effectively coordinate efforts and/or about their

---

[9]     *See, e.g.*, *Teran v. Subaye, Inc.*, 2011 WL 4357362, at *3-4 (S.D.N.Y. Sept. 16, 2011); *Bhojwani v. Pistiolis*, 2007 WL 2197836, at *6 (S.D.N.Y. June 26, 2007); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019); *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *3 (S.D. Ohio Mar. 22, 2007); *Pardi v. Tricida, Inc.*, 2021 WL 1381271, at *1 (N.D. Cal. Apr. 2, 2021); *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *5 (S.D. Cal. Feb. 12, 2021); *Chauhan v. Intercept Pharm.*, 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021); *Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020); *Haideri v. Jumei Int'l Holding Ltd.*, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020); *McDermid v. Inovio Pharm., Inc.*, 467 F. Supp. 3d 270, 279 (E.D. Pa. 2020); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019); *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019); *Bhojwani v. Pistiolis*, 2007 U.S. Dist. LEXIS 96246, at *9 (S.D.N.Y. July 30, 2007); *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005).

[10]     *See, e.g.*, *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019); *Teran*, 2011 WL 4357362, at *3-4; *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *6-8 (S.D. Tex. Mar. 23, 2017); *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *52 (S.D. Cal. Oct. 11, 2002); *Stitch Fix*, 393 F. Supp. at 835-36; *Ross*, 2007 WL 895073, at *3; *Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug. 4, 2020); *Haideri*, 2020 WL 5291872, at *5; *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019); *Bhojwani*, 2007 U.S. Dist. LEXIS 96246, at *9.

15

being constituted solely to manufacture the largest financial interest,[11] or the proposed group would have resulted from an individual movant's request that the Court appoint him as a co-lead plaintiff alongside a large institutional investor—against its wishes—that had filed a separate motion and sought to serve as sole lead plaintiff.[12] Here, by contrast, the NS-FL Group submitted the legally sufficient Joint Declaration, attesting to both their reasons for joining together and their ability to effectively collaborate. In another case, the Court declined to aggregate a group's losses in part because its two members' losses considered individually were "minimal as compared to" a single competing individual movant.[13] Here, by contrast, one NS-FL Group member, NSHEPP, individually incurred a larger loss than any other single movant remaining before the Court. Finally, in other cases, the groups at issue proposed more than one law firm to serve as co-lead counsel—again, raising concerns about attorney-driven litigation—whereas here, the NS-FL Group proposes only Pomerantz to serve as sole Lead Counsel.[14]

## II.   The NS-FL Group Has the Largest Financial Interest in This Litigation

As an appropriate investor group of precisely the type that courts, including this Court, routinely appoint as lead plaintiffs in PSLRA actions, the NS-FL Group's financial interest in this litigation should be considered in the aggregate. The NS-FL Group's $285,632 LIFO loss is more than $45,500 larger than that of the Electrical Employees Group, the only remaining competing movant. Accordingly, the NS-FL Group has the "largest financial interest" in this litigation and thus satisfies the first of the criteria for the PSLRA's "most adequate plaintiff" presumption.

---

[11]   *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *7 (N.D. Cal. Aug. 22, 2008); *McDermid*, 467 F. Supp. 3d at 279; *In re Pfizer Inc. Sec. Litig*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005).

[12]   *See Mullen v. Wells Fargo & Co.*, 2021 WL 965344, at *4 (N.D. Cal. Mar. 15, 2021).

[13]   *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (S.D.N.Y. 2012).

[14]   *See, e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015); *Chauhan*, 2021 WL 235890, at *5.

16

**III.    The NS-FL Group Has Demonstrated Its Adequacy and Typicality Under Rule 23**

The NS-FL Group has also demonstrated its Rule 23 typicality and adequacy.  With respect to typicality, the NS-FL Group, like all Class members, purchased Emergent stock at prices artificially inflated by Defendants' alleged fraud, was damaged upon the disclosure of corrective information, and is pursuing the same claims based on the same legal theories arising from the same events and course of conduct.  Regarding its adequacy, as discussed extensively herein and in its prior briefing (*see* Dkt. Nos. 16-2, 35), the NS-FL Group made a detailed and robust proffer, submitting extensive information regarding, *inter alia*, their respective structures, assets and management (*see* Dkt. No. 16-2 at 11-12), their reasons for jointly seeking lead plaintiff appointment, the steps they undertook both separately and jointly before filing their motion, their understanding of the significance of their motion and the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to supervise counsel (*see generally* Dkt. No. 16-7).  Having strongly demonstrated its Rule 23 typicality and adequacy, the NS-FL Group also satisfies the second of two criteria to secure the PSLRA's "most adequate plaintiff" presumption.

By contrast, the Electrical Employees Group conspicuously made no proffer whatsoever in support of its own adequacy, despite conceding that its members are likewise two "legally distinct entities" (Dkt. No. 34 at 1 n.2), resting instead on the as-yet-unexplained claim that they are "related" to one another and the fact that the same person executed their Certifications (Dkt. No. 34 at 1 n.2).  But their Certifications and briefing do not explain, *inter alia*, their relationship, their leadership and organizational structure, the role of the Certifications' signatory, how their respective boards would address litigation questions or internal disagreements, and how or why they decided to become involved in this litigation and seek lead plaintiff appointment.  Nor have

17

the Electrical Employees Group's members attested to any prior litigation experience,[15] meaning their complete silence as to plans for coordination raises the specter of disjointed and inefficient decision-making, which would impede the effective, efficient conduct of this action, to the detriment of the class.[16]  Moreover, the Electrical Employees Group has failed to offer any *evidence* to rebut the presumption favoring the NS-FL Group's appointment as lead plaintiffs, after the NS-FL Group demonstrated that it has the largest financial interest in this litigation and made a *prima facie* showing of Rule 23 typicality and adequacy.  15 U.S.C. § 78u-4(a)(3)(B)(iii). Accordingly, the NS-FL Group has secured the statutory presumption that it is the "most adequate plaintiff" of the Class within the meaning of the PSLRA.  This presumption can ***only*** be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The Electrical Employees Group has merely disputed the NS-FL Group's financial interest and has not even attempted to "prove that [the NS-FL Group] will not do a 'fair and adequate' job" of representing the class's interests.  *Tchatchou*, 2019 U.S. Dist. LEXIS 33329, at *23 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3rd Cir. 2001) (internal quotations omitted)).  The presumption that the NS-FL Group is the "most adequate plaintiff" and should be appointed as Lead Plaintiff is thus unrebutted.

---

[15]    The Electrical Employees Group's opposition claims "prior experience serving as lead plaintiff" (Dkt. No. 34 at 11), without providing any details.  Indeed, the group's members have attested to no prior experience in their respective Certifications.  *See* Dkt. No. 20 at *2.

[16]    To demonstrate its adequacy as a lead plaintiff movant, the Electrical Employees Group cites the fact that *its counsel* "has significant experience litigating against Emergent BioSolutions Inc." in a prior matter, *Sponn v. Emergent BioSolutions, Inc.*, 8:16-cv-02625 (D. Md.).  Dkt. No. 34 at 11.  Yet, it cites no authority for the proposition that a lead plaintiff movant's counsel's prior litigation experience against a specific defendant is a relevant factor in the Rule 23 adequacy inquiry or otherwise relevant to the PSLRA's "most adequate plaintiff" determination.  If anything, that detail would be relevant only at the point of considering a presumptive lead plaintiff's choice of counsel and the adequacy of that counsel—a juncture of the PSLRA analysis that it is not necessary to reach in the case of the Electrical Employees Group's motion.

## CONCLUSION

For the foregoing reasons and those set forth in its motion and opposition briefs (Dkt. Nos. 16-2, 35), the NS-FL Group respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the NS-FL Group as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel for the Class.

Dated:   July 20, 2021

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Daniel S. Sommers*
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(admitted *pro hac vice*)
Matthew L. Tuccillo
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

19

mltuccillo@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti
(admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and City of Fort Lauderdale Police & Firefighters' Retirement System and Proposed Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner*
Stuart Kaufman*
7080 NW 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Fort Lauderdale Police & Firefighters' Retirement System*

**\****pro hac vice* applications forthcoming

20

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by the Court's

CM/ECF system on counsel of record on this 20th day of July, 2021.


Dated: July 20, 2021                     /s/ Daniel S. Sommers
                                    Daniel S. Sommers

21