# EXHIBIT A

2021 WL 3473975
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

ESTEBAN KOFFSMON, Plaintiff,

v.

GREEN DOT CORPORATION,
ET AL., Defendants.

Case No. CV 19-10701 DDP (Ex)
|
Filed 08/06/2021

ORDER APPOINTING LEAD CLASS PLAINTIFF AND APPROVING CLASS COUNSEL

DEAN D. PREGERSON United States District Judge

**\*1** Presently before the court are five motions for appointment as lead class plaintiff and approval of class counsel. Having considered the submissions of the parties, the court appoints New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund ("Pension Fund") as lead class Plaintiff, approves the Pension Fund's selection of Robins Geller as lead counsel, and adopts the following Order.

## I. Background

Defendant Green Dot Corporation ("Green Dot") is a publicly-traded "financial technology" and "bank holding company." Complaint ¶ 14. Green Dot's products include re-loadable debit cards, branded gift cards, and checking accounts. Id. ¶ 15. Beginning in May 2018, Defendants issued several press releases and other statements touting Green Dot's revenue growth and increased user base. Id. ¶¶ 16-22.

Beginning in February 2019, and again in May, August, and November, Green Dot and its officers issued further quarterly reports, press releases, and statements that, according to the Complaint, indicated that the prior representations about Green Dot's 2018 successes were false and misleading. Id. ¶¶ 24, 26-27, 29-30, 32. In essence, the 2019 statements allegedly revealed that Green Dot's 2018 growth was the product of a misguided strategy of pursuing less-profitable long-term customers over more profitable short-term customers, including an effort to convert the latter to

the former, resulting in higher than expected declines in Green Dot's revenue in 2019. Green Dot's share price declined significantly after each quarterly revelation. Id. ¶¶ 25, 28, 31, 33. This putative class action complaint for securities law violations followed.

Pursuant to 15 U.S.C. § 78u-4(a)(3), five prospective lead class plaintiffs filed motions to be appointed lead class plaintiff,: Fred Schaebsdau; the "Green Dot Institutional Investor Group," comprised of Plymouth County Retirement Association ("Plymouth County"), Greater Pennsylvania Carpenters Pension Fund ("the Carpenters Fund"), and Iron Workers District Council of New England ("Iron Workers Council") (collectively, "IIG"); John Mustavage and Austin Fire Fighters Relief and Retirement Fund (collectively, "Austin Group"); City of Sarasota General Employees' Defined Benefit Pension Plan and City of Sarasota Firefighters' Pension Plan (collectively, "Sarasota Group"); and New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Plan ("Pension Plan"). The Sarasota Group has filed a non-opposition to the other, competing motions for appointment as lead plaintiff. Schaebsdau and the Austin Group have not filed oppositions to any motion for appointment as lead plaintiff. The court deems those failures to oppose as consent to the granting of the competing motions. See C.D. Cal. L.R. 7-9, 7-12. The Green Dot Institutional Investor Group and the Pension Fund have opposed each other's motions. The court therefore addresses these two remaining competing motions.

## II. Legal Standard

The Private Securities Litigation Reform Act ("PSLRA") sets out a three-step process for identifying the lead plaintiff in a securities fraud case. 15 U.S.C. § 78u-4(a)(3); In re Cavanaugh, 306 F.3d 726, 729 (9th Cir. 2002). The first step concerns publicization of the complaint and notice to putative class members of their right to seek appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). There is no dispute here that these notice provisions have been satisfied.

**\*2** Second, upon motion to be appointed lead plaintiff, the court "shall appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members." 15 U.S.C § 78u-4(a)(3)(B)(I). "[T]he district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the ... presumptive lead plaintiff [ ] the one who [1] has the largest financial interest in the relief sought by the class and [2] otherwise satisfies the requirements of Rule 23 of the Federal

Rules of Civil Procedure." Cavanaugh, 306 F.3d at 729–30 (internal quotation marks and citation omitted). Third, and lastly, other plaintiffs must be given "an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." Id. at 731.

The "most adequate plaintiff" shall also select and retain lead class counsel, subject to the approval of the court. 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." Cohen v. U.S. Dist. Ct. for N. Dist. of California, 586 F.3d 703, 712 (9th Cir. 2009).

### III. Discussion

#### A. Largest Financial Interest

The PSLRA "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." Cavanaugh, 306 F.3d at 732 (emphasis original). This seemingly straightforward analysis is complicated, however, where, as here, a group of plaintiffs seeks to serve collectively as lead plaintiff. Although the PSLRA itself contemplates the possibility that a "group of persons" might be the "most adequate plaintiff," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Ninth Circuit has not addressed the question "whether a group can satisfy the 'largest financial interest' requirement by aggregating losses." Cavanaugh, 306 F.3d at 731 n.8. Here, the Green Dot Institutional Investor Group seeks to do precisely that. The constituent members of the IGG -- Plymouth County, the Carpenters Fund, and the Iron Workers Council -- allege losses of $592,917, $301,353, and $130,114, respectively. None of these loss amounts, individually, exceeds the Pension Fund's alleged losses of $662,539. In the aggregate, however, the IGG members' losses total $1,071,666, an amount greater than that alleged by the Pension Fund.

As stated above, the PSLRA does not expressly prohibit groups from being collectively appointed lead plaintiff. Nevertheless, the majority of courts in this circuit have "refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff." In re Gemstar-TV Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 451 (C.D. Cal. 2002); see also In re Stitch Fix, Inc. Sec. Litig., 393 F. Supp. 3d 833, 835 (N.D. Cal. 2019) ("[T]he clear consensus in our district is that a group of investors who had no pre-existing relationship with

one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses.... To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions."); Frias v. Dendreon Corp., 835 F. Supp. 2d 1067, 1073 (W.D. Wash. 2011) (discussing various rationales for rejecting groups comprised of unrelated individuals); In re Network Assocs., Inc., Sec. Litig., 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999); Crihfield v. CytRx Corp., No. CV1605519SJOSKX, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016).

**\*3** To be sure, some courts have appointed a group of investors lead plaintiff even in the absence of a pre-existing relationship between the investors. See, e.g., Bruce v. Suntech Power Holdings Co., No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012). In many such cases, however, courts have based their approval upon the fact that one individual member of the proposed group, even standing alone, had a greater financial interest than any other proposed lead plaintiff. See Bruce 2012 WL 5927985 at *2; see also Doherty v. Pivotal Software, Inc., No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019); Robb v. Fitbit Inc., No. 16-CV-00151-SI, 2016 WL 2654351, at *5 (N.D. Cal. May 10, 2016); McCracken v. Edwards Lifesciences Corp., No. 813CV1463JLSRNBX, 2014 WL 12694135, at *3 (C.D. Cal. Jan. 8, 2014). Such courts have also made findings, supported by evidence, that particular investor groups appear well-suited to cooperatively oversee class litigation and counsel. See, e.g. Doherty, 2019 WL 5864581 at *6.

The circumstances here are distinguishable. None of the IIG's individual member's losses exceed that of the Pension Fund. Indeed, two of the three members' combined losses (the Iron Workers Council and the Carpenters Fund) do not exceed those of the most-affected third member (Plymouth County), let alone those of the Pension Fund. Furthermore, as in Crihfield, the IIG members' Joint Declaration raises more questions than it answers. See Crihfield, 2016 WL 10587938 at *4. As an initial matter, the Joint Declaration indicates that any potential disagreements among the IIG's members will be resolved by majority vote, raising the possibility that litigation decisions will be driven by two investors (the Iron Workers Council and the Carpenters Fund) with relatively small financial interests at stake. And, as in Crihfield, the Joint Declaration provides no explanation why the IGG has chosen to retain two separate law firms. Moreover, as in

Crihfield, the Joint Declaration indicates that there was no pre-existing relationship between the IGG members, and that the IGG only came into being with the facilitation of one of Plymouth County's two law firms, which had already been in independent discussions with each IGG member. Thus, as in Gemstar, Crihfield, and other cases, to allow the IGG to aggregate its members' losses would be to undermine the PSLRA's objective of preventing lawyer-driven litigation. See Gemstar, 209 F.R.D. at 451.

Notwithstanding Gemstar and similar cases, IGG contends that a more recent trend of authority has "endorsed the appointment of small, cohesive groups of institutional investors ...." (IGG Corrected Reply at 4:6). Courts have indeed recognized that, "[i]n enacting the PSLRA, Congress unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors." Knisley v. Network Assocs., Inc., 77 F. Supp. 2d 1111, 1115–16 (N.D. Cal. 1999) (internal quotation marks and citation omitted); see also Lloyd v. CVB Fin. Corp., No. CV1006256MMMPJWX, 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) ("By emphasizing financial stake, the Reform Act establishes a preference that sophisticated institutional investors direct the course of securities cases."); Tumolo v. Cymer, Inc., No. 98-CV-1599 TW (POR), 1999 WL 1567741, at *2 (S.D. Cal. Jan. 22, 1999) ("One of the primary purposes of the lead plaintiff provisions of the PSLRA was to encourage a meaningful investor with a substantial stake in the litigation, preferably a large institutional investor, to initiate and control the litigation (and the lawyers who are behind it)."). Several of the decisions IGG identifies, however, did not involve institutional investors. See Takeda v. Turbodyne Techs., Inc., 67 F. Supp. 2d 1129, 1135 (C.D. Cal. 1999); Perrin v. Sw. Water Co., No. 208CV7844FMCAGRX, 2009 WL 10654690, at *3 (C.D. Cal. Feb. 13, 2009). Others resulted in the appointment of a group as lead plaintiff in the absence of any opposition. Deora v. NantHealth, Inc., No. CV1701825BROMRWX, 2017 WL 3084161, at *2 (C.D. Cal. May 31, 2017); In re Herbalife, Ltd. Sec. Litig., No. CV142850DSFJCGX, 2014 WL 12586789, at *1 (C.D. Cal. July 30, 2014); Morris v. Smith Micro Software Inc., No. SACV110976AGANX, 2011 WL 13228040, at *1 (C.D. Cal. Oct. 17, 2011). The court in In re Snap Inc. Securities Litigation selected an investor group over a governmental entity largely because it appeared that the latter may have lacked standing and statutory authority to bring suit in the first instance. In re Snap Inc. Sec. Litig., No. 217CV03679SVWAGR, 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019). And in In re

Aqua Metals Securities Litigation, No. 17-CV-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018), the court appointed a group comprised of Plymouth County and a private company over the opposition of two separate individual investors, not institutional investors. The facts of these cases differ significantly from those here, where several smaller institutional investors seek to aggregate their interests to exceed those of, and against the opposition of, a single, large, institutional investor with financial interests greater than those of any other single investor, institutional or otherwise. IGG does not appear to identify, nor is the court aware of, any instance in which a court in this circuit has aggregated the financial interests of a group of smaller investors under similar circumstances. Absent any such authority, or compelling reason why a group of three smaller investors would better serve the interests of the class than a single, large, institutional investor, this Court concludes that the Pension Fund has the largest financial interest in the relief sought.

B. Adequacy and Typicality under Rule 23

**\*4** Having determined which putative lead plaintiff has the greatest financial stake in the outcome of the case, the court "must then focus its attention on *that* plaintiff and determine, based on the information [it] has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.' " Cavanaugh, 306 F.3d at 730 (footnote omitted) (emphasis original). "For the purposes of a motion for appointment as lead plaintiff, a proposed lead plaintiff must only make a preliminary showing that he or she satisfies the requirements of Rule 23(a)." In re Advanced Tissue Scis. Sec. Litig., 184 F.R.D. 346, 349 (S.D. Cal. 1998); see also Ferreira v. Funko, Inc., No. 220CV02319VAPPJWX, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020) ("The Ninth Circuit has determined that this inquiry is largely limited to determining whether the plaintiff has demonstrated he satisfies the 'typicality' and 'adequacy' requirements of Fed. R. Civ. P. 23(a)."); Lloyd, 2011 WL 13128303, at *5 ("A wide-ranging analysis under Rule 23 is not appropriate at the initial stage of the litigation and should be left for consideration on a motion for class certification.") (internal quotation marks, alterations, and citation omitted)).

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of

the class. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. The test of typicality is whether other members have the same or similar injury ...." [Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)](#) (internal quotation marks omitted) (citations omitted). Here, the Pension Fund, like absent class members, allegedly purchased Green Dot securities whose value was artificially inflated by Defendants' misrepresentations. And, like other class members, the Pension Fund allegedly suffered losses when subsequent revelations resulted in a drop in the price of Green Dot shares. The Pension Fund, therefore, appears to satisfy the typicality requirement of [Rule 23(a)](#).

The adequacy of representation requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." [Fed. R. Civ. P. 23(a)(4)](#). This requirement is primarily concerned with "the competency of class counsel and conflicts of interest." [Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 158 n.13 (1982)](#). Thus, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" [Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011)](#) (internal quotation marks and citation omitted). The Pension Fund's submissions indicate that the Pension Fund would vigorously pursue recovery on behalf of the entire class, and suggest no conflicts of interest on the part of the Pension Fund or its counsel, which appears to be both competent and highly experienced. The Pension Fund, therefore, also appears to satisfy the adequacy requirement.

This is not, however, the end of the court's inquiry. IGG may "rebut the presumptive lead plaintiff's showing that it satisfies [Rule 23](#)'s typicality and adequacy requirements." [Cavanaugh, 306 F.3d at 731](#). To do so, however, IGG must provide "proof" that the Pension Fund will not adequately protect the interests of the class or is subject to unique defenses. [15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)](#); see also [Cavanaugh, 306 F.3d at 729 n.2](#) ("That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption may be rebutted only upon proof ....") (internal quotation marks omitted)).

**\*5** IGG has not submitted any proof sufficient to rebut the Pension Fund's showing of adequacy or typicality. Although IGG initially appears to have suggested that the Pension Fund may be vulnerable to a unique defense related to the timing of its share sales (Dkt. 45 at 9.), IGG later clarified that it "never suggested that in-and-out purchasers do not have valid claims. Rather, [IGG] simply argued ... that [IGG] is a particularly adequate group ... ."[1] (Dkt. 56 at 2.) The Ninth Circuit, however, has expressly forbidden courts from engaging in such a comparative analysis. "Once ... the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements. That the district court believes another plaintiff may be ... 'more adequate' is of no consequence." [Cavanaugh, 306 F.3d at 732](#). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." Id. This Court will not, therefore, consider whether IGG would be a "more adequate" plaintiff than the Pension Fund, and IGG has not proved that the Pension Fund is an inadequate or atypical lead Plaintiff.

## IV. Conclusion

For the reasons stated above, the Pension Fund's Motion for Appointment as Lead Plaintiff is GRANTED. All other motions for appointment as lead plaintiff are DENIED. The court appoints the Pension Fund lead Plaintiff and approves its selection of Robbins Geller as class counsel.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 3473975

Footnotes

1    In any event, the fact that the Pension Fund's losses are based on partial disclosures appears to be neither unique (Dkt. 25-5) nor disqualifying. See, e.g., at [Maiman v. Talbott, No. SACV090012AGANX, 2009 WL 10675075, at \*3 (C.D. Cal. Sept. 14, 2009)](#). In re Snap is not directly contrary. There, although the court did mention the possibility of atypicality, the court (1) did not cite to any in-circuit authority finding an in-and-out trader atypical, (2) recognized that courts within the circuit have concluded that such a trading pattern does not render a plaintiff atypical, and (3) most importantly, based

its atypicality finding primarily on the fact, discussed above, that the putative governmental entity plaintiff in question possibly lacked standing and statutory authority to bring suit in the first instance. In re Snap, 2019 WL 2223800, at *3.

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---