**IN THE UNITED STATES DISTRICT COURT**
<u>**FOR THE DISTRICT OF MARYLAND**</u>
*Southern Division*

| | | |
|---|---|---|
| **PALM TRAN, INC. – AMALGAMATED TRANSIT UNION LOCAL 1577 PENSION PLAN,** | * | |
| | * | |
| *–Individually and on Behalf of All Others Similarly Situated–* | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | | **Case No.: PWG-21-955** |
| | * | |
| **EMERGENT BIOSOLUTIONS INC.** *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| **ALAN I. ROTH,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Case No.: PWG-21-1189** |
| **EMERGENT BIOSOLUTIONS INC.** *et al.*, | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| **STEPHEN M. WEISS** | * | |
| **Plaintiff,** | * | |
| v. | * | **Case No.: PWG-21-1368** |
| **EMERGENT BIOSOLUTIONS INC.** *et al.*, | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Before me are three federal securities class action lawsuits brought against Emergent BioSolutions Inc. ("Emergent") and Individual Defendants—Robert G. Kramer, Sr., Richard S. Lindahl, and Syed T. Husain—for violations of Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). The Complaints in the three actions allege that Emergent and certain of its officers defrauded investors in violation of the Exchange Act, and the disclosure of the alleged fraud caused the prices of Emergent securities to fall sharply, resulting in Plaintiffs' losses.

A series of motions have been filed seeking to consolidate the cases, appoint a lead plaintiff, and select lead counsel. *See* Summary of Motions Documents (with ECF Nos. in each case) on page 5.[1] I have reviewed the motions and related filings and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, I shall consolidate the cases, appoint Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System as Lead Plaintiffs, and approve the group's selection of Pomerantz LLP as Lead Counsel and its selection of Cohen Milstein Sellers & Toll PLLC as Liaison Counsel.

## BACKGROUND

### I.     Factual Background

Emergent is a Maryland-based biopharmaceutical company that provides products and solutions to address public health threats, including manufacturing services for vaccines and antibody therapeutics. Compl. ¶¶ 2, 20, ECF No. 1.

During the COVID-19 pandemic, the United States government funded Operation Warp Speed to encourage rapid development, manufacturing, and distribution of COVID-19 vaccines,

---

[1]     For ease of reference herein, I shall refer only to the document ECF numbers in the first-filed case, PWG-21-955, unless otherwise noted.

and Emergent was awarded approximately $628 million to reserve manufacturing space and upgrade its facilities at its Baltimore site. *Id.* at ¶¶ 2, 21. Emergent also signed agreements with Johnson & Johnson ("J&J") and AstraZeneca worth a combined $875 million to provide large-scale manufacturing facilities to support the rapid supply of their vaccine doses to the public once they had been developed and approved. *Id.* Upon the announcements of these deals, Emergent's stock soared to new levels, peaking at over $134 per share on August 13, 2020. *Id.* at ¶ 4. Emergent touted its manufacturing expertise and its emphasis on quality control. *Id.* at ¶¶ 3, 23-28.

However, Plaintiffs allege that Emergent failed to disclose "myriad issues at its Baltimore facility that would detrimentally affect its ability to manufacture the vaccine." *Id.* An FDA inspection revealed "a host of problems." *Id.* at ¶ 4. On March 31, 2021, a media report revealed that Emergent employees had "mixed up" ingredients resulting in the contamination of up to 15 million doses of the J&J vaccine. *Id.* at ¶¶ 5, 30-31. It also was reported that millions of AstraZeneca vaccine doses had to be discarded due to spoilage by contamination. *Id.* at ¶ 7, 30-31, 36. Reports also revealed that these were not isolated incidents, but part of a history of issues at the Baltimore plant. *Id.* at ¶¶ 5-7, 32, 36. In response, the government placed J&J in charge of the plant, prohibited it from producing the AstraZeneca vaccine, and as of April 2021, no doses of COVID-19 vaccines produced were released by the FDA for distribution. *Id.* at ¶¶ 7, 33.

Unsurprisingly, as a result of this news, Emergent's stock[2] price fell from a close of $92.91 per share on March 31, 2021 to close at $78.62 on April 5, 2021. *Id.* at ¶¶ 8, 34. These lawsuits

---

[2]     Emergent's common stock is traded on the New York Stock Exchange under the symbol "EBS." Compl. ¶ 15.

followed, alleging that Emergent and various executives had made false or misleading statements with material omissions.

## II.     Procedural Background

On April 19, 2021, Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan, individually and on behalf of others similarly situated, filed suit against Emergent, its President and CEO, Robert Kramer Sr., its CFO, Richard Lindahl, and its Senior Vice President and Head of the Company's CDMO[3] business unit, Syed Husain.  PWG-21-955.  On May 14, 2021, Alan Roth, a Kentucky investor, filed a putative class action suit against the same Defendants.  PWG-21-1189.  And on June 2, 2021, an Emergent stockholder from Florida, Stephen Weiss, filed a putative class action suit against the same Defendants.  PWG-21-1368.

On June 18, 2021, Grand Slam Asset Management, LLC moved to consolidate the three related actions, and proposed that it be the lead plaintiff.  ECF No. 13.  On the same day, Mr. Weiss also moved to consolidate the three cases, and proposed himself as lead plaintiff.  ECF No. 14.  Three more motions were filed on June 21, 2021, requesting consolidation and appointment of a lead plaintiff.  ECF Nos. 15, 16, 18. Movants and proposed lead plaintiffs were Lawrence Edlund (ECF No. 15), the group of Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirements System ("NS-FL Group") (ECF No. 16), and the group Western Pennsylvania Funds, comprised of Western Pennsylvania Electrical Employees Insurance Trust Fund and Western Pennsylvania Electrical Employees Pension Fund (ECF No. 18).

Following the filing of the NS-FL Group's and Western Pennsylvania Funds' motions, Mr. Weiss withdrew his motion, ECF No. 31, and Grand Slam Asset Management and Mr. Edlund

---

[3]     Contract Development and Manufacturing Organization ("CDMO").  Compl. ¶ 2.

both filed notices of non-opposition to the competing motions, ECF Nos. 32, 33. The two remaining competing movants for lead plaintiff—NS-FL Group and Western Pennsylvania Funds—responded to each other's motions and they are now fully briefed and ready for review.

**Summary of Motions Documents (with ECF Nos. in each case)**

| Motions & related documents | Palm Tran (21-955) | Roth (21-1189) | Weiss (21-1368) |
|---|---|---|---|
| Motion Consolidate & Appoint Lead - Grand Slam | 13 | 7 | 10 |
| Notice of Non-opposition to competing motions | 32 | 10 | 15 |
| Motion Consolidate & Appoint Lead - Weiss | 14 | | 9 |
| Withdrawn due to competing motions | 31 | | 14 |
| Motion Consolidate & Appoint Lead - Edlund | 15 | | |
| Notice of Non-opposition to competing motions | 33 | | |
| **Motion Consolidate & Appoint Lead – NS-FL Group** | **16** | 8 | 11 |
| Opposition by Western Pennsylvania Funds | 34 | | |
| Reply & Opp to Western Pennsylvania Funds Motion | 37 | 11 | 16 |
| Reply | | 12 | 17 |
| **Motion Consolidate & Appoint Lead - Western Pennsylvania Funds** | **18** | | |
| Opposition by NS-FL Group | 35 | | |
| Reply | 36 | | |
| Supplemental Correspondence from NS-FL Group | 38 | | |
| Supplemental Authority from Western Pennsylvania Funds (*Koffsmon*) | 39 | | |
| Supplemental Authority response from NS-FL Group | 40 | | |

## DISCUSSION

The Private Securities Litigation Reform Act (the "PSLRA") dictates the procedures a court must follow in resolving these motions. Under the statute, the court's first task is to address any motions for consolidation. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). After that, the court may appoint

a lead plaintiff (an action the statute directs the court to take "[a]s soon as practicable") and approve the selection of counsel. *See id.*  I shall proceed in that order.

## I.     Consolidation

The principles governing the consolidation of securities fraud suits "are found not in the PSLRA, but in Rule 42" of the Federal Rules of Civil Procedure.  *In re MicroStrategy Inc. Secs. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000).  Rule 42 gives a court discretion to consolidate actions that "involve a common question of law or fact."  Fed. R. Civ. P. 42(a)(2).  In exercising this discretion, the court "must consider the interest of judicial economy as well as the interest of the parties in a fair and impartial procedure."  *In re MicroStrategy Inc. Secs. Litig.*, 110 F. Supp. 2d at 431.  In that regard,

> courts considering whether to order consolidation must determine whether "the specific risks of prejudice and possible confusion from consolidation are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned."

*Id.* (quoting *Arnold v. Eastern Air Lines Inc.,* 681 F.2d 186, 193 (4th Cir. 1982)).  The PSLRA also contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed."  15 U.S.C. § 78u-4(a)(3)(A)(ii).

Five separate motions were filed seeking consolidation of the three cases, and there have been no filed responses in opposition to consolidation.  The three actions assert claims against the same Defendants and involve common questions of both law and fact. For example, the Plaintiffs in each case allege that Emergent materially misrepresented or failed to disclose the company's issues with quality control and data integrity and the history of manufacturing problems at the

Baltimore plant.  The consolidation of these cases will avoid unnecessary delay in administering and litigating the same issues, and promote judicial economy "to secure the just, speedy, and inexpensive determination" of each action.  Fed. R. Civ. P. 1.  And it will eliminate the unavoidable additional cost and delay that proceeding with multiple lawsuits involving such clearly related factual and legal issues would impose on the parties. While there are some minor differences in class periods,[4] such differences do not defeat consolidation, especially where, as here, the securities fraud actions "are based on the same public statements and reports." *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003).

Additionally, since no putative class members have raised concerns that consolidation might prejudice them, I find no reason to keep the suits separate.  Therefore, I shall consolidate the three actions.

## II.     Appointment of Lead Plaintiff

The PSLRA instructs the district court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Under the statute, the court must adopt a presumption that the "most adequate plaintiff" (in PSLRA parlance) "is the person or group of persons that—

> (aa) has either filed the complaint or made a motion in response to a [PSLRA] notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[4]      The *Roth* and *Weiss* cases reference a broader class period of April 24, 2020 through April 16, 2021, whereas *Palm Tran* alleges a class period of July 6, 2020 through March 31, 2021.

*Id.* § 78u-4(a)(3)(B)(iii)(I). To rebut this presumption, a movant must show that the presumptively most adequate plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

Here, two movants remain in contention for lead plaintiff: the Western Pennsylvania Funds and the NS-FL Group. Both filed motions in response to the PSLRA notice. What remains to be determined is which of the two "has the largest financial interest in the relief sought by the class," and whether that person or group "otherwise satisfies" the Rule 23 requirements. *Id.* § 78u-4(a)(3)(B)(iii)(bb )-(cc).

The PSLRA itself does not define the proper way to determine which movant has the "largest financial interest in the relief sought." In the absence of a statutory directive, many courts have applied a four-factor test (the *Lax* factors): (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See* 7 William B. Rubenstein, Newberg on Class Actions S 22:42 (5th ed. 2017); *see, e.g.*, *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 127-28 (S.D.N.Y. 2011). The fourth factor is widely considered the most important. *See Foley*, 272 F.R.D. at 128.

At this stage of proceedings, courts generally adopt the longest and most inclusive of the possible class periods for the purposes of assessing financial interest and appointing a lead plaintiff. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("For the purposes of [the lead plaintiff] analysis, we use the longer class period with the earlier start date."); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) ("[C]ourts usually . . . use the most inclusive class period and select as lead plaintiff the

movant with the largest financial interest under that period"). Accordingly, I will use the class period defined in the *Roth* and *Weiss* cases, i.e., April 24, 2020 through April 16, 2021.

The Western Pennsylvania Funds—Western Pennsylvania Electrical Employees Insurance Trust Fund and Western Pennsylvania Electrical Employees Pension Fund—assert that although they are two legally distinct entities, they are "essentially one person for purposes of the Reform Act." ECF No. 36 at 2 (citing *Aronson v McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal. 1999)). They submitted a single Certification executed by a single individual, certifying that they suffered approximately $237,384 in losses, which they assert represents the "largest financial interest." ECF No. 19 at 6. The Western Pennsylvania Funds argue that the competing NS-FL Group is an artificial group and should be disqualified from appointment because they had no pre-existing relationship, are based in two different countries, and combine for the sole purpose of aggregating their claims. ECF No. 34 at 2 (citing *In re Cloudera, Inc. Secs. Litig.*, Case No. 19-CV-03221-LHK, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019)). Post-briefing, the Western Pennsylvania Funds also brought a recent case to my attention that they argue  supports their motion because the court in that case "declined to appoint as lead plaintiff a group of smaller institutional investors who sought to aggregate their financial interests so as to claim the largest financial interest, and instead appointed the institutional investor with the single largest loss." ECF No. 39 (citing *Koffsmon v Green Dot Corp.*, Case No. CV 19-10701 DDP (Ex), 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021)).

The NS-FL Group—Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System—argue that they are sophisticated institutional investors that have formed a cohesive partnership that is typical of groups routinely appointed to lead PSLRA actions, and they assert that their collective incurred losses were

$285,632, which is greater (but not by much) than the Western Pennsylvania Funds' losses. The NS-FL Group asserts that they also have the largest number of retained shares—17,137 compared to Western Pennsylvania Funds' 5,330. They further argue that both groups are comprised of distinct legal entities, and if no groups are recognized, Nova Scotia Health Employees' Pension Plan, individually, has the greatest financial interest with losses of $190,726. ECF No. 40.[5]

The PSLRA permits a "person or *group of persons*" to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (emphasis added). Importantly, although there are examples of district courts disqualifying so-called "artificial groups" from appointment as lead plaintiffs, the most appropriate timing for such analysis is under the Rule 23 adequacy analysis rather than when determining the movants' financial interest in the litigation. *See, e.g.*, *In re Cloudera, Inc. Secs. Litig.*, 2019 WL 6842021, at *5-6 (calculating the financial interest for each movant, even if the movant was a group, and then analyzing whether the Rule 23 requirements were satisfied by the group); *Xu v. FibroGen, Inc.*, Case No. 21-cv-02623-EMC2021 WL 3861454, at *8 n.15 (N.D. Cal. Aug. 30, 2021) (disagreeing with *Koffsmon's* disaggregation approach and noting that the Ninth Circuit discusses considerations relevant to artificial groups as part of its adequacy analysis); *see also In re Sequans Commc'ns S.A. Secs. Litig.*, 289 F. Supp. 3d 416, 423 (E.D.N.Y. 2018) ("The majority of courts permit unrelated investors to join together as a group, and evaluate a motion to do so on a case-by-case basis, evaluating whether the grouping best serves the interest

---

[5] I note that if I were to consider only individuals, then, based on all movant's self-reported losses, Lawrence Edlund appears to have the largest individual loss at $291,707.39, and Grand Slam Asset Management LLC reported the second largest individual loss at $203,683.56. *See* ECF Nos. 13-5, 14-4, 15-5, 16-4, 20-3. But these movants filed a non-opposition to the competing motions, recognizing that the PSLRA does not limit the selection of lead plaintiffs to only individuals. ECF Nos. 32, 33.

of the class."); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 n.3 (2018) (noting that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups," in PSLRA actions).

Accordingly, I find that the NS-FL Group has the largest financial interest, and now proceed to review whether it has "stated a prima facie case of typicality and adequacy" as required by Rule 23(a). *In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3rd Cir. 2001). A district court should not consider other putative class members' arguments at this stage; those arguments, according to the *Cendant* court, are more appropriately considered under § 78u-4(a)(3)(B)(iii)(II), when the district court reviews the evidence offered to rebut the presumption. *See id.* at 264. Accordingly, in assessing the NS-FL Group's entitlement to the presumption, I limit my review to "the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Id.*

There does not appear to be any question that the NS-FL Group's claims are typical of the class's claims. The sole question, then, is whether the NS-FL Group will fairly and adequately protect the class's interests. Certainly, NS-FL Group has the same incentive as any other putative class member does to vigorously represent the class's claims. There is no conflict between the group's claims and those asserted on behalf of the class. The two members of the NS-FL Group submitted a joint declaration attesting to their discussions with one another and with counsel regarding their joint motion, their understanding of their responsibilities, and their readiness to take on those responsibilities. ECF No. 16-6. Because NS-FL Group is a group of unrelated investors, I must consider whether it "will be able to function cohesively to monitor counsel and make critical litigation decisions." *In re Cloudera, Inc. Secs. Litig.*, 2019 WL 6842021, at *6. Here, each of the two members of the group is a sophisticated institutional investor that had a pre-litigation relationship with their counsel even if not with each other. ECF No. 16-2 at 20. Not

11

having a pre-litigation relationship does not disqualify a group, and the parties here represent that they chose to work together based on their "mutual shared interests in maximizing the Class's recovery." ECF No. 16-2 at 20; *see, e.g.*, *In re Sequans Commc'ns S.A. Secs. Litig.*, 289 F. Supp. 3d at 424 ("Nothing in the PSLRA requires such a relationship . . . ."); *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 24 (D. Mass. 2000) ("It is not necessary that proposed lead plaintiffs have a pre-litigation relationship[.]"); *Rice v. Genworth Fin. Inc.*, Civil Action No. 3:17cv59, 2017 WL 3699859, at *13 (E.D. Va. 2017) (same). The two members declared that they are able to work together to jointly fill the lead plaintiff role, and before filing their motion, they discussed how they would facilitate future communication and collaboration, including active joint review and monitoring. ECF No. 16-7 at 2. In addition, Nova Scotia Health Employees' Pension Plan provided examples of its prior ability to pursue securities fraud claims while supervising its choice of counsel. ECF No. 16-2 at 11-12, 18-10.

Accordingly, I conclude that NS-FL Group has made the necessary prima facie showing of typicality and adequacy and is entitled to the presumption that it is the most adequate plaintiff. Having met the threshold determination, I shall now consider whether that presumption has been rebutted. *In re Cendant Corp. Litig.*, 264 F.3d 201 at 263-64.

Under the PSLRA, the presumption that a movant is the most adequate plaintiff "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive

lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job." *In re Cendant Corp. Litig.*, 264 F.3d at 268.

The Western Pennsylvania Funds have not met the burden of proof on this point. Its primary argument—that the two members of NS-FL Group are unrelated—has already been dealt with above in the discussion on adequacy. Western Pennsylvania Funds argues that it is a better candidate, but my task in appointing a lead plaintiff, is not to compare and contrast the relative merits of the two competing movants. *See id.* Both competing candidates appear well qualified to serve as lead plaintiff. But the record before me contains no proof that the NS-FL Group, as presumptive lead plaintiff, will not protect the class's interests or that it is subject to unique defenses that would make it incapable of providing adequate representation. Therefore, I shall grant NS-FL Group's motion to serve as lead plaintiff.

## III.    Selection of Lead Counsel

The PSLRA entitles the "most adequate plaintiff" to select and retain class counsel "subject to the approval of the court." 15 U.S.C. § 78u-4(a)(3)(B)(v). "The court has an obligation to assure that Lead Plaintiff's choice of representation best suits the needs of the class." *Johnson v. Pozen Inc.*, No. 1:07CV599, 2008 WL 474334, at *3 (M.D.N.C. Feb. 15, 2008). Whether the court accepts the lead plaintiff's choice of counsel is a matter of discretion. *See id.* In exercising its discretion, "a district court should approve plaintiff's choice of lead counsel based solely on that counsel's competence, experience, and resources . . . ." *In re MicroStrategy Inc. Secs. Litig.*, 110 F. Supp. 2d at 438.

The NS-FL Group has selected Pomerantz LLP as Lead Counsel and Cohen Milstein Sellers & Toll PLLC as Liaison Counsel for the putative class. Both firms are experienced in securities litigation and class actions. *See* ECF Nos. 16-8, 16-9. There is no question that the

firms are qualified to serve in their respective positions, and none of the movants have raised concerns regarding the capability of proposed counsel.   Accordingly, I am satisfied that selected counsel well suits the needs of the class, and NS-FL Group's choice of Pomerantz as Lead Counsel and Cohen Milstein as Liaison Counsel is approved.

**CONCLUSION**

For the foregoing reasons,

1. Motion of the Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System for Consolidation, Appointment as Lead Plaintiffs and Approval of Counsel (ECF No. 16 in PWG-21-955; ECF No. 8 in PWG-21-1189; and ECF No. 11 in 21-1368) is GRANTED;

2. Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel (ECF No. 18 in PWG-21-955) is GRANTED IN PART and DENIED IN PART; the Motion is granted with respect to consolidation of related actions but denied with respect to appointment as lead plaintiff and approval of selection of counsel;

3. Motion of Grand Slam Asset Management, LLC for (1) Consolidation of the Related actions; (2) Appointment as Lead Plaintiff and (3) Approval of Selection of Counsel (ECF No. 13 in PWG-21-955; ECF No. 7 in PWG-21-1189; ECF No. 10 in PWG-21-1368) is GRANTED IN PART and DENIED AS MOOT IN PART; the Motion is granted with respect to consolidation of related actions, but denied as moot with respect to appointment as lead plaintiff and approval of selection of counsel based on its Notice of Non-opposition to competing motions (ECF No. 32 in PWG-21-955; ECF No. 10 in PWG-21-1189; ECF No. 15 in PWG-21-1368);

4. Motion of Plaintiff Stephen M. Weiss for Appointment as Lead Plaintiff and Approval of his Selection of Lead and Liaison Counsel (ECF No. 14 in PWG-21-955; ECF No. 9 in PWG-21-1368) is DENIED AS MOOT based on his withdrawal of the motion (ECF No. 31 in PWG-21-955; ECF No. 14 in PWG-21-1368);

5. Motion of Lawrence Edlund to: (1) Consolidate Related Actions; (2) Appoint Lead Plaintiff; and (3) Approve Lead Plaintiff's Selection of Counsel (ECF No. 15 in PWG-21-955) is GRANTED IN PART and DENIED AS MOOT IN PART; the Motion is granted with respect to consolidation of related actions, but denied as moot with respect to appointment as lead plaintiff and approval of selection of counsel based on his Notice of Non-opposition to competing motions (ECF No. 33 in PWG-21-955);

6. The group of Nova Scotia Health Employees' Pension Plan and the City of Fort Lauderdale Police & Firefighters' Retirement System ("NS-FL Group") is appointed as Lead Plaintiff for the putative class;

7. Pomerantz LLP is appointed as Lead Counsel for the putative class;

8. Cohen Milstein Sellers & Toll PLLC is appointed as Liaison Counsel for the putative class; and

9. A separate order shall follow.

Dated: December 23, 2021.

                     /S/
                     Paul W. Grimm
                     United States District Judge