# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-PWG <br><br> <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: <br><br> All Actions | |

# MEMORANDUM OF LAW IN SUPPORT OF
## <u>LEAD PLAINTIFFS' MOTION TO PARTIALLY LIFT DISCOVERY STAY</u>

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 2

ARGUMENT............................................................................................................................ 4

     I.     Legal Standard ........................................................................................................ 4

     II.    Lead Plaintiffs Have Met Their Burden to Lift the PSLRA's Stay ........................ 5

          A.    Lead Plaintiffs' Motion Is Particularized Within the Meaning of the PSLRA ........................................................................................................ 7

          B.    Granting Lead Plaintiffs' Motion to Lift Stay Is Necessary to Preserve Evidence and to Prevent Undue Prejudice. .................................. 9

CONCLUSION.................................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Faulkner v. Verizon Commc'ns, Inc.*,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001)........................................................................................9

*In re Carnegie Int'l Corp. Sec. Litig.*,
  107 F. Supp. 2d 676 (D. Md. 2000) ...........................................................................................9

*In re Comdisco Sec. Litig.*,
  166 F. Supp. 2d 1260 (N.D. Ill. 2001) ......................................................................................9

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
  No. CCB–08–02854, 2012 WL 1067651 (D. Md. Mar. 28, 2012)........................................4, 5

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
  Nos. MDL-1446, Civ. A. H-01-3624, 2002 WL 31845114
  (S.D. Tex. Aug. 16, 2002)......................................................................................................7, 13

*In re FirstEnergy Corp. Sec. Litig.*,
  316 F. Supp. 2d 581 (N.D. Ohio 2004)....................................................................................13

*In re LaBranche Sec. Litig.*,
  333 F. Supp. 2d 178 (S.D.N.Y. 2004).......................................................................................13

*In re Mut. Funds Inv. Litig.*,
  No. MDL-15863, 2005 WL 549534 (D. Md. Mar. 7, 2005) ....................................5, 8, 10, 13

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  220 F.R.D. 246 (D. Md. 2004).......................................................................................... *passim*

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  MDL No. 02-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003)........................................7

*In re WorldCom, Inc. Sec. Litig.*,
  234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)..............................................................4, 6, 7, 9, 11

*Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*,
  917 F. Supp. 717 (S.D. Cal. 1996)............................................................................................10

*Mishkin v. Ageloff*,
  220 B.R. 784, 793 (S.D.N.Y. 1998)........................................................................................8, 9

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
  943 F. Supp. 2d 913 (E.D. Wis. 2013).....................................................................................13

*Seippel v. Sidley, Austin, Brown & Wood LLP*,
   No. 03 CIV. 6942, 2005 WL 388561 (S.D.N.Y. Feb. 17, 2005)...............................................13

*Singer v. Nicor, Inc.*,
   No. 02 Civ. 5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ...........................................13

*Waldman v. Wachovia Corp.*,
   No. 08 Civ. 2913, 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009)..................................................13

*Westchester Putnam Heavy & Highway Laborers Loc. 60 Benefit Funds v. Sadia
   S.A.*,
   No. 08 Civ. 9528, 2009 WL 1285845 (S.D.N.Y. May 8, 2009)................................................13

**Statutes**

15 U.S.C. § 78u-4 ....................................................................................................................1, 4, 5

Private Securities Litigation Reform Act................................................................................. *passim*

Securities Exchange Act of 1934......................................................................................................2

**Other Authorities**

H.R. Rep. No. 104–369, 104th Cong. 1st Sess. at 32 (1995), *reprinted in* 1995
   U.S.C.C.A.N. Sess. 731 ............................................................................................................4

Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), discovery in this action is stayed pending resolution of Defendants' motion to dismiss. Lead Plaintiffs Nova Scotia Health Employees' Pension Plan ("Nova Scotia") and City of Fort Lauderdale Police & Firefighter's Retirement System ("Fort Lauderdale" and, collectively with Nova Scotia, "Lead Plaintiffs") respectfully request that the Court partially lift the stay to allow Lead Plaintiffs to seek from Defendants: (1) all documents that Defendants have produced to government or regulatory agencies, including Congress, the Food and Drug Administration ("FDA"), the Department of Health and Human Services ("HHS"), the Biomedical Advanced Research and Development Authority ("BARDA"), and the Securities and Exchange Commission ("SEC"), or government-sponsored entities, like Operation Warp Speed ("OWS"), and correspondence with the same, with respect to investigations, audits, or inspections concerning the facilities of Emergent Biosolutions, Inc. ("Emergent"), including the Bayview facility; (2all documents pertaining to internal investigations or audits conducted by Defendants regarding quality control, regulatory compliance, and/or contamination risks or other deficiencies at Emergent's facilities including the Bayview facility; (3) unredacted versions of all documents cited in the 5/19/2021 Congressional Memorandum and the 5/10/2022 Congressional Report that were made publicly available in redacted form;[1] (4) all documents cited by the 5/10/2022 Congressional Report but not made publicly available; and (5) all relevant documents provided to the U.S. House of Representatives' Committee on Oversight and Reform and the Select Subcommittee on the

---

[1] While some of those documents have been made public through disclosure by Congress's investigation into Emergent BioSolutions, they feature heavy redactions. *See, e.g.*, Lead Plaintiffs' Motion for Judicial Notice (Dkt No. 77) and Memo (Dkt. No. 78) ("RJN") and RJN Exhibits 1–37 submitted therewith. To the extent Defendants or third parties are concerned that providing Lead Plaintiffs with unredacted versions of these documents would breach their confidentiality obligations, Lead Plaintiffs are amenable to entering into an appropriate confidentiality order.

Coronavirus Crisis (the "House Committees") by third parties Johnson & Johnson, AstraZeneca, the FDA, HHS, BARDA, or OWS.

Partially lifting the discovery stay in this circumstance is appropriate, necessary, and consistent with both this jurisdiction's precedent and the purpose of the PSLRA.

## BACKGROUND

Beginning on April 19, 2021, securities fraud class action litigation was filed against Defendants Emergent, Robert G. Kramer (Emergent's President and CEO), Richard S. Lindahl (its Executive Vice President, CFO, and Treasurer), and Syed T. Husain (its Senior Vice President and Head of Contract Development and Manufacturing) (collectively "Defendants" and, excluding Defendant Emergent, the "Individual Defendants"). *See* Dkt. No. 1. Multiple members of the putative class moved for consolidation and appointment of lead plaintiff and lead counsel pursuant to the PSLRA. Dkt. Nos. 13-16, 18.

On December 23, 2021, the Court consolidated the related pending cases and appointed Nova Scotia and Fort Lauderdale as Lead Plaintiffs, Pomerantz LLP as Lead Counsel, and Cohen Milstein Sellers & Toll PLLC as Liaison Counsel. Dkt. No. 44. On March 19, 2022, Lead Plaintiffs filed the First Amended Complaint ("FAC") alleging violations of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by all Defendants, and §20(a) of the Exchange Act by the Individual Defendants. Dkt. No. 54. The claims are brought by Lead Plaintiffs on behalf of all persons or entities that purchased or otherwise acquired Emergent common stock between March 10, 2020 and November 4, 2021, inclusive (the "Class Period").

Outside of this litigation, on May 19, 2021, the House Committees authored a memorandum on "preliminary findings from [their] investigation into" Defendants ("5/19/2021

Congressional Memo," submitted herewith as Exhibit 1). It is pled in FAC¶¶ 122-25 and available at the link provided in the Declaration of Matthew L. Tuccillo (the "Declaration") filed herewith. The 5/19/2021 Congressional Memo, revealed that the House Committees had launched an investigation, still ongoing, into "the lucrative contract Emergent received[,] the [C]ompany's failure to address manufacturing problems that led to the destruction of millions of desperately needed coronavirus vaccine doses, and large bonuses paid to top executives." Ex. 1 at 1. The House Committees issued a press release the same day,[2] which included links to 26 exhibits relied upon by the House Committees in authoring their 5/19/2021 Congressional Memo and cited therein. Among the exhibits are redacted FDA inspection reports regarding Emergent's facilities and Emergent's responses, documents related to regulatory approvals, supplies orders, purchase contracts, payment summaries, business performance presentations, and executive compensation memoranda.

On May 10, 2022, the House Committees released a second report entitled "The Coronavirus Vaccine Manufacturing Failures of Emergent BioSolutions" ("5/10/2022 Congressional Report," attached as Exhibit 2) with findings from their investigation referenced in Lead Plaintiffs' FAC, *see* ¶¶ 122, 306-08, and available at the link provided in the Declaration. Accompanying that report was a press release and a trove of underlying evidence, much, but not all, of which was publicly released in redacted form and accessible via links embedded within the report's footnotes. As the press release stated, "[t]he report present[ed] findings from the Committees' year-long investigation" and found, among many other things, that "nearly *400 million doses* of coronavirus vaccines – significantly more than previously known – were

---

[2]    https://oversight.house.gov/news/press-releases/clyburn-and-maloney-release-initial-findings-from-investigation-into-emergent

3

***destroyed because of Emergent's failure to meet or maintain quality standards at its Bayview manufacturing facility***. Internal communications reveal ***efforts by Emergent executives to hide evidence of contamination in an attempt to evade oversight from government regulators***." *See* RJN Exhibit 2. *See also* RJN at 20-30 (summarizing the 5/10/2022 Congressional Report).

On May 19, 2022, Defendants moved to dismiss the FAC. Dkt. No. 72. Pursuant to the PSLRA, discovery in this action is automatically stayed pending resolution of that motion. 15 U.S.C. § 78u-4(b)(3)(B).

On July 19, 2022, Lead Plaintiffs filed their Opposition to Defendants' motion. Dkt No. 81. The same day, Lead Plaintiffs also filed their RJN (Dkt. No. 78) asking the Court to judicially notice, in conjunction with their motion to dismiss opposition, the 5/10/2022 Congressional Report (RJN Exhibit 1), the accompanying press release (RJN Exhibit 2), and 35 of the underlying documents it made publicly available (in redacted form) (RJN Exhibits 3 through 37).

## ARGUMENT

### I.    Legal Standard

Under the PSLRA, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *Id.* "The purpose of the stay, according to the legislative history, is 'to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint.'" *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 249 (D. Md. 2004) (quoting *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)); *see also In re Constellation Energy Grp., Inc. Sec. Litig.*, No. CCB–08–02854, 2012 WL 1067651, at *3 (D. Md. Mar. 28, 2012); H.R. Rep. No.

104–369, 104th Cong. 1st Sess. at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. Sess. 731. (observing that the stay was "intended to prevent unnecessary imposition of discovery costs on defendants"). Such stay can be lifted, however, when "[a] court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B); *see also In re Constellation*, 2012 WL 1067651, at *3. Other courts in this District have granted motions to lift the PSLRA's stay in circumstances similar to those arising in this case, *see, e.g., In re Mut. Funds Inv. Litig.*, No. MDL-15863, 2005 WL 549534, at *1 (D. Md. Mar. 7, 2005), and this Court should do the same here.

## II.      Lead Plaintiffs Have Met Their Burden to Lift the PSLRA's Stay

Here, Lead Plaintiffs seek discovery of: (1) all documents that Defendants have produced to government or regulatory agencies, including Congress, the FDA, HHS, BARDA, and the SEC, or government-sponsored entities, like OWS, and correspondence with the same, with respect to investigations, audits, or inspections concerning the facilities of Emergent, including the Bayview facility; (2) all documents pertaining to internal investigations or audits conducted by Defendants regarding quality control, regulatory compliance, and/or contamination risks or other deficiencies at Emergent's facilities including the Bayview facility; (3) unredacted versions of all documents cited in the 5/19/2021 Congressional Memo and the 5/10/2022 Congressional Report that were made publicly available in redacted form; (4) all documents cited by the 5/10/2022 Congressional Report but not made publicly available;[3] and (5) all relevant documents provided to the House

---

[3]      The following documents underlying the 5/10/2022 Congressional Report fall under this category: AstraZeneca's letters to the House Committees dated 9/3/2021 (*e.g.*, FN 33, 44, 71), 11/5/2021 (*e.g.*, FN 1, 33, 40, 47, 49, 89), and 3/14/2022 (*e.g.*, FN 49, 50, 91); J&J's letters to the House Committees dated 8/13/2021 (*e.g.*, FN 45), 11/1/2021 (*e.g.*, FN 50, 88), and 3/3/2022 (*e.g.*, FN 50, 81, 88, 91); FDA's written responses to House Committee letter on 11/21/2021 (*e.g.*, FN 79); email to the House Committees by HHS on 3/10/2022 (*e.g.*, FN 83); a teleconference with **Emergent** and the House Committees on 4/20/2022 (*e.g.*, FN 80, 83); and documents related to and memorializing briefings given to the House Committees by AstraZeneca on 7/20/2021 (*e.g.*, FN 10, 14, 43, 47, 55, 58, 60, 64), by J&J on 7/21/2021 (*e.g.*, FN 10, 14, 45, 47, 48, 59, 61, 75), by FDA on 9/2/2021 (*e.g.* FN 35, 52, 65, 70, 75, 77, 78), by BARDA on 11/23/2021 (*e.g.*, FN 84), and by **Emergent** on 9/14/2021 (*e.g.*, FN 57, 58).

Committees by third parties Johnson & Johnson, AstraZeneca, FDA, HHS, BARDA, or OWS.[4] This request is particularized because it seeks a "clearly defined universe of documents." *See WorldCom*, 234 F. Supp. 2d 306. Lead Plaintiffs seek only those document collections that *already exist* in readily obtainable form. The two categories with the greatest number of documents (categories 1 and 5 above) consist of documents already produced to a receiving party, meaning that they were already identified, reviewed for relevance, privilege-screened, Bates-stamped, and disseminated, such that discovery by Lead Plaintiffs requires little more than re-transmission of the production set. The other categories consist of discreet, easily identified document sets in the possession of either Emergent (category 2) or the House Committees (categories 3 and 4).

Moreover, this request is justified for three reasons. First, the myriad ongoing investigations by other entities not subject to the PSLRA's discovery stay potentially prejudices Lead Plaintiffs by giving Defendants an opportunity to settle other claims and iron out their legal strategy while leaving Lead Plaintiffs behind. Second, Defendants' ongoing corporate reshuffling exposes Lead Plaintiffs to a risk of loss of the documents. Third, in connection with their 5/10/2022 Congressional Memo, the House Committees revealed many Emergent documents, particularly emails sent to or received from third parties like J&J or AstraZeneca, which were produced by those parties and not by Emergent, raising concerns over potential spoliation of evidence at Emergent or its level of cooperation in discovery.

*Royal Ahold* is instructive. There, plaintiffs in a multidistrict litigation sued a Dutch holding company and its executives for securities fraud based on a series of negative announcements and financial restatements. *Royal Ahold*, 220 F.R.D. at 247. The disclosure of

---

[4]    Clearly, the documents made public (in redacted form) by the House Committees are but a fraction of those actually produced during the investigation by Johnson & Johnson, AstraZeneca, FDA, HHS, and BARDA.

accounting irregularities ultimately forced the corporate defendant to restate its total earnings by billions of dollars, resulting in a precipitous decline in its stock price. *Id.* at 248-49.  There, the court lifted the PSLRA's discovery stay to allow particularized discovery of (1) documents that defendants had "produced to governmental, regulatory, or self-regulatory agencies," including legislative or executive branch officials of the United States government, the U.S. Attorney's Office, the SEC, and the New York Stock Exchange ("NYSE"), among others; and (2) the reports of various internal investigations conducted by defendants pertaining to their accounting practices. *Id.* at 249-50.[5]  The court granted plaintiffs' request, finding that the request was (1) adequately particularized; and (2) necessary both to preserve evidence and to prevent undue prejudice to the plaintiffs.  *Id.* at 250-52.  Lead Plaintiffs respectfully request this Court to so rule.

A.      **Lead Plaintiffs' Motion Is Particularized Within the Meaning of the PSLRA**

"[A] request for documents previously produced in connection with internal and external investigations is particularized within the meaning of the PSLRA." *Royal Ahold*, 220 F.R.D. at 250; *see also WorldCom*, 234 F. Supp. 2d 305; *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, Nos. MDL-1446, Civ. A. H-01-3624, 2002 WL 31845114, *2 (S.D. Tex. Aug. 16, 2002); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, MDL No. 02-1335-B, 2003 WL 23830479, at *1 (D.N.H. Jan. 29, 2003). Even motions to lift stays where large volumes of documents are sought do not necessarily fail the particularity standard.  *See, e.g.*, *Royal Ahold*, 220 F.R.D. at 250 (finding that a request for approximately one million pages does not necessarily defeat particularity; rather, "if

---

[5]      Although the *Royal Ahold* court denied plaintiffs' motion with respect to other defendants, that outcome is not dispositive here. For one, the defendants who defeated the motion were the *accountants* of the corporate defendants, and therefore plaintiffs' allegations of wrongdoing against them were weaker. *Id.* at 253.  For another, the court deemed the documents plaintiffs would recover from the granted motion to "most likely be sufficient." *Id.*

'particularized' is not synonymous with 'identifiable,' neither does it necessarily mean 'small'")

(quoting *Mishkin v. Ageloff*, 220 B.R. 784, 793 (S.D.N.Y. 1998)).[6]

In *Royal Ahold*, the court found that lifting the discovery stay to require the production of a large number of documents was appropriate given the size and complexity of that litigation. *See Royal Ahold*, 220 F.R.D. at 250 ("[I]n this case the complaint alone extends for 430 pages and alleges multibillion dollar accounting errors by a firm with operations on at least four continents."). The same is true here: the FAC in this action is nearly 225 pages and pleads a billion-dollar, multi-year, multi-prong fraud involving contract revenues in the billions of dollars associated with productions of pharmaceutical products in a regulated manufacturing facility to combat a once-a-century pandemic that has killed millions around the world.  If anything, the request here is more particularized than in *Royal Ahold*, where the request pertained to *any* investigatory documents.[7] Moreover, here, the production burden on Defendants and third parties is virtually non-existent. Lead Plaintiffs seek documents that with rare exception have already been identified, reviewed for relevance, privilege-screened, Bates-stamped, and produced (or at least circulated within the given party's agency or corporation) or documents in pre-existing, readily identified collections.

---

[6]     *See also In re. Mut. Funds Inv. Litig*, No. MDL-15863, 20005 WL 549534, at *1 (requiring defendants to produce "all documents they have provided to the SEC that the SEC has identified for use as exhibits during administrative depositions"; "all documents constituting or reflecting communications between [defendants] and regulatory agencies with regard to market timing or late trading"; "all damages reports, analyses, etc. that have been produced to regulatory agencies that relate to market timing or late trading"; "all documents relating to non-confidential communications with any independent distribution consultant (IDC), including investigative reports or reviews [defendants] have prepared, or that have been prepared on their behalf, concerning market timing or late trading"; "any release, settlement or other agreement"; and "all insurance policies").

[7]     The *Royal Ahold* request was slightly narrower than Lead Plaintiffs' request here in one regard: the *Royal Ahold* plaintiffs excluded from their request any "witness statements and interview notes" provided by defendants to government agencies. But that distinction is immaterial: plaintiffs in *Royal Ahold* made that exception because the government requested that they do so, not because it was necessary to meet the PSLRA's standard. *See id.* at 250 ("The plaintiffs' initial request made no exception for witness statements and interview notes, but they agreed to exclude those materials at the government's request.").

It is true that federal courts have denied requests to lift the PSLRA's stay of discovery, but only when said requests were functionally *unlimited*. *See, e.g.*, *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 684 (D. Md. 2000) ("the breadth of the discovery is so broad as to cover 'virtually every piece of paper and every piece of information at Grant Thornton relating to *no less than seventy-seven separate individuals and entities*'") (emphasis in original); *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 404-05 (S.D.N.Y. 2001) (seeking categorical lift of discovery stay); *Mishkin*, 220 B.R. at 793-95 (rejecting motion to lift stay for "documents and testimony" from defendants, customers, and third parties). But where, as here, the motion at issue describes a "clearly defined universe of documents," and the burden of producing the materials should be slight, considering that Defendants have previously produced them to other entities, courts regularly find the particularity requirement satisfied. *See WorldCom*, 234 F. Supp. 2d at 306; *Royal Ahold*, 220 F.R.D. at 250.

**B.     Granting Lead Plaintiffs' Motion to Lift Stay Is Necessary to Preserve Evidence and to Prevent Undue Prejudice.**

As to the second prerequisite to lift the PSLRA's stay – that doing so is necessary to preserve evidence or prevent undue prejudice – courts regularly interpret the PSLRA's broad language with an eye towards Congress's purpose in enacting that statute. *See, e.g.*, *Royal Ahold*, 220 F.R.D. at 250-51 ("[I]t makes sense to interpret the broad, undefined terminology of this provision in light of Congress's purposes in passing the PSLRA."); *WorldCom*, 234 F. Supp. 2d 306 ("Where, as here, plaintiffs are not in any sense engaged in a fishing expedition or an abusive strike suit and do not thereby act in contravention of the fundamental rationales underlying the PSLRA discovery stay … defendants cannot … bend [the PSLRA] to a purpose for which it was not intended."); *In re Comdisco Sec. Litig.*, 166 F. Supp. 2d 1260, 1263 (N.D. Ill. 2001) ("It is fair to read [the stay] exception (indeed the entire Subsection) in light of the … purposes that underlie

9

the [stay provision].”); *cf. Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 721 (S.D. Cal. 1996) (finding that “[t]he legislation by its terms does not carve out specific types of actions which will be exempt from the stay,” but noting that “the ‘undue prejudice’ exception contemplates an analysis of the facts and circumstances surrounding a request for an exception to the mandated discovery stay”). Thus, where a securities plaintiff’s case is “far from frivolous” – regardless of whether it ultimately proves meritorious – the “apparent strength of the plaintiffs’ case may factor in the court’s determination of the necessity of discovery under the PSLRA.” *Royal Ahold*, 220 F.R.D. at 251.

This case is “far from frivolous.” *Id.*  As summarized in the RJN at 1-17, Lead Plaintiffs exhaustively plead a billion-dollar, multi-year, multi-prong fraud, based on factual allegations drawn from Congressional reports; facility inspection reports by FDA, J&J, OWS, and others; confidential witness statements by 10 former employees; investigative reporting by *The New York Times*, *AP*, and others.  Lead Plaintiffs just filed a 55-page brief in opposition to Defendants’ motion to dismiss, evidencing the breadth of their arguments in favor of the pleadings.

Furthermore, the amount of litigation Defendants face outside of this action counsels in favor of granting Lead Plaintiffs’ motion. As the *Royal Ahold* court found, “[t]he most compelling reason for allowing the discovery” is defendants’ exposure to “numerous civil and criminal actions … none of which, save the securities claims, are subject to the PSLRA discovery stay.” *Id.* at 251. In *Royal Ahold*, that exposure created a key opportunity for prejudice to plaintiffs in “formulating their litigation and settlement strategy” because parties in the other matters could “proceed quickly to settlement negotiations” and because “delay in the resolution of the securities’ plaintiffs [*sic*] claims could limit their chances of recovery relative to other parties with claims of comparable, or even lesser, merit.” *Id.* at 252; *see also In re Mut. Funds Inv. Litig.*, No. MDL-15863, 20005 WL

549534, at *1 (finding denying access to key documents could cause undue prejudice to the lead securities plaintiff due to "its inability to make informed decisions about … [their] litigation strategy in a rapidly shifting landscape"); *Worldcom*, 234 F. Supp. 2d 305 (same).

So too, here.  The investigations into Emergent that exist outside this lawsuit are substantial and live.  In fact, the Complaint specifically pleads that these investigations are proceeding and emphasizes the significance of their ongoing nature both to support an alleged inference of scienter (¶¶122, 306-308) and demonstrate that discovery will only strengthen the claims (¶¶1, 72 n.3, 110 n.4, 117 n.9, 124(a) n.10, 124(b) n.11, 136 n.13, 201 n.16, 277).  Indeed, the 5/10/2022 Congressional Report, based on more recently discovered evidence from its ongoing *year-long* investigation, issued new findings that, among other things, Emergent had destroyed five times more doses of COVID vaccine than had been previously reported – nearly 400 million doses destroyed – and had actively sought to mislead regulators, J&J, and AstraZeneca as to the litany of deficiencies plaguing its facilities.  *See* Ex. 2.  Emergent likely faces a wide range of lawsuits over its underlying conduct, beyond the derivative action (No. 8:21-cv-00955-PWG) filed in parallel to this action.  Whatever insurance applies, it is undoubtedly being drained at a fast pace.

Under these circumstances, Lead Plaintiffs are at risk of tremendous prejudice if their claims are stalled by the PSLRA stay while other potentially interested parties are allowed to proceed.  Denying access to key documents would unduly prejudice Lead Plaintiffs due to "[their] inability to make informed decisions about [their] litigation strategy in a rapidly shifting landscape." *See Worldcom*, 234 F. Supp. 2d 305. Congress has the power to request further documentation, conduct hearings and investigations, and subpoena relevant entities and individuals.  The FDA can seize products and pursue individuals and entities responsible for misconduct.  The SEC can investigate misconduct, obtain injunctions and disgorgement of money

11

obtained by illegal activities, and seek civil penalties.  Private litigants unencumbered by the PSLRA stay may proceed through discovery and to a trial on their claims.  In summary, the other entities seeking to hold Defendants accountable for their alleged misconduct have powerful tools at their disposal – in addition to not being subject to the PSLRA stay of discovery – that Lead Plaintiffs lack at present.  Denying Lead Plaintiffs this limited, particularized discovery request in a legal landscape occupied by powerful legal entities actively pursuing investigations and claims would leave Lead Plaintiffs and members of the putative Class at a tremendous disadvantage in their pursuit to be made whole from the billion-dollar class-wide loss from their investments.

Moreover, here, the need to preserve evidence is considerable, given the instability at the top of Emergent's management.  Here, the FAC pleads that Defendant Husain, as well as Emergent's EVP for Manufacturing and Technical Operations who oversaw Bayview's manufacturing, and Emergent's Head of Global Quality all left in April 2021 – fifteen months ago. Fuad El-Hibri, Emergent's founder, retired as its Executive Chairman in earl April 2022 and passed away in early May 2022.  The Bayview facility at issue has been shut down multiple times since the beginning of the Class Period of this lawsuit, most recently in February 2022.  In *Royal Ahold*, the court found that the general state of the corporate defendant justified the partial lift of the PSLRA stay on evidence preservation grounds, *independent of concerns about prejudice against the securities plaintiffs*. The *Royal Ahold* court found that the defendant's corporate instability "add[ed] urgency to the discovery timetable" and "discovery of the previously produced documents … could help the plaintiffs identify other specific materials that may be at risk of loss." *Royal Ahold*, 220 F.R.D. at 251.

Moreover, in connection with their 5/10/2022 Congressional Memo, the House Committees revealed many Emergent documents, particularly emails sent to or received from third

12

parties like J&J or AstraZeneca. However, often, the copy of those documents relied on by the House Committees and publicly released (in redacted form) bears a Bates stamp not by Emergent, but by the *other* party to the communications, *i.e.*, J&J or AstraZeneca. These circumstances give rise to a *bona fide* concern as to either spoliation of evidence at Emergent or its non-cooperation with investigatory bodies and discovery obligations – or both. Lead Plaintiffs should not be the sole litigants bearing the risk of non-preservation of crucial evidence.

It is common practice for federal district courts to lift the PSLRA stay at the motion to dismiss stage to permit securities plaintiffs access to readily available documents. *See, e.g.*, *Royal Ahold*, 220 F.R.D. at 246; *In re Mut. Funds Inv. Litig.*, 2005 WL 549534; *see also Westchester Putnam Heavy & Highway Laborers Loc. 60 Benefit Funds v. Sadia S.A.*, No. 08 Civ. 9528, 2009 WL 1285845, at *1 (S.D.N.Y. May 8, 2009) (lifting the stay for production of internal investigation report); *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913 (E.D. Wis. 2013) (lifting the stay for documents produced to the SEC and in other proceedings); *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913, 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) (lifting the stay for production of documents already produced to state and federal authorities); *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004) (lifting the stay for documents produced to governmental entities); *Seippel v. Sidley, Austin, Brown & Wood LLP*, No. 03 CIV. 6942, 2005 WL 388561, at *1-2, *4 (S.D.N.Y. Feb. 17, 2005) (lifting the stay for production of documents already produced to the government); *Singer v. Nicor, Inc.*, No. 02 Civ. 5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (lifting the stay because plaintiffs would be disadvantaged if they did not have access to the documents previously provided to the government and other agencies); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (lifting the stay for documents already produced to SEC and NYSE); *In re Enron Sec.*

*Derivative & "ERISA" Litig.*, No. MDL 1446, H-01-3624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002) (lifting the stay as to materials already made available to numerous government agencies and others). Lead Plaintiffs respectfully ask the Court to follow this well-trodden path, by granting Lead Plaintiffs' motion and partially lifting the discovery stay.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs' motion should be granted.

Dated: July 20, 2022                            Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo (admitted *pro hac vice*)

Jeremy A. Lieberman (admitted *pro hac vice*)
J. Alexander Hood II (admitted *pro hac vice*)
Jennifer Banner Sobers (admitted *pro hac vice*)
Dolgora Dorzhieva (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
jbsobers@pomlaw.com
ddorzhieva@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Tel.: (310) 405-7190
jpafiti@pomlaw.com

***Lead Counsel for Lead Plaintiffs and the Class***

14

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
Brendan Schneiderman
(*pro hac vice* applications forthcoming)
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
bschneiderman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Stuart Kaufman
(*pro hac vice* applications forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Fort Lauderdale Police & Firefighter's Retirement System*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2022, I electronically filed the foregoing with the Clerk of

Court using the Court's CM/ECF system, which in turn sent notice to all counsel of record.


Dated:     July 20, 2022                                   /s/ *Matthew L. Tuccillo*
                                                           Matthew L. Tuccillo

16