IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

NOVA SCOTIA HEALTH EMPLOYEES'  )
PENSION PLAN, et al.,          )
                               )
          Plaintiffs,          )
                               )  Case Number: 8:21-cv-0955-PWG
          vs.                  )
                               )  Telephonic Hearing
EMERGENT BIOSOLUTIONS INC.,    )
et al.,                        )
                               )
          Defendants.          )

TRANSCRIPT OF PROCEEDINGS - STATUS CONFERENCE
BEFORE THE HONORABLE PAUL W. GRIMM
UNITED STATES DISTRICT JUDGE
TUESDAY, AUGUST 2, 2022; 3:05 P.M.
GREENBELT, MARYLAND

A P P E A R A N C E S

FOR THE PLAINTIFFS:

    POMERANTZ, LLP
        BY:  MATTHEW L. TUCCILLO, ESQUIRE
        BY:  BRANDON M. CORDOVI, ESQUIRE
        600 THIRD AVENUE, 20TH FLOOR
        NEW YORK, NY 10016
        (212) 661-1000

    COHEN MILSTEIN SELLERS and TOLL PLLC
        BY:  DANIEL STEPHEN SOMMERS, ESQUIRE
        BY:  S. DOUGLAS BUNCH, ESQUIRE
        1100 NEW YORK AVENUE NW, SUITE 500 EAST
        WASHINGTON, DC 20005
        (202) 408-4600
        (202) 589-2281

    ***Proceedings Recorded by Audio Recording***
    Transcript Produced By Computer-Aided Transcription

MARLENE KERR, RPR, RMR, CRR, FCRR
FEDERAL OFFICIAL COURT REPORTER
6500 CHERRYWOOD LANE, STE 200
GREENBELT, MARYLAND 20770
(301)344-3499

A P P E A R A N C E S
(continued)


FOR THE DEFENDANTS:

       MILES and STOCKBRIDGE, PC
               BY:   WILLIAM M. KRULAK, JR., ESQUIRE
               BY:   ARIANA K. DEJAN-LENOIR, ESQUIRE
               100 LIGHT STREET
               BALTIMORE, MARYLAND 21202
               (410) 385-3448
               (410) 385-3468

       WILMER CUTLER PICKERING HALE and DORR LLP
               BY:   ARJUN KENT JAIKUMAR, ESQUIRE
               BY:   KIM A. CROWLEY, ESQUIRE
               60 STATE STREET
               BOSTON, MASSACHUSETTS 02109
               (617) 835-2018
               (617) 526-6905

P R O C E E D I N G S

THE COURT:  All right.  Good afternoon, everybody. This is Judge Grimm -- (telephonic interruption).

All right, folks, this is Judge Grimm.  Let's go ahead and, first of all, find out who is on the call and will be speaking for the parties.

First of all, I want to find out whether the court reporter [sic] has been able to start the recording so that we have this status call on the record.

THE COURTROOM DEPUTY:  Yes, Your Honor.  It's recording.

THE COURT:  Okay.  All right, thank you so much.  I appreciate your help in this, and I know how busy you are today and that you're doing this on short notice, so I'm very grateful.

I also want to thank counsel for arranging their schedules to have this at 3 o'clock so that we could have it on the record rather than not having it on the record at 1 o'clock.

So who will be speaking today on behalf of the plaintiffs? I understand that there may be many people on the line.  I just need to know who is going to be speaking on behalf of the plaintiffs --

MR. TUCCILLO:  Good afternoon --

THE COURT:  -- the lead plaintiffs.

MR. TUCCILLO:  Good afternoon, Your Honor.  My name

is Matt Tuccillo. I am a partner of Pomerantz. My firm and I are lead counsel for the lead plaintiffs. I have other colleagues on the line, both from my firm and from our local counsel at Cohen Milstein who are available, you know, if and as needed to speak to specific things that they can, you know, uniquely talk about; but, otherwise, I'll be the one handling the conference process.

THE COURT: All right, thank you.

And for the defendants, please, who asked for this call.

MR. KRULAK: Yes. Thank you, Your Honor. This is Bill Krulak from Miles and Stockbridge. I am joined on the call by my colleague Ariana DeJan-Lenoir at Miles, and we also have two of the lead defense counsel from Wilmer Hale, Arjun Jaikumar and Kim Crowley.

One of the lead defense partners at Wilmer Hale, who has been managing this and other cases for the defendant, had a last-minute need to rearrange plans because of a COVID diagnosis with one of his children, and so he's dealing with that right now. So I will be speaking for the defendants.

THE COURT: All right. Thank you very much. And I hope that things work out well for the child. This is -- unfortunately, we still hear about these things happening at all time and it's -- we're not out of the woods yet.

All right. So it appears -- let me just start to make sure I know where things have moved forward with your

discussions as recently as, perhaps, yesterday evening and today.

I received from Allegra, my law clerk who is on the line here, a note that Mr. Tuccillo had contacted her and set forth four points where the parties have reached an agreement with regard to how to deal with the various motions and filings that are the subject of the letter that the defendants filed raising issues and asking for this conference call.  I don't need anybody to repeat what those four points are at this point.

I just want to make sure that -- Mr. Tuccillo, these are -- those four points are matters that you've discussed with defense counsel and are in agreement; is that correct?

MR. TUCCILLO:  Yes, Your Honor.  That's my understanding.  I also sent them an advance draft of the email prior to sending it to you.

THE COURT:  All right.

Mr. Krulak, is that consistent with your understanding, sir?

MR. KRULAK:  Yes, Your Honor.  We reviewed the draft email and had an exchange on that.  And then even after that email went out, Mr. Tuccillo and I had further discussions about various issues.

THE COURT:  All right, great.

So let me just say this:  When I reviewed all of these matters yesterday evening, I was pretty steamed.  I'm pretty

glad that we're talking today and not last evening.

What I was taking away from the filing last evening, and this is not where I am now, but I want you to understand the context in which I wanted to make sure we were all on the same page going forward, is as follows:  For well more than ten years, I have had a process in all of my cases, no matter how small or how large, to monitor and to have a fair amount of upfront involvement in the filing of motions.

Because with so few cases going to trial, unfortunately, what we have in civil litigation is motions practice, and when there is not discipline imposed by a court on how motions practice occurs, things start going haywire, and where we were last night was an example of that.

My pre-motion letter, which I file in all cases, is one that requires before a party file a motion that deals with a substantive issue, that there be a letter that sets forth the proposed motion and the justification for it so I can review it before a motion is filed, look at it, decide whether I need to get a written response from opposing counsel, or whether I should just schedule a call, talk about it, and then, based upon that conversation, if the issue has not been resolved or narrowed, to be able to then issue an order that sets out how the briefing will occur and how the memoranda will be handled, the page limits, handling of exhibits, and the necessary filing for the Court so that there is a hard copy for myself and my

law clerks to deal with.

Now, the initial request that Mr. Krulak filed was his belief that the plaintiffs' filing, the motion for the Court to take judicial notice of a fairly significant number of documents, with its accompanying 30-plus-page memorandum, when combined with the opposition to the motion for dismissal, which was filed by the defendants according to the revised schedule -- there were three or so revisions to that filing schedule -- amounted to something that came close to having nearly nine [sic] pages of memoranda in support of an opposition to a 39-page motion to dismiss.

And the plaintiffs responded by saying that they didn't construe my motion as -- their motions as requiring that because they did not believe that it was substantive matters, and they consulted with local counsel on that and they both agreed.

Well, the person you should have consulted with before you went ahead and launched on that was me, because my reaction initially was exactly what Mr. Krulak's was.  Initially, the briefing was limited to 30 pages in support of a motion and the memorandum.  The parties ultimately agreed to have it extended, and I approved that.  The defendants filed their memorandum in support of their motion to dismiss, which was 39 pages, one page less than what the agreement was.

These numbers that I picked are not arbitrary.  Our local

rules limit the memoranda in support of a motion or an opposition to 30 pages.  It was 50 and then that was reduced to 35 and now it's 30 unless the court orders otherwise.

The parties asked for more.  I thought that was reasonable.  I granted it.

When they were preparing their opposition, the plaintiffs then asked for another 15.  The defense said, that's fine.  And it was agreed.  I thought that was reasonable, and I granted it.  Those were granted on the 17th of this month, and the next day the plaintiffs filed multiple motions.

It was inconceivable to me that the plaintiffs did not fully understand when they asked for 15 extra pages that they were also going to file this motion for judicial notice of these documents with another 34-page memorandum.  And not having disclosed that or sought the Court's input, in my mind as of last night, felt an awful like an end run that made a total mockery out of my case scheduling orders, which are designed to make sure that I'm the one that controls the motions, not the parties.

So that we don't have this issue coming up again, I want to make something indisputably clear at this time.  No motion may be filed in this case by any party if they're seeking relief, that the filing party has asked the opposing party to consent to and they have refused, without filing a letter letting me know so that I can control the motions process.  I

don't care whether you look at it as substantive or not.  If you're asking the Court to issue a ruling that grants relief that you request, that the other side has been informed of and will not consent to, I'm the one that decides when it's briefed and how.

Is that crystal clear to everybody going forward?

MR. TUCCILLO:  Yes, Your Honor, speaking for the plaintiffs.

MR. KRULAK:  Yes, Your Honor.

THE COURT:  In my mind, having 90 pages of briefing to respond to a 39-page motion to dismiss is obscene.  There is no reason for that much briefing.

This is a complicated case, and I understand that.  These are experienced and good counsel.  I understand that.  These are clients that are sophisticated and take the case seriously.  I understand that.  But I'm -- I have had class action certification in a consolidated complaint that's over 380 pages that didn't have briefing that came anywhere near that on class action issues, and *Daubert* challenges that were very complicated and didn't come anywhere near that length as well.

And when in nine times out of ten anyone seeking judicial notice of documents drops a footnote citing to Evidence Rule 201 and why they believe that this is either notorious information or reliable information that the Court can take judicial notice of, why a 34-page brief is necessary is obvious

that the plaintiffs intended for those documents to be part of their opposition to the motion for summary -- or to dismiss; otherwise, there is absolutely no reason to have to file a request for judicial notice at this time.

The only pending motion I have to look at is the motion to dismiss. We don't need any documents of judicial notice unless they are supposed to be part of the decision with regard to the motion to dismiss. And to have -- and I granted the motion. And to go back in there and go into the background of the case and everything else lard this case up with a 90-page opposition to a motion to dismiss, which is a memorandum of 39 pages.

And that, in my mind, looked very much like an end run around the briefing on here. There is no justification for that amount of briefing for this case, with all due respect to how complex you think it is. None whatsoever.

And what I was prepared to do was to strike the opposition to the motion to dismiss, allow it to be refiled with no more than 60 pages total briefing, and you can address your issues with regard to the judicial notice in that, and then deal with that going forward. I've cooled off since then, and I'm not going to do that.

But I want it clear going forward that the parties do not get to unilaterally decide what motions they file, when they file, and how long they want those motions to be. If the relief you want is not pre-consented to by the opposing party,

you've got to write a letter.  If it happens otherwise, it's going to be stricken without any advance notice.  That's the issue going forward.

Now, with regard to the filings that we currently have, the parties have agreed that the defendants will respond to a motion to pay judicial notice of the documents, the RJN motion, and they've proposed a deadline for that and to defer the defendants' reply brief to the opposition to the motion for dismissal to 21 days after that has been ruled on.  The parties agree to that.  That strikes me as reasonable.  I'm going to permit that.

The defendants are going to limit their memoranda.  Why you would need 34 pages to oppose to that on a simple issue of an evidentiary ruling on a motion for judicial notice is beyond me, but if you need as much briefing on that in order to respond to it, then you can go ahead and take that.

And the response by the lead plaintiffs will be due on August 12th, and that reply is going to be limited to no more than 20 pages.  So that's the way that will be.

As to the motion -- the reply motion to the motion to dismiss, the parties agreed to the extra pages that the defendants will have.  So the defendants should have that, and that will be completed 21 days after the ruling on this -- on the judicial notice motion.

The motion to lift the PSLRA stay for discovery, the

parties have wisely agreed to deal with that in a separate briefing. This is a much narrower issue. I think the briefings for that was 14 pages. So I'm looking for 14, 14, and 10 as the page limits there.

And as with all the briefing, as we earlier originally issued, I want the requirements that are part of our local rules, which means Times New Roman, 12 point font for the text, and that's 10 point font for the footnotes. The page limits are exclusive of table of contents and citation of cases, of course. The page limits are limited to substance, not the table of contents or the list of cases.

And with regard to exhibits that people want the Court to consider, if you want -- I just finished an IDEA case where a record was about three feet thick, which was an organized mass of loose paper put in boxes and dumped on the Court by the parties. No effort to organize it. No effort to put it in binders. No effort to highlight in a 2,000-page transcript the key language that the parties thought supported their arguments. None.

And I'm here to tell you, if you want to be an effective advocate in this environment where the courts are trying to come out of COVID backlogs and are up to their eyeballs in backlog cases, and you don't brief and make it easy for the Court to find the support for the facts and the law that you are citing, then you are not being an effective advocate.

So if you've got documents, including these documents for which the party wants judicial notice, and there is part of that document that is central for what you're going to argue in your motion, then you'd better highlight that so I can find it right away.  Because when I'm looking at records the size of these records, and it takes me four-and-a-half minutes to find in a three-page document what the parties want to rely on, and you multiply that by the number of documents that you get, that is what slows down my law clerk, and it slows me down.

And when I see that, that case becomes my most pressing non-priority.  I'll stick it aside, and I'll turn my attention to the ones where the parties actually did what they should have done in the first place, which is brief with an idea of the person who is going to have to decide their motion.  Make it easy for that person to get the results that they are seeking or the results that at least take into consideration your arguments and to do it quickly.  So the harder you make it for me to do my job, the longer you're going to wait to get your ruling.  So that's the point I want to leave you with.

So I will approve that agreed-upon schedule that you all came up with, and we'll issue a paperless order to that effect.

That's how we'll go going forward.  You know what my expectations are now in terms of writing those letters, and I don't expect that we're going to have anymore difficulties going forward.

Anybody want to say anything before I let you go?

MR. TUCCILLO:  No, Your Honor.  Thank you for the guidance.

THE COURT:  All right.  I think we're done here. I'll go ahead and approve that.  You can move forward on that in accordance with your agreement.  And as soon as I get that, the two that will be immediately briefed and ready for some resolution, the judicial notice and the Rule 201 and the PSLRA discovery stay, we'll take a look at those.

The PSLRA discovery stay doesn't have to be decided before the defendants file their reply brief, but, obviously, the judicial notice does because the parties want to address in their documents, if they didn't, the judicial notice as part of their arguments.

All right, then we'll ring off.  Thank you again for making yourselves available at 3 o'clock, instead of at 1:00. I'll approve this schedule, and we'll move forward.

And I want to thank our courtroom deputy for being available to put this on the record.

And I hope, Mr. Krulak, that your colleague's child has a mild case of COVID and that it resolves quickly.  And all of counsel on this phone call, stay safe and well because COVID is still out there.

All right, thanks everybody.  We're off the record.

MR. TUCCILLO:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  This Honorable Court stands adjourned.


        (The proceedings were adjourned at 3:25 P.M.)


        I, Marlene Kerr, certify that the foregoing is a true, correct, and complete transcript of the audio-recorded proceedings in the above-entitled matter, audio recorded via FTR Gold, on August 2, 2022, and transcribed from the audio recording to the best of my ability, and that said transcript has been compared with the audio recording.


                        Dated this 3rd day of August, 2022.


                        _____/s/_____
                        Marlene Kerr, RPR, RMR, CRR, FCRR
                        Federal Official Court Reporter