**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-PWG |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: All Actions | |

**OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY LIFT DISCOVERY STAY**

Emergent BioSolutions Inc. ("Emergent" or the "Company"), Robert G. Kramer, Sr., Richard S. Lindahl, and Syed T. Husain (collectively, the "Defendants") submit this Opposition to Plaintiffs' Motion to Partially Lift Discovery Stay (the "Motion") and in response to their accompanying Memorandum in Support ("Mem.").

**INTRODUCTION**

Plaintiffs seek to lift the statutory discovery stay that the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes so that they can gain access to five categories of documents. According to Plaintiffs, without these documents, they will be at a disadvantage vis-a-vis other litigants and will suffer a risk of document loss. This position, however, has no substance.

No other litigants are charging ahead, which explains why Plaintiffs never actually identify any such litigants and instead resort to speculation about what governmental authorities or imagined future private litigants "could" do. The reality is that other than this case, two types of proceedings have occurred: (i) several government subpoenas to which Emergent has responded, but which have not resulted in government enforcement actions; and (ii) private shareholder derivative actions, which have been stayed pending further developments in this case. That is all.

-1-

Moreover, even if there were relevant pieces of litigation advancing quickly (which there are not), that would not justify lifting the statutory stay of discovery absent a showing (which Plaintiffs do not even attempt to make) that their ability to recover is put at risk.

With respect to the potential loss of documents, Plaintiffs never identify any document or category of documents that have been lost or are at risk of being lost.  Instead, Plaintiffs observe that four Emergent personnel (out of over 2,400) have left or retired in the last 15 months and speculate that so-called "corporate instability" somehow creates a risk of document loss.  Emergent has preserved documents and this case is nothing like the few cases Plaintiffs cite in which courts allowed some discovery in service of document preservation where defendant companies were facing bankruptcy or actively divesting relevant divisions.

Finally, Plaintiffs pitch their Motion as a non-burdensome request largely to re-produce existing productions.  In reality, the requests require extensive new email searches and privilege logging.  Moreover, even the request for the wholesale production of copies of government productions is not particularized—it does not follow that a document is relevant to this litigation (much less so centrally relevant as to warrant lifting the discovery stay) simply because a government entity received it.

In sum, this Motion is not borne of legitimate need to prevent undue prejudice or prevent document loss.  It is the desperate attempt by a Plaintiff facing a motion to dismiss to inflict burdens and search for a claim.  The Court should deny the Motion.[1]

---

[1] Factual background appears in the Background section of Defendants' Memorandum in Support of Motion to Dismiss (Dkt. No. 72-1) and is not repeated here for brevity.

**ARGUMENT**

### I.   The Court Should Not Lift the Stay of Discovery

The PSLRA imposes constraints on discovery in securities class actions.  It provides:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B).  As this District recently explained, to lift the stay, Plaintiffs must make three showings: "(1) exceptional circumstances exist, such that allowing discovery would not violate the ethos of the PSLRA discovery stay and further that (2) particularized discovery is (3) necessary to either (a) preserve evidence or (b) prevent undue prejudice to a party."  *In re Under Armour Sec. Litig.*, No. RDB-17-388, 2021 WL 633373, at *3 (D. Md. Feb. 18, 2021) (citations and quotations omitted).[2]

Here, Plaintiffs do not even acknowledge the need to show "exceptional circumstances," much less attempt to make the required showing.  *See generally* Mem. (failing to acknowledge or

---

[2] Plaintiffs assert that courts have denied motions to lift the PSLRA stay "*only* when said requests were functionally *unlimited*."  Mem. at 9 (additional emphasis added).  This is a gross misstatement of the law.  Courts have certainly denied motions to lift the PSLRA stay based on the overbreadth of discovery requests, but that is far from the "only" reason such motions are routinely denied.  As one readily available example, Judge Bennett of this District recently denied a motion very similar to this one where, as here, Plaintiffs failed to establish undue prejudice.  *In re Under Armour Sec. Litig.*, 2021 WL 633373, at *3.

Plaintiffs compound their error by falsely asserting that it is "common practice" for courts to lift the PSLRA stay (Mem. at 13).  There are hundreds of securities class action filings per year.  Cornerstone Research, Securities Class Action Filings – 2021 Year in Review (Feb. 2022), https://www.cornerstone.com/wp-content/uploads/2022/02/Securities-Class-Action-Filings-2021-Year-in-Review.pdf.  It speaks volumes that Plaintiffs can cite only a handful of instances over 27 years and thousands of cases in which a court lifted the stay.  Mem. at 13.  And, while pointless scorecards about how many PSLRA discovery motions were granted or denied should be irrelevant, it bears noting that courts in fact routinely deny motions to lift the PSLRA stay.  *See, e.g.*, *infra* n.5.  And the fact is that in the vast majority of cases, plaintiffs do not even attempt such a motion.

argue exceptional circumstances element). Because exceptional circumstances are a required element, this failing should without more foreclose relief. Moreover, Plaintiffs also fail to show that the PSLRA stay will cause them undue prejudice or that immediate discovery is necessary to preserve evidence. And Plaintiffs' requests are not particularized.

### A.    Plaintiffs Do Not Face Undue Prejudice

Plaintiffs' principal argument is that they face undue prejudice because their claims supposedly are "stalled by the PSLRA stay while other potentially interested parties are allowed to proceed." Mem. at 11. Plaintiffs imagine that they are, with each passing day, falling behind unidentified competing "litigation" (*id.* at 10) being pursued by unidentified "litigants" that supposedly are advancing unidentified "claims." *Id.* at 12. Plaintiffs assert the PSLRA stay thus puts them at a "tremendous disadvantage" given "a legal landscape occupied by powerful legal entities." *Id.* at 12. This argument, however, is a fabrication with no factual basis and would not support a lifting of the PSLRA stay in any event.

Plaintiffs can take comfort that no competing litigants are charging ahead. As disclosed in Emergent's Annual Report filed with the Securities and Exchange Commission and otherwise publicly available,[3] putting this case aside, there have been two sets of legal proceedings relating to the incident at Bayview. First, various government entities have issued inquiries or document subpoenas to Emergent; none has filed litigation or initiated enforcement proceedings. *See id.* Second, shareholder derivative suits are pending (*id.*; Mem. at 11) but they are all stayed in favor of this case. There is nothing else, which is why Plaintiffs, rather than citing any litigation that is charging ahead of this case, are forced to speculate and generalize about what various government

---

[3]    https://investors.emergentbiosolutions.com/static-files/49a8e4f5-991c-454f-b94e-160815a56aac. The litigation disclosures (which are and have been freely available for Plaintiffs to review) appear on pages 119-21.

actors or imagined private litigants "could" do in the future. Mem. at 11 (discussing what Congress "has the power" to do, what the FDA and SEC "can" do, and that unidentified "private litigants" "may" proceed to trial on their claims). In sum, there is no factual basis for Plaintiffs' predicate concern that they are becoming disadvantaged vis-a-vis other litigation.

Further, even if competing proceedings were charging ahead of this case, that would not without more justify lifting the PSLRA discovery stay. The nature of the PSLRA stay is that a securities class action plaintiff (but not necessarily other kinds of plaintiffs) must withstand a motion to dismiss before receiving discovery. *See In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626, 2006 WL 2337212, at *2 (S.D.N.Y. Aug. 8, 2006) ("Whether PSLRA plaintiffs should be subjected to a discovery stay while other parties, who are bringing claims under other causes of action, are not subjected to a stay is a question for Congress, and one that Congress has answered."). Thus, as Judge Bennett recently explained in *In re Under Armour Sec. Litig.*, the mere fact that litigation unencumbered by a PSLRA stay proceeds ahead of a securities class action cannot constitute undue prejudice to a securities class action plaintiff. Rather, undue prejudice potentially exists if Plaintiffs can show a resulting risk of inability to recover—in other words, Plaintiffs must show competing claims for which the pie is not big enough. 2021 WL 633373, at *3.[4] Here, Plaintiffs make no attempt to show that they face such a situation: they do not identify competing litigation that is proceeding (because there is none), do not assess the size or viability

---

[4] It cannot be that the mere existence of multiple lawsuits or investigations warrants lifting the PSLRA discovery stay because the stay would quickly become toothless. Securities class actions routinely come alongside tag-along suits. Plaintiffs' counsel's own website says as much. *See See* Cohen Milstein, *"Paul Hodgson: Derivative vs. Class Action Lawsuits – What's Best for Shareholders?" Responsible Investor* (Oct. 5, 2020), https://www.cohenmilstein.com/update/%E2%80%9Cpaul-hodgson-derivative-vs-class-action-lawsuits-%E2%80%93-what%E2%80%99s-best-shareholders%E2%80%9D-responsible ("in many cases … securities fraud cases start out as class actions and then tag-along derivative suits are filed … .").

of those non-existent claims, do not address the size of their own claims, and do not address Emergent's financial condition (which, per Emergent's Annual Report, is robust).

*In re Royal Ahold N.V. Sec. & ERISA Litig.*, which Plaintiffs claim is "instructive" (Mem. at 6) and repeatedly cite, is not to the contrary. There, the court partially lifted a PSLRA discovery stay where the defendant corporation was undergoing a reorganization including a raft of divestitures and faced competing pieces of litigation including an ERISA class action, all of which created risk both of document destruction and for plaintiffs' ability to recover. 220 F.R.D. 246, 251-52 (D. Md. 2004) ("Royal Ahold's divestitures, again, add urgency to this concern, as delay in the resolution of the securities' [sic] plaintiffs claims could limit their chances of recovery relative to other parties with claims of comparable, or even lesser, merit."). Many securities plaintiffs (such as the instant Plaintiffs) have since tried to rely on *Royal Ahold* to lift the PSLRA stay in later cases, but courts have uniformly explained that *Royal Ahold* was driven by the unique circumstances of the corporate divestitures in that case.[5]

---

[5] *In re Under Armour Sec. Litig.*, 2021 WL 633373, at *2-3 (extensive distinction of *Royal Ahold*); *Watkins v. Hireright, Inc.*, No. 13CV1432, 2013 WL 10448882, at *3 n.1 (S.D. Cal. Nov. 18, 2013) (distinguishing *Royal Ahold* as case that "concerned a very different set of circumstances in which Royal Ahold was going through a wide sweeping corporate reorganization that the Court found created reasonable concern that relevant documents were being lost or destroyed"); *Dipple v. Odell*, 870 F. Supp. 2d 386, 394 (E.D. Pa. 2012) (distinguishing *Royal Ahold* as case in which the corporate defendant "was divesting assets"); *Mori v. Saito*, 802 F. Supp. 2d 520, 526 (S.D.N.Y. 2011) (distinguishing *Royal Ahold* as case where other pieces of litigation "were likely to settle, thus limiting the chance of recovery for plaintiffs in the private action"); *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048, 2009 WL 3346611, at *5 (D. Colo. Oct. 14, 2009) (distinguishing *Royal Ahold* as case "where a defendant was divesting itself of several assets, thereby limiting the plaintiff's ability to recover if its suit were delayed"); *In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d 14, 17-18 (D.D.C. 2008) (distinguishing *Royal Ahold* as case in which a "'wide-ranging corporate re-organization' involving divestures of key subsidiaries created 'reasonable concern that documents may be lost despite defendants best efforts to preserve them'"); *Zapien v. Washington Mutual, Inc.*, No. 07cv00385, 2008 WL 11509011, at *3 (S.D. Cal. Apr. 17, 2008) (distinguishing *Royal Ahold* as case in which the "court found the risk of loss to be substantial because the defendants were undergoing a wide-ranging corporate reorganization, in which they divested or planned to divest key subsidiaries, including those that allegedly played major roles in

The other case that Plaintiffs assert is "similar" to this case (Mem. at 5), *In re Mut. Funds.*

*Inv. Litig.*, is very different, and, if anything, spotlights why discovery here is unwarranted.  There,

several mutual fund defendants (from among a larger group of defendants) were actively engaged

in a regulatory settlement process, and the court allowed securities class action plaintiffs to receive

discovery so they could participate in that ongoing settlement process, but the court denied

discovery as to other defendants not engaged in a settlement process.  2005 WL 549534, at *1 (D.

Md. Mar. 7, 2005).[6]  Here, Plaintiffs do not assert that any regulatory settlement process is

underway (there are not even regulatory claims pending).[7]

Finally, Plaintiffs have not suffered undue prejudice simply because they lack complete

copies of document productions made to government entities.  No rule of law exists that entitles a

securities plaintiff to regulatory productions notwithstanding the PSLRA stay.  *See, e.g.*,

*Rampersad v. Deutsche Bank Sec. Inc.,* 381 F. Supp. 2d 131, 133 (S.D.N.Y. 2003) (holding there

is "no authority" for categorical exception to PSLRA where information sought has "already been

provided to a government agency"); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C.

2005) (no prejudice by not having access to documents produced to government); *In re Vivendi*

---

the defendants' purported fraud.  As a result, it was likely that key documents could be lost despite the defendants' best efforts."); *In re American Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1106 (C.D. Cal. 2007) (distinguishing *Royal Ahold* as case "where defendants undergoing a corporate reorganization, making it likely that key documents could be lost or that plaintiffs could be disadvantaged in settlement negotiation").

[6] The court explained its rationale as follows: "I find that the public interest would be harmed if the regulatory settlement process that is now underway as to many of the Fund defendants were to progress substantially without plaintiffs having had the opportunity to review many of the documents they are now seeking in discovery."  *Id.*

[7] Plaintiffs also repeatedly cite *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) but even they do not claim it bears any similarity to this case.  WorldCom was in bankruptcy and actively trying to settle a host of lawsuits under bankruptcy court supervision.  Based on those "unique circumstances," the court granted plaintiffs limited access to discovery so that they could participate in upcoming global settlement discussions.  *Id.* at 305-06.

*Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130–31 (S.D.N.Y. 2003) (denying plaintiffs'

motion to lift PSLRA stay even though same documents were previously provided to Department

of Justice and various French agencies).  Were such a rule to exist, the PSLRA stay would cease

to apply in any situation involving parallel proceedings.

In sum, Plaintiffs do not face undue prejudice.  There is no competing litigation charging

ahead and Plaintiffs have not established any resulting risk to their ability to recover.

**B.      Discovery Is Not Needed to Preserve Evidence**

Plaintiffs also advance a two-paragraph argument that the Court should allow discovery

in service of a supposed need to "preserve evidence."  Mem. at 12-13.  The argument is specious.

*First*, Plaintiffs do not cite a single example of any document that they believe has been

wrongfully destroyed or that is in danger of being destroyed or lost.  Nor do Plaintiffs argue that

Emergent has failed to fulfill its document preservation obligation in any way.  No such argument

is possible because Emergent has taken extensive steps to preserve documents.[8]

*Second*, Plaintiffs' arguments are self-defeating and if anything rebut any concern about

document loss.  In an effort to suggest that document production burdens would not be large,

Plaintiffs assert that most of the documents they seek "consist of documents already produced to

a receiving party," namely Congress or government agencies.  Mem. at 6.  That being so, there is

no plausible danger of loss or destruction.  *See In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103,

1106 (C.D. Cal. 2007) ("[O]nce the documents are in the hands of a regulatory or law enforcement

agency, they are no longer subject to loss or destruction.").

---

[8] Emergent's document hold efforts, including notices, are attorney advice protected by the attorney-client privilege and attorney work-product doctrine.  Emergent thus has not attached such notices to this Opposition.  Should the Court wish to review them, Emergent is prepared to submit them *in camera*.

*Third*, Plaintiffs make no headway with their vague assertion that a risk of document loss arises from Emergent's supposed "corporate instability." Mem. at 12. The notion that "corporate instability" can justify lifting the PSLRA discovery stay appears to be a concept that Plaintiffs invented. Plaintiffs' Memorandum attributes this concept to the *Royal Ahold* case and falsely asserts that "[t]he *Royal Ahold* court found that the defendant's corporate instability 'added urgency to the discovery timetable.'" Mem. at 12 (citing *Royal Ahold*, 220 F.R.D. at 251). What the quotation from *Royal Ahold* actually states, however, is that "divestitures" (not instability) added urgency to the discovery timetable. *Compare Royal Ahold,* 220 F.R.D. at 25 (expressing concern that corporate divestitures could yield document loss) *with* Mem. at 12 (Plaintiffs injecting "instability" into quotation to change meaning of *Royal Ahold* court's rationale).[9] *Royal Ahold* did not discuss corporate instability.

Regardless, Plaintiffs have not shown that Emergent is on anything other than stable corporate footing. Plaintiffs do not assert that Emergent is amid a reorganization, is divesting assets, or anything similar. While Plaintiffs observe that four people have left the Company in the last fifteen months (Mem. at 12), Emergent has over 1,800 employees, so it goes without saying that a handful of transitions and retirements are perfectly normal. Similarly, while Plaintiffs state that the Bayview facility was not operating, they never explain how that translates into a document loss concern.

*Finally*, Plaintiffs offer only pure speculation that document loss may perhaps have occurred because a Congressional report sometimes cites copies of emails produced by other

---

[9] The court in *Royal Ahold* elaborated that the corporate defendant there "has already divested itself of key subsidiaries, and it plans to divest itself of more—including some, such as Disco, that allegedly played central roles in the company's purported fraud. These divestitures create a reasonable concern that documents may be lost despite Royal Ahold's best efforts to preserve them." 220 F.R.D. at 251.

companies rather than copies produced by Emergent.  Mem. at 12-13.  It is impossible to respond with specificity because Plaintiffs never describe the documents to which they refer, much less provide any basis to believe that Emergent was asked for, failed to produce, and lost or destroyed copies of those unidentified documents.  Further, if Congress believed that Emergent had destroyed or failed to produce documents, the Committee report would have seized the opportunity to so state.

Thus, Plaintiffs have not established a risk of document loss to justify discovery.

## C.    Plaintiffs' Requests Are Not Sufficiently Particularized

Finally, as a separate basis for denial, the discovery requests also do not meet the particularity standard for lifting the PSLRA stay.  *In re Under Armour Sec. Litig.*, 2021 WL 633373, at *2-3 (noting that requests must be particularized).  "Particularized" is not the same as "identifiable."  *Id.* at *3 ("'particularized' is not synonymous with 'identifiable'") (quoting *Royal Ahold*, 220 F.R.D. at 250).  To illustrate with a hypothetical example, a blanket request for "all documents in Emergent's files" would be identifiable (*i.e.,* simply produce everything) but no one would claim it is particularized.  Here, each of Plaintiffs requests are flawed—some do not call for an identifiable set, and none is particularized.  For instance:

- Request No. 1 begins by calling for copies of government productions.  While this may be an identifiable universe, it is not particularized.  The requests are not limited by subject matter or time period and would thus impermissibly yield the production of documents having nothing to do with this case simply because they were produced to the government.  *See New York State Teacher's Ret. Sys. v. Fremont Gen. Corp.*, No. CV 07-5756, 2009 WL 10675265, at *2 (C.D. Cal. Nov. 5, 2009) (request for documents produced in other proceedings was not sufficiently particularized because "that universe may be extremely large and is entirely

undifferentiated," and "lead plaintiff has failed to indicate … how any of the documents are relevant to its claims"); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.D.C. 2005) (request for documents produced in connection with governmental and regulatory investigations not sufficiently particularized because such documents "are voluminous and possibly irrelevant to the claims likely to be raised in the Consolidated Complaint").

- Request No. 1 also calls for all "correspondence" with any government entity relating to any "investigations, audits, or inspections concerning the facilities of Emergent."  Mem. at 5.  This request does not concern already-produced documents, is not limited to the Bayview facility, has no time limitation, has no subject matter limitation, and could therefore require a search of uncertain magnitude to fulfill.  Indeed, the breadth necessarily renders the request overbroad even if it were part of full-blown discovery.  For instance, it would by its terms capture communications with the FDA pertaining to the scheduling of an inspection of an irrelevant facility during an irrelevant timeframe.

- Request No. 2 calls for "all documents pertaining to internal investigations or audits."  Mem. at 5.  This is not an identifiable universe of already collected documents—it necessitates a new search effort from scratch.  Moreover, the request is not limited to Bayview, is not limited by time, and has subject matter limitations so broad as to be meaningless (*e.g.*, "regarding … other deficiencies" at any facility).  Further, the request is highly likely to implicate privileged documents, requiring both a burdensome review and logging procedure.  Finally, because the

-11-

request is for "all documents concerning" the stated subject matters, it likely implicates an extensive email search.[10]

- Request Nos. 3 and 4 are arguably limited on their face to documents cited in the Congressional reports, but that does not mean fulfilling the requests would be non-burdensome. As Plaintiffs highlight, the Reports cite documents produced by various persons other than Emergent. Thus, to fulfill the requests, Emergent would at minimum have to search its files to determine whether it has exact copies of any such documents. Further, Plaintiffs' footnote 3 (Mem. at 5) uses the term "underlying" in describing what is requested with respect to the Reports, indicating that the requests are not even limited to exact copies of what was cited in the Reports but rather extend in some ill-defined sense to what "underlies" the Reports.

Therefore, the Court should find that the requests do not have adequate particularity and should deny the Motion. In the alternative, if the Court is inclined to allow discovery (which it should not), the Court should not simply grant the Motion and should instead allow a process whereby the requests are targeted to achieve particularity and avoid undue burden.[11]

**CONCLUSION**

---

[10] The breadth of Request No. 2 without more puts the lie to Plaintiffs' false assurances that their requests "require little more than re-transmission of the production set" (Mem. at 6) or "consist of discrete, easily identified document sets" (*id.*) or that the "production burden … is virtually non-existent" (Mem. at 8) or that the burden "should be slight" (Mem. at 9). The request literally calls for every document (emails, reports, post-it notes, etc.) pertaining to every audit or investigation regarding any "deficiency" of any kind within a large company.

[11] Plaintiffs also offer irrelevant arguments about the supposed strength of their case. Mem. at 9-10. Because such arguments have no bearing on the standard governing lifting of the PSLRA stay, Defendants do not herein add unnecessary volume to the record by responding. Instead, Defendants respectfully refer the Court to their Memorandum in Support of Motion to Dismiss, which demonstrates the flawed nature of Plaintiffs' claims.

For the foregoing reasons, the Court should deny the Motion.


Dated:   August 5, 2022

Respectfully submitted,

*/s/ William M. Krulak, Jr.*
**MILES & STOCKBRIDGE P.C.**

William M. Krulak, Jr. (Fed. Bar No. 26452)
Ariana K. DeJan-Lenoir (Fed. Bar No. 20522)
100 Light Street
Baltimore, Maryland 21202
(410) 385-3448
wkrulak@milesstockbridge.com
adejanlenoir@milesstockbridge.com


**WILMER CUTLER PICKERING HALE AND DORR LLP**

Michael G. Bongiorno (NY Bar No. 4347316)*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Michael.Bongiorno@wilmerhale.com
Phone: (212) 230-8800
Facsimile: (212) 230-8888

Timothy J. Perla (MA Bar No. 660447)*
Arjun K. Jaikumar (MA Bar No. 691311)*
Kim A. Crowley (MA Bar No. 707072)*
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
Facsimile: (617) 526-5000

*Attorneys for Defendants*


* *Pro hac vice*


-13-