**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-PWG |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: All Actions | |

**REPLY MEMORANDUM IN SUPPORT OF
LEAD PLAINTIFFS' MOTION FOR JUDICIAL NOTICE (DKT. NO. 98)**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     ARGUMENT..................................................................................................... 3

III.    CONCLUSION................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barry v. Novartis Pharms. Corp.*, No. 3:22CV196 (DJN),
2022 WL 2373452 (E.D. Va. June 30, 2022) ...............................................................10

*Binks v. US Tech Sols.*, No. 2:20-cv-4164-DCN-MGB,
2021 WL 2679697 (D.S.C. June 30, 2021)...................................................................13

*Biowish Techs., Inc.*, No. 18-676-RGA,
2019 WL 4344273 (D. Del. Sept. 12, 2019)..................................................................13

*CACL Int'l Inc. v. St. Paul Fire & Marine Ins. Co.*,
566, F.3d 150 (4th Cir. 2009) .......................................................................................11

*Hall v. Virginia*,
385 F.3d 421 (4th Cir. 2004) ...........................................................................................7

*Horne v. Novartis Pharms. Corp.*,
541 F. Supp. 2d 768 (W.D.N.C. 2008) .........................................................................10

*In re 201 N. George St., LLC*,
551 B.R. 786 (Bankr. N.D. W. Va. 2016).....................................................................11

*In re Harmony Holdings, LLC*,
393 B.R.409 (D.S.C. 2008)............................................................................................12

*In re Hum. Genome Scis. Inc. Sec. Litig.*,
933 F. Supp. 2d 751 (D. Md. 2013)............................................................................9, 10

*In re Humphrey Hosp. Tr., Inc. Sec. Litig.*,
219 F. Supp. 2d 675 (D. Md. 2002) ..............................................................................13

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005)...........................................................................13

*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879,
2020 WL 6290670 (D. Md. Oct. 27, 2020) ...................................................................13

*In re Mun. Mortg. & Equity, LC Sec. & Derivative Litig.*,
876 F. Supp. 2d 616 (D. Md. 2012)...............................................................................13

*In re Under Armour Sec. Litig.*,
540 F. Supp. 3d 513 (D. Md. 2021) .......................................................................4, 7, 10

*Jacobus v. Huerta*, No. 3:12-CV-02032,
2013 WL 673233 (S.D.W. Va. Feb. 22, 2013) ...................................................................7, 10

*Johnson v. Pozen Inc.*, No. 1:07CV599,
2009 WL 426235 (M.D.N.C. Feb. 19, 2009).............................................................................9

*Layani v. Ouazana*, No. ELH20-420,
2021 WL 805405 (D. Md. Mar. 3, 2021)................................................................................13

*Lee v. Virginia State Bd. of Elections*,
188 F. Supp. 3d 577 (E.D. Va. 2016) ......................................................................................7

*Lewis v. Best Buy Stores, L.P.*, No. 2:15-00394,
2015 WL 2452997 (S.D. W. Va. May 22, 2015).......................................................................6

*Marsh v. U.S.*, No. TDC-14-3559,
2016 WL 247563 (D. Md. Jan. 20, 2016).................................................................................6

*Metro. Creditors Tr. v. PricewaterhouseCoopers, LLP*,
463 F. Supp. 2d 1193 (E.D. Wa. 2006)..................................................................................13

*Mikos v. Abbott Lab'ys*, No. GLR-21-912,
2021 WL 5416534 (D. Md. Nov. 18, 2021) .............................................................................7

*Mobility Workx, LLC v. Unified Patents, LLC*,
15 F.4th 1146 (4th Cir. 2021) ........................................................................................4, 6, 7

*Nat'l Fed. of the Blind v. U.S. AbilityOne Comm.*,
421 F. Supp. 3d 102 (D. Md. 2019)........................................................................................13

*Overall v. Ascension*,
23 F. Supp. 3d 816 (E.D. Mich. 2014)...................................................................................11

*Phillips v. Univ. of Maryland Baltimore Cnty.*, No. CV ELH-19-570,
2020 WL 1820080 (D. Md. Apr. 10, 2020)............................................................................12

*Prelich v. Med. Res., Inc.*,
813 F. Supp. 2d 654 (D. Md. 2011) .......................................................................................11

*RSMCFH, LLC v. FareHarbor Holdings, Inc.*,
361 F. Supp. 3d 981 (D. Haw. 2019).....................................................................................13

*Sayman v. Lehman Bros. FSB*, No. 3:13-cv-288-RJC-DSC,
2014 WL 2013353 (W.D.N.C. May 16, 2014) .......................................................................11

*Shah v. GenVec, Inc.*, No. CIV.A. DKC 12-0341,
2013 WL 5348133 (D. Md. Sept. 20, 2013) ............................................................................9

*Shore v. Charlotte-Mecklenburg Hosp. Auth.*,
    412 F. Supp. 3d 568 (M.D.N.C. 2019) .........................................................................7, 10, 11

*Tchatchou v. India Globalization Cap. Inc.*, No. CV PWG-18-3396,
    2021 WL 307415 (D. Md. Jan. 29, 2021)............................................................................9, 10

*U.S. v. Garcia*,
    855 F.3d 615 (4th Cir. 2017) ................................................................................................6

## <u>Statutes</u>

Private Securities Litigation Reform Act.................................................................................3, 4

## <u>Rules</u>

Fed. R. Civ. P. 12(b)(6).............................................................................1, 2, 4, 5, 6, 7, 9, 12, 13

Fed. R. Civ. P. 15..............................................................................................................4

Fed. R. Evid. 201 .............................................................................................1, 4, 5, 6, 7, 11

Lead Plaintiffs Nova Scotia Health Employees' Pension Plan and City of Fort Lauderdale Police & Firefighters' Retirement System respectfully file this reply memorandum ("RJN Reply") in support of their motion (Dkt. No. 98) ("RJN Motion") seeking judicial notice, pursuant to Fed. R. Evid. 201(b) and (c)(2), of a recently published Congressional report, press release, and supporting materials. For the reasons set forth in Lead Plaintiffs' opening brief (Dkt. No. 78) ("RJN Memo") and herein, Lead Plaintiffs respectfully request that the RJN Motion be granted.

With the approval of the Court's clerk and the consent of the Defendants, Lead Plaintiffs are re-filing the full set of RJN Exhibits 1-37, with text highlighting added in accordance with the Court's August 2, 2022 Docket Order (Dkt. No. 96).

## I.    INTRODUCTION

Defendants' brief – without case law support – proposes radical restrictions against the Court's taking judicial notice of materials proffered by a securities plaintiff at the Rule 12(b)(6) stage. It effectively proclaims such materials *ineligible* for judicial notice unless they either *predate* the operative complaint (at which point, they could simply be pled) or *post-date* the filing of a motion to dismiss. Defendants declare *any* materials coming to light during the period between the filing of a complaint and an ensuing motion to dismiss *off-limits* for judicial notice. They proclaim that either a securities plaintiff must 'burn' an amendment, before ever benefitting from the Court's guidance on the already-filed pleading, thereby resetting the clock on the entire Rule 12(b)(6) process, or those materials are to be declared "irrelevant" due only to the timing of their revelation. Defendants would apply this draconian penalty *without regard* to such timing, asserting that Lead Plaintiffs had less than *nine days* to review and digest the 5/10/2022 Congressional Report and all its exhibits, request and secure leave of Court, and amend their 225-page operative complaint. Defendants do so despite their *own* actions *causing* that timing, such as

1

their delaying production of highly relevant company emails and documents to Congressional investigators, who consequently published them in May 2022 instead of May 2021.

Simply put, *no such restrictions exist*.  Instead, parties to securities litigation (quite often, the defendants) commonly augment the record on a Rule 12(b)(6) motion, both with documents directly cited within or relied upon by the pleading at issue *and* documents outside its four corners, even those created or revealed after its filing, if these materials fall within several well-established categories for which judicial notice is accepted by the courts.  Those circumstances are neither "bizarre" nor "unheard-of" – they arise in most securities fraud lawsuits.

This motion is no different.  It seeks judicial notice of 37 documents (14 fewer than the Defendants), consisting of the latest report from an ongoing Congressional investigation pled at length in the operative complaint (Dkt. No. 54) ("FAC"), a related Congressional press release, and the underlying documents published on a Congressional website.  These materials include the COVID vaccine manufacturing contracts directly at issue and alleged in the FAC.  They include inspection reports transmitted to Emergent contemporaneously with other similar reports pled in the FAC that detail the same undisclosed problems at the Bayview facility during the time period at issue as are extensively pled throughout the FAC.  They also include *Emergent* company emails, both internal-only and ones exchanged with J&J, AstraZeneca, and government regulators – many of them sent or received *by the Individual Defendants* – concerning those same undisclosed Bayview problems pled in the FAC and Defendants' attempts to conceal them during the time period at issue.  *Emergent* produced many of these documents to Congressional investigators bearing an Emergent Bates stamp, such that their accuracy and authenticity is (and must be) *conceded* by Defendants.  For all these materials, the RJN Memo states one or more well-established bases for judicial notice, with supporting case law citations that Defendants ignore.

2

Despite their undeniable relevance to the Congressional investigation, Defendants *delayed* production of these materials (or failed to produce them at all, forcing Congress to get them from J&J and AstraZeneca instead), so that they were publicly disclosed in the 5/10/2022 Congressional Report (published after the FAC was filed) rather than the earlier 5/19/2021 Congressional Memo (which predated the FAC and was pled therein).  Defendants improperly seek to capitalize on that delay – which they caused – as a basis to deny this motion, without any case law support.  Lead Plaintiffs respectfully urge the Court to reject that approach, lest it establish a playbook for securities fraud defendants to evade answering for damning documents evidencing liability.

Lead Plaintiffs' motion calls for a straightforward application of well-established judicial notice principles.  They respectfully submit that the RJN Exhibits *all* satisfy at least one basis for the Court to take judicial notice, and they respectfully request that the Court consider these materials in connection with Lead Plaintiffs' opposition to Defendants' motion to dismiss.

## II.    ARGUMENT

Defendants repeatedly argue that judicial notice should be denied because Lead Plaintiffs did not *amend* the FAC – something they could not do without leave of Court – to plead the 5/10/2022 Congressional Report and the other RJN Exhibits.  *See, e.g.*, Opp. at 1, 3, 5.  This argument, boiled down, seeks to establish an absolute ban against securities plaintiffs requesting judicial notice of documents created or revealed after they filed their operative pleading, on the rationale that amendment, not judicial notice, is the *only* appropriate mechanism to get such documents before the Court.  No such prohibition exists, and Defendants cite no authority in support of one.[1]  Nothing in the PSLRA or the case law restricts a securities plaintiff to seeking

---

[1]      Defendants baselessly imply that Lead Plaintiffs' failure to seek to "timely" amend the 225-page FAC in the nine days between the 5/10/2022 Congressional Report's publication and Defendants' filing their motion to dismiss means that Lead Plaintiffs are engaged in "unfair" "gamesmanship" and "tactics."  Opp. at 1, 5 and n.6.  Yet,

*only* relief under Fed. R. Civ. P. 15, while barring requests under Fed. R. Evid. 201, at the Rule

12(b)(6) stage.  To the contrary, as binding precedent makes clear, "Judicial notice may be taken

at any stage of a proceeding, including on appeal." *Mobility Workx, LLC v. Unified Patents, LLC*,

15 F.4th 1146, 1151 (4th Cir. 2021) (citing Fed. R. Evid. 201(d)).  Indeed, practically speaking,

when (like here) governmental investigations into the underlying facts of an alleged securities

fraud are ongoing, there may be *multiple* times when reports are issued, previously undisclosed

documents are published, or new facts otherwise come to light.  To force securities plaintiffs to

amend *each* time would only serve to continuously re-set the clock for dispositive motions and

bog down advancement of important securities claims in perpetuity, severely prejudicing not only

the securities plaintiffs themselves but also the classes of investors they seek to represent.[2]

Thus, contrary to Defendants' argument, it is far from "unheard-of" for courts to consider

judicial notice materials – often introduced by the *defense* – in resolving Rule 12(b)(6) motions,

including in federal securities lawsuits.  *See* RJN at 30-31 (citing *In re Under Armour Sec. Litig.*,

540 F. Supp. 3d 513, 521 (D. Md. 2021) (taking notice of an SEC cease-and-desist order and its

findings, noting that it "lends support to the allegations of the Plaintiffs in this case," and denying

motion to dismiss)).  Defendants *fail to address In re Under Armour* or the many other cases cited

in the RJN Memo for the proposition that courts commonly take judicial notice of documents in

---

Defendants cite no authority whatsoever for the proposition that a securities plaintiff's failure to seek amendment, on such a compressed timeframe, of a pending, non-dismissed, voluminous complaint supports any such inference. Moreover, as Defendants concede (Opp. at 5 n.6), they can address the RJN materials in their reply brief.

[2]      Defendants' argument that the RJN Motion "exacerbates" "puzzle pleading" (Opp. at 4 n.4) lacks merit.  As addressed in Lead Plaintiffs' motion to dismiss opposition, the FAC is not puzzle-pled.  *See* Dkt. No. 80 at 5-8.  That said, the RJN Memo summarizes for the Court the FAC's allegations (Dkt. No. 78 at 1-17), Defendants' dismissal arguments (*id.* at 18-20), and the RJN materials' substance (*id.* at 20-30), before presenting legal argument as to why judicial notice is proper at this stage (*id.* at 30-34).  That presentation factually and legally suffices for the Court to decide whether to grant judicial notice.  If the Court does so, then focus pivots to resolution of Defendants' motion to dismiss, and Lead Plaintiffs' opposition thereto sufficiently explains why the RJN materials further support its denial. *See, e.g.*, Dkt. No. 80 at 7 n.8, 11-13 & n.17, 16 & n.26, 18-20, 22-23, 25 & n.41, 28, 34-37, 40-41, 46, 48-49, 52-53. Defendants also argue that if the facts of the RJN Exhibits were pled rather than submitted on judicial notice, the PSLRA pleading requirements would apply (Opp. 4), without acknowledging that such alleged facts also would need to be accepted as true and construed in the light most favorable to Lead Plaintiffs.

resolving Rule 12(b)(6) motions.  This extensive authority fatally undercuts their *uncited* argument (Opp. at 4) that the RJN Motion somehow improperly "conflates" the scope of judicial notice under Fed. R. Evid. 201 and the scope of the record considered at the Rule 12(b)(6) stage.

As such, to resolve Lead Plaintiffs' motion, the Court merely needs to assess the six bases for judicial notice set forth in the RJN Memo at 31-34.  Lead Plaintiffs respectfully submit that each has been satisfied, such that the Court should take judicial notice of the RJN Exhibits and consider them in resolving Defendants' motion to dismiss the FAC.[3]

First, the RJN Memo argues that all 37 RJN Exhibits are proper subjects of judicial notice as documents in the public record.  *Id.* at 30 (collecting cases).  Defendants concede that the 5/10/2022 Congressional Report and the 5/10/2022 Press Release (RJN Exhibits 1 - 2) are public records but argue they are insufficiently "integral" to the FAC to be judicially noticed.  Opp. at 5.  Even assuming, *arguendo*, that "integral"-ness is an extra consideration beyond the requirements of Fed. R. Evid. 201 (which makes no mention of it), the FAC *heavily* relies on the House Committees' investigation and includes allegations arising from Kramer's 5/19/2021 Congressional Testimony (¶¶114-115, 205, 219(f), 278), the 5/19/2021 Congressional Memo (¶¶121-126, 219(d), 279), and many underlying documents that the 5/19/2021 Congressional Memo relied upon and published, such as the 6/17/2020 Warp Speed Report (¶124(a)), 7/24/2020 Janssen Audit Report (¶124(b)), 4/30/2021 Emergent FDA 483 Response (¶¶124(c), 125), and Emergent Compensation Committee memos dated January 20, February 19, and December 22,

---

[3]       Defendants highlight that their own 50+ documents submitted on judicial notice were referenced or incorporated into the FAC.  *See* Opp. at 5 n.5.  That point is a red herring.  Their reliance upon one basis for seeking judicial notice does not undermine Lead Plaintiffs' ability to rely upon that same basis or any of the other bases that are recognized by the courts.  No points are awarded for which parties' documents are "more" judicially noticeable.  Moreover, their seeking judicial notice of such a large number of documents readily illustrates why their citation to the case law that a Rule 12(b)(6) motion is "generally" limited to the "four corners" of the complaint (Opp. at 3, 4-5) is only the default and the starting (not ending) point of the judicial notice analysis.

2021 (¶¶280-283).  Moreover, the FAC pleads that the Congressional investigation is *ongoing* (¶¶122, 306-308), and the FAC repeatedly states that its allegations and claims will be strongly supported by discovery into materials like the RJN Exhibits.[4]  Thus, the 5/10/2022 Congressional Report and 5/10/2022 Press Release (RJN Exhibits 1 - 2), along with the newly published underlying documents (RJN Exhibits 3 - 37), are part of that *same ongoing investigation* that is "integral" to the pleadings and the securities claims at issue.[5]

As regards RJN Exhibits 3 - 37, Defendants argue, without citation, that a document does not "become[ ] a public record simply because a governmental report or press release cites it." Opp. at 6.  The 5/10/2022 Congressional Report did far more – it ***published*** RJN Exhibits 3 - 37 via footnoted links that all begin with "https://coronavirus.house.gov/" and lead to publicly-available ***Congressional webpages*** that host those documents.  As such, RJN Exhibits 3 - 37, like the 5/10/2022 Congressional Report and 5/10/2022 Press Release, are subject to judicial notice. *See Mobility Workx*, 15 F.4th at 1151-1152 (granting judicial notice of documents "published" on a government website because "[t]hese types of government documents are capable of being 'accurately and readily determined from sources whose accuracy cannot be reasonably questioned'") (quoting Fed. R. Evid. 201(b)(2)); *Marsh v. U.S.*, No. TDC-14-3559, 2016 WL 247563, at *2 (D. Md. Jan. 20, 2016) (taking judicial notice at Rule 12(b)(6) stage of a government website as a "matter[ ] of 'public record'"); *see also U.S. v. Garcia*, 855 F.3d 615, __ (4th Cir.

---

[4]   The FAC expressly pleads that "substantial evidentiary support" for its claims and allegations will exist after a reasonable opportunity for discovery (¶1), including, *inter alia*, discovery into documents and communications related to inspection reports and Emergent's responses thereto (¶72 n.3, ¶136 n.13); internal Emergent documents and "company-provided information" reviewed by government inspectors (¶110 n.4, ¶124(a) n. 10, ¶201 n.16); Emergent documents reviewed by J&J inspectors, Emergent's responses to J&J's inspection report and supporting documents, and the documents of 15 Emergent custodians who are listed in the J&J's inspection report and in the FAC (¶124(b) n.11); and internal Emergent documents reviewed by *The New York Times* (¶117 n.9).

[5]   Defendants' quoted case on this point (Opp. at 4-5) is distinguishable.  In *Lewis v. Best Buy Stores, L.P.*, No. 2:15-00394, 2015 WL 2452997, at *3 (S.D. W. Va. May 22, 2015), a lawsuit under state law, defendants sought to introduce an affidavit contradicting the complaint at the Rule 12(b)(6) stage, which ran afoul of the bedrock principle that the complaint's allegations were to be accepted as true and construed in the light most favorable to the plaintiff.

2017) (taking judicial notice of U.S. government website describing naturalization process); *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (judicially noticing statistics on state government website); *Lee v. Virginia State Bd. of Elections*, 188 F. Supp. 3d 577, 606 n. 16 (E.D. Va. 2016) *aff'd*, 843 F.3d 592 (4th Cir. 2016) (same) ; *Mikos v. Abbott Lab'ys*, No. GLR-21-912, 2021 WL 5416534, at *2 n.4 (D. Md. Nov. 18, 2021) (noticing documents on a federal agency website).

Second, the RJN Memo argues that the 5/10/2022 Congressional Report (RJN Ex. 1) specifically is a publicly available government document, which largely relays facts that are not subject to reasonable dispute because they are quoted from documents (including Emergent documents and emails) made publicly available. *See id.* at 31-32 (collecting cases). Defendants respond by declaring that the 5/10/2022 Congressional Report is "irrelevant," because the Court is limited to judicially noticing its existence and not its content. Opp. at 4. They are wrong on both counts. The report is highly relevant, speaking directly to the FAC's allegations at issue, and the Court can take judicial notice of both its existence *and* its contents. *See, e.g.*, *Mobility Workx*, 15 F.4th at 1151-1152 (granting motion for judicial notice of a report from the Congressional Research Service because "[t]hese types of government documents are capable of being 'accurately and readily determined from sources whose accuracy cannot be reasonably questioned'") (quoting Fed. R. Evid. 201(b)(2)); *see also, e.g.*, *Shore v. Charlotte-Mecklenburg Hosp. Auth.*, 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019) (taking judicial notice at the Rule 12(b)(6) stage of administrative rulings and an IRS private letter ruling); *In re Under Armour*, 540 F. Supp. 3d. at 521; *Jacobus v. Huerta*, No. 3:12-CV-02032, 2013 WL 673233, at *7 n. 8 (S.D.W. Va. Feb. 22, 2013) (taking judicial notice of information in federal government agency reports and postings), *report and recommendation adopted*, No. CIV.A. 3:12-02032, 2013 WL 1723631 (S.D. W. Va. Apr. 22, 2013), *aff'd,* 540 F. App'x 208 (4th Cir. 2013).

7

Defendants state, without explanation, elaboration, or citation, that they "dispute the conclusions" – not the full *contents* – of the 5/10/2022 Congressional Report. Opp. at 4 n.3. That single sentence is an insufficient ground for denial of judicial notice. It begs the question: what exactly do Defendants claim to dispute? For instance, the 5/10/2022 Congressional Report relays the number of COVID vaccine dose-equivalents manufactured at Bayview that had to be destroyed and the dates of their destruction. It summarizes the dates and contents of government inspection reports of the Bayview facility that were provided to Emergent's senior management. It quotes extensively from emails by Emergent (including the Individual Defendants), AstraZeneca, and J&J, which these companies themselves provided to Congressional investigators. Do Defendants claim that any of these *facts* presented in the 5/10/2022 Congressional Report is disputed, and if so, what is the credible basis for such a dispute? Their silence fatally undermines the argument.

Defendants also argue, in a footnote, that the Court should not "accept the conclusions of the [R]JN Materials for their truth" (Opp. at 3 n.2), an argument seemingly directed at the 5/10/2022 Congressional Report. However, the Court can judicially notice that Congressional investigators *reached* and *publicly reported* the conclusions set forth in the 5/10/2022 Congressional Report, after a year-long investigation extensively pled in the FAC, without deciding whether Congress was correct in reaching them. What matters here is that after an extra year of investigation, Congress reached the same cross-corroborating conclusions as the government inspectors, J&J and AstraZeneca inspectors, Emergent auditors, CWs, and Congress itself (a year prior) reached regarding the scope of ongoing, unaddressed deficiencies and contamination risks at the Bayview facility – all as pled in the FAC.

Third, the RJN Memo argues that the 5/10/2022 Press Release (RJN Exhibit 2) can be judicially noticed as evidencing what the House Committees and their leadership have publicly

8

said regarding their ongoing investigation that is pled in the FAC. *See id.* at 32 (collecting cases).[6]

Defendants concede that judicial notice can be taken of the press release's existence (Opp. at 3, 5)

but argue – without citation – that because it was not pled in the FAC and they dispute its

"conclusions," it is wholly "irrelevant" and cannot be considered by the Court in resolving their

motion to dismiss (*id.* at 3-4 & n.3). To the contrary, the RJN Memo cites numerous decisions –

which Defendants *ignore* – where courts took judicial notice of press releases as matters of public

record in securities fraud lawsuits. *Id.* at 32 (citing *Tchatchou v. India Globalization Cap. Inc.*,

No. CV PWG-18-3396, 2021 WL 307415, at \*5 (D. Md. Jan. 29, 2021) (Grimm, J.); *Johnson v.*

*Pozen Inc.*, No. 1:07CV599, 2009 WL 426235, at \*2 (M.D.N.C. Feb. 19, 2009), *report and*

*recommendation adopted*, No. 1:07CV599, 2009 WL 10680297 (M.D.N.C. Sept. 29, 2009); *Shah*

*v. GenVec, Inc.*, No. CIV.A. DKC 12-0341, 2013 WL 5348133, at \*1 n. 2 (D. Md. Sept. 20, 2013);

*In re Hum. Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758 (D. Md. 2013)).

For instance, in *Tchatchou*, this Court took judicial notice, as a matter of public record, of

a press release (Exhibit H) that was not pled in the challenged complaint. 2021 WL 307415 at \*5.

In doing so, this Court stated that it may take judicial notice of the fact that public records exist,

were filed with an agency, or conveyed publicly available information. *Id.* This Court also stated

that it could take notice and consider "generally known or undisputed facts" from public records

and "the content of a noticed document" at the Rule 12(b)(6) stage, provided that such facts are

listed by the Court, construed "in the light most favorable to the plaintiffs," and "not [ ] used to

contradict well-pleaded allegations in the complaint" *Id.* Here, the RJN Exhibits, including the

5/10/2022 Press Release, are submitted not to contradict, but to *corroborate*, the FAC's well-

---

[6]     It is a certainty that if the 5/10/2022 Congressional Memo and 5/10/2022 Press Release had conveyed a full-throated exoneration of Emergent, *Defendants* would have sought judicial notice of them, making their arguments outcome-driven, not process-driven. That the RJN materials point fully in the opposite direction – and corroborate the FAC's extensive allegations – is unfortunate for them but does not undermine the validity of judicial notice.

pleaded allegations, in accordance with this Court's rulings in *Tchatchou*. *See also In re Hum. Genome*, 933 F. Supp. 2d at 758 (district courts in the Fourth Circuit "routinely" take judicial notice of newspaper articles, analysts' reports, and press releases "even where the materials were not specifically referenced in the complaint") (collecting cases).

Fourth, four RJN documents are reports or written correspondence by government entities detailing deficiencies at the Bayview facility – BARDA reports from April 1, 2020 (RJN Exhibit 3) and June 26 to July 10, 2020 (RJN Exhibit 17), HHS's June 23, 2020 letter (RJN Exhibit 8), and FDA's June 14, 2021 report (RJN Exhibit 37) – that were confidentially transmitted to Emergent during the Class Period and recently made public by the 5/10/2022 Congressional Report. The RJN Memo highlights the FAC's related allegations that 18 similar reports, including *five* issued during the Class Period regarding Bayview – the 4/20/2020 FDA Inspection Report, 4/20/2020 FDA 483 Report, 6/17/2020 Warp Speed Report, 7/24/2020 Janssen Audit Report, and 4/21/2021 FDA 483 Report – put the Defendants on notice of serious deficiencies observed by third-party investigators, which Emergent acknowledged in seven written responses, including two regarding Bayview, the 5/8/2020 Emergent FDA 483 Response and 4/30/2021 Emergent FDA 483 Response. *See id.* at 9 (citing FAC §§V.E.2. and V.F.4; FAC ¶¶110(a)-(l), 111, 113, 123, 124(a)-(c), 125, 136(a)-(e), 201(a)-(k), 219(b)). In that context, the RJN Memo argues that the Court may judicially notice RJN Exhibits 3, 8, 17, and 37, which establish what they conveyed to Defendants at the time they were transmitted to Emergent. *See* RJN Memo at 32-33 (citing *Barry v. Novartis Pharms. Corp.*, No. 3:22CV196 (DJN), 2022 WL 2373452, at *4 (E.D. Va. June 30, 2022); *Shore*, 412 F. Supp. 3d at 573; *Horne v. Novartis Pharms. Corp.*, 541 F. Supp. 2d 768, 777 (W.D.N.C. 2008); *Jacobus*, 2013 WL 673233, at *7; *In re Under Armour*, 540 F. Supp. 3d at 517). For instance, in *Shore*, the court took judicial notice of an IRS private letter ruling "because it is a letter

10

from a government agency."  412 F. Supp. 3d at 573 (citing *Overall v. Ascension*, 23 F. Supp. 3d 816, 824-825 (E.D. Mich. 2014) and Fed. R. Evid. 201(b)).

Defendants *ignore* this cited authority and fail to directly address this argument.  At most, their brief makes the generalized argument that the RJN Motion seeks judicial notice for the "truth" of the RJN documents' content (Opp. at 2, 3-4) or "conclusions" (*id.* at 3 n.2) – an argument that facially has no application to the extent that judicial notice is sought to establish what these reports conveyed to Defendants at the time they were conveyed (whether or not truthful).

Fifth, the RJN Memo argues that judicial notice should be taken of the six RJN documents that are the COVID manufacturing contracts between Emergent and either J&J (RJN Exhibits 11 and 12) or AstraZeneca (RJN Exhibits 6, 7, 13, and 15), most of them signed by Defendant Husain, which are expressly pled in the FAC (*e.g.*, ¶¶52-54) and are at the heart of this litigation.  *Id.* at 33 (citing *In re 201 N. George St., LLC*, 551 B.R. 786, 789 (Bankr. N.D. W. Va. 2016); *Sayman v. Lehman Bros. FSB*, No. 3:13-cv-288-RJC-DSC, 2014 WL 2013353, at *4 (W.D.N.C. May 16, 2014); *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 668 (D. Md. 2011)).  Defendants effectively concede that the contracts are pled in the FAC.  *See* Opp. at 5 (asserting that "virtually none" of the RJN Exhibits is mentioned in the FAC).  They otherwise fail to address these documents or the cases cited by Lead Plaintiffs.  As such, judicial notice is warranted.[7]

Sixth, the RJN seeks judicial notice of three categories of company documents, many of which were sent/received by and/or reference the Individual Defendants, which the House Committees published on Congressional webpages coincident with the 5/10/2022 Congressional

---

[7]      *Defendants'* cited authority is in harmony.  In *CACL Int'l Inc. v. St. Paul Fire & Marine Ins. Co.*, 566, F.3d 150, 154 (4th Cir. 2009) (cited in the Opp. at 5), the Fourth Circuit affirmed a district court judgment reached after consideration on judicial notice of the company's underlying "contracts with the U.S. government, which it concluded were 'expressly incorporated into the complaints' … [because the] 'legal claims [were] predicated on the contractual relationships created by' the contracts" and the opposing party "had not challenged the contracts' authenticity."

Report's release:  (i) 14 Emergent emails and documents[8] produced by Emergent to Congressional investigators regarding the underlying facts at issue at the Bayview facility (RJN Exhibits 8, 9, 10, 17, 18, 19, 24, 26, 27, 29, 30, 35, 36, 37); (ii) 10 Emergent emails regarding the same topics that were produced by J&J and AstraZeneca to Congressional investigators after Emergent failed to produce them (RJN Exhibits 4, 14, 16, 21, 22, 23, 31, 32, 33, 34); and (iii) two internal J&J emails on these topics that J&J produced to Congressional investigators (RJN Exhibits 20, 25).  *See* RJN Memo at 33-34.  The companies formally produced ***all*** these documents, with full Bates stamping and privacy redactions,[9] to Congressional investigators, thereby representing them to be authentic and accurate, as part of the ongoing Congressional investigation pled in the FAC; Congressional investigators accepted them as authentic and accurate, relied on and cited them in the 5/10/2022 Congressional Report, and then published them on a publicly available Congressional website; and Defendants have raised no public objection, challenge, or dispute ever since.

On this record, Defendants' claim that the RJN Exhibits' authenticity and accuracy are not "beyond dispute" (Opp. at 6) rings hollow, as they continue to identify no *actual* dispute.  As such, the authority that Lead Plaintiffs cite, which Defendants fail to address, makes clear that judicial notice of ***all*** these documents and emails is warranted at the Rule 12(b)(6) stage as to the fact that they were sent/received, their authors/recipients, their dates, and their substance.  *See* RJN at 33-34 (citing *Phillips v. Univ. of Maryland Baltimore Cnty.*, No. CV ELH-19-570, 2020 WL 1820080, at *8 (D. Md. Apr. 10, 2020); *In re Harmony Holdings, LLC*, 393 B.R.409, 414 (D.S.C. 2008);

---

8    The non-email Emergent documents in this category include an FDA post-inspection letter regarding Bayview (RJN Exhibit 8), an HHS inspection report regarding Bayview (RJN Exhibit 17), Emergent reports to HHS listing Defendant Husain as the investigator regarding facilities including Bayview (RJN Exhibits 29, and 30), and an FDA inspection letter regarding Bayview (RJN Exhibit 37).

9    The companies produced these documents to Congressional investigators bearing Bates stamps beginning with the prefixes "EBSI" or "EmerCly" (for Emergent-produced documents), "AZ_COR" (for AstraZeneca-produced documents), and "JNJ_HOUSE_COR"  (for J&J-produced documents).

*Binks v. US Tech Sols.*, No. 2:20-cv-4164-DCN-MGB, 2021 WL 2679697, at *1 n.1 (D.S.C. June 30, 2021); *Nat'l Fed. of the Blind v. U.S. AbilityOne Comm.*, 421 F. Supp. 3d 102, 122 n.8 (D. Md. 2019); *In re Humphrey Hosp. Tr., Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 686 (D. Md. 2002)).[10]

Defendants' cited authority does not lead to a different conclusion.  Their cases regarding the taking of judicial notice as to the truth of documents (Opp. at 3-4) are distinguishable, as those decisions involved requests for judicial notice of news articles (*Layani v. Ouazana*, No. ELH20-420, 2021 WL 805405, at *23 (D. Md. Mar. 3, 2021)), SEC filings (*In re Mun. Mortg. & Equity, LC Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 626 n.7 (D. Md. 2012)), complaints filed in other courts (*Metro. Creditors Tr. v. PricewaterhouseCoopers, LLP*, 463 F. Supp. 2d 1193, 1198 (E.D. Wa. 2006)), or a *disputed* investigative report (*In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2020 WL 6290670, at *8 n.9 (D. Md. Oct. 27, 2020)) – ***none*** of which had their authenticity and accuracy previously established, without dispute, through production and publication in an official Congressional investigation.  For that same reason, Defendants' cases regarding the generalized concept of judicial notice of emails (Opp. at 6) are also distinguishable.[11]

### III.    CONCLUSION

For these reasons and those in the RJN Memo, Lead Plaintiffs respectfully ask the Court to grant judicial notice of RJN Exhibits 1-37 and to consider them in resolving Defendants' motion to dismiss (Dkt. No. 72).  As noted above, Lead Plaintiffs are resubmitting copies of RJN Exhibits 1 – 37, with the Court Clerk's approval, in accordance with the August 2, 2022 Docket Order.

---

[10]    Defendants effectively concede this argument through their acknowledgement that there is "some variation" in judicial opinions (Opp. at 6 n.7), *i.e.*, the body of case law that Lead Plaintiffs cite and Defendants fail to refute.

[11]    Specifically, Defendants' cited cases concerned wholly inapposite circumstances, such as judicial notice being sought for emails received by plaintiffs' counsel from non-parties (*Layani*, 2021 WL 805405, at *23), emails discussed in a different court opinion three years earlier (*In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 626 n.21 (S.D.N.Y. 2005)), or emails that defendants sought to introduce at the Rule 12(b)(6) stage to support a defense (*RSMCFH, LLC v. FareHarbor Holdings, Inc.*, 361 F. Supp. 3d 981, 987 (D. Haw. 2019) and *Biowish Techs., Inc.*, No. 18-676-RGA, 2019 WL 4344273, at *6 (D. Del. Sept. 12, 2019)).

Dated:  August 12, 2022                    Respectfully submitted,

                                           **POMERANTZ LLP**

                                           */s/ Matthew L. Tuccillo*

                                           Matthew L. Tuccillo (admitted *pro hac vice*)
                                           Jeremy A. Lieberman (admitted *pro hac vice*)
                                           Jennifer Banner Sobers (admitted *pro hac vice*)
                                           Dolgora Dorzhieva (admitted *pro hac vice*)
                                           600 Third Avenue, 20th Floor
                                           New York, NY 10016
                                           Tel.: (212) 661-1100
                                           Fax: (212) 661-8665
                                           jalieberman@pomlaw.com
                                           mltuccillo@pomlaw.com
                                           jbsobers@pomlaw.com
                                           ddorzhieva@pomlaw.com

                                           **POMERANTZ LLP**
                                           Jennifer Pafiti (admitted *pro hac vice*)
                                           1100 Glendon Avenue, 15th Floor
                                           Los Angeles, CA 90024
                                           Tel.: (310) 405-7190
                                           jpafiti@pomlaw.com

                                           ***Lead Counsel for Lead Plaintiffs and the Class***

14

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch (admitted *pro hac vice*)
Brendan Schneiderman (admitted *pro hac vice*)
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
bschneiderman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Stuart Kaufman
(*pro hac vice* applications forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Fort Lauderdale Police & Firefighters' Retirement System*

15

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2022, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which in turn sent notice to all counsel of record.


Dated:    August 12, 2022                    /s/ *Matthew L. Tuccillo*
                                             Matthew L. Tuccillo

16