# Lead Plaintiffs' RJN Exhibit 13

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

# MASTER QUALITY ASSURANCE AGREEMENT

### between

## ASTRAZENECA PHARMACEUTICALS, LP

### and

## EMERGENT MANUFACTURING OPERATIONS BALTIMORE LLC.

HIGHLY CONFIDENTIAL

AZ_COR _000255

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## TABLE OF CONTENTS

PART A:  STRUCTURE, TERM AND GENERAL..................................................................5

   1   Basis of this Quality Agreement..........................................................5

   2   Term, Agreement Review and Termination...................................6

   3   General.................................................................................................6

PART B:  QUALITY RESPONSIBILITIES.......................................................................8

   4   Responsibilities Matrix.....................................................................8

   5   Quality Criteria..................................................................................8

   6   Regulatory Submissions ................................................................10

   7   Manufacturing..................................................................................10

   8   Quality Assurance and Quality Control .....................................12

   9   Batch Release...................................................................................13

   10  Documentation ................................................................................13

   11  Change Control ................................................................................14

   12  Shelf Life/Expiry ............................................................................15

   13  Stability Studies [/Aging Studies] .............................................15

   14  Periodic Product Review ..............................................................16

   15  Audit and Visits..............................................................................16

   16  Product Quality Events and Investigations ............................18

   17  Product Recall ................................................................................19

   18  NDA Field Alerts.............................................................................20

PART C:  DEFINITIONS & INTERPRETATION .......................................................22

APPENDIX 1 – RESPONSIBILITIES MATRIX

APPENDIX 2 – QUALITY ASSURANCE CONTACTS

APPENDIX 3 – QUALITY ASSURANCE AGREEMENT CHANGE HISTORY

APPENDIX 4 – [FORM OF] PRODUCT [ITEM] REQUIREMENTS SCHEDULE

APPENDIX 5 - CHANGE CONTROL

APPENDIX 6 – QUALITY EVENTS

APPENDIX 7 – PERIODIC PRODUCT REVIEW REQUIREMENTS

APPENDIX 8 - SAFETY STATEMENTS

APPENDIX 9 – DOCUMENTATION

APPENDIX 10 - FORM OF AFFILIATE SIDE LETTER

APPENDIX 11 – SHIPPING AND PACKING AHEAD OF RELEASE/CLEARANCE
(SAOC/PAOC)

HIGHLY CONFIDENTIAL

AZ_COR _000256

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## MASTER QUALITY ASSURANCE AGREEMENT

### PARTIES

This Master Quality Assurance Agreement (the "**Quality Agreement**") is made by and between:

(1)     **ASTRAZENECA PHARMACEUTICALS LP**, a Delaware limited partnership whose registered office is at 1800 Concord Pike, Wilmington, Delaware 19803 ("**AZ**") and;

(2)     **Emergent Manufacturing Operations Baltimore LLC**, a wholly owned subsidiary of Emergent Biosolutions Inc., a Delaware incorporated company whose registered office is at 400 Professional Dr #400, Gaithersburg, MD 20879 ("**Service Provider**");

(each a "**Party**" and together the "**Parties**").

### EXECUTION

This Quality Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which shall together be deemed to constitute one agreement.  The Parties agree that execution of this Quality Agreement by industry standard electronic signature software and /or by exchanging PDF signatures shall have the same legal force and effect as the exchange of original signatures, and that in any proceeding arising under or relating to this Quality Agreement, each Party hereby waives any right to raise any defence or waiver based upon execution of this Quality Agreement by means of such electronic signatures or maintenance of the executed Quality Agreement electronically.

HIGHLY CONFIDENTIAL                                        AZ_COR _000257

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

This Quality Agreement is executed by the authorised representatives of the Parties.

==SIGNED for and on behalf of==

==ASTRAZENECA==
==PHARMACEUTICALS, LP==

==SIGNED for and on behalf of==

==Emergent Manufacturing Operations==
==Baltimore LLC.==



Signature

Name: █████████

Title: Quality Supplier Manager

Date: 08 July 2020 | 20:24 BST

Signature

Name: █████████

Title: Quality Assurance Director

Date: 08 July 2020 | 12:48 PDT

HIGHLY CONFIDENTIAL

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## BACKGROUND

The Parties wish to set out the terms and conditions on which they will assure the quality of the Products to be supplied by Service Provider pursuant to the Services Contract (as defined below).

## AGREEMENT

The Parties agree as follows:

## PART A: STRUCTURE, TERM AND GENERAL

### 1    Basis of this Quality Agreement

1.1    Agreement:  This Quality Agreement has been signed by the Parties hereto such that the terms of this Quality Agreement will apply between them and will also apply:

1.1.1    between such Affiliates which enter into an Affiliate Side Letter in the form set out at Appendix 10; and/or

1.1.2    between such Affiliates which enter into a Product Requirements Schedule in the form set out in Appendix 4 ;

and in each instance, the terms of this Quality Agreement shall be incorporated into such Affiliate Side Letter or Product Requirements Schedule (as the case may be).

1.2    Affiliates: Where the terms of this Quality Agreement are to apply to the Affiliate Side Letter or Product Requirements Schedule (as the case may be), entered into between Affiliates other than the Parties to this Quality Agreement, then in construing the terms of this Quality Agreement as they apply to such Manufacture, in so far as they allow, the terms hereof shall be construed so that:

1.2.1    each reference to "**AZ**" herein shall be deemed to be a reference to the relevant AZ Affiliate;

1.2.2    each reference to "**Service Provider**" herein shall be deemed to be a reference to the relevant Service Provider Affiliate; and

1.2.3    each reference to a "**Party**" or "**the Parties**" herein shall be construed accordingly.

HIGHLY CONFIDENTIAL

AZ_COR _000259

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## 2   Term, Agreement Review and Termination

2.1   <u>Term</u>:  This Quality Agreement shall come into effect on the Effective Date and shall remain in force until terminated by either Party serving not less than twelve- (12) months' written notice to the other Party, provided that such termination notice may not be served during the shelf-life of any Product delivered pursuant to any Services Contract (the "**Term**"). This Quality Agreement may cease to apply to a specific Product, if either Party serves not less than twelve- (12) months' written notice to the other Party, provided that such notice may not be served during the shelf-life of such Product.

2.2   <u>Review</u>:  The Parties shall review this Quality Agreement not later than the fifth (5th) anniversary of the Effective Date and every five (5) years thereafter.

2.3   <u>Variation</u>: Any variation or amendment to this Quality Agreement shall only be effective if documented in writing and signed by both Parties.  Any such variation or amendment or modification to this initial Quality Agreement shall, unless otherwise agreed by the Parties, automatically be made to each Agreement formed by the entry into of a Product Requirements Schedule or an Affiliate Side Letter, whether or not that Product Requirements Schedule or Affiliate Side Letter was entered into before or after the date of the variation or amendment, and whether or not it is entered into by the initial Parties or by Affiliates.  A variation to any of the Appendices may be made by the Parties executing a new Appendix, or in the case of Appendix 2, a Party sending notice and a new Appendix 2 as provided in Section 5.3, or in the case of Appendix 3, when it is updated as provided in Section 2.4.

2.4   <u>Appendix 3</u>:  The Parties shall also document each variation to this Quality Agreement in Appendix 3 (*Quality Assurance Agreement Change History*).

2.5   <u>Termination</u>:  The expiration or termination of this Quality Agreement as a whole or in relation to any Product shall be without prejudice to any rights or obligations that may have accrued prior to such expiration or termination, and shall not affect any provision which is expressly or by implication intended to come into or continue in force on or after expiration or termination.

## 3   General

QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL                    AZ_COR _000260

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

3.1    Subcontracting: Service Provider shall not subcontract all or any of its obligations under this Agreement or any Product Requirements Schedule to any person (other than its Affiliates) without the prior written consent of AZ. Such consent shall not relieve Service Provider from any obligation under this Quality Agreement (or any Product Requirements Schedule) and Service Provider shall be responsible for any acts or omission of its subcontractor as fully as if they were its own. Service Provider shall ensure that any subcontractor complies with all relevant provisions of this Quality Agreement and the Product Requirements Schedule.

3.2    Entire Agreement:  This Quality Agreement, each Product Requirements Schedule, each Supply Contract and the documents referred to in each of those documents, constitute the entire agreement between the Parties, and supersedes all prior agreements, arrangements and understandings between them, whether written or oral, with respect to the supply of the Product.

3.3    Assignment:  Assignment of this Quality Agreement shall be governed by the terms as set out in the relevant Services Contract.

3.4    Governing Law:  The interpretation and construction of this Quality Agreement shall be governed by the laws as set out in the relevant Services Contract or in the absence of any law being specified in the Services Contract, shall be the laws of Delaware.

HIGHLY CONFIDENTIAL                                                        AZ_COR _000261

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## PART B: QUALITY RESPONSIBILITIES

### 4    Responsibilities Matrix

4.1    Responsibilities Matrix: The Parties shall fulfil their respective obligations as set out in the Responsibilities Matrix in respect of the Manufacture of each batch of Product Bulk Drug Substance.

### 5    Quality Criteria

5.1    Disclosure to Regulatory Authorities: AZ may make this Quality Agreement and each Product Requirements Schedule available to Regulatory Authorities as required by Applicable Laws and Regulations or as determined by AZ.

5.2    Registrations and Licenses: Service Provider is responsible for obtaining and maintain all licenses, authorisations and approvals required by Applicable Laws and Regulations applicable in the country of manufacture of the Product Bulk Drug Substance in order to perform the services to Manufacture Product Bulk Drug Substance as set forth in the Services Contract.

5.3    Quality Assurance Contacts: Each Party's Quality Assurance contact details as at the date of this Quality Agreement are set out in Appendix 2. Each Party shall promptly inform the other Party in writing of changes in such contact person and send to the other Party an updated version of Appendix 2. For the avoidance of doubt, the contact details referred to in this Section represent the Quality Assurance contacts for each of the Parties to this Agreement and (where applicable, pursuant to Section 1.1) their Affiliates.

5.4    GMP: The Service Provider will ensure that all activities at all Service Provider Facilities, associated with the Manufacture of the Product are carried out in compliance with the applicable cGMPs.

5.5    Data Integrity: The Service Provider must have a Data Integrity policy and program which ensures that data generated (whether documented on paper or electronically) is attributable, legible, contemporaneous, original and accurate (ALCOA). In addition, data must be complete, consistent, enduring, and available. The Service Provider must ensure that its Data Integrity policy is not compromised by the data management

HIGHLY CONFIDENTIAL                                    AZ_COR _000262

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

practices of its suppliers. The Service Provider must ensure the existence and effective management of data governance and supporting processes that align with its internal policies and relevant regulatory guidance.

5.6 Facilities and Sensitized Substances: Service Provider shall Manufacture Product Bulk Drug Substance only at Facilities that have been previously agreed with AZ. Service Provider shall not conduct production and handling of highly sensitizing materials (such as antibiotics, potent hormones, cytotoxic compounds, or highly toxic non-pharmaceutical materials manufactured) in the Facilities being used for the Product.

5.7 Compliance and Guidance: Service Provider will ensure that the Manufacture activities performed by Service Provider are in compliance with Appendix 8, or such other safety statements as are executed by the Parties, which shall be updated from time to time by the Parties.

5.8 GMP Standards: Service Provider shall Manufacture Products in compliance with applicable Guidelines and regulations, including:

5.8.1 21 CFR 210 US Food and Drug Administration ("**FDA**"): Current Good Manufacturing Practice in Manufacturing, Processing, Packing or Holding of Drugs, General. 21CFR 211 US FDA: Current Good Manufacturing Practice for Finished Pharmaceuticals. 21 CFR 600 US FDA: Biological Products, General;

5.8.2 European Agency for the Evaluation of Medicinal Products ("**EMEA**");

5.8.3 Eudralex Vol. 4 – Medicine;

5.8.4 International Conference on Harmonization ("**ICH**") Quality Guidelines;

5.8.5 In respect of OOS: FDA Guidance for Industry Investigating Out-of-Specification ("**OOS**") Test Results for Pharmaceutical Production, October 2006

5.9 [Shared Facilities for Human and Veterinary Use (Brazil): Products manufactured on behalf of AZ which may be supplied to Brazil may not be produced in a shared facility with products intended for use in animals. The Service Provider shall notify AZ in the event veterinary products or products used in both animals and humans are produced at

HIGHLY CONFIDENTIAL                                                    AZ_COR _000263

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

their facility though shared use of facilities.  This notification requirement also applies to any technical or clinical trials manufacture in the facility.  The requirement to notify AZ includes future changes to the Service Provider's product portfolio.]

## 6     Regulatory Submissions

6.1     Regulatory Submissions: AZ shall be responsible for regulatory submissions for Product.

6.2     Support:  Subject to the terms of the Service Contract, Service Provider shall provide support and any necessary documentation related to the Manufacture, Processing or Packaging of Product to assist AZ in the completion of regulatory submissions for the Product.

6.3     Notice of Submission Dates:  AZ shall notify Service Provider prior to any significant regulatory submission due date to which it is committed and where support or updates from Service Provider is required to meet the obligation.

6.4     Marketing Authorisation and Submissions:  AZ shall provide Service Provider with a copy of the relevant sections, as appropriate, of the Marketing Authorisation and regulatory submission documentation and any subsequent supplements that relates to the Manufacturing, Processing or Packaging of the Product of each relevant market.

6.5     New Submissions:  Service Provider shall review, comment on and verify any new AZ regulatory submission relating to the Manufacturing, Processing or Packaging of Product by Service Provider for AZ prior to submission to Regulatory Authorities by AZ.

## 7     Manufacturing

7.1     Product Review/Continued Process Verification:

7.1.1     Continued Process Verification (CPV) will be carried out by Service Provider for the manufacture of Products. A CPV report shall be provided quarterly (annually/by campaign) for each Product manufactured at Service Provider. The CPV strategy shall be jointly reviewed periodically by AstraZeneca and Service Provider. The frequency of the CPV reports may change upon written request from AstraZeneca and justification. The format of the CPV data and reports shall be agreed by both Parties according to an agreed set of minimum standards (GMP at minimum).

HIGHLY CONFIDENTIAL                              AZ_COR _000264

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| **QUALITY ASSURANCE AGREEMENT** | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

7.1.2 Service Provider shall provide a CPV Periodic Product Review report to AstraZeneca with respect to Products. The CPV Periodic Product Review shall be provided at least annually, and shall be written in English and shall be formally approved by Service Provider and submitted to AstraZeneca within three (3) calendar months after completed evaluation period (or as agreed by both Parties).

7.2 Product Requirements Schedule: The Parties will agree to the Product Requirements Schedule for a Product and Service Provider shall Manufacture the Product in accordance with the Product Requirements Schedule.

7.3 Batches: All Products shall be Manufactured by Service Provider in discrete Batches.

7.4 Master Batch Records: Service Provider shall Manufacture each Product in accordance with written Master Batch Records as agreed by AZ.

7.5 Reworking: Service Provider shall ensure that only recovery, reworking or reprocessing approved by AZ and for which there is a documented procedure is used. Service Provider shall inform AZ in writing of any reworking or reprocessing or recovery carried out on any batch or intermediate Batch of any Product prior to Supply unless otherwise specifically agreed with AZ.

7.6 Packing and Labelling: Service Provider shall Pack and label the Product in accordance with the relevant Product Requirements Schedule.

7.7 Destruction of Waste: Service Provider shall put in place and maintain for the Term a documented and defined secure waste disposal process for damaged or defective Product and associated material which may give rise to a product security issue.

7.8 Storage: Service Provider shall ensure that storage arrangements are compliant with the requirements of the relevant Product Requirements Schedule.

7.9 Temperature Monitoring: Where required by AZ, Service Provider shall include specific monitoring devices with each shipment of Products with temperature restrictions to verify that the required temperature conditions (as set out in the relevant Product Requirements Schedule) have been complied with.

7.10 AZ Supplied Raw Materials: Where AZ supplies materials to Service Provider which Service Provider then controls, shall, to the extent included as a service under the

HIGHLY CONFIDENTIAL

AZ_COR_000265

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

Services Contract, establish with AZ and support holding time studies to evaluate maximum storage period and ensure that such materials are used within agreed shelf life.

## 8    Quality Assurance and Quality Control

8.1    Quality of Materials and Services: Service Provider is responsible for the quality control and quality assurance of all Materials and services used in the Manufacture of each batch of Product bulk drug substance. Service Provider shall maintain a supplier qualification program which may include routine audits of its vendors and contractors of such Materials and services. If requested by AZ, Service Provider shall provide AZ with documented Manufacture chain details to assure downstream production facilities visibility of complete production process.

8.2    Quality Control and Quality Assurance: Service Provider is responsible for the quality control and quality assurance of the Manufacturing activities it performs under the Service Contract for each batch of Product Bulk Drug Substance. To the extent stability testing is included as a service under the Services Contract, Supplier will provide stability data to AZ upon reasonable request.

8.3    Batch Release: There should be a quality unit(s) that is independent of production and that fulfills both quality assurance ("QA") and quality control ("QC") responsibilities. Service Provider's QA and QC shall be independent of each other and shall be responsible for release of each Batch of Product to AZ.

8.4    Reference Samples: Service Provider shall retain Reference Samples from each Batch in accordance with the relevant Product Requirements Schedule. Service Provider shall notify and obtain agreement from AZ prior to destruction or other use of any reference samples.

8.5    Trending Quality Critical Attributes: AZ is responsible for leading the development of internal control limits that support the expiry period and continued validated state of manufacture of each Product including the framework for documenting and trending quality critical attributes related to the Product. Service Provider shall promptly (within reasonably agreed timeframes) investigate any such trends in order to determine the cause and shall implement such corrective actions as are reasonably required by AZ.

HIGHLY CONFIDENTIAL

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

Batches failing the internal control limits will not be shipped to AZ until Service Provider conducts an appropriate investigation and AZ accepts the outcome in writing.

8.6 Quality Risk Management: Service Provider shall have in place and adhere to processes for quality risk management that assures systematic process for the assessment, control, communication and review of risks to the quality of the Product and production processes across the Product lifecycle for Product Bulk Drug Substance. If a new or increased hazard or risk is identified that impacts on the performance or safety of the Product it should be reported as a quality event.

8.7 Quality Performance Indicators: AZ and Service Provider shall review the ongoing performance of Service Provider in relation to the Performance Indicators and the Key Performance Indicator.

## 9 Batch Release

9.1 QA Release: Service Provider's QA shall release each Batch of each Product to AZ in accordance with Service Provider Procedures. In the event of a Major Deviation, Service Provider shall inform AZ prior to batch release.

9.3 Delivery before Batch Release: Service Provider can only deliver Product before full release of the Batch of Product if this has been agreed in advance in writing by AZ, and only following AZ's specific instructions. Service Provider shall deliver each Batch of Product ahead of release of such Batch of Product, however, such Batch, cannot be used or distributed by AZ before full release. In the event of a Major Deviation, Service Provider shall not make the Batch deliveries ahead of release. (See Appendix 4 (*Product Requirement Schedule*)

## 10 Documentation

10.1 Certificate of Analysis ("**CoA**"), Certificate of Conformance ("**CoC**") and Certificate of Manufacturing/cGMP Conformance ("**CoM**"): Service Provider shall ensure that the relevant Certificate of Analysis and/or Certificate of Manufacturing/cGMP Conformance accompanies all Product Supplied by Service Provider in accordance with the relevant Product Requirements Schedule and Appendix 9. Service Provider shall

HIGHLY CONFIDENTIAL

AZ_COR _000267

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

ensure that certificates are dispatched to arrive within one (1) day of delivery of any Batch, unless otherwise agreed by the Parties.

10.2    Documentation: Service Provider shall provide AZ with any additional documentation specified in the Product Requirement Schedule.

10.3    Retention of Documentation: Service Provider shall retain all relevant production documentation for a period of 10 years from the date of creation, unless specified otherwise in the relevant Product Requirements Schedule. At the end of such period, if Service Provider no longer wishes to retain the relevant documentation, Service Provider shall notify AZ of such intention and if AZ so requests within sixty (60) calendar days of such notice shall transfer such relevant documentation to AZ.

10.4    Service Provider shall retain documents and records, including raw data, with respect to development manufacture of Product (i.e., for use in an Investigational Drug Substance or Product), which includes Manufacture up to and including the primary validation or establishment if the Product is a proposed registered API starting material, of the intended commercial phase Process, and its related controls for no less than thirty (30) years, unless specified otherwise in the relevant Product Requirements Schedule. Service Provider may not, for any reason, dispose of any documents and records, including raw data with respect to supplied material prior that period of time unless specifically agreed in writing with AZ.

10.5    Copies of Documentation: Service Provider shall provide a copy of any item of retained documentation to AZ within such timescales as AZ may reasonably request. Service Provider acknowledges that there may be circumstances which require it to provide the documentation within twenty-four (24) hours of AZ's request, for example, if requested from a government or regulatory authority.

11    **Change Control**

11.1    Pre-Approval of Major Changes:  Service Provider shall not implement any Major Change unless it has been pre-approved by AZ in writing, in accordance with Appendix 5 (*Change Control*), which approval AZ shall not be under any obligation to give.

11.2    Assessment and Evidence of Changes:  Service Provider shall monitor and assess all Changes; and provide regulatory, technical or development documentary evidence

QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000268

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

detailing and justifying all proposed Changes and successfully implemented Changes, to AZ's requirements. Such documentation should be sufficient to enable AZ to establish the effect of the Change.

11.3    Samples: Upon AZ's request, Service Provider shall provide samples of the Product or material in advance of a Change from a test batch and following implementation of a Change at larger scale as requested.

11.4    Notification of Implementation: Service Provider shall notify AZ of implementation date and the first Batches thereof for which the Change shall be implemented.

11.5    Notification by AZ: AZ shall notify Service Provider of any Major Change impacting Service Provider, and Service Provider and AZ shall agree how to implement such changes.

11.6    Changes in Legislation: A Party shall inform the other Party in writing of any change in current local or international legislation of which it becomes aware of and which may affect the Manufacture of any Product or service to AZ.

11.7    Emergency Changes: notwithstanding the process for Changes as set out in Appendix 5, where an emergency Change such as a safety Change is required the Parties will co-operate to agree, implement and control such Change as soon as practicable.

## 12    Shelf Life/Expiry

12.1    Shelf Life of Product: AZ has the responsibility for defining the Product shelf-life or re-test date and storage conditions.

12.2    Shelf Life of Materials: Service Provider shall only use materials in the Manufacture of the Product which are still within their usable shelf life.

## 13    Stability Studies

13.1    Stability Batches: To the extent set forth in the Services Contract Service Provider shall be responsible for carrying out and reporting stability studies as required by cGMPs and in accordance with protocols and procedures agreed by AZ, including reporting for each time point (see section 13.4) . Both Parties shall agree selection of Batches for stability purposes. Materials used for stability studies will be produced using the same facilities, equipment and methods as the purchased Product.

HIGHLY CONFIDENTIAL

AZ_COR _000269

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

13.2     Other Stability Studies: In addition to the stability studies referred to in Section 13.1, to the extent set forth in the Services Contract, AZ may require Service Provider to conduct stability studies or collaborate with activities to support proposed Changes and implemented Changes. AZ shall communicate such requirements in writing to Service Provider.

13.3     Notification of Stability Failure: The Parties shall notify each other of any potential stability failure (e.g., lab error), any stability failure or OOT in results likely to lead to a stability failure during the period of a study as soon as possible and in any event within twenty-four (24) hours of becoming aware of the issue. Service Provider shall evaluate/collaborate with investigation/investigate all OOS stability results or OOT in accordance with FDA OOS Guidance and Appendix 6 (quality events and investigation). Interim report shall be delivered in writing within three (3) calendar days of discovery of the stability failure or OOT.

13.4     Stability Testing Requirements: All stability Batches:when studies are initiated will be defined by AZ. Service Provider should perform test at each time point. Sample must be pulled no later than 14 days after scheduled removal date. Test must be completed within 30 days of sample pull. Service Provider should send test results to AZ within 7 days after test approval at the Service Provider.

## 14     Periodic Product Review

14.1     Periodic Product Review: Service Provider will provide a copy of each Periodic Product Quality Review to AZ in accordance with cGMP annually and covering the reporting period agreed.

14.2     PQRs where no Manufacture: PQRs are required even if there is no manufacture within the reporting period. In that event the PQR should cover an evaluation of the stability data, deviations, complaints, among others for the reporting period.

## 15     Audit and Visits

15.1     Regulatory Authority Audits: Subject to the terms of the Services Contract, Service Provider shall permit all inspections by applicable Regulatory Authorities. Service

HIGHLY CONFIDENTIAL     AZ_COR_000270

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

Provider shall, immediately on receiving notice, inform AZ of any quality system or Regulatory Authority inspection that may impact on Products. AZ shall have the option for its personnel to be present at the Service Provider during the inspection in order to represent AZ interests related to the Products.

15.2    Findings of Regulatory Audits: Service Provider shall make available to AZ at agreed times, during and after the inspection, all the findings of such inspection that may have an impact on Products, their Manufacture or quality systems. Service Provider and AZ shall jointly agree the response and any improvement plan to any adverse observations relating to the Products or their Manufacture, prior to these being submitted to the Regulatory Authority. Parties shall meet regularly to review progress in the implementation of this plan.

15.3    Routine and Product Quality Event Audits:  AZ shall have the right to carry out periodic quality and compliance systems audits at mutually agreed times upon giving at least one (1) month's notice to Service Provider or where it is in order to investigate a Product Quality Event, upon giving at least twenty-four (24) hours notice.

15.4    Access for Audit and Visits: During audits and other visits, Service Provider shall provide access to its personnel, Facilities, records and control documents relevant to the Manufacture of Products.

15.5    Audit Findings:  AZ shall make the results and its observations from the audit available to Service Provider in an audit report. Where an audit identifies observations:

15.5.1  Service Provider shall provide an action plan ("**Action Plan**") within mutually agreed timescales; and

15.5.2  AZ shall review the Action Plan and confirm whether it accepts the same, or provide Service Provider with its proposed amendments, in which case the Parties shall acting together reasonably and in good faith promptly agree the Action Plan. Service Provider shall implement the Action Plan within the timescales set out in the agreed Action Plan. For major and critical observations Service Provider shall provide such information and evidence as is reasonably required by AZ in connection with the satisfaction of the Action Plan.

HIGHLY CONFIDENTIAL

AZ_COR _000271

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

15.6   Confidentiality: Any information made available to AZ during an audit or visit including any information of Service Provider's suppliers and subcontractors and AZ's audit results and observations on quality and compliance issues shall be confidential and shall be protected by the confidentiality provisions of the Services Contract. Permitted disclosees of the audit report by AZ shall also include regulatory inspectors and with Service Provider's prior written approval, AZ's contract manufacturers for the purpose of their Manufacture to AZ and subject to appropriate confidentiality obligations.

## 16   Product Quality Events and Investigations

16.1   Process for Product Quality Events: Service Provider shall have in place and maintain during the Term documented defined processes for the management of Product Quality Events including the tracking and trending of Product Quality Events.

16.2   Investigation and Notification: Upon a Party becoming aware of any issue which may be a Product Quality Event, such Party shall investigate such issue promptly. A Party shall inform the other Party within twenty-four (24) hours and confirm in writing within three (3) calendar days of becoming aware of any Product Quality Event that is significant enough to require investigation to determine impact on Product quality. Receiving Party shall acknowledge in writing receipt of such Product Quality Event notification. Each Party shall be responsible for the investigation and remedy of Product Quality Events relating to its activities and its suppliers and the supply chain. If a Quality Event could have been caused by activities at either: (a) AZ, its suppliers, or (b) at the Service Provider, its suppliers, then both AZ and Service Provider shall be responsible for investigating the Product Quality Event; provided that AZ shall coordinate the investigations of both Service Provider and AZ.

16.3   Further Data: Parties may require further data and samples of Product resulting from Product Quality Events in sufficient quantities and in a timely manner for the other Party's investigation of the Product Quality Event. Parties shall communicate such requirements in writing to other Party. Parties shall acknowledge receipt in writing of a Product sample related to the Product Quality Event.

HIGHLY CONFIDENTIAL

AZ_COR _000272

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

16.4  Investigation Report:  Service Provider must complete the Product Quality Event investigation report as soon as reasonably practicable and in any event shall provide a copy of the completed report to AZ within thirty (30) calendar days of the discovery of such Product Quality Event, or as agreed with AZ, and in any case, to meet any required regulatory timeframe.  If AZ, by exception, agrees in writing to accept an interim report within the timelines set out above, the completed report must nevertheless be provided as soon as reasonably practicable thereafter.

16.5  Scope of Investigation: Any Product Quality Event raised by AZ shall be promptly investigated by Service Provider in accordance with the requirements of Appendix 6

16.6  Process Control Points:  Service Provider shall monitor and review process control points and shall report promptly to AZ any trends which may impact Manufacture to AZ.

16.7  Laboratory Level Investigation: Where required, Service Provider shall run and document a laboratory level investigation using documented and defined procedures for laboratory level investigations (preparation checks on sample, standard etc are allowed as part of the laboratory level investigation).

16.8  Further Investigation: If a clear, assignable cause was not identified in the laboratory level of investigation, additional investigation work shall be conducted under the guidance of AZ. Any clear re-testing or re-sampling by Service Provider shall require prior written consent by AZ. After completing additional investigational work, Service Provider shall notify AZ within one (1) working day of the outcome of such work.

Notice of Minor Deviations shall be included with Batch documentation delivered pursuant to the Product Requirement Schedule or reported periodically as agreed by the Parties.

## 17   Product Recall

17.1  Notification:  Service Provider shall notify AZ as soon as possible and in any event within twenty-four (24) hours of discovery of a Potential Recall with respect to any Batch of Product delivered to AZ and/or distributed in the marketplace.

HIGHLY CONFIDENTIAL                                                     AZ_COR _000273

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

17.2   Investigation: Service Provider shall conduct an immediate investigation to determine the root cause of the Potential Recall and provide AZ with a written investigation report as soon as reasonably practicable and, in any case, in time to meet any required regulatory timeframe specified by AZ.

17.3   Recall: AZ shall make the final decision, after consultation with Service Provider, of whether to conduct a recall. Service Provider shall not initiate any recall of any Product. In the event that AZ shall be required or shall voluntarily decide to recall any Product Manufactured by , AZ shall inform Service Provider of such recall in accordance with AZ's customary procedures. AZ shall have responsibility for any communication with Regulatory Authorities regarding such recall; provided that Service Provider shall cooperate with AZ in developing such communications.

17.4   Assistance: Service Provider shall provide AZ reasonable and prompt assistance to investigate any recall believed to relate to the Products. The coordination and management of any recall situation will be the responsibility of AZ. Service Provider shall cooperate with AZ in implementing such recall.

17.5   Recalled Product: In the event of a recall, Service Provider shall ensure that all recalled Product at Service Provider's site, or at its suppliers and supplied from Service Provider's site, are reconciled and shall provide AZ with all requested information regarding the distribution of recalled Product. Service Provider shall ensure that recalled Product under Service Provider's control is secured and is subsequently destroyed if required or otherwise handled in accordance with AZ's instructions.

## 18   Biological Product Deviation Report (BPDR)

18.1   Service Provider shall notify AZ as soon as possible and in any event within twenty-four (24) hours of identifying any quality problem that may impact Product on the market, including, without limitation, any information concerning: (a) any incident that would cause any Product or its labelling to be mistaken for, or applied to, another article, (b) any microbial contamination, or any significant chemical, physical, or other change or deterioration in such Product, or any failure of one or more distributed Batches of any Product to meet the specifications in the Product Requirement Schedule, (c) any other matter that would require the submission of a BPDR report to the FDA under 21

HIGHLY CONFIDENTIAL          AZ_COR _000274

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

CFR 600.14, or (d) any other matter that would require a report to a regulatory authority concerning distributed Product.

18.2    Where applicable, AZ shall submit required reports to regulatory authorities regarding distributed Product, including BPDR reports to FDA as required by 21 CFR 314.81600.14.

HIGHLY CONFIDENTIAL                                                    AZ_COR _000275

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## PART C:  DEFINITIONS & INTERPRETATION

### Definitions

In this Agreement:

Unless otherwise specifically provided in this Agreement, the following terms shall have the following meanings:

| | |
|---|---|
| **Active Pharmaceutical Ingredient ("API")** | means a substance or mixture of substances to be used in the Manufacture of a drug (medicinal) product and that, when used in the production of a drug, becomes an active ingredient of the drug product; |
| **Adverse Trend** | means a series of results showing a decrease/increase that indicates a probability of an OOS result before the registered retest period or shelf life of the Batch is reached; |
| **Affiliate** | means, with respect to a Party, any Person that Controls, is Controlled by or is under common Control with such Party from time to time; |
| **Affiliate Side Letter** | means any letter signed pursuant to section 1.1 in the form set out at Appendix 10; |
| **Applicable Laws and Regulations** | means all national, supra-national, federal, state, local, foreign or provincial laws, rules, directives, regulations, including case law, as well any guidance, guidelines and requirements of any Regulatory Authorities and any industry codes of practice, in effect from time to time applicable to the activities performed under this Agreement; |
| **Atypical Result** | means a single result that does not follow the expected trend for a study, a previously unobserved peak in a chromatogram or any other unusual result that is considered abnormal for the Product; |
| **Atypical Trend** | means an atypical trend is a set of data points for a stability indicating parameter, from one stability study or several studies, showing an atypical pattern. The detection of an atypical trend requires knowledge of the expected trend, i.e. the typical trend of stability data from other studies on the Product; |
| **Batch** | means a defined quantity of Product manufactured in one process or series of processes so that the defined quantity can be expected to be homogenous; |
| **Bulk Drug Substance** | means any intermediate drug substance that is destined for further GMP processing into a final drug product presentation. |

HIGHLY CONFIDENTIAL

AZ_COR _000276

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| | |
|---|---|
| **Certificate of Analysis ("CoA")** | with respect to each Product, means a certificate containing the information and signatures set forth in the relevant Product Requirements Schedule, as detailed in Appendix 9 (*Documentation*); |
| **Certificate of Conformance ("CoC")** | with respect to each Product, means a certificate containing the information and signatures set forth in the relevant Product Requirements Schedule, as detailed in Appendix 9 (*Documentation*); |
| **Certificate of Manufacturing Compliance ("CoM")** | with respect to each Product, means a statement letter which certifies that Product has been manufactured in full compliance with cGMP requirements Requirements Schedule, as detailed in Appendix 9 (*Documentation*) |
| **Control** | means: (i) to possess, directly or indirectly, the power to direct the management or policies of a Person, whether through ownership of voting securities or by contract relating to voting rights or corporate governance, or (ii) to own, directly or indirectly, fifty percent (50%) or more of the outstanding voting securities or other ownership interest of such Person, or (iii) in the case of a partnership, control of the general partner, and **"Controls"** and **"Controlled"** shall be construed accordingly; |
| **Effective Date** | means the date on which the last Party signs this Agreement; |
| **Elemental Impurities Guidelines** | means EMEA/CHMP/SWP/4446/2000, Ph Eur 5.20 and 2.04.20, ICH Q3D guideline and USP general chapters <232> and <233>, and subsequent updates, as applicable; |
| **EMA** | means the European Medicines Agency; |
| **End Product** | means a pharmaceutical dosage form marketed by or on behalf of AZ or its Affiliates, now or in the future, that comprises the Products or utilises any of the Products (or its analogues or derivatives) in its Manufacture, including the Finished Product; |
| **Facilities** | means the facilities used by Service Provider to Manufacture the Products; |
| **FDA** | means the USA Food and Drug Administration; |
| **Finished Product** | means the final presentation of the pharmaceutical product in formulated, packaged and labelled form for sale to AZ's customers; |
| **Good Manufacturing Practices** | means those laws and regulations applicable to the manufacture of medicinal products for human use, including, without limitation, current good manufacturing practices as specified in the US Federal Food Drug and Cosmetic Act at 21 CFR (Chapters 210, 211, 600 and |

HIGHLY CONFIDENTIAL

AZ_COR _000277

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| | |
|---|---|
| ("GMPs") | 610), the Guide to Good Manufacturing Practices for Medicinal Products as promulgated under European Directive 91/356/EEC, and the good manufacturing practicing regulations of any other territory to be agreed upon in the Service Contract; |
| International Conference on Harmonization ("ICH") | A confederation of Regulatory Authorities and Industry representatives from EU, Japan and US, as well as other countries focused on aligning expectations for Quality, Safety and Efficacy of drug and biologic registration and control. ICH has issued guidelines on Quality including, but not limited to, the conduct of stability studies, defining relevant thresholds for impurities testing, a more flexible approach to pharmaceutical quality based on Good Manufacturing Practice ("GMP") risk management, manufacture of API, and Quality Systems Management; |
| Key Performance Indicators | means quantifiable measurements that reflect the critical success factors of the Service Provider's performance of this Agreement comprised from the aggregated Performance Indicators, as amended by the Parties from time to time; |
| Major Change | has the meaning given in Appendix 5 (*Change Control*); |
| Manufacture | means any of the following activities: production, Processing, Packaging, labelling, quality control, release, storage and distribution and related controls involved in the supply of the Product; means any of the following activities carried out by the Supplier in the supply of the Product: Processing, quality control, Packaging, labelling, storage and distribution and related controls; |
| Materials | means the component materials used to Manufacture each Product; |
| Out of Trend ("OOT") | A single result or a number of results that do not follow the expected Trend, for a particular Batch or series of Batches, either in comparison with other stability studies or with respect to previous results collected during a stability study. Out of Trend is divided into three different types: Atypical Result, Atypical Trend and Adverse Trend; |
| Package or Packaging | means with respect to each Product, means the action of packaging, labelling, testing, inspecting, or any activity of a nature similar to the foregoing that does not change the physical characteristics of such Product, in preparation for storage, distribution or further conversion of Product to the Finished Product (and **"Pack"** shall be construed accordingly); |
| Periodic Product Quality Review | means a review and evaluation, whether annual or periodic, to confirm the continued suitability and reproducibility of manufacturing and control process and appropriateness of Product Requirements Schedules, to highlight any trends and to recommend any changes |

HIGHLY CONFIDENTIAL

AZ_COR _000278

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| | required to procedures, methods or Product Requirements Schedules, as part of the ongoing validation and providing a mechanism to help highlight any requirement for changes and revalidation (Appendix 7); |
|---|---|
| ("PIC/S") | The Pharmaceutical Inspection Convention and Pharmaceutical Inspection Co-operation Scheme (jointly referred to as PIC/S) are international instruments between countries and pharmaceutical inspection authorities, which provide together an active and constructive co-operation in the field of GMP. The organization has issued guidelines detailing expectation on a number of aspects of Pharmaceutical Manufacturing; |
| Potential Recall | means any Product Quality Event that has the potential to lead to Product recall; |
| Process or Processing | with respect to each Product, means the processing steps for conversion of the relevant Materials into Product and the testing thereof; |
| Product | means the product(s) set out in the Product Requirements Schedule; |
| Product Quality Event | means any non-conformance with an established procedure, process, Product Requirements Schedule or the Applicable Laws and Regulations, such as a deviation, Product complaint or adverse event report with a Product quality implication, except where such non-conformance is planned and controlled within Parties change control systems; |
| Product Requirements Schedule | means, in relation to each Product, any quality attributes or service requirements, and any product, materials, performance, testing, storage, packaging, labelling, distribution and shipping specification for that Product, as such specification are adopted and may be amended from time to time by the Agreement of the Parties in writing, which may be in the form set out at Appendix 4 (*Form of Product Requirements Schedule*) or some other written format; |
| Reference Samples | means a representative sample of a Batch that is of sufficient quantity to perform at least two (2) full quantity control analyses; |
| Regulatory Authority | means any court or government body, whether national, supra-national, federal, state, local, foreign or provincial, including any political subdivision, including any department, commission, board, bureau, agency, or other regulatory or administrative governmental authority or instrumentality, and further including any quasi-governmental person or entity exercising the functions of any of these; |
| Responsibilities | means the matrix set out at Appendix 1 (*Responsibilities Matrix*); |

QAA-07 – Master Quality Assurance Agreement - CMO
TV: 17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR_000279

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Matrix | |
|---|---|
| **Services Contract** | means either:<br><br>(i)   a Product Schedule entered into by the Parties (or their Affiliates) pursuant to a Master Service Agreement, in respect of the Manufacture of the Product; or<br><br>(ii)  such other commercial agreement agreed by the Parties in respect of the Manufacture of the Product, for example if no Product Schedule has been entered into, the Purchase Order issued by AZ (or its Affiliate),  duly accepted by Service Provider (or its Affiliate), and the terms and conditions agreed by the Parties shall govern the Manufacture of the Product; |
| **Service Provider Procedures** | means standard procedures of Service Provider as confirmed with AZ from time to time; |
| **Term** | means the term of this Agreement, as described in Section 2.1; |
| **Traceability** | the ability to follow data and records logically within and between Parties throughout the Manufacture chain to allow the reconstruction of events; |
| **Trend** | means a trend is a pattern of data that indicates change over time. This data may demonstrate either an increasing or decreasing trend (change of mean) for the stability indicating parameter over time or the data may indicate no discernible change at all. The change may be linear or non-linear. |

## Interpretation

1.   Except where the context requires otherwise, whenever used the singular includes the plural, the plural includes the singular, the use of any gender is applicable to all genders and the word "or" has the inclusive meaning represented by the phrase "and/or".

2.   Whenever this Agreement refers to a number of days, unless otherwise specified, such number refers to calendar days.

3.   The term "including" or "includes" as used in this Agreement means including "without limiting" or "without limitation".

4.   The headings in this Agreement are for convenience of reference only. References to Articles, Sections and Parts refer to the Articles, Sections and Parts of and to this Agreement. References to items are to items of the Product Requirements Schedule.

HIGHLY CONFIDENTIAL

AZ_COR _000280

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

5. If there is any inconsistency between this Agreement and a Services Contract, the terms of this Agreement shall take precedence in respect of all quality matters, and the terms of the Services Contract shall take precedence in relation to all other matters.

6. The Appendices (as amended from time to time)(including the Product Requirements Schedule) form part of this Agreement and have the same force and effect as if expressly set out in the body of this Agreement, and any reference to this Agreement shall include the Appendices.

7. To the extent that there is conflict between or ambiguity relating to the main body of this Agreement and the Appendices, or between the Appendices, the order of precedence shall be as follows:

   - the relevant Product Requirements Schedule;

   - the terms of the main body of this Agreement;

   - the Appendices to this Agreement (excluding the Product Requirements Schedule and the Responsibilities Matrix); and

   - the Responsibilities Matrix.

8. Where this Agreement is translated into any other language, this English language version shall prevail in the event of any conflict or ambiguity.

HIGHLY CONFIDENTIAL

AZ_COR _000281

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

# APPENDICES

HIGHLY CONFIDENTIAL

AZ_COR _000282

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 1 – RESPONSIBILITIES MATRIX

| Section | Responsibility for | Service Provider | AZ |
|---|---|---|---|
| 2 | **TERM, AGREEMENT REVIEW AND TERMINATION** | | |
| 2.2 | Updating the Agreement | | X |
| | | | |
| 5 | **QUALITY CRITERIA** | | |
| 5.2 | Registrations and Licenses. Obtaining Regulatory Approvals for Manufacture | X | |
| 5.3 | Quality Assurance Contacts. Each Party shall promptly inform the other Party regarding changes in contact details | X | X |
| 5.4 | GMP. Compliance at Service Provider and Service Provider's suppliers | X | |
| 5.8 | Compliance and Guidance. Compliance with specific guidelines | X | |
| | | | |
| 6 | **REGULATORY SUBMISSIONS** | | |
| 6.1 | Regulatory submissions for Product | | X |
| 6.2 | Provide support as needed for completion of regulatory submissions | X | |
| 6.4 | Provide a copy of Marketing Authorization | | X |
| 65 | Review and agreement on regulatory submissions to Manufacturing, Processing or Packaging | X | |
| | | | |
| 7 | **MANUFACTURING** | | |
| 7.1 | Product Review / Continued Process Verification | X | |
| 7.4 | Traceability of Batches | X | |
| 7.7 | Packing and labelling at Service Provider | X | |
| 7.8 | Destruction of Waste | X | |
| 7.9 | Storage and Transportation | X | X |
| 7.10 | Temperature monitoring | X | |
| | | | |
| 8 | **QUALITY ASSURANCE AND QUALITY CONTROL** | | |
| 8.1 | Quality of Services and Testing of Materials set forth in the Master Batch Record | X | |
| 8.2 | Quality Control and Quality Assurance | X | |
| 8.4 | Reference Samples | X | |
| 8.5 | Trending Quality Control Attributes | X | X |

HIGHLY CONFIDENTIAL

AZ_COR _000283

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Section | Responsibility for | Service Provider | AZ |
|---|---|---|---|
| 8.6 | Quality Risk Management Process | X | X |
| 8.7 | Quality Performance Indicators | X | X |
| | | | |
| **9** | **BATCH RELEASES** | | |
| 9.1 | Release the Product to AZ | X | |
| | | | |
| **10** | **DOCUMENTATION** | | |
| 10.1 | Provision of CoA and/or CoC and/or CoM | X | |
| 10.2 | Documentation | X | |
| 10.3 | Retention of Documentation | X | |
| 10.5 | Copies of Documentation | X | |
| | | | |
| **11** | **CHANGE CONTROL** | | |
| 11.1 | Change Control approval process | X | X |
| 11.2 | Assessment and evidence of Changes | X | |
| 11.3 | Samples from Changes | X | |
| 11.4 | Implementation of Changes | X | |
| | | | |
| **12** | **SHELF LIFE/EXPIRY** | | |
| 12.1 | Shelf life of Product | X | |
| 12.2 | Shelf life of materials | X | |
| | | | |
| **13** | **STABILITY STUDIES** | | |
| 13.1 | Stability Batches | X | |
| 13.3 | Notification of stability failure | X | X |
| | | | |
| **14** | **PERIODIC PRODUCT REVIEW** | | |
| 14.1 | Periodic Product Review | X | |
| | | | |
| **15** | **AUDIT AND VISITS** | | |
| 15.3 | Routine Audits and Product Quality Event Audits | | X |
| 15.4 | Access for Audit | X | |
| 15.5 | Audit Findings and Action Plan | X | X |
| 15.6 | Confidentiality | | X |
| | | | |
| **16** | **PRODUCT QUALITY EVENTS AND INVESTIGATIONS** | | |
| 16.1 | Process for Quality Events | X | |
| 16.2 | Product Quality Event Investigations | X | X |
| 16.3 | Further Data | X | X |
| 16.4 | Investigation Report | X | |
| 16.5 | Scope of Investigations | X | |

Page | 2
Appendix 1 - QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000284

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Section | Responsibility for | Service Provider | AZ |
|---|---|---|---|
| 16.6 | Process Control Points | X | |
| 16.7 | Laboratory Lead Investigation-OOS Result | X | |
| 16.8 | Further Investigation | X | X |
| | | | |
| **17** | **PRODUCT RECALL** | | |
| 17.1 | Notify a Potential Recall | X | |
| 17.2 | Conduct an investigation | X | X |
| 17.3 | Final Decision | | X |
| 17.4 | Coordination of any recall | | X |
| 17.5 | Recalled Product | X | |
| | | | |
| **18** | **NDA FIELD ALERTS** | | |
| 18.1 | Notification of event | X | |
| 18.2 | Reporting | | X |
| | | | |

Page | 3
Appendix 1 - QAA-07 – Master Quality Assurance Agreembnt - CMO
TV: 17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000285

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 2 – QUALITY ASSURANCE CONTACTS

| AZ | |
|---|---|
| **Primary Contact** | **Alternate** |
| ▮▮▮▮▮▮▮▮▮<br>**Quality Supplier Manager**<br><br>AstraZeneca<br>508 Wrangler Drive Ste 100<br>Coppell, TX 75019<br>USA<br><br>Email: ▮▮▮▮▮▮@astrazeneca.com<br>Telephone: ▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮▮<br>**QA Director Americas and Biologics Region, GSQ**<br><br>AstraZeneca<br>One MedImmune Way<br>Gaithersburg, MD 20878<br>USA<br><br>Email: ▮▮▮▮▮▮@astrazeneca.com<br>Telephone: ▮▮▮▮▮▮▮ |
| **Supplier Changes:** ▮▮▮▮▮▮@astrazeneca.com | |

| Service Provider | |
|---|---|
| **Primary Contact** | **Alternate** |
| ▮▮▮▮▮▮▮▮▮<br>**Director, Quality Assurance**<br><br>Emergent BioSolutions<br>5901 E. Lombard St.<br>Baltimore, MD 21224<br>USA<br><br>Email: ▮▮▮▮▮▮@ebsi.com<br>Telephone: ▮▮▮▮▮▮▮ | ▮▮▮▮▮▮▮▮▮<br>**Specialist II, Quality Assurance**<br><br>Emergent BioSolutions<br>5901 E. Lombard St.<br>Baltimore, MD 21224<br>USAEmail: ▮▮▮▮▮▮@ebsi.com<br>Telephone: ▮▮▮▮▮▮▮ |

HIGHLY CONFIDENTIAL

AZ_COR _000286

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 3 – QUALITY ASSURANCE AGREEMENT CHANGE HISTORY

| Version No. | Description of Change | Effective Date |
|---|---|---|
| 1.0 | Initial QAA between AZ and Emergent BioSolutions | Date of last signature |

HIGHLY CONFIDENTIAL

AZ_COR _000287

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 4 – FORM OF PRODUCT REQUIREMENTS SCHEDULE

## THIS PRODUCT REQUIREMENTS SCHEDULE IS ENTERED INTO BY AND BETWEEN:

(1)    **ASTRAZENECA PHARMACEUTICALS LP**, a Delaware limited partnership with offices at 1800 Concord Pike, Wilmington, Delaware 19803, USA ("**AZ**"); and];

This Appendix is a template in the Core QAA to be completed by the affiliates as applicable

### Execution

Service Provider has agreed to Manufacture Product in accordance with the above.

**On behalf of**
**AstraZeneca Pharmaceuticals LP**

| By: | |
|---|---|
| Name: | |
| Title: | |
| Date: | |

**On behalf of**
**Emergent Manufacturing Operations Limited LLC.**

| By: | |
|---|---|
| Name: | |
| Title: | |

HIGHLY CONFIDENTIAL                                                          AZ_COR _000288

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Date: | |
|---|---|

QAA Reference:

Product Requirements Schedule Reference and Version:

This version will override the previous version of this Product Requirements Schedule.

HIGHLY CONFIDENTIAL                                                                    AZ_COR _000289

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## Index for the Product Requirement Schedule

| 1 | Site of Manufacture |
|---|---|
| 2 | Delivery (Receiving Site) Address |
| 3 | Product QA Contact |
| 4 | Specifications |
| 5 | Test Methods |
| 6 | Manufacturing Methods |
| 7 | Storage and Transportation Requirements |
| 8 | Packaging and Labelling Requirements |
| 9 | Documentation Requirements |
| 10 | Documentation Retention by Service Provider |
| 11 | Samples and Sample Retention |
| 12 | Stability/Aging Studies |
| 13 | Change History |
| 14 | Notices |

HIGHLY CONFIDENTIAL

AZ_COR _000290

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## 1. SITE OF MANUFACTURE

[Insert Details]

## 2. DELIVERY (RECEIVING SITE) ADDRESS FOR PRODUCT

[Insert Details]

## 3. PRODUCT QA CONTACTS

AZ

| Primary Contact | Alternate |
|---|---|
|  |  |

Service Provider

| Primary Contact | Alternate |
|---|---|
|  |  |

## 4. SPECIFICATIONS

[Insert Details]

## 5. TEST METHODS

[Insert Details]

## 6. MANUFACTURING METHODS

[Insert Details]

## 7. STORAGE AND TRANSPORTATION REQUIREMENTS

Temperature requirements:

- Temperature Monitoring device use:
- Light Protection Requirements:
- Humidity Protection Requirements:

- Shelf life[Retest Period /Expiry]

A delivery note should be available which should state:

HIGHLY CONFIDENTIAL

AZ_COR _000291

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

- Delivery Address for this Product is:

## 8. PACKAGING AND LABELLING REQUIREMENTS

### Label on Keg/Drum/Box must state the following:

- Agreed name (may be trade name)
- Material Code (Service Provider and/or AZ)
- Name of Service Provider
- Storage Conditions
- Batch Number
- Gross Weight
- Net Weight

### Where over-wrapped each pallet must be labelled to state the following:

- Consignee
- Service Provider
- Shipping/consignment number
- Item code
- Quantity on pallet
- Date of manufacture
- Expiry
- Storage conditions
- Gross weight
- Net weight

HIGHLY CONFIDENTIAL

AZ_COR _000292

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

**Each pallet must show a hazard Label, detailing the following:**

- Material description
- Service Provider
- Manufacturing Site
- Hazard warning

## 9. DOCUMENTATION REQUIREMENTS

[As set out in Appendix 9 QAA][or Insert additional requirements]

[Example of CoM

| Material: | Production Date: |
|---|---|
| Batch No.: | Expiration Date: |
| Material No.: | |
| Manufacturing Site: | |

It is hereby certified that the above information is authentic and accurate. This Batch of product has been fabricated / manufactured at the above mentioned site, including packaging and quality control in full compliance with the GMP requirements of the local Regulatory Authority and with the specification in the Marketing Authorization of the importing country. The Batch processing and packaging records were reviewed and found to be in compliance with GMP.

| Prepared by: | Date: |
|---|---|
| Title: | |

## 10. DOCUMENTATION RETENTION BY SERVICE PROVIDER

Documents must be archived for [state agreed period of time for original and any copies, e.g., microfiche].

HIGHLY CONFIDENTIAL

AZ_COR _000293

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## 11.  SAMPLES AND SAMPLE RETENTION

Service Provider shall retain Reference/Reserve samples of each batch of Product, which shall consist of at least twice the quantity necessary for all tests required to determine its compliance with specification.

The Reference/Reserve sample shall be retained and stored under conditions consistent with the Product labelling and specification requirements. The Reference/Reserve sample shall be stored in the same primary packaging system in which the Product is shipped, or in one that has essentially the same or better protective characteristics.

The Reference/Reserve samples of Product shall be retained for [one (1) year beyond the recommended expiry date of the Product] or at least three (3) years after distribution of the Batch [or] [three (3) years after the batch is completely distributed] for whichever is the longer.

The Reference/Reserve sample(s), as appropriate, shall be made available to AZ if necessary to complete investigations related to Product.

## 12.  STABILITY STUDIES

[*Insert Details*]

[Stability Protocol Table Example:

| Title | Protocol # | Version |
|---|---|---|
|  |  |  |

]

## 13.  REVISION HISTORY

| Revision No. | Description of Change | Effective Date |
|---|---|---|
|  |  |  |
|  |  |  |

## 14.  NOTICES

HIGHLY CONFIDENTIAL

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

The address for service of notices pursuant to this Product Requirements Schedule shall be:

**AZ Entity:**

Company Name:

Name/Title:

Address:

**Service Provider Entity:**

Company Name:

Name/Title:

Address:

HIGHLY CONFIDENTIAL                                                           AZ_COR _000295

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 5 - CHANGE CONTROL

Changes fall into two general categories, minor or major, as detailed below:

### Minor Changes

Certain changes are expected to have minor, if any, impact on Product quality or Product Requirements Schedules or registered information for the Product or AZ processes and can be effectively controlled and validated by Service Provider without notification to AZ.

### Major Changes

Major Changes that could impact Product quality or Product Requirements Schedules or registered information for the Product require advance notification and AZ's approval prior to implementation.

The following is a non-exhaustive list of Major Changes. Where there is any doubt, clarification must be sought from AZ.

- Site or Facility of Manufacture, including Manufacture chain;
- Site of analysis;
- Change in route of/mode of transportation;
- Type or Product Requirements Schedule of excipients or raw materials;
- Supplier of any raw material which may have an affect on the quality of the Product;
- Qualitative composition and shape of immediate packaging material;
- Artwork of packaging material;
- Batch size;
- Design changes including material of construction;
- Method of Processing including validated ranges;
- Analytical Product Requirements Schedules;
- Retreatment processes;
- Expiry/Shelf life and storage conditions;
- Re-test date;
- Test procedures;

Appendix 5 - QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000296

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

- Subcontracting or change of a subcontractor;
- Change of Service Provider name/change of Service Provider entity;
- Any change impacting elemental impurities level;
- Pharmacopoeia changes affecting regulatory dossier; and
- Any change in current local or international legislation of which it becomes aware of and which may affect the Manufacture of any Product or service to AZ.

## Change Requests

When Service Provider wishes to submit a change request to AZ the format of the change request shall normally be agreed with AZ but should at least contain the following information as appropriate to the change:

- Name of Service Provider and Facility where applicable;
- Unique change reference number;
- Product(s) affected with material codes;
- Delivery site(s);
- Description of As Is situation;
- Description of change – i.e., To Be situation;
- Why is this change required? (include any supporting documentation);
- Urgency of change;
- Description of validation requirements to support change;
- Name and phone number of a contact if further discussion is required;
- Any changes to procedures or documentation that will be needed as a result of this change; and
- Proposed date of implementation (with associated lot or Batch number).

## Quality by Design ("QbD")

A QbD Product is submitted for regulatory approval using a quality by design approach. Therefore all changes within the Design Space and changes outside the Design Space will be scientifically assessed on a risk-basis aligned to ICH Q9 and will be managed in accordance with this QA Agreement and Service Provider internal Change Control procedures.

HIGHLY CONFIDENTIAL

AZ_COR _000297

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 6 – QUALITY EVENTS

Examples of Product Quality Events include but are not limited to the following:

1. Product Complaint or Adverse Event report with Product quality implication.

2. Rejection of a Batch.

3. Out-of-Specification ("**OOS**") investigation (quarantine or rejection of a Batch or any part of a Batch due to failure to meet established release specification or in-process specifications established in the applicable Product Requirement Schedules).

4. Stability failure or significant adverse change in trend compared to expected results and requiring investigation.

5. Product, Packaging or labelling mix-up involving the Batch.

6. Probable or known cross contamination of a Product with another product, extraneous foreign material or microorganisms.

7. In-process or finished Product testing trends that indicate that a Batch performs outside established action or alert limits.

8. Batches subject to recovery, rework or reprocessing where these are not previously agreed and/or registered.

9. Batches associated with an equipment malfunction where registered process parameters are impacted.

10. Batches subject to a malfunction of a facility utility system including HVAC, water, sprinkler, plumbing, fire protection, and electrical.

11. Batches subject to natural disasters or acts of God such as flooding, fire, earthquake, lightning strike.

12. Batches requiring a formal investigation for the following: reconciliation discrepancy; line clearance failure, sterility failure, environmental monitoring failure or alert

13. Bulk or packaged Product that exceeded the established Product hold times in bulk containers.

14. Product stored outside the established environmental conditions.

15. Media fill failure.

16. Bioburden failure.

17. Deviations from established and/or validated ranges manufacturing process ranges including time limits for the completion of production steps.

HIGHLY CONFIDENTIAL

AZ_COR_000298

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

18.    Deviations from normal goods receipt processes, e.g., damaged, tampered, missing documentation.

19.    Calibration failure.

**Deviation Requirements**

1.    "**Deviation**" means any non-conformance with an established procedure, process, the Product Requirement Schedule or Applicable Laws and Regulations, except where such non-conformance is planned and controlled within a Party's change control systems (such 'non-conformances' are considered to be planned changes). Deviations can be major or minor according to their impact on Product quality safety or efficacy.

2.    "**Major Deviation**" means any significant Deviation requiring an investigation to determine the impact on Product quality safety or efficacy is classified as a Major Deviation.

3.    "**Minor Deviation**" means other Deviations that have no obvious Product quality safety or efficacy implication and that do not require investigations are classified as Minor Deviations.

When Service Provider is required to notify deviation to AZ, the following information have to be provided at minimum:

- Name of Service Provider and Site where applicable;

- Product(s) affected (with material codes);

- Batch affected;

- Description of normal procedure;

- Description of deviation from normal procedure;

- Date of event;

- Date of discovery of the event;

- Containment actions/ corrections immediately implemented.

When Service Provider is required to submit an investigation report to AZ the format of the report shall at least contain , in addition of information listed above, the following information as appropriate to the deviation:

- Unique deviation number;

- Delivery site(s);

HIGHLY CONFIDENTIAL    AZ_COR _000299

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

- Batch disposition when required;

- Any correction, corrective or preventive actions ("**CAPAs**") implemented or planned (with planned due date), CAPA effectiveness checks/timelines/justification for not performing effectiveness check as applicable;

- QA Signature on behalf of Service Provider.

An appropriate level of investigation should be applied (e.g., Practical Problem Solving, Fishbone, Five Why's) in order to investigate all pertinent Methods, Materials, Equipment, Environment and Personnel.

When investigation cannot be finalized within thirty (30) calendar days, an interim report shall be provided

Interim investigation report must document the rational for delay and must include at minimum:

- Rationale for requiring greater than agreed timelines;

- Outline of actions taken and investigation progress to date;

- Provide a risk/impact assessment to address risk that might result from the delay and actions taken to ensure that ongoing products, activities or production is not impacted or continuing at risk;

- New target date for closure;

- QA approval (at minimum).

*Note: When required by regulatory authorities, investigation report related to major deviations have to be joined to the Batch CoA*

The root cause(s) or most probable root cause(s) of the issue must be identified prior to initiation of Corrective and Preventive Action "**CAPA(s)**".

Some CAPAs may be long term and completion dates must be agreed by AZ QA. The timing agreed must take into account the relative risk to ongoing and future activities (e.g., technical justification or investment proposal),

A documented rationale must be prepared for any subsequent extension of completion dates.

Evidence of CAPA completion has to be provided to AZ. This can be documented using:

- a signed statement;

- a copy of the Service Provider closed CAPA;

HIGHLY CONFIDENTIAL

AZ_COR _000300

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

- a notification of action completion (with date of completion);

- a scan of an official company document.

Recommended information to provide:

- Date of completion of the action;

- reference of document with the version and the date of approval;

- Ongoing or completed CAPA effectiveness checks.

**Product Quality Complaint Requirements**

Any Product Quality Complaint shall be promptly investigated by Service Provider and the investigation shall include, but not be limited to, evaluation and documentation of:

1. Name of Product;

2. Service Provider's reference number;

3. AZ Product code;

4. Batch Number;

5. Expiry or retest date;

6. Details of Complaint including any investigation by Service Provider;

7. Origin of Complaint;

8. Date of Complaint;

9. Photographs, if appropriate;

10. Potential Root Cause;

11. Batch Record Review;

12. Evaluation of Samples;

13. Documentation Review;

14. Process Flow and Controls;

15. Probable Root Cause/Conclusion,

HIGHLY CONFIDENTIAL                                                                                    AZ_COR _000301

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 7 – PERIODIC PRODUCT REVIEW REQUIREMENTS

Service Provider shall issue and provide a Periodic Product Review report to AZ with respect to a Product. The Periodic Product Review report shall be provided annually. The Periodic Product Review should be written in English and formally approved by Service Provider and submitted to AZ within three (3) calendar months after completed evaluation period. The Periodic Product Review could be issued in accordance with Service Provider Procedures and templates but the information in the Periodic Product Review should cover the following areas:

| Section | API for EU/ US | Bulk Product/ formulated product for US | Bulk Product/ formulated product manufactured in or for EU | Finished Product Packaging in or for EU |
|---|---|---|---|---|
| Summary | √ | √ | √ | √ |
| Batches reviewed | √ | √ | √ | √ |
| Starting / Packaging Materials | | | √ | √ |
| Analytical data | √ | √ | √ | √** |
| Changes | √ | √ | √ | √ |
| Stability data | √ | √ | √ | √* |
| Deviations | √ | √ | √ | √ |
| Reprocessed and reworked Batches | √ | √ | √ | |
| Rejected Batches | √ | √ | √ | √ |
| Complaints | √ | √ | √ | √ |
| Recalls | √ | √ | √ | √ |
| Returned and Salvaged goods | | √ | | |
| QA Agreements | | | √ | √ |
| Qualification status of relevant equipment and utilities | | | √ | √ |
| Market Authorization variations submitted / granted / refused | | | √ | √ |
| Post-marketing commitments | | | √ | √ |

HIGHLY CONFIDENTIAL AZ_COR _000302

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Section | API for EU/ US | Bulk Product/ formulated product for US | Bulk Product/ formulated product manufactured in or for EU | Finished Product Packaging in or for EU |
|---|---|---|---|---|
| Other | ** | ** | ** | ** |
| Comparison with previous review | √ | √ | √ | √ |
| Conclusions and recommendations | √ | √ | √ | √ |

\* For primary packaging and other packaging steps that could affect product quality

\*\* If applicable

HIGHLY CONFIDENTIAL                                                          AZ_COR _000303

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## APPENDIX 8 - SAFETY STATEMENTS

This attachment is valid for all materials used or delivered by Service Provider in the manufacture and packaging process of AZ Product.

| MATERIALS NAME /GRADE | |
|---|---|
| | |

Updates to this Agreement Appendix 8 may occur outside of the core agreement cycle to ensure compliance.

| Product Regulatory Statement | Compliance (Yes/No) | Exceptions (List Materials) |
|---|---|---|
| **TSE/BSE Information**<br><br>In respect of Transmissible Spongiform Encephalopathy ("**TSE**"): European Community Directive 2001/83/EC as amended by 2003/63/EC: This Directive formalizes the arrangements laid down in EMEA/410/01 (current revision) and subsequent updates "Notes for Guidance on Minimizing the Risk of Transmitting Animal Spongiform: Encephalopathy agents via Human and Veterinary Medicinal Products". Notwithstanding the provisions of such Directive, Service Provider must declare to AZ in any event the use of any and all materials derived from animal sources to allow assessment of the risk of transmission of TSE and other animal diseases; or, the US 9 CFR 91-95 and USDA Import guidelines, as applicable.<br><br>**For Medical Devices please refer to Commission Regulation (EU) No 722/2012** | | |
| **Residual Solvent**<br><br>In respect of Residual Solvents: Follow Guidance on Impurities Residual Solvents (CPMP/ICH/283/95) and subsequent updates. | | |
| **Potential Allergens**<br><br>EU-Directive Annex II of Regulation (EU) No.1169/2011 - "on the provision of food information to consumers, amending Regulations (EC) No 1924/2006 and (EC) No 1925/2006 of the European Parliament and of the Council, and repealing Commission Directive 87/250/EEC, Council Directive 90/496/EEC, Commission Directive 1999/10/EC, Directive 2000/13/EC of the European Parliament and of the | | |

HIGHLY CONFIDENTIAL

AZ_COR _000304

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Product Regulatory Statement | Compliance (Yes/No) | Exceptions (List Materials) |
|---|---|---|
| Council, Commission Directives 2002/67/EC and 2008/5/EC and Commission Regulation (EC) No 608/2004" -<br><br>The list also includes additional requirements from AZ.<br><br>☐ Yes, we confirm that the material is free from the potential allergenic substances listed on Attachment A.<br><br>☐ No, the material is **NOT** free from one or more of the potential allergenic substances listed on Attachment A. | | |
| **Melamine**<br><br>In respect of Pharmaceutical Components at Risk for Melamine Contamination" FDA Guidance dated August 2009. | | |
| **Genetically Modified Organisms**<br><br>In respect of Genetically Modified Organisms ("**GMO**"): EEC Directive 2001/18/EC and 2008/27/EC. | | |
| **Avian Influenza**<br><br>In respect of Avian Influenza EU directive 2005/94/EC and the recommendation by CDC (US) regarding highly pathogenic avian influenza ("**HPAI**") from H5NI virus. | | |
| **Wooden Pallets**<br><br>In respect of pallets used at their Facilities and in respect of their distributors/forwarders/sub-contractors: with the International Standards for Phytosanitary Measures (ISPM 15 – Regulation of Wood Packaging Material in International Trade) which are not treated with Methyl Bromide fumigation and/or treated with preservatives, such as fungicides, that could contaminate the Product, e.g., 2, 4, 6 – Tribromophenol ("**TBP**").<br><br>Service Provider must ensure Pallets are:<br><br>- Free of use of halophenols (examples: tribromophenol ("**TBP**") or trichlorophenol ("**TCP**") of 2,4,6 Tribromophenol ("**TBP**"), Tribromoanisole ("**TBA**") where product is supplied on wooden pallets; | | |

Page | 2

Appendix 8 - QAA-07 – Master Quality Assurance Agreement - CMO

TV:  17 September 2019

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Product Regulatory Statement | Compliance (Yes/No) | Exceptions (List Materials) |
|---|---|---|
| - Clean, Dry and undamaged;<br>- ISPM marked, | | |
| **Metal Residues**<br><br>In respect of Elemental Impurities Guideline, such as ICH Q3D guideline for Elemental impurities, EMEA/CHMP/SWP/4446/2000, Ph Eur 5.20 and 2.04.20, and USP general chapters <232> and <233>, and subsequent updates, as applicable, on the assessment and control of elemental impurities, the list in Attachment B (information on elemental impurities that may present in the product) is to be completed in order to assist AZ in complying with its obligations in respect of Elemental Impurities Guidelines. | | |
| Other statements as needed for specific markets:<br> - Latex Free<br> - Alcohol Free<br> - Gluten (if not covered in allergens)<br> - HDPE<br> - Halal<br> - Kosher<br> - Regulatory Information statement (IPEC)<br> - Sodium free] | | |

HIGHLY CONFIDENTIAL                                              AZ_COR _000306

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## Execution

Service Provider has agreed to Manufacture Product in accordance with the above.

**On behalf of**
**AstraZeneca Pharmaceuticals LP**

| By: | |
|---|---|
| Name: | |
| Title: | |
| Date: | |

**On behalf of**
**Emergent BioSolutions Inc.**

| By: | |
|---|---|
| Name: | |
| Title: | |
| Date: | |

QAA Ref:

This version will override the previous version of this Regulatory Safety Statement Appendix.

HIGHLY CONFIDENTIAL

AZ_COR _000307

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

## Attachment A -- Information on Allergens

| Potential Allergens | Included in the Material | | Potential Risk for Cross-Contamination | | Additional Comments or Remarks (e.g., origin / source of cross-contamination) |
|---|---|---|---|---|---|
| | Yes | No | Yes | No | |
| Cereals containing gluten (i.e., wheat, rye, barley, oats, spelt, kamut or their hybridised strains) and products thereof | | | | | |
| Crustaceans and products thereof | | | | | |
| Eggs and products thereof | | | | | |
| Fish and products thereof | | | | | |
| Peanuts and products thereof | | | | | |
| Soybeans and products thereof | | | | | |
| Milk and products thereof (including lactose) | | | | | |
| Nuts, i.e., almond (*Amygdalus communis L.*), hazelnut (*Corylus avellana*), walnut (*Juglans regia*), cashew (*Anacardium occidentale*), pecan nut (*Carya illinoiesis (Wangenh.) K.Koch*), brazil nut (*Bertholletia excelsa*), pistachio nut (*Pistacia vera*), macadamia nut, queensland nut (*Macadamia ternifolia*) and products thereof | | | | | |
| Corn and products thereof | | | | | |
| Celery and products thereof | | | | | |
| Mustard and products thereof | | | | | |
| Sesame, Poppy, Sunflower seeds and products thereof | | | | | |
| Sulphur dioxide and sulphites at concentrations of more than | | | | | |

Page | 5
Appendix 8 - QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL                                                  AZ_COR _000308

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No:QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing (Drug Substance) | QAA Version No: 1.0 |

| Potential Allergens | Included in the Material | | Potential Risk for Cross-Contamination | | Additional Comments or Remarks (e.g., origin / source of cross-contamination) |
|---|---|---|---|---|---|
| | Yes | No | Yes | No | |
| 10mg/kg or 10mg/litre -- expressed as SO2 | | | | | |
| **ADDITIONAL REQUIREMENTS** | | | | | |
| Yeasts and yeast extracts and products thereof | | | | | |
| Moulds and products thereof | | | | | |
| Latex | | | | | |
| Colorants | | | | | |
| Antioxidants | | | | | |
| Preservatives | | | | | |
| Phenylalanine | | | | | |
| Glutamate | | | | | |
| Sulfa drugs – the sulfa class of antibiotics | | | | | |
| Animal Products | | | | | |
| Lupin and products thereof | | | | | |
| Molluscs and products thereof | | | | | |

Appendix 8 - QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000309

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No: QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing | QAA Version No: 1.0 |

## Attachment B: Information on Metal Catalysts/Reagents Used in the Process

| Elemental Impurity | | ICH Q3D Class | Metal intentionally used in manufacturing process?' | | Likely to be Present' | | | If Known, Identify the Expected Concentration /Units (or Range) | Is the elemental impurity controlled via a specification test? Y/N (limit) | Analytical Meth Used (and Lim of Detection Available) |
|---|---|---|---|---|---|---|---|---|---|---|
| Arsenic (inorganic) | As | 1 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Cadmium | Cd | 1 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Mercury (inorganic) | Hg | 1 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Lead | Pb | 1 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Cobalt | Co | 2A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Vanadium | V | 2A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Nickel | Ni | 2A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Thallium | Tl | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Gold | Au | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Palladium | Pd | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Iridium | Ir | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Osmium | Os | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Rhodium | Rh | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Ruthenium | Ru | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Selenium | Se | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Silver | Ag | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Platinum | Pt | 2B | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Lithium | Li | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Antimony | Sb | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Barium | Ba | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Molybdenum | Mo | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Copper | Cu | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Tin | Sn | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Chromium | Cr | 3 | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Iron | Fe | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Zinc | Zn | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Manganese | Mn | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Aluminium | Al | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Boron | B | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Tungsten | W | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Potassium | K | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Calcium | Ca | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Sodium | Na | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Magnesium | Mg | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Other metals << Name>> | | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |
| Other metals << Name>> | | N/A | Yes ☐ | No ☐ | Yes ☐ | No ☐ | Unknown ☐ | | | |

Service Provider certifies the above information is typical based on current manufacturing process and raw materials.   will notify AZ in writing of any proposed changes to the manufacturing process which can lead to changes in this data in a timely manner.

Page | 1

Appendix 8 - QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000310

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No: QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing | QAA Version No: 1.0 |

## APPENDIX 9 – DOCUMENTATION

The Certificate of Analysis and Certificate of Conformance must include, at a minimum the following:

- Product name;
- Grade, where appropriate;
- AZ Product Material code;
- Name and address of Service Provider (and Service Provider's Service Providers where applicable);
- Unique Batch or Lot number;
- Expiry Date/Shelf Life;
- Retest date (if applicable);
- Date of manufacture;
- Yield;
- Test results as detailed in the Product Requirements Schedule with identification of the test and a statement of conformance to any pharmacopoeia (where applicable) (name, number and Service Provider's version number where applicable);
- Release Product Requirements Schedules (range of acceptable results);
- Actual test results expressed in quantitative terms where possible (non-numerical results should be reported as 'complies,' 'approved' or 'conforms' as applicable);
- Date testing was performed/date of manufacture;
- Date of release by Quality Assurance; and
- List and summary of deviations associated with each batch, if any
- Batch decision and signature (dated) of responsible quality assurance/quality control representative. (This signature can be electronic provided the system used provides equivalent control to that given by a signature);
- A statement of compliance with registered Chemistry, Manufacturing and Controls section of applicable regulatory approval provided by AZ.

The Certificate of Analysis and Certificate of Conformance may be combined in one document.

HIGHLY CONFIDENTIAL

AZ_COR _000311

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No: QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing | QAA Version No: 1.0 |

## APPENDIX 10 – FORM OF AFFILIATE SIDE LETTER

[Date]

[Name of Service Provider]

[Address of Service Provider]

**Re:**  **Quality Assurance Agreement dated [       ] between AZ [UK Limited][AB] and [Name of Service Provider] ("QA Agreement")**

Dear Sirs:

With effect from the date upon which you countersign this letter, you agree that you and we shall be deemed to have entered into an agreement in the form of the QA Agreement, save that references in the QA Agreement to:

"**AZ**" shall be deemed to refer to ["**New AZ Legal Entity**"];

"**Parties**" and to all other terms shall be construed accordingly;

"**Product [Item] Requirements Schedule(s)**" shall be deemed to refer to the attached schedule and to any amendments to that schedule, or additional schedules to this letter, agreed in writing between us from time to time; and

"**Product(s)**" shall be deemed to refer to the Product(s) listed in the attached schedule and in any amendments to such schedule, or in any additional schedules, agreed in writing between us from time to time.

The address for service of notices on us is as follows:

[                    ]

HIGHLY CONFIDENTIAL                                                    AZ_COR _000312

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No: QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing | QAA Version No: 1.0 |

Yours faithfully,

**[New AZ Legal Entity]**

Agreed and accepted for and on behalf of

**[Name of Service Provider]**

Signature

Name:

Title:

Signature

Name:

Title:

Date:

Page | 2
Appendix 10 - QAA-07 – Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000313

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No: QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing | QAA Version No: 1.0 |

## APPENDIX 11 - SHIPPING AND PACKING AHEAD OF RELEASE/CLEARANCE (SAOC/PAOC)

AZ may implement SAOC/PAOC of Service Provider following a risk assessment in which a risk evaluation of the historical information is completed utilizing an appropriate risk tool and considering a risk list including but not limited to the following:

➢ Failure to meet specification;

➢ Quality Events;

➢ Environmental control;

➢ Custom import regulation;

➢ Failure to notify Deviations in a timely manner;

➢ Material shipped with open Deviations;

➢ Financial risk.

From the outcome of the risk assessment, to mitigate and reduce any potential risk to the Manufacture, before any Batch shall be used for SAOC/PAOC, Service Provider shall perform preliminary controls such as:

➢ Presence of Major deviations (Major Deviations do not allow SAOC or PAOC);

➢ Batch Record;

➢ Key Process parameters;

➢ In-process control results;

➢ Environmental monitoring control results (if Sterile material).

SAOC/PAOC documentation should be sent along with the Batch clearly identifying the status of the Products. The document shall include:

➢ Product name and Identification code;

➢ Batch Number;

➢ Date of Manufacturing;

➢ Re-test/Expiry Date;

➢ SAOC/PAOC Batch status;

➢ Approval signature.

After final QC testing and full release of a Batch, a final Certificate of Analysis/Certificate of Manufacture should be sent to the receiving site.

Page | 1
Appendix 13 - QAA-07 –Master Quality Assurance Agreement - CMO
TV: 17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR_000314

DocuSign Envelope ID: 4952ECF5-11C3-4C54-B089-C936508578FF

| QUALITY ASSURANCE AGREEMENT | Index No: QAA.EmergentBio.001 |
|---|---|
| For Contract Manufacturing | QAA Version No: 1.0 |

**Example of: SAOC / PAOC PRE-RELEASE CERTIFICATE OF MANUFACTURE**

---

**Product <Name > <Code >**

Batch Number:

Date of Manufacturing:

Re-test/Expiry Date:

Status: under analysis

The Manufacturing Batch documentation of the preliminary controls (*list the controls made*) was reviewed and found to be in compliance with Good Manufacturing Practices and Marketing Authorization.

This Batch can be release for SAOC /PAOC but will not be used in further manufacturing steps until full release and CoA/CoMs have been issued.


Signature: _____

Date of Approval: _____

---

Page | 2
Appendix 13 - QAA-07 –Master Quality Assurance Agreement - CMO
TV:  17 September 2019

HIGHLY CONFIDENTIAL

AZ_COR _000315



## Certificate Of Completion

Envelope Id: 4952ECF511C34C54B089C936508578FF
Subject: Please DocuSign: QAA.EmergentBio.001 Final.docx
Source Envelope:
Document Pages: 61
Certificate Pages: 3
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC) Dublin, Edinburgh, Lisbon, London

Signatures: 2
Initials: 0

Status: Completed

Envelope Originator:

▮▮▮
1800 Concord Pike FOP1-237
Wilmington, DE  19850
▮▮▮@astrazeneca.com

## Record Tracking

Status: Original
　　　7/8/2020 8:16:10 PM

Holder: ▮▮▮
　　▮▮▮@astrazeneca.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| ▮▮▮<br>▮▮▮@ebsi.com<br>▮▮▮<br>Security Level: Email, Account Authentication (Required) | ▮▮▮<br><br>Signature Adoption: Pre-selected Style<br>Signature ID:<br>▮▮▮<br>Using IP Address: ▮▮▮<br><br>With Signing Authentication via DocuSign password<br>With Signing Reasons (on each tab):<br>　I approve this document | Sent: 7/8/2020 8:22:17 PM<br>Viewed: 7/8/2020 8:47:37 PM<br>Signed: 7/8/2020 8:48:37 PM |

Electronic Record and Signature Disclosure:
　　Accepted: 7/8/2020 8:47:37 PM
　　ID: ▮▮▮

| | | |
|---|---|---|
| ▮▮▮<br>▮▮▮@astrazeneca.com<br>Quality Supplier Manager<br>AstraZeneca CFR Module<br>Security Level: Email, Account Authentication (Required) | ▮▮▮<br><br>Signature Adoption: Pre-selected Style<br>Signature ID:<br>▮▮▮<br>Using IP Address: ▮▮▮<br><br>With Signing Authentication via DocuSign password<br>With Signing Reasons (on each tab):<br>　I approve this document | Sent: 7/8/2020 8:22:16 PM<br>Viewed: 7/8/2020 8:23:03 PM<br>Signed: 7/8/2020 8:24:06 PM |

Electronic Record and Signature Disclosure:
　　Accepted: 2/21/2020 5:18:11 PM
　　ID: ▮▮▮

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

HIGHLY CONFIDENTIAL

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/8/2020 8:22:17 PM |
| Certified Delivered | Security Checked | 7/8/2020 8:47:38 PM |
| Signing Complete | Security Checked | 7/8/2020 8:48:37 PM |
| Completed | Security Checked | 7/8/2020 8:48:37 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

HIGHLY CONFIDENTIAL

AZ_COR _000317

I hereby consent to that AstraZeneca Worldwide https://www.astrazeneca.com may disclose personal information such as; full name, email address, and any other information you may supply on the electronic form to AstraZeneca affiliates and third party service providers throughout the world in relation to the handling and administration of the Electronic Signature Service solution. This consent relates to any electronic records or signatures associated with the electronic contract.

AstraZeneca and the third party administering this service store and process personal information that AstraZeneca collects from you for the purposes of operating the Electronic Signature Service solution.

This also applies after termination of the Agreement. Processing of your personal information will be done in accordance with applicable law.

You may request access to your personal data and withdraw agreement to this processing at any time by contacting us in writing at ███████████@astrazeneca.com.

Personal details and electronic signatures of signatories contained in contracts cannot be removed once the contract has been executed and will remain part of such contracts until these are destroyed in accordance with applicable law and AstraZeneca internal data retention policies.

HIGHLY CONFIDENTIAL