# Lead Plaintiffs' RJN Exhibit 37 (Highlighted)



**FDA U.S. FOOD & DRUG ADMINISTRATION**

**Food and Drug Administration**
**1201 Main Street, Ste 7200, Dallas, TX 75202**

**Date:** 14 June 2021

**To:** [redacted] Staff Director, Office of Biological Products Operations (OBPO) Division 2, Team Biologics

**From:** [redacted] NE Investigator, OBPO
Senior Advisor, OBPO
Senior Advisor, OBPO
Chemist, CBER/OCBQ

**Subject:** Investigation of Emergent Manufacturing Operations Baltimore LLC; Investigation Dates: 2-10 June 2021

**FEI:** 3015448605

**eNSpect Op ID:** 200634

**Responsible Firm:** Emergent Manufacturing Operations Baltimore LLC
5901 East Lombard St.
Baltimore, MD 21224

---

I, [redacted] collated this document which was authored by the investigation team. Each section is indicated with the initials of the author that wrote the text as follows:



---

**Endorsement:**
This operation was initiated as a pre-production inspection to review the firm's implementation of corrections to the FDA 483 issued at the close of the inspection that occurred 12-20 April 2021 and to determine the firm's readiness to resume manufacturing of the COVID-19 vaccine drug substance described in EUA 027205 filed by applicant Janssen Biotech Inc. On 25 May 2021, a regulatory meeting related to the findings from the April inspection was held with the firm.

EmerCly_0005644

**FDA | U.S. FOOD & DRUG ADMINISTRATION**

OFFICE OF REGULATORY AFFAIRS

Food and Drug Administration
1201 Main Street, Ste 7200, Dallas, TX 75202

███████ contains ███████ in case ████████████████████
but a ███████████ being installed is not normal.

- Dissolved oxygen above limits for Stage █ no limits listed in batch record (see **exhibit #STB33** p 36 for batch record pages)
- ████████████ failure for ███████ (see test result in **exhibit #STB34**)

## GENERAL DISCUSSION WITH MANAGEMENT

██ On 10 June 2021 a close-out meeting was held with the firm. Attendees included representatives from EMOB, Janssen, and BARDA as seen in **exhibit #STB35**. During the close-out meeting, I opened with the following items:

- I stated to Ms. Mary Oates that this is an investigation that does not resolve the previous inspection results and we are not issuing a 483
- I asked Ms. Mary Oates if the schedule provided earlier was still accurate and she confirmed the timetable of June 26th to re-start manufacturing and she stated they will update our compliance branch if it changes
- I commented that the firm had verbally noted that certain batches would likely be rejected (GMP 11), but this had not actually occurred as of the closing meeting
- I asked Ms. Oates if there was any plan for the firm to perform manufacturing of ████ products due to the presence of ████ abeled items in warehouse freezers. She stated there is no plan to conduct manufacturing for ████
- I stated to ████████████ that the investigation relevant to Janssen was closed without noting concerns. He verbally acknowledged this statement.

The following concerns were verbally described to the firm's management and directly to Ms. Mary Oates – Senior Vice President Global Quality. No written form FDA483 was issued.

1. Lack of adequate investigation/root cause analysis for unexpected events in manufacturing of client ████ drug substance, for example:
   - Multiple instances of leaks
   - Dilution errors
   - Filter integrity test failures
   - Out of specification bioburden results
   - Consideration of QC raw material sampling procedures in cross-contamination of batch GMP 8
2. Responsibilities applicable to the quality unit not fully followed
   - Initiation of deviations not done in timely manner to assess before RFFP (release for further processing)

EmerCly_0005728

**FDA  U.S. FOOD & DRUG ADMINISTRATION**
OFFICE OF REGULATORY AFFAIRS

**Food and Drug Administration**
1201 Main Street, Ste 7200, Dallas, TX 75202

- Not following procedure on hold for finished drug substance, inventory units transition to reject not verified
- Improve QA (quality assurance) review of batch record to include specific coverage of batch record deviations not documented

3. Employee Training not adequately documented
   - not adequately recorded/documented, reconstituted from memory of trainers after the fact, duplicate/inaccurate records found
   - ▆▆▆▆ decontamination time required in rooms without clocks; SOP allows use of network connected laptop clocks but how to monitor time is not part of training.

4. Procedures for transporting materials and waste are not followed (segregation of waste totes)

5. Batch Records do not always contain the primary data/documentation relevant to investigations of batch manufacturing

6. Bioburden controlled facility cleanliness and disrepair
   - Un-identified debris in overhead lights of upstream room: Area ▆▆
   - Broken Diffusers of overhead lights in upstream Area ▆▆ create direct path from interstitial space to manufacturing area
   - Hair and dust on ceiling of de-gown !rea ▆▆
   - Blistering and peeling paint on ceiling due to ▆▆ cycles of decontamination
   - Dislodged fire suppression covers in upstream Area ▆ processing room ceiling create direct path from interstitial space to manufacturing area
   - Difficult to clean and damaged metal wall in upstream Area ▆ and dislodged outlet cover
   - Uncleanable dislodged utility panel in area ▆ creates path to interstitial space above ceiling

7. Line Clearance criteria of weigh/dispense area is not clear in single customer facility due to wording of the SOP

8. Data integrity practices
   - Batch record scans can be deleted from network file location
   - Written procedure identifying location for scanned batch records is inaccurate
   - Data ▆▆▆ software that controls chromatography and filtration equipment) can be deleted from network drive

9. Inventory system does not adequately track applicable storage locations and material
   - LN2 log book movements of cell banks do not match SAP inventory software
   - Freezers in GMP warehouse with contents not in SAP inventory software

10. Combined Tech Transfer/Process Qualification shows failed batches (2),



**FDA U.S. FOOD & DRUG ADMINISTRATION**
OFFICE OF REGULATORY AFFAIRS

Food and Drug Administration
1201 Main Street, Ste 7200, Dallas, TX 75202

==deviations for in-process specifications and no statistical analysis of batch-to-batch variation==

==At the conclusion of the close-out meeting, I asked if there were any further questions from the firm. Ms. Mary Oates and Mr. Ed Elmore stated they understood the concerns described by our investigation team.==

==I asked Ms. Mary Oates if the firm would respond in writing. She stated they would and I directed her to the OBPO communication sheet that I had provided during the meeting to provide electronic communications with our compliance department. She acknowledged the communication information that I provided.==

## EXHIBITS

1 – Corporate Registration documents
2 – Opening Presentation
3 - change control 2100006417
4 – Future Production Schedule
5 – Facility Diagram
6 - Photographs taken by Investigator Ballard
7 – Line Clearance SOP 043687 v1
8 – Screen shot of scanned batch record storage location
9 – Stage █ batch record for █ data that references █
10 – Example of █ export data saved on network drive
11 – Screen shot of Network storage location for █ data
12 – Freezer Logbook for eq# 10019954
13 – Freezer Logbook for eq# 10019936
14 – LN2 logbook for eq# 10044004
15 – LN2 Logbook for eq#10044111
16 – SAP inventory for LN2 storage locations
17 – Summary of freezers in SAP and those not in SAP
18 – Summary of █ used in manufacturing and supplier specs for integrity testing
19 – PPQ report
20 - protocol #TV-TEC-180942 v3.0
21 – Internal EMOB tech transfer plan #PLN 040817
22 – Diagram of Bioburden sample bag
23 – Lab investigation LI 21-020
24 – Bioburden LIMS results #2161426
25 – Bioburden Test procedure TMD – 2185
26 – Bioburden deviation #3100013036