**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-PWG |
| | CLASS ACTION |
| THIS DOCUMENT RELATES TO: All Actions | |

**REPLY MEMORANDUM IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION TO PARTIALLY LIFT DISCOVERY STAY (DKT. NO. 86)**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   ARGUMENT............................................................................................. 1

      A.   Applicable Legal Standard......................................................... 1

      B.   Discovery Is Needed To Prevent Undue Prejudice.................................... 2

      C.   Discovery Is Needed To Preserve Evidence ............................................. 5

      D.   The Requested Discovery Is Sufficiently Particularized .......................... 10

III.  CONCLUSION........................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Consumer Fin. Prot. Bureau v. Access Funding, LLC*, No. ELH-16-3759,
2022 WL 1556096 (D. Md. May 16, 2022) .................................................................9

*Courter v. CytoDyn, Inc.*, No. C21-5190 BHS,
2022 WL 621535 (W.D. Wash. Mar. 3, 2022) ...........................................................9

*In re Equifax Inc. Sec. Litig.*, No. 1:17-CV-3463-TWT,
2018 WL 3023278 (N.D. Ga. June 18, 2018) .............................................................9

*In re Fannie Mae Sec. Litig.*,
362 F. Supp. 2d 37 (D.DC. 2005) ...............................................................................4

*In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785,
2021 WL 2414763 (S.D. Ohio June 14, 2021) ...........................................................8

*In re Mut. Funds Inv. Litig.*, No. MDL-15863,
2005 WL 549534 (D. Md. Mar. 7, 2005).............................................................2, 4, 5, 9

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
220 F.R.D. 246 (D. Md. 2004).......................................................................2, 4, 5, 8, 9

*In re Under Armour Sec. Litig.*, No. RDB-17-388,
2021 WL 633373 (D. Md. Feb. 18, 2021) ...............................................1, 2, 3, 9

*In re Vivendi Universal, S.A. Sec. Litig.*,
381 F. Supp. 2d 129 (S.D.N.Y. 2003).........................................................................4

*In re WorldCom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002)......................................................................2, 5

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191,
2015 WL 1565462 (E.D. Mich. Apr. 8, 2015)............................................................9

*Nichting v. DPL Inc.*, No. 3:11-cv-141,
2011 WL 2892945 (S.D. Ohio July 15, 2011).............................................................9

*Pension Tr. Fund for Operating Engineers v. Assisted Living Concepts, Inc.*,
943 F. Supp. 2d 913 (E.D. Wis. May 3, 2013) ..........................................................9

*Rampersad v. Deutsche Bank Sec., Inc.*,
381 F. Supp. 2d 131 (S.D.N.Y. 2003)........................................................................4

*U.S. v. Hubbard*, No. AW-13-344,
  2013 WL 1773575 (D. Md. Apr. 24, 2013) ..................................................................................9

## Statutes

Private Securities Litigation Reform Act of 1995 .......................................................1, 2, 4, 5, 8, 9

## Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................................................7

Lead Plaintiffs Nova Scotia Health Employees' Pension Plan and City of Fort Lauderdale Police & Firefighters' Retirement System respectfully file this reply ("Lift-Stay Reply") in support of their motion (Dkt. No. 86) ("Lift-Stay Motion") seeking to partially lift the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay with regard to five document types outlined in the Lift-Stay Motion and supporting memorandum (Dkt. No. 87) ("Lift-Stay Memo").

## I.   INTRODUCTION

Contrary to Defendants' spin (Opp. at 2),[1] Lead Plaintiffs' Lift-Stay Motion is not a "desperate attempt" to "search for a claim" by "inflict[ing] burdens."  Instead, it is a measured request, in line with the pertinent case law,[2] that is particularized, minimally burdensome, and aimed at preserving evidence – including the custodial documents of the Individual Defendants and other departed senior executives that already appear to have been compromised based on the record in Congress's ongoing investigation – and at avoiding undue prejudice to Lead Plaintiffs in light of the myriad investigations and lawsuits that Emergent faces over the misconduct at issue.

## II.   ARGUMENT

### A.   Applicable Legal Standard

The PSLRA says the automatic stay can be lifted when "[a] court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).  It does not reference or require "exceptional circumstances," a standard Defendants urge (Opp. at 3-4) by citing only *In re Under Armour Sec. Litig.*, No. RDB-17-388, 2021 WL 633373, at *3 (D. Md.  Feb. 18, 2021), which quotes that

---

[1]   Herein, Lead Plaintiffs' first amended complaint (Dkt. No. 54) is referred to as the "FAC," all "¶" cites are to its numbered paragraphs, and Defendants' Lift-Stay Motion opposition (Dkt. No. 99) is referred to as the "Opp."
[2]   Defendants nonsensically argue (Opp. at 3 n.2) that Lead Plaintiffs' exemplar citations of courts lifting the PSLRA stay pale in comparison to the total number of securities cases filed, while at the same time acknowledging that in the "vast majority of cases" motions to lift the PSLRA stay are not filed (for whatever reason).  In other words, Defendants admit that they used the wrong denominator for their argument.  To gauge how often motions to lift the stay are granted, the decisions doing so need to be compared against the total times such motions are actually filed.

1

language (*id.* at *2) from one Wisconsin district court decision.  Lead Plaintiffs' main cases, including from this District – *e.g.*, *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004), *In re Mut. Funds Inv. Litig.*, No. MDL-15863, 2005 WL 549534 (D. Md. Mar. 7, 2005), *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) – do not reference or apply that standard. Defendants are wrong to call it a "required element" that "foreclose[s] relief."

### B.    Discovery Is Needed To Prevent Undue Prejudice

The Lift-Stay Memo at 11 explains that Emergent faces wide-ranging legal exposures and "substantial and live" investigations.  Defendants call this concern a "fabrication" because the derivative lawsuits are stayed and "various government entities" that "issued inquiries and subpoenas" have not *yet* filed litigation or enforcement proceedings.  Opp. at 4.  Yet, Emergent's 2021 Annual Report, which they cite, lists inquiries, subpoenas, or investigations as of December 31, 2021, not only by the House Committees, but also by a third Congressional Committee, the Financial Industry Regulatory Authority (FINRA), the Department of Justice (DOJ), the SEC, and the Maryland and New York Attorneys General.  *Id.* at 119-121.  ***None*** are resolved – Emergent's Form 10-Q for Q2 2022,[3] confirms that ***all*** are ongoing as of June 30, 2022.  *Id.* at 26-27.[4]

Lead Plaintiffs face serious recovery risks and the sort of undue prejudice that justifies partially lifting the PSLRA stay.  The Lift-Stay Memo emphasizes that, as a result of widespread investigations, the applicable insurance (with undisclosed coverage limits) is "undoubtedly being drained at a fast pace."  *Id.* at 11.  Defendants offer ***no response***.  Instead, they claim (Opp. at 6) that Emergent's financial condition is "robust," citing the outdated snapshot presented in its 2021

---

[3]    Emergent's    Q2    2022    Form    10-Q    is    available    on    the    SEC's    website    at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1367644/000136764422000119/ebs-20220630.htm.
[4]    Defendants (Opp. at 5-6) cite no authority for the proposition that Lead Plaintiffs need specifically to "assess the size or viability" of these competing investigations and proceedings.  Quite obviously, Defendants' total exposure and resulting legal expenses are significant and mounting, with no end in sight, given that these investigations and proceedings arise from the same serious, underlying misconduct pled in the FAC and are necessitating Defendants' ongoing engagement and production of documents.

2

Annual Report. The 2021 Annual Report at page 74 lists Emergent's cash and cash equivalents at $621.3 million as of December 31, 2020, and $576.1 million as of December 31, 2021 – a decline of $45.2 million over 12 months. Alarmingly, Emergent's more recent Q2 2022 Form 10-Q at page 8 lists cash and cash equivalents of $358.3 million – a *massive* drop of $217.8 million in *six months*. Emergent's accelerating cash depletion has been caused by events pled in the FAC, especially HHS's termination of Emergent's U.S. government contracts in November 2021, which forced Emergent to lower realized contract values by $180 million, lower its backlog by $171 million, and reverse $86 million in Q3 2021 revenue. *See* ¶¶11, 258(a)-(c). Thus, contrary to the Opp. at 5 and 8, ongoing depletion of insurance and rapidly decreasing cash reserves draws sharply into question how Defendants may satisfy a judgment in this *billion-dollar* securities class action.[5]

Thus, even if, as Defendants claim, Lead Plaintiffs must show that "the pie is not big enough," they have done so here. Opp. at 2, 3 n.2, and 5 (citing *In re Under Armour*, 2021 WL 633373, at *3). Indeed, *In re Under Armour* strongly supports Lead Plaintiffs' position. Under Armour, Inc. is one of the largest, most profitable sports apparel, footwear, and accessories companies in the world. When the decision cited by Defendants was issued in February 2021, Under Armour had *$1.517 billion* in cash and cash equivalents as of December 31, 2020, a 92% increase over the $788 million it had as of December 31, 2019.[6] The court noted that Under Armour faced just a single SEC investigation, with which it was cooperating, regarding its accounting five years prior in 2015-2016. *See* 2021 WL 633373, at *1, *3. Emergent's circumstances offer the strongest contrast – it faces massive, ongoing exposure to adversarial, insurance-draining investigations by three Congressional committees, the DOJ, the SEC, FINRA,

---

[5]    Defendants' claim that Lead Plaintiffs "do not address the size of their own claims" is nonsensical, given that the Lift-Stay Memo at 12 specifically cites the "billion-dollar class-wide loss" at issue in this lawsuit.

[6]    *See* Under Armour's 2020 Form 10-K, filed February 24, 2021, at page 30, available at: https://www.sec.gov/ix?doc=/Archives/edgar/data/1336917/000133691721000009/ua-20201231.htm.

3

and multiple state Attorneys General, while its cash reserves are plummeting, its government contracts have been terminated, and its industry reputation is gravely tarnished.

In this context, Defendants wrongly assert that the "nature of the PSLRA" is that a securities plaintiff "*must* withstand a motion to dismiss before receiving discovery." Opp. at 5 (emphasis added). To the contrary, the PSLRA's text plainly states otherwise, creating express pathways for securities plaintiffs to obtain limited discovery *before* a motion to dismiss is resolved. Indeed, the pendency of multiple investigations or lawsuits is one of the most-cited reasons why courts choose to partially lift the PSLRA stay and, despite Defendants' hyperbole (Opp. at 5 n.4, 8),[7] that reality has not rendered the PSLRA "toothless" nor caused it to "cease to apply."

These arguments *ignore* Lead Plaintiffs' cited case law (Lift-Stay Memo at 4-5, 9-10) as to Congressional intent underlying the PSLRA stay – to prevent litigants from filing frivolous strike suits and seeking to force quick settlements by companies wanting to avoid discovery burdens – which is not served by strictly enforcing the stay against Lead Plaintiffs and the class of investors here. *See, e.g.*, *In re Royal Ahold*, 220 F.R.D. at 251-252 ("most compelling reason for allowing the discovery" is defendants' exposure to "numerous civil and criminal actions [not] subject to the PSLRA discovery stay," which could prejudice securities plaintiffs in "formulating their litigation and settlement strategy" and "limit their chances of recovery relative to other parties with claims of comparable, or even lesser, merit"); *In re Mut. Funds Inv. Litig.*, No. MDL-15863, 20005 WL 549534, at *1 (finding that denying access to key documents could unduly prejudice

---

[7]    Contrary to the Opp. at 7-8, Lead Plaintiffs do not claim any "rule" requires the PSLRA stay to *always* be lifted to permit securities plaintiffs access to *every* document production made to government entities. Defendants' cases are inapposite, because the courts at issue refused to lift the PSRLA stay where the court had committed to consider the motion to dismiss within 10 days (*In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129 (S.D.N.Y. 2003)) or where the plaintiffs sought to gain access to irrelevant documents (*In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 39 (D.DC. 2005) and *Rampersad v. Deutsche Bank Sec., Inc.*, 381 F. Supp. 2d 131, 133 (S.D.N.Y. 2003)).

4

securities plaintiff due to "its inability to make informed decisions about … litigation strategy in a rapidly shifting landscape"); *In re WorldCom*, 234 F. Supp. 2d at 305 (same).[8]

Thus, Lead Plaintiffs have shown undue prejudice if the PSLRA stay is not partially lifted.

### C.    Discovery Is Needed To Preserve Evidence

Contrary to Defendants' argument (Opp. at 8-10), Lead Plaintiffs have also established a need to preserve evidence justifying a partial lift of the PSLRA stay.

First, contrary to the Opp. at 8 and 10, Lead Plaintiffs *do* cite examples of documents they believe were wrongfully destroyed or are at risk of being lost – specifically, the *Emergent* emails sent to / received from third parties like J&J and AstraZeneca that were produced to the House Committees *by those third parties* and not by Emergent. *See* Lift-Stay Memo at 13. Each was published alongside the 5/10/2022 Congressional Report bearing the Bates stamping not of Emergent, but of J&J or AstraZeneca.[9] Defendants offer ***no response*** and fail to explain why the House Committees had to obtain these *Emergent* emails – some sent/received by the *Individual Defendants* [10] – from J&J or AstraZeneca, rather than from Emergent.[11] For that reason alone, Lead Plaintiffs respectfully submit that the Lift-Stay Motion should be granted. At a minimum,

---

[8]    Defendants declare that the precise facts at issue in *Royal Ahold*, *In re Mut. Funds*, and *Worldcom* – a declared bankruptcy or publicly-disclosed regulatory settlement processes – are required for the PSLRA stay to be lifted. Opp. at 6-7 & nn. 5-7. Yet, these decisions do not articulate a rule requiring such circumstances – which are not mentioned in the PSLRA – and indeed, as further discussed *infra*, courts (even when citing *Royal Ahold*) often lift the stay after finding prejudice arising from *other* contexts. Moreover, Defendants do not deny that (presumably privileged) discussions regarding settlements or consent orders have occurred in any or all of their myriad investigations, but merely observe that Lead Plaintiffs (as non-parties to any such communications) cannot confirm it.

[9]    These specific documents are also at issue in Lead Plaintiffs' RJN Motion (Dkt. No. 77) and thus are already before the Court as RJN Exhibits 4, 14, 16, 21, 22, 23, 31, 32, 33, and 34 (*see* Dkt. Nos. 101-5, 101-15, 101-17, 101-22, 101-23, 101-24, 101-32, 101-33, 101-34, and 101-35) and were discussed in the RJN Memo (Dkt. No. 78) at 34 and in the RJN Reply (Dkt. No. 100) at 11-13. They all bear Bates stamping beginning with "JNJ_HOUSE_COR" (for J&J-produced documents) or "AZ_COR" (for AstraZeneca-produced documents). As such, Defendants' claim that they cannot tell which documents are encompassed within this argument (Opp. at 9-10) is not credible.

[10]    *E.g.*, Defendant Husain sent or received RJN Exhibits 4, 14, 31. *See* Dkt. Nos. 101-5, 101-15, 101-32.

[11]    Defendants' argument claiming that if the House Committees believed Emergent had not preserved documents, they would have written so in their latest report (Opp. at 10) is wildly speculative. The more straightforward takeaway here is that Defendants have failed to explain to Lead Plaintiffs and the Court why Emergent did not produce its own emails to the House Committees in the first place.

5

Lead Plaintiffs respectfully submit that Defendants should be made to explain why Emergent did not produce these documents and – as they have offered (Opp. at 8 n.8) – to provide the Court for *in camera* review the full set of their litigation hold notices.

Second, the Lift-Stay Memo said that of the five categories of documents at issue on this motion, the "two categories with the greatest number of documents…consist of documents already produced to a receiving party." *Id.* at 6.  Defendants paraphrase that statement in arguing that there is "no plausible danger of loss or destruction."  Opp. at 8.  Their argument lacks merit.  Emergent's production of *some* documents to third parties does not mean *other* documents (like the Emergent emails that the House Committees had to obtain from J&J and AstraZeneca instead of Emergent) are not at risk of loss or destruction.  Moreover, Defendants ignore the *other* three categories of documents at issue, one of which is "discreet, easily identified document sets" in Emergent's possession – *i.e.*, which have not *yet* been produced to anyone.  *See* RJN Memo at 6.

Third, FAC ¶¶301-304 allege that Defendants' scienter is supported by suspicious resignations of key executives as the fraud was revealed, including Defendant Husain (Emergent's SVP, Head of Contract Development and Manufacturing), Sean Kirk (its EVP for Manufacturing and Technical Operations), and Mary Oates (its Head of Global Quality).  ***All three*** sent / received Emergent-produced emails cited in the 5/10/2022 Congressional Report, some evidencing concealment of facts from government investigators.[12]  Yet, the House Committees also published other *Emergent* emails produced not by Emergent, but rather by J&J or AstraZeneca, several of which – despite heavy redactions of Emergent employees' names / email addresses – reflect that they were sent / received by Husain (RJN Exhibits 4, 14, 31) or Kirk (RJN Exhibits 14, 31).  *See*

---

[12]        Specifically, Congress published Emergent-produced email threads for Defendant Husain (RJN Exhibits 26, 27, 36) and for Kirk (RJN Exhibits 9, 10, 18, 26) and Oates (RJN Exhibits 27, 35).  *See* Dkt. Nos. 101-10, 101-11, 101-19, 101-27, 101-28, 101-36, 101-37.

Dkt. Nos. 101-5, 101-15, 101-32.  The fact that Emergent produced *some* emails by these since-departed executives but omitted *others* so that Congress had to obtain them from AstraZeneca and J&J leads to legitimate concerns as to retention of their custodial documents and emails over time.

That concern extends to the custodial documents of Emergent's founder and Executive Chairman, Mr. El-Hibri, who retired then passed away after the FAC was filed.  He is extensively discussed in the 5/19/2021 Congressional Memo (submitted as Lift-Stay Exhibit 1) pled in FAC ¶¶122-125, ¶201 n.15, ¶¶279-283, and ¶303.  As seen therein, Congress requested documents from Mr. El-Hibri, who was heavily involved in justifying and approving lavish compensation packages for himself, Mr. Kirk, and Defendant Kramer, which were memorialized in memoranda by Daniel Woubishet and were pled in FAC ¶¶279-283 as evidencing Kramer's scienter.  *See* Lift-Stay Motion Exhibit 1 at 1 n.1, 12-13.  Mr. El-Hibri's custodial documents thus are of clear relevance.

Defendants minimize these key people as "four Emergent personnel (out of over 2,400)" and "four people [who] have left the Company" out of 1,800 employees.  Opp. at 2, 9.  More accurately, along with Defendants Kramer and Lindahl, they are four of the highest-level personnel involved in the facts at issue, whose names appear throughout the Congressional reports and underlying documents.  Defendants claim that "a handful of transitions and retirements are perfectly normal" (Opp. at 9) is counter to the FAC's allegations of suspicious resignations (¶¶301-304), which at the Rule 12(b)(6) stage must be accepted as true and construed in the light most favorable to Lead Plaintiffs.  Rather than explaining why J&J and AstraZeneca produced *Emergent* emails to Congress, Defendants trade in generalities like "Emergent has preserved documents" (Opp. at 2), without disclosing Emergent's actual document retention policies.

Defendants otherwise argue that absent a reorganization or asset divestiture, the PSLRA stay cannot be lifted on grounds of evidence preservation, an argument premised on their reading of *Royal Ahold*.  *See* Opp. at 2, 6, 9.    However, the key point in *Royal Ahold* was:

> Faced with a shifting corporate landscape and concerns about evidentiary loss that are by no means 'wholly speculative,' the plaintiffs are not required to rely on the assurances of counsel that relevant evidence will be preserved.  The PSLRA permits them to seek discovery to aid their efforts to preserve the evidence for themselves.

220 F.R.D. at 251.  In *Royal Ahold*, that shifting landscape was caused by a reorganization and divestitures, but the court there did not articulate a *requirement* for those precise circumstances to be in place for the PSRLA's provisions to be triggered.  Here, the shifting landscape is caused by, *inter alia*, substantial turnover among key leadership who resigned suspiciously amidst Bayview's repeated shutdowns and the termination of Emergent's COVID vaccine manufacturing contracts.[13] Lead Plaintiffs cite specific examples of documents that appear to have been lost or destroyed, and Defendants offer no substantive response or explanation.  As such, even under *Royal Ahold*, the PSLRA stay should be partially lifted.

Defendants overplay their hand by claiming that "courts have uniformly explained that *Royal Ahold* was driven by the unique circumstances of the corporate divestitures in that case" and implying that *Royal Ahold's* lifting of the PSLRA stay is an outlier hobbled by subsequent negative history.  *See* Opp. at 6 & n.5.  To the contrary, many decisions citing *Royal Ahold* in lifting the PSLRA stay do **not** involve a reorganization or asset divestitures.  *See, e.g.*, *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-03785, 2021 WL 2414763, at *3-*6 (S.D. Ohio June 14, 2021) (citing *Royal Ahold* and lifting PSLRA stay to permit access to a "high volume of documents"

---

[13]    Contrary to the Opp. at 9, the Lift-Stay Memo's citation of Bayview's repeated shutdowns (*id.* at 12) suffices to support risks of evidentiary loss, as they were caused by the temporary or permanent cessation of contract COVID vaccine manufacturing operations and led to employee reductions and a public commitment to widespread changes in Bayview's facility, staffing, and operations.  The changes in Emergent's CDMO segment more broadly and at the Bayview facility in particular are exactly the sort of "shifting corporate landscape" that would fall within *Royal Ahold*.

produced to government, regulatory, enforcement, or legislative bodies or produced in other litigation after observing that "Courts regularly find that specific requests for already-produced discovery satisfy the particularity requirement of the exception to a PSLRA discovery stay" and that "maintaining [a] discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA") (citations omitted); *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2015 WL 1565462, at \*2-\*6 (E.D. Mich. Apr. 8, 2015) (citing *Royal Ahold* and partly lifting PSLRA stay to permit access to *millions* of document pages GM previously produced to a House Committee, the SEC, federal regulators, and certain states and service of preservation subpoenas on third parties including auditors, underwriters, analysts, and companies); *In re Mut. Funds*, 2005 WL 549534 at \*1-\*2 (citing *Royal Ahold* and partly lifting PSLRA stay to permit access to insurance policies, documents provided to the SEC, and communications with and documents provided to regulatory agencies).[14]  Moreover, unlike here, ***none*** of Defendants cited cases (Opp. at 6 n.5) involved a company that was found by Congress to have concealed negative facts from federal inspectors and that later appeared to have failed to produce at least some pertinent documents to Congressional investigators.[15]

---

[14]  *See also, e.g.*, *Courter v. CytoDyn, Inc.*, No. C21-5190 BHS, 2022 WL 621535, at \* (W.D. Wash. Mar. 3, 2022) (citing *Royal Ahold* and lifting the PSLRA stay to permit discovery of documents defendants had provided or would provide to the SEC or DOJ after observing, "Defendants fail to engage with Plaintiffs' cited case law.  Courts have regularly held that requests seeking documents produced to regulatory agencies or produced in other proceedings were particularized" and "'maintaining the discovery stay as to materials already provided to government entities does not further the policies behind the PSLRA") (collecting cases); *Pension Tr. Fund for Operating Engineers v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 914-917 (E.D. Wis. May 3, 2013) (citing *Royal Ahold*, finding that exceptional circumstances exist where defendants already gathered the discovery materials sought by the lead plaintiff, and lifting the PSLRA stay to permit discovery of documents already produced to the SEC and in separate adversarial proceedings); *In re Equifax Inc. Sec. Litig.*, No. 1:17-CV-3463-TWT, 2018 WL 3023278, at \* (N.D. Ga. June 18, 2018) (citing *Royal Ahold* and lifting PSLRA stay to permit securities plaintiffs to engage in discovery and case management preparations underway in parallel MDL proceedings); *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 WL 2892945, at \*2-\*4 (S.D. Ohio July 15, 2011) (citing *Royal Ahold* and partially lifting PSLRA stay to permit access to documents and depositions related to proposed merger).  Similarly, courts also cite *Royal Ahold* in denying motions to stay in non-securities cases that likewise do not involve reorganizations or asset divestitures.  *See, e.g.*, *Consumer Fin. Prot. Bureau v. Access Funding, LLC*, No. ELH-16-3759, 2022 WL 1556096, at \*3-\*7 (D. Md. May 16, 2022); *U.S. v. Hubbard*, No. AW-13-344, 2013 WL 1773575, at \*2-\*4 (D. Md. Apr. 24, 2013).

[15]  Indeed, in one of Defendants' most-cited cases, the court noted that the company had committed to *cooperate* with the SEC.  *See In re Under Armour*, 2021 WL 633373 at \*3.

### D.    The Requested Discovery Is Sufficiently Particularized

Lead Plaintiffs' five document categories are sufficiently particularized as stated.  *See* Lift-Stay Memo at 5-6, 7-9 (collecting cases).  However, to facilitate the Court's decision, Lead Plaintiffs are willing to refine lift-stay requests (1) and (2) so as to narrow them to documents concerning only the Bayview facility and dated on or after March 1, 2020, which was the month before key events pled in the FAC, *e.g.*, Emergent's April 23, 2020 announcement of its J&J COVID vaccine manufacturing contract (¶52) and FDA's Bayview inspection from April 9 – 20, 2020, which was memorialized in the 4/20/2020 FDA Inspection Report (¶110(a)-(l)) and 4/20/2020 FDA 483 Report (¶111) and to which the 5/8/2020 Emergent FDA 483 Response responded (¶136).  They are also willing to further refine request (2) to only investigation or audit reports or memoranda presented to the Individual Defendants or Emergent's Board of Directors. Lead Plaintiffs believe these changes moot Defendants' arguments (Opp. at 10-12) concerning categories (1) and (2).  Defendants concede that categories (3) and (4) concern documents cited in the Congressional reports, and they raise no argument concerning category (5).  A straightforward and minimally burdensome search will reveal whether Defendants possess these documents.

## III.   CONCLUSION

For these additional reasons and those in the Lift-Stay Memo, Lead Plaintiffs respectfully ask the Court to grant the Lift-Stay Motion and permit immediate discovery into the five categories outlined in the Lift-Stay Motion, as refined above.  Lead Plaintiffs are resubmitting herewith highlighted copies of Lift-Stay Exhibits 1 and 2, with the Court Clerk's approval, in accordance with the Court's August 2, 2022 Docket Order.

Dated:  August 19, 2022

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*

Matthew L. Tuccillo (admitted *pro hac vice*)
Jeremy A. Lieberman (admitted *pro hac vice*)
Jennifer Banner Sobers (admitted *pro hac vice*)
Dolgora Dorzhieva (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, NY 10016
Tel.: (212) 661-1100
Fax: (212) 661-8665
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
jbsobers@pomlaw.com
ddorzhieva@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Tel.: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch (admitted *pro hac vice*)
Brendan Schneiderman (admitted *pro hac vice*)
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com
bschneiderman@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Stuart Kaufman
(*pro hac vice* applications forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com
stu@robertdklausner.com

*Additional Counsel for City of Fort Lauderdale Police & Firefighters' Retirement System*

12

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2022, I electronically filed the foregoing with the Clerk

of Court using the Court's CM/ECF system, which in turn sent notice to all counsel of record.


Dated:     August 19, 2022                          /s/ *Matthew L. Tuccillo*
                                                    Matthew L. Tuccillo