IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

IN RE EMERGENT BIOSOLUTIONS INC.   )
SECURITIES LITIGATION              )  CIVIL NO.
                                   )  8:21-CV-00955-DLB
                                   )
                                   )  <u>CLASS ACTION</u>
_____)

                                      Greenbelt, Maryland
                                      February 2, 2023
                                      3:00 p.m.

TRANSCRIPT OF PROCEEDINGS
MOTIONS HEARING
BEFORE THE HONORABLE DEBORAH L. BOARDMAN
Via Videoconference

<u>For Plaintiffs Nova Scotia Health Employees' Pension Plan, City of Fort Lauderdale Police & Firefighters' Retirement System</u>:

Matthew L. Tuccillo, Esquire
Jennifer B. Sobers, Esquire
*Pomerantz LLP*

Daniel S. Sommers, Esquire
Brendan R. Schneiderman, Esquire
S. Douglas Bunch, Esquire
Julie Reiser, Esquire
*Cohen Milstein Sellers and Toll PLLC*

<u>For the Defendants</u>:

William M. Krulak, Jr., Esquire
Ariana K. DeJan-Lenior, Esquire
*Miles and Stockbridge PC*

Timothy Perla, Esquire
*Wilmer Cutler Pickering Hale and Dorr LLP*

(Computer-aided transcription of stenotype notes)

P R O C E E D I N G S

(3:11 p.m.)

THE CLERK:  The matter now pending before this Court is DLB-21-0955.  We are here in regards to Emergent Biosolutions Inc. Securities Litigation.  Counsel, please identify yourself for the record, beginning with the plaintiff.

MR. TUCCILLO:  Good morning, Your Honor.  Matthew Tuccillo, Pomerantz LLP.  I represent the co-lead plaintiffs. I believe on the phone with me are my colleagues Jennifer Sobers and possibly Brandon Cordovi as well.

MR. SOMMERS:  Good afternoon, Your Honor.  Daniel Sommers, Cohen Milstein Sellers and Toll, liaison counsel for the lead plaintiffs.  With me are my colleagues Julie Reiser, Doug Bunch and Brendan Schneiderman.

MR. KRULAK:  Good afternoon, Your Honor.  Bill Krulak on behalf of the defendants.  I'm joined by my colleague, Ariana DeJan-Lenoir.  And I'd introduce lead defense counsel, Timothy Perla, from WilmerHale who will be making the arguments today.

MR. PERLA:  Good afternoon, Your Honor.  Timothy Perla from WilmerHale for the defendants.  With me in my office are Kim Crowley and Argun Jaikumar.

THE COURT:  Okay, great.  I think that's everyone. Good afternoon.  Did I miss anyone?

If you could do me a favor, it makes my life a lot easier on Zoom.  If you are the lawyer speaking, if you can put right now where your name is after who you represent.  I'm sure I'll get it eventually, but it's much easier for me because I don't have plaintiffs on the right or defendants on the left.  So that would be great, thank you.

Okay.  While you're doing that, the call today is about two of the three pending motions in this case.  This case was recently transferred to me after Judge Grimm retired.  It's not the only case that was transferred to me after Judge Grimm retired, but I want to talk to you about the two -- the Motion to Partially Lift the Stay and the Motion for Judicial Notice of the Congressional Report and its exhibits.

Let's start with the Motion for Judicial Notice.  Let me just tee up procedurally how everything, I think, went down and why we're now in this strange position where I don't have a fully amended complaint with the new Congressional findings.  I've got a motion for judicial notice that was filed along with an opposition to a motion to dismiss, a consolidated amended complaint.  The consolidated amended complaint was filed before the Congressional findings were issued, and now the plaintiffs want me to take judicial notice of those findings and the contents of the report and the exhibits attached to the report in connection with the pending motion to dismiss, and defendants' reply has been held in abeyance until I resolve

that.

Is that essentially where we stand on that motion from your perspective?  Who is speaking for the plaintiffs?

MR. TUCCILLO:  I am, Your Honor.  Matthew Tuccillo from Pomerantz.  That's largely right.  In very brief overview with just slight more color, we filed our amended complaint. Just nine days before a briefing deadline, this second Congressional report dropped.  The first one was a year prior and is in the amended complaint already --

THE COURT:  I understand, yes.

MR. TUCCILLO:  So this happened later.  We moved to bring it in on judicial notice rather than restart the entire calendar with a Rule 15 motion.  As defendants' status report indicates, there was yet another Congressional report in December.  It actually omits there was a very meaty press release from the committee in August that de facto is a short report and had findings and additional evidence, et cetera. The problem is there's this succession of events, May 2021, May 2022, August 2022, December 2022.  It's just, from our perspective, impractical to seek to amend each and every time that occurs.

So what we did is we went ahead and did our opposition brief on the deadline that it was due, and we filed these two other motions; one being the one you asked about which was to bring in judicial notice materials at that time.

THE COURT:  Okay.  Let me ask you this.  If I were not to take judicial notice of the materials, does your consolidated amended complaint fail?  Do you need those in there, or are you just bolstering your allegations?

MR. TUCCILLO:  That's a great question.  So from my I will say slightly biased perspective, the amended complaint, in my view, is one of the strongest I've had the honor of submitting.  I think it more than stands up on its own two feet, but that conclusion that I as the primary author reach, I think, is enormously bolstered by the Congressional materials.  Not just the report itself but the documentary evidence, the posture of the documentary evidence; the findings, for example, of active concealment of facts which, you know, plays out in the subsequent press releases and reports, by the way, in August and again in December.  So it's, I would say, prudent to take judicial notice.  I would say it's imprudent to require Rule 15 amendments at each turn.

We do believe that we satisfy several requirements, several pathways to judicial notice for literally every one of those documents.  The Congressional report, for example, is a public record document, is publicly released.  Some of the judicial materials are Emergent's own emails produced by Emergent in response to a Congressional subpoena and Bates-stamped by Emergent.  There's just no argument whatsoever that they're not authentic, that they're not what they say they

say, et cetera.  So we do think we satisfy those requirements.

One of the cases we cite that I think is analogous was the *Under Armour* case.  There the motion briefing ended, I want to say, something like six months prior to an SEC consent order that dropped.  It's analogous because there the defendants likewise did not admit any fault.  They didn't say, hey, you're right.  It was just sort of:  Here's what the SEC found.  Nevertheless, the Court, in resolving the motion to dismiss, took judicial notice of those materials and said -- and I quote:  While the order states that the SEC's findings "are not binding on any other person or entity in this or any other proceeding," the Court went on to say nevertheless the SEC order lends support to the allegations of the plaintiffs in this case.  So it considered them at the same time as all the briefing materials on the motion to dismiss.

THE COURT:  Let me ask you this.  I've been through your opposition to the motion to dismiss, and you refer to the judicial notice materials.  You say that they bolster, they augment, they are consistent with, they supplement your allegations.  Why do you even need them?  Let me just also note I also looked for citations to, in your opposition, to only the judicial notice materials without a related or a parallel cite to the first amended complaint.  And I only found it one time. I found it on page 16 when you cite to Exhibits 35 and 36 which

are emails from one of the Emergent Bio executives.

So what if I just took judicial notice of the fact that those emails were attached to the report?

MR. TUCCILLO:  I think Your Honor asked two questions.  I'll try to answer them in turn.  Your Honor correctly observed -- and the motion to dismiss is yet another tome that I wasn't as ready to discuss today, but I understand your point.  The briefing, we took great pains to kind of go in on what we had filed, what we pled, because that's our role at the 12(b)(6) stage.  We would be professionally remiss to not either seek a Rule 15 motion or a judicial notice motion with this other incredibly weighty continuation of the ongoing investigation that we pled.  We pled that, hey, there's an investigation live and ongoing.  In multiple points in the complaint, we said as more materials come out --

THE COURT:  I understand.  I don't question -- it's absolutely relevant, and I think the report is probably integral to the complaint.  You refer to the investigation that preceded it.  The question is this is so procedurally off, and I'm just trying to figure out how best to proceed.  So if I deny the motion for judicial notice, and then I find that there are deficiencies in the complaint and I decide there's -- I can grant leave to amend; then we have to go through all of this again.  That doesn't make a ton of sense actually, and no one really has time for that, including me.

MR. TUCCILLO:  Agreed.  I think the problem is if you look at the posture of this case and the amount of time that has elapsed since it was -- through no fault of the Court's. Judge Grimm retired; you've got God knows how many new cases at the same time.  We are where we are sort of thing, right?  But if we were to amend now, we're amending not just with the report; we're amending with the August press release that said, hey, the European Union, South Africa and Canada, all did audits of the Bayview facility, found the same deficiencies, and it confirms the FDA's finding.  We'd amend to put that in. We'd amend to put in the multi-hundred-page December report.

By the time we do that -- guess what -- maybe the Senate committee that's still alive would issue a report, maybe the DOJ or the SEC that are still alive, they would issue some finding, or maybe the New York Attorney General, the Maryland Attorney General; none of which are closed, right?  So we're in this death spiral of continuing -- from my perspective, it's great --

THE COURT:  Let me ask you this.  Are there any new false -- alleged false statements or material omissions in the materials that you didn't allege in your complaint?

MR. TUCCILLO:  I don't think that's -- well, to the extent I have mastered all of these materials, including a report issued just a month and a half ago, I don't think they --

THE COURT:  I'm not aware of that report.

MR. TUCCILLO:  It was in the status report by defendants.

THE COURT:  Oh, that one.  Yes, I am aware of that.

MR. TUCCILLO:  So we're not really using those for more misstatements.  Quite frankly, the operative pleading really covers the waterfront on the times that people spoke during the class period, and it ranges from Congressional testimony to op eds that the CO somehow decided to write.  We've got a lot in there.  What these materials do is they just again and again and again establish both the falsity and, importantly for a case of this nature, the scienter.  So I really do think we've got more than enough on that initial complaint.  It's one of the strongest I feel I've submitted.  But these materials, boy, they really -- it takes a 10 out of 10 and, in my opinion, makes it a 15 out of 10 and counting.

THE COURT:  Okay.

MR. TUCCILLO:  So I think it's better to take judicial notice.  Defendants asked for and got a 21-day gap between an order granting the judicial notice motion and the day the response -- the motion reply is due; that 21 days has now blossomed into six months and 21 days.  So they have had really a good amount of time, I think, and frankly if they want more, I'm happy to grant it.  But they have time to digest it and take it all in right now this time.  They get the last

word.  I would recommend that we do it.

THE COURT:  Thank you.  Mr. Krulak, did I say your name correctly?

MR. KRULAK:  Yes, you did, Your Honor.

THE COURT:  Let me ask you this.  We can all agree this is procedurally a little bit wonky, for lack of a better word.  It's not that useful for me for you to tell me how this is odd, how maybe they should have sought leave to amend.  I recognize that, but we need to speak practically here.  If I were to deny the motion for judicial notice and then grant your motion to dismiss with leave to amend, that would just delay things.  I just carefully looked over your opposition, and while I certainly haven't mastered your arguments -- I will by the time I rule on them -- you take issue with some of the conclusory allegations about scienter and false statements.

You suggest that they're relying on a preliminary Congressional report.  You say that the confidential witness statements are insufficient, and then they've got these materials that they want me to consider that I think bolster some of their allegations.

Why isn't it just more efficient for me to take judicial notice of at least some of the materials, maybe all of them, and have you respond to them in your reply?

MR. KRULAK:  Thank you, Your Honor.  All good questions and I may not have made this clear, but Mr. Timothy

Perla from WilmerHale will be making --

THE COURT:  You did make that clear and that was my fault.

MR. KRULAK:  No, no --

THE COURT:  Mr. Perla, you heard my question and I'm ready to hear from you.

MR. PERLA:  Absolutely, Your Honor.  And I actually 100 percent agree with you.  I think that's exactly what we should do.  We would like to move this along.  I think the briefing was extraordinarily helpful because I understand the plaintiffs to have clarified that they're seeking judicial notice of the fact of the materials as opposed to the substantive truth of what they state.

THE COURT:  Of course.  This is a 12(b)(6) --

MR. PERLA:  100 percent.  They're the master of their complaint, and if they wish for their materials to be considered, we want to get them considered expeditiously.  If the best answer is that we should simply address them in our reply, notwithstanding that that would be beyond the scope of our opening brief, we're prepared to do that.

The thing that gave me concern, which I think has now been dispelled, is when I read the first page of plaintiffs' reply brief, they said the reason they didn't make a complaint amendment is because they first wanted the Court's guidance on the existing complaint.  That sounded to me like try once and

then amend, and as everybody has pointed out, that's inefficient.  If the answer is the materials will be considered on judicial notice in lieu of an amendment, that's perfectly acceptable to the --

THE COURT:  Let me just confirm.  That is what my understanding of the best course of action is.  Mr. Tuccillo?

MR. TUCCILLO:  I would answer that with a little bit more nuance.  I think that it is most efficient now to do the course of action that Your Honor has signaled which is let's brief this today.  If Your Honor, despite everything in the complaint and the judicial notice materials, said I'm going to dismiss you without prejudice, as is customary in this space, and you have leave to amend, when we amend, we would certainly include the May report, the August press release, the December report, et cetera, to contextualize them in what will probably be a 500-page complaint instead of a 250-page complaint but --

THE COURT:  Let's cut to the chase here.  To that point, if what you would do is just pile on with additional findings that are merely elaborating on and confirming the Congressional findings, I can't -- I would be shocked, if that was the basis for a dismissal of the complaint, that you don't have enough findings.

MR. TUCCILLO:  Right, and what I was going to say is I do think though, that being said, we would do that; we would integrate all available materials by the time we amended.  That

being said, if we on all four corners, you know, litigate effectively some aspect of the May 2022 report, perhaps through their reply brief and in oral argument where I get to respond to it, et cetera, and Your Honor conclusively rules on one of those things, great; we'll put it in because we have to, but we will have a very uphill battle to then try and relitigate that point, whatever it was, right?

So I guess what I'm saying is if we do have a Rule 15 amendment, we would always include everything available to that point.  Something like scienter, for example, is ruled upon holistically so it would be what we had pled before -- judicial notice, what becomes available a month, six months, a year from now, which all gets viewed together under *Tellabs*.  That being said, if Your Honor has said, "Listen, I've read this May 2022 report, I know you love it; I don't, it doesn't move the needle," I don't know that our doing so is going to prove to be effective.

So I do think the best course of action, given the amount of time that has passed, is to permit the RJN, the judicial notice motion, let them file their reply, add an oral argument if there's some brand new argument I haven't had a chance to ever consider.  I'd do it in oral argument or maybe in a small sur-reply if it was that out of left field, and I do think we can resolve this now.  I think the complaint is very strong as is.

THE COURT:  Thank you.  Mr. Perla, it sounds like we're all on the same page.

MR. PERLA:  I agree, Your Honor.  Thank you.

THE COURT:  Great.  I'll grant the motion for judicial notice of the materials essentially by consent of the parties in agreement and consistent with our discussion today because it's most efficient.  Also I think it's under Rule 201 I can take judicial notice of the materials not for the truth of the matter therein but the fact that this was a Congressional report with exhibits published on a government website, and these are essentially augmentations of the existing allegations that the defendants will respond to in their reply brief.

Mr. Perla, do you need any more time than 21 days or will 21 days work?  That's a scary question to a lawyer.

MR. PERLA:  I know it is, and I'm thinking of the two associates sitting directly behind me.  If I can have 28, I'm sure they'd thank me.

THE COURT:  Sure.

MR. PERLA:  Thank you.

THE COURT:  Very good.  Let's move on to the Motion to Partially Lift the Stay.

I thank the defendants for their status report and their four litigation hold notices.

Mr. Tuccillo, I'll hear from you if you have anything

to add other than what's been in the papers, but I'll tell you I'm disinclined to partially lift the stay.

MR. TUCCILLO:  I certainly appreciate that preamble and say anything else at my own peril.  I will simply add a little color which is that obviously the makeup of the Congressional committees has materially changed since all this briefing was submitted both in terms of the leadership and, frankly, the intent, the record keeping, what direction it heads in has changed.

Several of these categories of documents, I haven't seen the defendants' litigation holds, but they are categories that are entirely outside the scope of those holds.  Documents from other companies like Johnson & Johnson and AstraZeneca, for example, I'm deeply concerned that the emails and documents, that there was obviously some larger amount that J&J and AstraZeneca gave the committees that then distilled down to the emails and contracts, et cetera, that were actually published.  I'm unaware of whether J&J and AstraZeneca are under any obligation to keep those.  I suspect the committee may not, so I'm deeply concerned that those are going to disappear.

I'll just add one other point related to that --

THE COURT:  Hold on.  What are you deeply concerned will disappear?  Can you just say that, one sentence of what you're deeply concerned will disappear?

MR. TUCCILLO:  Sure.  The Congressional report, among other things, published documents provided by Johnson & Johnson and by AstraZeneca.

THE COURT:  I understand and you're trying to infer from that that means that Emergent didn't produce them, had them but didn't produce them?

MR. TUCCILLO:  Certainly the ones where our Emergent defendants are among the senders and recipients.  I've never heard an explanation of why they didn't.

THE COURT:  I guess I'm confused.  How do we know they didn't?  How do we know they weren't duplicative and Congress just decided to attach the ones with the J&J Bates number?

MR. TUCCILLO:  We don't but my assumption is that they would have first gotten Emergent's production and then gone in concentric circles -- I do think the Congressional materials, if you read the original reports the second, I think that's sort of the procedural history of what Congress did.  So I think they were dissatisfied or perhaps wanted to expand upon what they got in the first instance.  But certainly it's an unanswered question.  I several times tried to bait that response in the briefing and I never got it, so I am left to be concerned that there was never some innocuous explanation offered.

The problem is with that -- with those optics, right,

that there are materials that presumably were produced to Congress by those companies, there might be additional materials that were never produced. So we, at minimum, want to issue preservation subpoenas, but I think we should start getting all of these productions. They were given to Congress, everything has been organized, privilege reviewed, Bates-stamped, kicked out the door. Same with the Emergent materials. Emergent has engaged in an entire process already. These materials could be -- there's two button clicks and a drive away from production.

So in my experience, that's when these sorts of partial lists tend to happen, and with the passage of time, the departure of at least one of the individual defendants, plus other key executives at Emergent, the advancement through 2022 of multiple of the investigations, several things in that status report say pulled throughout 2022. That was a month and a half ago. And so everything else is moving along, and we're sort of stuck in time, still kind of being left behind.

So we do think a lift of the stay is appropriate. We think we've done limited categories particularized, et cetera. I'm happy to answer questions about those if Your Honor has any, but I do think the briefing covered it.

THE COURT:  Okay.  Mr. Perla.

MR. PERLA:  Thank you, Your Honor.

THE COURT:  Are you able to clarify this issue with

the emails that Mr. Tuccillo has?

MR. PERLA:  I'm going to offer all the information I can right now.  I am not the Congressional counsel so I don't have firsthand knowledge, but I have gathered knowledge that I'm going to share.  So what I would love to do is simply take the nine emails that Mr. Tuccillo has asked about and search the Congressional production and see if they're in there.  The Congressional production is perfectly safe, but it is archived and has been archived since the production ended which meant I could not search it in short order.

What I did instead is interact with the attorneys who represented Emergent in the Congressional investigation and here's what I learned.  Emergent produced approximately 100,000 pages.  I would observe that Congress published approximately 1,000 pages, meaning one percent of the material.  So the explanation that we believe is the case, at least in part -- and I'll tell you why that's in part -- is that Congress for whatever reasons, and we don't have visibility into that, selected certain materials to publish.  They published less than one percent of the materials, so one cannot infer that because Congress didn't publish something, we didn't produce it.

Several of the emails, notwithstanding that we don't have access to the database, just by the materials directly at hand, Congressional counsel has been able to find produced

Emergent copies.  So that gave me comfort that there is nothing to this issue.

Finally, I learned I can't comment as to the sequence of production that Mr. Tuccillo asked about, but I am told that the production parameters as between the three companies -- that is, Emergent, AstraZeneca and Johnson & Johnson -- were different.  In other words, the fact that one company produced a document doesn't necessarily mean the other company was also asked for the document.  So the supposition that the companies were all asked for the same thing and therefore would have given the same thing is not one that holds.  The supposition that Congress would have published a document simply because it produced it is not the case.  And to the extent we've been able to check, we've been able to find copies of these documents.

So we have no reason to believe that there's any substance to the concern Mr. Tuccillo is articulating.  We think that we have not lost documents, and what he's seeing in the Congressional production does not indicate otherwise.

I would also just observe that in addition to very robust litigation holds, there are technological holds that are not subject matter limited, so Mr. Tuccillo referenced the fact that the subject matters may have widened.  It actually wouldn't matter because we shut off deletion altogether.  We have simply preserved the documents from the relevant sources wholesale.  So I don't believe there's a document preservation

basis to lift the stay in this case.

MR. TUCCILLO:  Your Honor, if I might just offer a brief response?

THE COURT:  Could you just hang on one second.  Thank you.

MR. TUCCILLO:  Sure.

THE COURT:  Mr. Perla, what about prejudice to the plaintiffs with other litigation, a drain on the company's resources?

MR. PERLA:  Certainly, Your Honor.  First, in terms of one comment Mr. Tuccillo made that it might be easy, we can discuss that, but the *Under Armour* cases and other cases are very clear that's just not the test here.  The question isn't the burden on the defendants; it's the burden on the plaintiffs.

With respect to the two things that the plaintiffs have brought up, the first one financial state, I do not believe the plaintiffs have established even what Emergent's financial state is, much less that there's any difficulty with Emergent's financial state.  Plaintiffs' briefing cites exactly one thing --

THE COURT:  Is there a difficulty in Emergent's financial situation?

MR. PERLA:  Not that I'm aware of, Your Honor. "Difficulty" is a vague term.  In their most recent financial

statements which we can all read, they had $2.9 billion in assets which I observe is more than even the billion dollars that we don't agree with that plaintiffs claim is at stake in this case.  So not that I'm aware of, Your Honor.

THE COURT:  Go ahead.

MR. PERLA:  Thank you, Your Honor.  If Your Honor has other questions about financial status, I'd be happy to address them.  Otherwise, with respect to other cases, we addressed this in our submission.  There just aren't any.  There are governmental proceedings that are subpoenas and inquiries that have not ripened into cases.  There are no governmental cases. There is other private litigation, but it is the shareholder derivative litigation that is actually stayed in favor of this case.

In other words, if Mr. Tuccillo's concern is that he may not be in first place in litigation, he's actually already there.  He is the first case that the other cases are following and waiting on, so I don't see how there would be any prejudice that could justify lifting the stay.

THE COURT:  Okay, thank you.  Mr. Tuccillo.

MR. TUCCILLO:  Thank you, Your Honor.  So if I heard Mr. Perla's comments correct, it sounded like he began by saying they found certain of the duplicative emails, and then he concluded by saying we found them.  But "certain" and "all" are two different things.  What I was troubled by with

Mr. Perla's remark is that he said there's about 100,000 documents and they're in archive, and therefore he doesn't know the answer.

So I've had the pleasure with some of the counsel on the line on plaintiffs' side of overseeing a nine-year litigation where there was two terabytes of data, produced by BP and others, where we had to take things in and out of archive constantly. Even with a quantity of materials far in excess of what Mr. Perla is describing, we're talking about an exercise that perhaps takes a week. This is not something that is difficult. For them to have produced it, they had to take all of these things, put them into a review database, review and code, privilege scan, Bates-stamp and kick out. That database, unless there was malpractice, was not disassembled.

When it was done it was simply put in archival posture to save database hosting cost and things of that nature. It does not take more than a week to ten days to revive. This motion has been pending for six months. So to be in the position of not accounting for with specificity every document that was in that thing is not acceptable.

As regards the billion dollar thing, Mr. Perla represented 2 billion in assets. Assets and cash are two different things. So if we want to recover on our claim, I'm not going to suggest that it's appropriate for us to wait for Emergent to try to sell the Bayview facility, you know, in some

garage sale to raise the money to do it.  In our briefing, we said that the cash position is plummeting.  They cited the cash position in their brief, and then we added to that.  And it had gone down by like 50 percent in six months because all of the government contracts were canceled.

What we don't know is the available insurance tower. We don't know how much coverage there was.  Presumably it is getting actively bled by anywhere from two to six investigations, that by the defendants' own status report were ongoing, quote, throughout 2022.

So I am deeply concerned still on both fronts.  And I do think at the end of the day, a lifting of the stay to produce materials that, frankly, everybody has but us at this point, right?  Every investigator, both -- three companies. This is literally sort of the wheelhouse of when stays are lifted.  There's a discrete universe of documents that were produced to investigators.  Those investigations are steaming ahead, and I do think we fit the bill for that sort of lift limited in scope, Your Honor.

THE COURT:  Okay.  Just give me one moment.  Thank you.

(Pause.)

THE COURT:  Okay, counsel.  Thank you for your argument on the Motion to Partially Lift the Stay which I will deny at this time.  Certainly if there are any significant

developments, I'm sure the plaintiffs will bring that to my attention, but let me state the reasons for it so there's a record.

As the parties state very well in their briefs, the Private Securities Litigation Reform Act states that all discovery and other proceedings shall be stayed unless particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party. I did read some cases that talk about prejudice to the defendants. I don't think that's the proper reading of the statute. I think it's prejudice to the plaintiffs. So the plaintiffs must show in order to partially lift the stay of discovery before the resolution of the motion to dismiss that it's particularized and it's necessary, either to preserve evidence or to prevent undue prejudice. I'm going to refer to the *Royal Ahold* case which everyone has cited in the briefs and seems to be cited across the country. That's *In re Royal Ahold N.V. Securities and ERISA Litigation*, 220 Federal Rules decision, 246 at 250, District of Maryland (2004).

I first consider whether plaintiffs have shown that the requested discovery is necessary to preserve evidence or to prevent undue prejudice to them. Because I find neither, I will not reach whether or not the request was particularized. A party alleging that discovery is necessary to preserve evidence must make a specific showing that the loss of evidence

is imminent as opposed to merely speculative. *In re Vivendi Universal Securities Litigation*, 381 F.Supp.2d, 129 at 130, Southern District of New York (2007).

In addition to the general duty to preserve evidence under the PSLRA, the defendants represent that they are properly preserving evidence. They submitted to me for in camera review four litigation holds which I have reviewed which, to some degree, are duplicative but also do vary. They are responses in response to four different government investigations. They were expansive. In addition to that, the defendants have represented that there is a general and broader IT hold to preserve all evidence, and the documents that have already been produced to the various governmental and regulatory agencies are not at risk of being destroyed, of course.

The plaintiffs claim here today and in their submissions that there's reason to believe that important Emergent executive emails may not have been preserved or may have been destroyed or may be destroyed, and the basis for that claim is the fact that attached to the Congressional staff report from May of last year were emails of high-level Emergent executives, some of whom have resigned recently, were provided to Congress by third parties rather than by Emergent. Many inferences have been drawn from this fact. Mr. Perla tells me that at least some of those emails were, in fact, produced in

the Emergent production, although he can't confirm or has not confirmed, I should say, all of them.

I don't think that this currently unanswered question rises to the level of an imminent risk that there's a loss of evidence. To me, plaintiffs' concern at this point is speculative, and I don't find any specific showing that loss of evidence is imminent, particularly in light of the IT holds and the four litigation holds that remain in place that are expansive.

So I now turn to whether plaintiffs have established that they will suffer undue prejudice if the stay in discovery is not partially lifted pending the determination of the motion to dismiss. Plaintiffs bear the burden of establishing undue prejudice.

Let me first just discuss *In re Royal Ahold* which, of course, is a very instructive case, but I also recognize its facts are quite unique, and I don't think that every plaintiff should be held to the standard of *Royal Ahold*. But nonetheless the plaintiffs rely heavily on it, and it is an important decision from our court.

There Judge Blake determined that the plaintiff showing of necessity to preserve evidence appeared substantial given that *Royal Ahold* appears to be undertaking a wide-ranging corporate reorganization and has already divested itself of key subsidiaries that allegedly played central roles in the

company's purported fraud.  These divestitures create a reasonable concern that documents may be lost despite *Royal Ahold*'s best efforts to preserve them.

More importantly, the company was facing other competing litigation, and that was the most compelling reason for lifting the stay, the risk of undue risk of prejudice to the plaintiffs because the defendants with a target of numerous civil and criminal actions, which of course were not subject to the PSLRA discovery stay.

Here in very stark contrast, there is no wide-ranging corporate reorganization, no impending bankruptcy that I'm aware of, no divesting of key subsidiaries, and the only competing civil litigation is apparently a stayed shareholder derivative action.  There are no criminal actions pending according to the status report filed this week.  There are no enforcement proceedings that have commenced against the defendants.  And while the plaintiffs do make an interesting observation about an apparent depletion of cash reserves, I don't believe this is insufficient now to show undue prejudice that would warrant a partial lifting of the stay.

I need not reach the question of whether the discovery is particularized.

So let me also note the following -- this will get into scheduling.  That what's also relevant to my decision even if it's not dispositive is that while the case was just

reassigned to me, I intend to prioritize the motion, and I hope to issue a ruling on the motion to dismiss within a few months of the motion becoming ripe.  In that regard, I would like to schedule a motions hearing on this for April 20.  I generally like to try to reduce the carbon footprint by having Zoom hearings for motions like this, but I prefer this to be in person.

Can we do 10:00, April 20, Greenbelt, Maryland?  Mr. Tuccillo?

MR. TUCCILLO:  If Your Honor could give me 30 seconds, please.

THE COURT:  Take your time.

MR. TUCCILLO:  Your Honor, I have a personal conflict which I'm happy to describe perhaps off the record.

THE COURT:  I don't need to hear; it's okay.

MR. TUCCILLO:  It involves a family member's cancer treatment --

THE COURT:  Of course, you don't need to get into it.  Let me try another date, and then we'll turn to the defendants.  Give me one moment.

MR. TUCCILLO:  Thank you, and I apologize.

THE COURT:  No problem.  What about the day before?  I don't know if it's a one-day thing or is that a week thing?

MR. TUCCILLO:  It is, in fact, a one-day thing, and the day before is the 19th, Wednesday, that's perfectly fine.

Thank you very much.

THE COURT:  Let's see how we do on the defense side.

MR. PERLA:  Also fine, thank you.

THE COURT:  Okay.  10:00, Wednesday, April 18 in Greenbelt.  Let me also just say if the motion is fully briefed and we've read it and I don't have any questions, I might cancel the hearing, but I think it's a good placeholder for all of us, and it's scheduled for now.

Is there anything else that we can productively address today from the plaintiffs' perspective?

MR. TUCCILLO:  I don't think so, Your Honor.  If for some reason there is unavoidable extension of time on the resolution of the motion, I did find the status report to be a helpful exercise, so I might respectfully suggest that if and when we get there, that be a repeat exercise because defendants are obviously uniquely in the position to alert the Court and plaintiffs to developments in investigations to which we are otherwise not privy.

THE COURT:  Why don't we do this, I actually think that's sensible and I don't think it's burdensome on the defense.  Mr. Perla, any objection to providing the Court with a status report on the day that you file your reply brief, essentially a page that gives me an update on what's going on, if anything?

MR. PERLA:  A status report similar to the one filed this time, no problem whatsoever.

THE COURT:  All right.  Let's do that then, and we'll take it from there.  Mr. Perla, anything else from your perspective?

MR. PERLA:  No, Your Honor.  Thank you.

THE COURT:  All right.  Thank you all very much. Have a good afternoon.

MR. PERLA:  You too.  Thank you.

MR. TUCCILLO:  Thank you, Your Honor.

THE CLERK:  This Court now stands adjourned.

(Proceedings concluded at 3:55 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, Patricia G. Mitchell, Registered Merit Reporter, Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 8th day of February 2023.

_____
Patricia G. Mitchell, RMR, CRR
Federal Official Reporter

**< Dates >**
**10:00, April 20,** 28:8 **.**
**April 18** 29:5 **.**
**April 20.** 28:4 **.**
**August** 4:16, 5:15, 8:7, 12:14 **.**
**December** 8:11, 12:14 **.**
**February 2, 2023** 1:14 **.**
**February 2023.** 31:10 **.**
**May** 12:14, 25:21 **.**
**May 2021, May 2022, August 2022, December 2022.** 4:18 **.**
**May 2022** 13:2, 13:14 **.**
**$2.9** 21:1 **.**
**.**
**.**
**< 0 > .**
**00** 1:15, 29:5 **.**
**000** 18:13, 18:15, 22:1 **.**
**.**
**.**
**< 1 > .**
**1** 18:15 **.**
**1-CV-00955-DLB** 1:7 **.**
**10** 9:15, 9:16, 29:5 **.**
**100** 11:8, 11:15, 18:13, 22:1 **.**
**11** 2:2 **.**
**12(b)(6** 7:10, 11:14 **.**
**129** 25:2 **.**
**130** 25:2 **.**
**15** 4:13, 5:17, 7:11, 9:16, 13:8 **.**
**16** 6:25 **.**
**19th** 28:25 **.**
**.**
**.**
**< 2 > .**
**2** 22:22 **.**
**2004** 24:19 **.**
**2007** 25:3 **.**
**201** 14:7 **.**
**2022** 17:14, 17:16, 23:10 **.**
**21** 9:21, 9:22, 14:14, 14:15 **.**

**21-day** 9:19 **.**
**220** 24:18 **.**
**246** 24:18 **.**
**250** 24:18 **.**
**250-page** 12:16 **.**
**28** 14:17, 31:5 **.**
**.**
**.**
**< 3 > .**
**3** 1:15, 2:2, 30:12 **.**
**30** 28:10 **.**
**35** 6:25 **.**
**36** 6:25 **.**
**381** 25:2 **.**
**.**
**.**
**< 5 > .**
**50** 23:4 **.**
**500-page** 12:16 **.**
**55** 30:12 **.**
**.**
**.**
**< 7 > .**
**753** 31:5 **.**
**.**
**.**
**< 8 > .**
**8:** 1:7 **.**
**8th** 31:10 **.**
**.**
**.**
**< A > .**
**abeyance** 3:25 **.**
**able** 17:25, 18:25, 19:13, 19:14 **.**
**above-entitled** 31:7 **.**
**Absolutely** 7:17, 11:7 **.**
**acceptable** 12:4, 22:20 **.**
**access** 18:24 **.**
**according** 27:15 **.**
**accounting** 22:19 **.**
**across** 24:17 **.**
**Act** 24:5 **.**
**ACTION** 1:9, 12:6, 12:9, 13:18, 27:14 **.**
**actions** 27:8, 27:14 **.**
**active** 5:13 **.**
**actively** 23:8 **.**
**actually** 4:15, 7:24, 11:7,

15:17, 19:22, 21:13, 21:16, 29:20 **.**
**add** 13:20, 15:1, 15:4, 15:22 **.**
**added** 23:3 **.**
**addition** 19:19, 25:4, 25:10 **.**
**additional** 4:17, 12:18, 17:2 **.**
**address** 11:18, 21:7, 29:11 **.**
**addressed** 21:8 **.**
**adjourned** 30:11 **.**
**admit** 6:7 **.**
**advancement** 17:14 **.**
**Africa** 8:8 **.**
**afternoon** 2:12, 2:16, 2:21, 2:25, 30:8 **.**
**agencies** 25:14 **.**
**ago** 8:24, 17:17 **.**
**agree** 10:5, 11:8, 14:3, 21:3 **.**
**Agreed** 8:1 **.**
**agreement** 14:6 **.**
**ahead** 4:22, 21:5, 23:18 **.**
**Ahold** 24:15, 24:17, 26:15, 26:18, 26:23, 27:3 **.**
**alert** 29:17 **.**
**alive** 8:13, 8:14 **.**
**allegations** 5:4, 6:14, 6:21, 10:15, 10:20, 14:12 **.**
**allege** 8:21 **.**
**alleged** 8:20 **.**
**allegedly** 26:25 **.**
**alleging** 24:24 **.**
**already** 4:9, 17:8, 21:16, 25:13, 26:24 **.**
**although** 26:1 **.**
**altogether** 19:23 **.**
**amend** 4:20, 7:23, 8:6, 8:10, 8:11, 10:8, 10:11, 12:1, 12:13 **.**
**amended** 3:17, 3:19, 3:20, 4:6, 4:9, 5:3, 5:6, 6:24, 12:25 **.**
**amending** 8:6, 8:7 **.**
**amendment** 11:24, 12:3, 13:9 **.**
**amendments** 5:17 **.**

**among** 16:1, 16:8 **.**
**amount** 8:2, 9:23, 13:19, 15:15 **.**
**analogous** 6:3, 6:6 **.**
**answer** 7:5, 11:18, 12:2, 12:7, 17:21, 22:3 **.**
**apologize** 28:21 **.**
**apparent** 27:18 **.**
**apparently** 27:13 **.**
**appeared** 26:22 **.**
**appears** 26:23 **.**
**appreciate** 15:3 **.**
**appropriate** 17:19, 22:24 **.**
**approximately** 18:13, 18:14 **.**
**archival** 22:15 **.**
**archive** 22:2, 22:8 **.**
**archived** 18:8, 18:9 **.**
**argument** 5:24, 13:3, 13:21, 13:22, 23:24 **.**
**arguments** 2:19, 10:13 **.**
**Argun** 2:23 **.**
**Ariana** 1:43, 2:18 **.**
**Armour** 6:4, 20:12 **.**
**articulating** 19:16 **.**
**aspect** 13:2 **.**
**Assets** 21:2, 22:22 **.**
**associates** 14:17 **.**
**assumption** 16:14 **.**
**Astrazeneca** 15:13, 15:16, 15:18, 16:3, 19:6 **.**
**attach** 16:12 **.**
**attached** 3:23, 7:3, 25:20 **.**
**attention** 24:2 **.**
**Attorney** 8:15, 8:16 **.**
**attorneys** 18:11 **.**
**audits** 8:9 **.**
**augment** 6:20 **.**
**augmentations** 14:11 **.**
**authentic** 5:25 **.**
**author** 5:9 **.**
**available** 12:25, 13:9, 13:12, 23:6 **.**
**aware** 9:1, 9:4, 20:24, 21:4, 27:12 **.**
**away** 17:10 **.**
**.**

**< B >.**

**B.** 1:29.
**bait** 16:21.
**bankruptcy** 27:11.
**basis** 12:21, 20:1, 25:19.
**Bates** 16:12.
**Bates-stamp** 22:13.
**Bates-stamped** 5:24, 17:7.
**battle** 13:6.
**Bayview** 8:9, 22:25.
**bear** 26:13.
**becomes** 13:12.
**becoming** 28:3.
**began** 21:22.
**beginning** 2:6.
**behalf** 2:17.
**behind** 14:17, 17:18.
**believe** 2:10, 5:18, 18:16, 19:15, 19:25, 20:18, 25:17, 27:19.
**best** 7:20, 11:18, 12:6, 13:18, 27:3.
**better** 9:18, 10:6.
**beyond** 11:19.
**biased** 5:6.
**Bill** 2:16, 23:18.
**billion** 21:1, 21:2, 22:21, 22:22.
**binding** 6:12.
**Bio** 7:1.
**Biosolutions** 1:5, 2:5.
**bit** 10:6, 12:7.
**Blake** 26:21.
**bled** 23:8.
**blossomed** 9:22.
**bolster** 6:19, 10:19.
**bolstered** 5:10.
**bolstering** 5:4.
**boy** 9:15.
**BP** 22:7.
**brand** 13:21.
**Brandon** 2:11.
**Brendan** 1:33, 2:15.
**brief** 4:5, 4:23, 11:20, 11:23, 12:10, 13:3, 14:13, 20:3, 23:3, 29:23.

**briefed** 29:6.
**briefing** 4:7, 6:4, 6:16, 7:8, 11:10, 15:7, 16:22, 17:22, 20:20, 23:1.
**briefs** 24:4, 24:16.
**bring** 4:12, 4:25, 24:1.
**broader** 25:11.
**brought** 20:17.
**Bunch** 1:34, 2:15.
**burden** 20:14, 26:13.
**burdensome** 29:21.
**button** 17:9.

**< C >.**

**C.** 31:5.
**calendar** 4:13.
**call** 3:7.
**camera** 25:7.
**Canada** 8:8.
**cancel** 29:8.
**canceled** 23:5.
**cancer** 28:16.
**carbon** 28:5.
**carefully** 10:12.
**case** 3:8, 3:10, 6:4, 6:15, 8:2, 9:12, 18:16, 19:13, 20:1, 21:4, 21:14, 21:17, 24:15, 26:16, 27:25.
**cases** 6:3, 8:4, 20:12, 21:8, 21:11, 21:17, 24:9.
**cash** 22:22, 23:2, 27:18.
**categories** 15:10, 15:11, 17:20.
**central** 26:25.
**certain** 18:19, 21:23, 21:24.
**Certainly** 10:13, 12:13, 15:3, 16:7, 16:20, 20:10, 23:25.
**CERTIFICATE** 31:1.
**Certified** 31:3.
**certify** 31:4.
**cetera** 4:17, 6:1, 12:15, 13:4, 15:17, 17:20.
**chance** 13:22.
**changed** 15:6, 15:9.
**chase** 12:17.
**check** 19:14.

**circles** 16:16.
**citations** 6:22.
**cite** 6:3, 6:23, 6:25.
**cited** 23:2, 24:16.
**cites** 20:20.
**City** 1:24.
**CIVIL** 1:6, 27:8, 27:13.
**claim** 21:3, 22:23, 25:16, 25:20.
**clarified** 11:11.
**clarify** 17:25.
**CLASS** 1:9, 9:8.
**clear** 10:25, 11:2, 20:13.
**CLERK** 2:3, 30:11.
**clicks** 17:9.
**closed** 8:16.
**CO** 9:9.
**co-lead** 2:9.
**code** 22:13.
**Cohen** 1:36, 2:13.
**colleague** 2:17.
**colleagues** 2:10, 2:14.
**color** 4:6, 15:5.
**comfort** 19:1.
**commenced** 27:16.
**comment** 19:3, 20:11.
**comments** 21:22.
**committee** 4:16, 8:13, 15:19.
**committees** 15:6, 15:16.
**companies** 15:13, 17:2, 19:5, 19:9, 23:14.
**company** 19:7, 19:8, 20:8, 27:1, 27:4.
**compelling** 27:5.
**competing** 27:5, 27:13.
**complaint** 3:17, 3:20, 4:6, 4:9, 5:3, 5:6, 6:24, 7:15, 7:18, 7:22, 8:21, 9:14, 11:16, 11:23, 11:25, 12:11, 12:16, 12:21, 13:24.
**Computer-aided** 1:49.
**concealment** 5:13.
**concentric** 16:16.
**concern** 11:21, 19:16, 21:15, 26:5, 27:2.

**concerned** 15:14, 15:20, 15:23, 15:25, 16:23, 23:11.
**concluded** 21:24, 30:12.
**conclusion** 5:9.
**conclusively** 13:4.
**conclusory** 10:15.
**Conference** 31:9.
**confidential** 10:17.
**confirm** 12:5, 26:1.
**confirmed** 26:2.
**confirming** 12:19.
**confirms** 8:10.
**conflict** 28:13.
**conformance** 31:8.
**confused** 16:10.
**Congress** 16:12, 16:18, 17:2, 17:5, 18:14, 18:17, 18:21, 19:12, 25:23.
**Congressional** 3:13, 3:17, 3:21, 4:8, 4:14, 5:10, 5:20, 5:23, 9:8, 10:17, 12:20, 14:10, 15:6, 16:1, 16:16, 18:3, 18:7, 18:8, 18:12, 18:25, 19:18, 25:20.
**connection** 3:24.
**consent** 6:5, 14:5.
**consider** 10:19, 13:22, 24:20.
**considered** 6:15, 11:17, 12:2.
**consistent** 6:20, 14:6.
**consolidated** 3:19, 3:20, 5:3.
**constantly** 22:8.
**contents** 3:23.
**contextualize** 12:15.
**continuation** 7:12.
**continuing** 8:17.
**contracts** 15:17, 23:5.
**contrast** 27:10.
**copies** 19:1, 19:14.
**Cordovi** 2:11.
**corners** 13:1.
**corporate** 26:24, 27:11.
**correct** 21:22, 31:6.
**correctly** 7:6, 10:3.

cost 22:16 .
Counsel 2:5, 2:13, 2:18,
     18:3, 18:25, 22:4,
     23:23 .
counting 9:16 .
country 24:17 .
course 11:14, 12:6, 12:9,
     13:18, 25:15, 26:16,
     27:8, 28:18 .
coverage 23:7 .
covered 17:22 .
covers 9:7 .
create 27:1 .
criminal 27:8, 27:14 .
Crowley 2:23 .
CRR 31:16 .
currently 26:3 .
customary 12:12 .
cut 12:17 .
Cutler 1:47 .
     .
     .
< D > .
Daniel 1:32, 2:12 .
data 22:6 .
database 18:24, 22:12,
     22:14, 22:16 .
date 28:19 .
Dated 31:10 .
day 9:21, 23:12, 28:22,
     28:25, 29:23, 31:10 .
days 4:7, 9:21, 9:22, 14:14,
     14:15, 22:17 .
de 4:16 .
deadline 4:7, 4:23 .
death 8:17 .
DEBORAH L. BOARDMAN
     1:19 .
December 4:15, 5:15 .
decide 7:22 .
decided 9:9, 16:12 .
decision 24:18, 26:20,
     27:24 .
deeply 15:14, 15:20, 15:23,
     15:25, 23:11 .
Defendants 1:40, 2:17,
     2:22, 3:5, 3:25, 4:13,
     6:7, 9:3, 9:19, 14:12,
     14:23, 15:11, 16:8,
     17:13, 20:14, 23:9, 24:9,

25:5, 25:11, 27:7, 27:17,
     28:19, 29:16 .
defense 2:18, 29:2,
     29:22 .
deficiencies 7:22, 8:9 .
degree 25:8 .
Dejan-lenior 1:43 .
Dejan-lenoir 2:18 .
delay 10:11 .
deletion 19:23 .
deny 7:21, 10:10,
     23:25 .
departure 17:13 .
depletion 27:18 .
derivative 21:13,
     27:14 .
describe 28:14 .
describing 22:9 .
despite 12:10, 27:2 .
destroyed 25:14,
     25:19 .
determination 26:12 .
determined 26:21 .
developments 24:1,
     29:18 .
different 19:7, 21:25,
     22:23, 25:9 .
difficult 22:11 .
Difficulty 20:19, 20:22,
     20:25 .
digest 9:24 .
direction 15:8 .
directly 14:17, 18:24 .
disappear 15:21, 15:24,
     15:25 .
disassembled 22:14 .
discovery 24:6, 24:7,
     24:12, 24:21, 24:24,
     26:11, 27:9, 27:22 .
discrete 23:16 .
discuss 7:7, 20:12,
     26:15 .
discussion 14:6 .
disinclined 15:2 .
dismiss 3:19, 3:24, 6:10,
     6:16, 6:18, 7:6, 10:11,
     12:12, 24:13, 26:13,
     28:2 .
dismissal 12:21 .
dispelled 11:22 .

dispositive 27:25 .
dissatisfied 16:19 .
distilled 15:16 .
District 1:1, 1:2, 24:19,
     25:3, 31:4 .
divested 26:24 .
divesting 27:12 .
divestitures 27:1 .
DIVISION 1:3 .
DLB-21-0955 2:4 .
document 5:21, 19:8, 19:9,
     19:12, 19:25, 22:20 .
documentary 5:11,
     5:12 .
Documents 5:20, 15:10,
     15:12, 15:15, 16:2,
     19:14, 19:17, 19:24,
     22:2, 23:16, 25:12,
     27:2 .
doing 3:7, 13:16 .
DOJ 8:14 .
dollar 22:21 .
dollars 21:2 .
done 17:20, 22:15 .
door 17:7 .
Dorr 1:47 .
Doug 2:15 .
Douglas 1:34 .
down 3:15, 15:16,
     23:4 .
drain 20:8 .
drawn 25:24 .
drive 17:10 .
dropped 4:8, 6:6 .
due 4:23, 9:21 .
duplicative 16:11, 21:23,
     25:8 .
during 9:8 .
duty 25:4 .
     .
     .
< E > .
easier 3:2, 3:4 .
easy 20:11 .
eds 9:9 .
effective 13:17 .
effectively 13:2 .
efficient 10:21, 12:8,
     14:7 .
efforts 27:3 .

either 7:11, 24:14 .
elaborating 12:19 .
elapsed 8:3 .
emails 5:22, 7:1, 7:3,
     15:14, 15:17, 18:1, 18:6,
     18:23, 21:23, 25:18,
     25:21, 25:25 .
Emergent 1:5, 2:4, 5:22,
     5:23, 5:24, 7:1, 16:5,
     16:7, 16:15, 17:7, 17:8,
     17:14, 18:12, 18:13,
     19:1, 19:6, 20:18, 20:20,
     20:22, 22:25, 25:18,
     25:21, 25:23, 26:1 .
Employees 1:23 .
end 23:12 .
ended 6:4, 18:9 .
enforcement 27:16 .
engaged 17:8 .
enormously 5:10 .
enough 9:13, 12:22 .
entire 4:12, 17:8 .
entirely 15:12 .
entity 6:12 .
ERISA 24:18 .
Esquire 1:28, 1:29, 1:32,
     1:33, 1:34, 1:35, 1:42,
     1:43, 1:46 .
essentially 4:2, 14:5,
     14:11, 29:24 .
establish 9:11 .
established 20:18,
     26:10 .
establishing 26:13 .
et 4:17, 6:1, 12:15, 13:4,
     15:17, 17:20 .
European 8:8 .
events 4:18 .
eventually 3:4 .
everybody 12:1,
     23:13 .
everyone 2:24, 24:16 .
everything 3:15, 12:10,
     13:9, 17:6, 17:17 .
evidence 4:17, 5:11, 5:12,
     24:7, 24:14, 24:21,
     24:25, 25:4, 25:6, 25:12,
     26:5, 26:7, 26:22 .
exactly 11:8, 20:20 .
example 5:12, 5:20, 13:10,

excess 22:9 .
executive 25:18 .
executives 7:1, 17:14, 25:22 .
exercise 22:10, 29:15, 29:16 .
Exhibits 3:13, 3:23, 6:25, 14:10 .
existing 11:25, 14:12 .
expand 16:19 .
expansive 25:10, 26:9 .
expeditiously 11:17 .
experience 17:11 .
explanation 16:9, 16:23, 18:16 .
extension 29:13 .
extent 8:23, 19:13 .
extraordinarily 11:10 .
.
.
< F > .
F.supp.2d 25:2 .
facility 8:9, 22:25 .
facing 27:4 .
fact 7:2, 11:12, 14:9, 19:7, 19:21, 25:20, 25:24, 25:25, 28:24 .
facto 4:16 .
facts 5:13, 26:17 .
fail 5:3 .
false 8:20, 10:15 .
falsity 9:11 .
family 28:16 .
far 22:8 .
fault 6:7, 8:3, 11:3 .
favor 3:1, 21:13 .
FDA 8:10 .
Federal 24:18, 31:17 .
feel 9:14 .
feet 5:9 .
few 28:2 .
field 13:23 .
figure 7:20 .
file 13:20, 29:23 .
filed 3:18, 3:20, 4:6, 4:23, 7:9, 27:15, 30:1 .
Finally 19:3 .
financial 20:17, 20:19, 20:20, 20:23, 20:25,

21:7 .
find 7:21, 18:25, 19:14, 24:22, 26:6, 29:14 .
finding 8:10, 8:15 .
findings 3:17, 3:21, 3:22, 4:17, 5:12, 6:11, 12:19, 12:20, 12:22 .
fine 28:25, 29:4 .
Firefighters 1:24 .
First 4:8, 6:24, 11:22, 11:24, 16:15, 16:20, 20:10, 20:17, 21:16, 21:17, 24:20, 26:15 .
firsthand 18:4 .
fit 23:18 .
following 21:17, 27:23 .
footprint 28:5 .
foregoing 31:5 .
format 31:8 .
Fort 1:24 .
found 6:9, 6:24, 6:25, 8:9, 21:23, 21:24 .
four 13:1, 14:24, 25:7, 25:9, 26:8 .
frankly 9:6, 9:23, 15:8, 23:13 .
fraud 27:1 .
fronts 23:11 .
fully 3:17, 29:6 .
.
.
< G > .
G. 31:2, 31:16 .
gap 9:19 .
garage 23:1 .
gathered 18:4 .
gave 11:21, 15:16, 19:1 .
General 8:15, 8:16, 25:4, 25:11 .
generally 28:4 .
gets 13:13 .
getting 17:5, 23:8 .
Give 23:20, 28:10, 28:20 .
given 13:18, 17:5, 19:11, 26:23 .
gives 29:24 .
God 8:4 .

gotten 16:15 .
government 14:10, 23:5, 25:9 .
governmental 21:10, 21:11, 25:13 .
grant 7:23, 9:24, 10:10, 14:4 .
granting 9:20 .
Great 2:24, 3:6, 5:5, 7:8, 8:18, 13:5, 14:4 .
Greenbelt 1:13, 28:8, 29:6 .
Grimm 3:9, 3:10, 8:4 .
guess 8:12, 13:8, 16:10 .
guidance 11:24 .
.
.
< H > .
Hale 1:47 .
half 8:24, 17:17 .
hand 18:25 .
hang 20:4 .
happen 17:12 .
happened 4:11 .
happy 9:24, 17:21, 21:7, 28:14 .
heads 15:9 .
Health 1:23 .
hear 11:6, 14:25, 28:15 .
heard 11:5, 16:9, 21:21 .
HEARING 1:18, 28:4, 29:8 .
hearings 28:6 .
heavily 26:19 .
held 3:25, 26:18, 31:7 .
helpful 11:10, 29:15 .
hereby 31:4 .
high-level 25:21 .
history 16:18 .
Hold 14:24, 15:23, 25:12 .
holds 15:11, 15:12, 19:11, 19:20, 25:7, 26:7, 26:8 .
holistically 13:11 .
Honor 2:8, 2:12, 2:16, 2:21, 4:4, 5:7, 7:4, 7:5,

10:4, 10:24, 11:7, 12:9, 12:10, 13:4, 13:14, 14:3, 17:21, 17:24, 20:2, 20:10, 20:24, 21:4, 21:6, 21:21, 23:19, 28:10, 28:13, 29:12, 30:6, 30:10 .
HONORABLE 1:19 .
hope 28:1 .
hosting 22:16 .
.
.
< I > .
identify 2:6 .
imminent 25:1, 26:4, 26:7 .
impending 27:11 .
important 25:17, 26:19 .
importantly 9:12, 27:4 .
impractical 4:20 .
imprudent 5:16 .
in. 8:10 .
Inc. 1:5, 2:5 .
include 12:14, 13:9 .
including 7:25, 8:23 .
incredibly 7:12 .
indicate 19:18 .
indicates 4:14 .
individual 17:13 .
inefficient 12:2 .
infer 16:4, 18:20 .
inferences 25:24 .
information 18:2 .
initial 9:13 .
innocuous 16:23 .
inquiries 21:10 .
instance 16:20 .
instead 12:16, 18:11 .
instructive 26:16 .
insufficient 10:18, 27:19 .
insurance 23:6 .
integral 7:18 .
integrate 12:25 .
intend 28:1 .
intent 15:8 .
interact 18:11 .
interesting 27:17 .
introduce 2:18 .

**investigation** 7:13, 7:14, 7:18, 18:12.
**investigations** 17:15, 23:9, 23:17, 25:10, 29:18.
**investigator** 23:14.
**investigators** 23:17.
**involves** 28:16.
**issue** 8:13, 8:14, 10:14, 17:4, 17:25, 19:2, 28:2.
**issued** 3:21, 8:24.
**itself** 5:11, 26:24.

**< J >.**
**J&J** 15:15, 15:18, 16:12.
**Jaikumar** 2:23.
**Jennifer** 1:29, 2:10.
**Johnson** 15:13, 16:2, 19:6.
**joined** 2:17.
**Jr** 1:42.
**Judge** 3:9, 3:10, 8:4, 26:21.
**Judicial** 3:12, 3:14, 3:18, 3:22, 4:12, 4:25, 5:2, 5:16, 5:19, 5:22, 6:10, 6:19, 6:23, 7:2, 7:11, 7:21, 9:19, 9:20, 10:10, 10:22, 11:11, 12:3, 12:11, 13:11, 13:20, 14:5, 14:8, 31:8.
**Julie** 1:35, 2:14.
**justify** 21:19.

**< K >.**
**K.** 1:43.
**keep** 15:19.
**keeping** 15:8.
**key** 17:14, 26:24, 27:12.
**kick** 22:13.
**kicked** 17:7.
**Kim** 2:23.
**kind** 7:8, 17:18.
**knowledge** 18:4.
**knows** 8:4.
**KRULAK** 1:42, 2:16, 10:2,

10:4, 10:24, 11:4.

**< L >.**
**L.** 1:28.
**lack** 10:6.
**largely** 4:5.
**larger** 15:15.
**last** 9:25, 25:21.
**later** 4:11.
**Lauderdale** 1:24.
**lawyer** 3:2, 14:15.
**lead** 2:14, 2:18.
**leadership** 15:7.
**learned** 18:13, 19:3.
**least** 10:22, 17:13, 18:16, 25:25.
**leave** 7:23, 10:8, 10:11, 12:13.
**left** 3:5, 13:23, 16:22, 17:18.
**lends** 6:14.
**less** 18:19, 20:19.
**level** 26:4.
**liaison** 2:13.
**lieu** 12:3.
**life** 3:1.
**Lift** 3:12, 14:22, 15:2, 17:19, 20:1, 23:18, 23:24, 24:12.
**lifted** 23:16, 26:12.
**lifting** 21:19, 23:12, 27:6, 27:20.
**light** 26:7.
**likewise** 6:7.
**limited** 17:20, 19:21, 23:19.
**line** 22:5.
**Listen** 13:14.
**lists** 17:12.
**literally** 5:19, 23:15.
**litigate** 13:1.
**Litigation** 1:6, 2:5, 14:24, 15:11, 19:20, 20:8, 21:12, 21:13, 21:16, 22:6, 24:5, 24:18, 25:2, 25:7, 26:8, 27:5, 27:13.
**little** 10:6, 12:7, 15:5.
**live** 7:14.

**LLP** 1:30, 1:47, 2:9.
**look** 8:2.
**looked** 6:22, 10:12.
**loss** 24:25, 26:4, 26:6.
**lost** 19:17, 27:2.
**lot** 3:1, 9:10.
**love** 13:15, 18:5.

**< M >.**
**M.** 1:42.
**makeup** 15:5.
**malpractice** 22:14.
**Maryland** 1:2, 1:13, 8:15, 24:19, 28:8, 31:4.
**master** 11:15.
**mastered** 8:23, 10:13.
**material** 8:20, 18:15.
**materially** 15:6.
**matter** 2:3, 14:9, 19:21, 19:23, 31:7.
**matters** 19:22.
**Matthew** 1:28, 2:8, 4:4.
**mean** 19:8.
**meaning** 18:15.
**means** 16:5.
**meant** 18:9.
**meaty** 4:15.
**member** 28:16.
**merely** 12:19, 25:1.
**Merit** 31:2.
**Miles** 1:44.
**Milstein** 1:36, 2:13.
**minimum** 17:3.
**misstatements** 9:6.
**Mitchell** 31:2, 31:16.
**moment** 23:20, 28:20.
**money** 23:1.
**month** 8:24, 13:12, 17:16.
**months** 6:5, 9:22, 13:12, 22:18, 23:4, 28:2.
**morning** 2:8.
**MOTIONS** 1:18, 3:8, 4:24, 28:4, 28:6.
**move** 11:9, 13:15, 14:21.
**moved** 4:11.
**moving** 17:17.
**multi-hundred-page**

8:11.
**multiple** 7:14, 17:15.

**< N >.**
**name** 3:3, 10:3.
**nature** 9:12, 22:17.
**necessarily** 19:8.
**necessary** 24:7, 24:14, 24:21, 24:24.
**necessity** 26:22.
**need** 5:3, 6:21, 10:9, 14:14, 27:21, 28:15, 28:18.
**needle** 13:16.
**neither** 24:22.
**Nevertheless** 6:9, 6:13.
**New** 3:17, 8:4, 8:15, 8:19, 13:21, 25:3.
**nine** 4:7, 18:6.
**nine-year** 22:5.
**NO.** 1:6.
**none** 8:16.
**nonetheless** 26:18.
**note** 6:21, 27:23.
**notes** 1:49.
**nothing** 19:1.
**Notice** 3:12, 3:14, 3:18, 3:22, 4:12, 4:25, 5:2, 5:16, 5:19, 6:10, 6:19, 6:23, 7:2, 7:11, 7:21, 9:19, 9:20, 10:10, 10:22, 11:12, 12:3, 12:11, 13:12, 13:20, 14:5, 14:8.
**notices** 14:24.
**notwithstanding** 11:19, 18:23.
**Nova** 1:23.
**nuance** 12:8.
**number** 16:13.
**numerous** 27:7.

**< O >.**
**objection** 29:22.
**obligation** 15:19.
**observation** 27:18.
**observe** 18:14, 19:19, 21:2.

observed 7:6 .
obviously 15:5, 15:15, 29:17 .
occurs 4:21 .
odd 10:8 .
offer 18:2, 20:2 .
offered 16:24 .
office 2:22 .
Official 31:1, 31:17 .
Okay 2:24, 3:7, 5:1, 9:17, 17:23, 21:20, 23:20, 23:23, 28:15, 29:5 .
omissions 8:20 .
omits 4:15 .
once 11:25 .
One 4:8, 4:24, 5:7, 5:19, 6:3, 6:24, 7:1, 7:24, 9:4, 9:14, 13:4, 15:22, 15:24, 17:13, 18:15, 18:20, 19:7, 19:11, 20:4, 20:11, 20:17, 20:21, 23:20, 28:20, 30:1 .
one-day 28:23, 28:24 .
ones 16:7, 16:12 .
ongoing 7:12, 7:14, 23:10 .
op 9:9 .
opening 11:20 .
operative 9:6 .
opinion 9:16 .
opposed 11:12, 25:1 .
opposition 3:19, 4:23, 6:18, 6:22, 10:12 .
optics 16:25 .
oral 13:3, 13:20, 13:22 .
order 6:6, 6:11, 6:14, 9:20, 18:10, 24:12 .
organized 17:6 .
original 16:17 .
others 22:7 .
Otherwise 19:18, 21:8, 29:19 .
outside 15:12 .
overseeing 22:5 .
overview 4:5 .
own 5:8, 5:22, 15:4, 23:9 .
.
.
< P > .

p.m. 1:15, 2:2, 30:12 .
page 6:25, 11:22, 14:2, 29:24, 31:7 .
pages 18:14, 18:15 .
pains 7:8 .
papers 15:1 .
parallel 6:23 .
parameters 19:5 .
part 18:16, 18:17 .
partial 17:12, 27:20 .
Partially 3:12, 14:22, 15:2, 23:24, 24:12, 26:12 .
particularized 17:20, 24:7, 24:13, 24:23, 27:22 .
particularly 26:7 .
parties 14:6, 24:4, 25:23 .
party 24:8, 24:24 .
passage 17:12 .
passed 13:19 .
pathways 5:19 .
Patricia 31:2, 31:16 .
Pause. 23:22 .
PC 1:44 .
pending 2:3, 3:8, 3:24, 22:18, 26:12, 27:14 .
Pension 1:23 .
people 9:7 .
percent 11:8, 11:15, 18:15, 18:20, 23:4 .
perfectly 12:3, 18:8, 28:25 .
perhaps 13:2, 16:19, 22:10, 28:14 .
peril 15:4 .
period 9:8 .
permit 13:19 .
person 6:12, 28:7 .
personal 28:13 .
perspective 4:3, 4:20, 5:6, 8:17, 29:11, 30:5 .
phone 2:10 .
Pickering 1:47 .
pile 12:18 .
place 21:16, 26:8 .
placeholder 29:8 .
plaintiff 2:7, 26:17, 26:21 .
Plaintiffs 1:23, 2:9, 2:14, 3:5, 3:21, 4:3, 6:14,

11:11, 11:22, 20:8, 20:15, 20:16, 20:18, 20:20, 21:3, 22:5, 24:1, 24:11, 24:20, 25:16, 26:5, 26:10, 26:13, 26:19, 27:7, 27:17, 29:11, 29:18 .
Plan 1:23 .
played 26:25 .
plays 5:13 .
pleading 9:6 .
please 2:5, 28:11 .
pleasure 22:4 .
pled 7:9, 7:13, 13:11 .
PLLC 1:36 .
plummeting 23:2 .
plus 17:13 .
point 7:8, 12:18, 13:7, 13:10, 15:22, 23:14, 26:5 .
pointed 12:1 .
points 7:14 .
Police 1:24 .
Pomerantz 1:30, 2:9, 4:5 .
position 3:16, 22:19, 23:2, 23:3, 29:17 .
possibly 2:11 .
posture 5:12, 8:2, 22:16 .
practically 10:9 .
preamble 15:3 .
preceded 7:19 .
prefer 28:6 .
prejudice 12:12, 20:7, 21:18, 24:8, 24:9, 24:11, 24:15, 24:22, 26:11, 26:14, 27:6, 27:19 .
preliminary 10:16 .
prepared 11:20 .
preservation 17:4, 19:25 .
preserve 24:7, 24:14, 24:21, 24:24, 25:4, 25:12, 26:22, 27:3 .
preserved 19:24, 25:18 .
preserving 25:6 .
press 4:15, 5:14, 8:7, 12:14 .

Presumably 17:1, 23:7 .
prevent 24:8, 24:14, 24:22 .
primary 5:9 .
prior 4:8, 6:5 .
prioritize 28:1 .
Private 21:12, 24:5 .
privilege 17:6, 22:13 .
privy 29:19 .
probably 7:17, 12:15 .
problem 4:18, 8:1, 16:25, 28:22, 30:2 .
procedural 16:18 .
procedurally 3:15, 7:19, 10:6 .
proceed 7:20 .
proceeding 6:13 .
Proceedings 1:17, 21:10, 24:6, 27:16, 30:12, 31:6 .
process 17:8 .
produce 16:5, 16:6, 18:21, 23:13 .
produced 5:22, 17:1, 17:3, 18:13, 18:25, 19:7, 19:13, 22:6, 22:11, 23:17, 25:13, 25:25 .
production 16:15, 17:10, 18:7, 18:8, 18:9, 19:4, 19:5, 19:18, 26:1 .
productions 17:5 .
productively 29:10 .
professionally 7:10 .
proper 24:10 .
properly 25:6 .
prove 13:16 .
provided 16:2, 25:22 .
providing 29:22 .
prudent 5:15 .
PSLRA 25:5, 27:9 .
public 5:21 .
publicly 5:21 .
publish 18:19, 18:21 .
published 14:10, 15:18, 16:2, 18:14, 18:19, 19:12 .
pulled 17:16 .
purported 27:1 .
pursuant 31:5 .

put 3:2, 8:10, 8:11, 13:5, 22:12, 22:15 .
.
.
< Q > .
quantity 22:8 .
question 5:5, 7:16, 7:19, 11:5, 14:15, 16:21, 20:13, 26:3, 27:21 .
questions 7:5, 10:25, 17:21, 21:7, 29:7 .
Quite 9:6, 26:17 .
quote 6:11, 23:10 .
.
.
< R > .
R. 1:33 .
raise 23:1 .
ranges 9:8 .
rather 4:12, 25:23 .
RE 1:5, 24:17, 25:1, 26:15 .
reach 5:9, 24:23, 27:21 .
read 11:22, 13:14, 16:17, 21:1, 24:8, 29:7 .
reading 24:10 .
ready 7:7, 11:6 .
really 7:25, 9:5, 9:7, 9:13, 9:15, 9:23 .
Realtime 31:3 .
reason 11:23, 19:15, 25:17, 27:5, 29:13 .
reasonable 27:2 .
reasons 18:18, 24:2 .
reassigned 28:1 .
recent 20:25 .
recently 3:9, 25:22 .
recipients 16:8 .
recognize 10:9, 26:16 .
recommend 10:1 .
record 2:6, 5:21, 15:8, 24:3, 28:14 .
recover 22:23 .
reduce 28:5 .
refer 6:18, 7:18, 24:15 .
referenced 19:21 .
Reform 24:5 .
regard 28:3 .
regards 2:4, 22:21 .

Registered 31:2 .
regulations 31:8 .
regulatory 25:14 .
Reiser 1:35, 2:14 .
related 6:23, 15:22 .
release 4:16, 8:7, 12:14 .
released 5:21 .
releases 5:14 .
relevant 7:17, 19:24, 27:24 .
relitigate 13:6 .
rely 26:19 .
relying 10:16 .
remain 26:8 .
remark 22:1 .
remiss 7:10 .
reorganization 26:24, 27:11 .
repeat 29:16 .
reply 3:25, 9:21, 10:23, 11:19, 11:23, 13:3, 13:20, 14:13, 29:23 .
Reporter 31:1, 31:2, 31:3, 31:17 .
reports 5:14, 16:17 .
represent 2:9, 3:3, 25:5 .
represented 18:12, 22:22, 25:11 .
request 24:23 .
requested 24:21 .
require 5:16 .
requirements 5:18, 6:2 .
reserves 27:18 .
resigned 25:22 .
resolution 24:13, 29:14 .
resolve 3:25, 13:24 .
resolving 6:9 .
resources 20:9 .
respect 20:16, 21:8 .
respectfully 29:15 .
respond 10:23, 13:3, 14:12 .
response 5:23, 9:21, 16:22, 20:3, 25:9 .
responses 25:9 .
restart 4:12 .

retired 3:9, 3:11, 8:4 .
Retirement 1:24 .
review 22:12, 25:7 .
reviewed 17:6, 25:7 .
revive 22:18 .
ripe 28:3 .
ripened 21:11 .
rises 26:4 .
risk 25:14, 26:4, 27:6 .
RJN 13:19 .
RMR 31:16 .
robust 19:20 .
role 7:9 .
roles 26:25 .
Royal 24:15, 24:17, 26:15, 26:18, 26:23, 27:2 .
Rule 4:13, 5:17, 7:11, 10:14, 13:8, 14:7 .
ruled 13:10 .
Rules 13:4, 24:18 .
ruling 28:2 .
.
.
< S > .
S. 1:32, 1:34 .
safe 18:8 .
sale 23:1 .
satisfy 5:18, 6:1 .
save 22:16 .
saying 13:8, 21:23, 21:24 .
scan 22:13 .
scary 14:15 .
schedule 28:4 .
scheduled 29:9 .
scheduling 27:24 .
Schneiderman 1:33, 2:15 .
scienter 9:12, 10:15, 13:10 .
scope 11:19, 15:12, 23:19 .
Scotia 1:23 .
search 18:6, 18:10 .
SEC 6:5, 6:8, 6:11, 6:14, 8:14 .
second 4:7, 16:17, 20:4 .
seconds 28:11 .
Securities 1:6, 2:5, 24:5,

24:17, 25:2 .
seeing 19:17 .
seek 4:20, 7:11 .
seeking 11:11 .
seems 24:16 .
seen 15:11 .
selected 18:19 .
sell 22:25 .
Sellers 1:36, 2:13 .
Senate 8:13 .
senders 16:8 .
sense 7:24 .
sensible 29:21 .
sentence 15:24 .
sequence 19:3 .
Several 5:18, 5:19, 15:10, 16:21, 17:15, 18:23 .
shall 24:6 .
share 18:5 .
shareholder 21:12, 27:13 .
shocked 12:20 .
short 4:16, 18:10 .
show 24:11, 27:19 .
showing 24:25, 26:6, 26:22 .
shown 24:20 .
shut 19:23 .
side 22:5, 29:3 .
signaled 12:9 .
significant 23:25 .
similar 30:1 .
simply 11:18, 15:4, 18:5, 19:12, 19:24, 22:15 .
sitting 14:17 .
situation 20:23 .
six 6:5, 9:22, 13:12, 22:18, 23:4, 23:8 .
slight 4:6 .
slightly 5:6 .
small 13:23 .
Sobers 1:29, 2:11 .
somehow 9:9 .
Sommers 1:32, 2:12, 2:13 .
sort 6:8, 8:5, 16:18, 17:18, 23:15, 23:18 .
sorts 17:11 .
sought 10:8 .
sounded 11:25, 21:22 .

sounds 14:1 .
sources 19:24 .
South 8:8 .
Southern 1:3, 25:3 .
space 12:12 .
speaking 3:2, 4:3 .
specific 24:25, 26:6 .
specificity 22:19 .
speculative 25:1, 26:6 .
spiral 8:17 .
spoke 9:7 .
staff 25:20 .
stage 7:10 .
stake 21:3 .
stand 4:2 .
standard 26:18 .
stands 5:8, 30:11 .
stark 27:10 .
start 3:14, 17:4 .
state 11:13, 20:17, 20:19, 20:20, 24:2, 24:4 .
statements 8:20, 10:15, 10:18, 21:1 .
States 1:1, 6:11, 24:5, 31:3, 31:9 .
status 4:13, 9:2, 14:23, 17:16, 21:7, 23:9, 27:15, 29:14, 29:23, 30:1 .
statute 24:10 .
Stay 3:12, 14:22, 15:2, 17:19, 20:1, 21:19, 23:12, 23:24, 24:12, 26:11, 27:6, 27:9, 27:20 .
stayed 21:13, 24:6, 27:13 .
stays 23:15 .
steaming 23:17 .
stenographically-reported 31:6 .
stenotype 1:49 .
Stockbridge 1:44 .
strange 3:16 .
strong 13:25 .
strongest 5:7, 9:14 .
stuck 17:18 .
subject 19:21, 19:22, 27:8 .
submission 21:9 .
submissions 25:17 .

submitted 9:14, 15:7, 25:6 .
submitting 5:8 .
subpoena 5:23 .
subpoenas 17:4, 21:10 .
subsequent 5:14 .
subsidiaries 26:25, 27:12 .
substance 19:16 .
substantial 26:22 .
substantive 11:13 .
succession 4:18 .
suffer 26:11 .
suggest 10:16, 22:24, 29:15 .
supplement 6:20 .
support 6:14 .
supposition 19:9, 19:11 .
sur-reply 13:23 .
suspect 15:19 .
System 1:25 .
.
.
< T > .
target 27:7 .
technological 19:20 .
tee 3:15 .
Tellabs 13:13 .
tells 25:24 .
ten 22:17 .
tend 17:12 .
terabytes 22:6 .
term 20:25 .
terms 15:7, 20:10 .
test 20:13 .
testimony 9:9 .
therein 14:9 .
they've 10:18 .
thinking 14:16 .
third 25:23 .
though 12:24 .
three 3:8, 19:5, 23:14 .
throughout 17:16, 23:10 .
Timothy 1:46, 2:19, 2:21, 10:25 .
today 2:20, 3:7, 7:7, 12:10, 14:6, 25:16, 29:11 .

together 13:13 .
Toll 1:36, 2:13 .
tome 7:7 .
ton 7:24 .
took 6:10, 7:2, 7:8 .
tower 23:6 .
TRANSCRIPT 1:17, 31:6, 31:7 .
transcription 1:49 .
transferred 3:9, 3:10 .
treatment 28:17 .
tried 16:21 .
troubled 21:25 .
true 31:5 .
truth 11:13, 14:8 .
try 7:5, 11:25, 13:6, 22:25, 28:5, 28:19 .
trying 7:20, 16:4 .
turn 5:17, 7:5, 26:10, 28:19 .
two 3:8, 3:11, 4:24, 5:8, 7:4, 14:16, 17:9, 20:16, 21:25, 22:6, 22:22, 23:8 .
.
.
< U > .
unanswered 16:21, 26:3 .
unavoidable 29:13 .
unaware 15:18 .
understand 4:10, 7:7, 7:16, 11:10, 16:4 .
understanding 12:6 .
undertaking 26:23 .
undue 24:8, 24:15, 24:22, 26:11, 26:13, 27:6, 27:19 .
Union 8:8 .
unique 26:17 .
uniquely 29:17 .
United 1:1, 31:3, 31:9 .
Universal 25:2 .
universe 23:16 .
unless 22:14, 24:6 .
until 3:25 .
update 29:24 .
uphill 13:6 .
useful 10:7 .
using 9:5 .

.
.
< V > .
V. 24:17 .
vague 20:25 .
various 25:13 .
vary 25:8 .
Via 1:20 .
Videoconference 1:20 .
view 5:7 .
viewed 13:13 .
visibility 18:18 .
Vivendi 25:1 .
.
.
< W > .
wait 22:24 .
waiting 21:18 .
wanted 11:24, 16:19 .
warrant 27:20 .
waterfront 9:7 .
website 14:11 .
Wednesday 28:25, 29:5 .
week 22:10, 22:17, 27:15, 28:23 .
weighty 7:12 .
whatever 13:7, 18:18 .
whatsoever 5:24, 30:2 .
wheelhouse 23:15 .
whether 15:18, 24:20, 24:23, 26:10, 27:21 .
wholesale 19:25 .
whom 25:22 .
wide-ranging 26:23, 27:10 .
widened 19:22 .
will 2:19, 5:6, 10:13, 11:1, 12:2, 12:15, 13:6, 14:12, 14:15, 15:4, 15:24, 15:25, 23:24, 24:1, 24:23, 26:11, 27:23 .
William 1:42 .
Wilmer 1:47 .
Wilmerhale 2:19, 2:22, 11:1 .
wish 11:16 .
within 28:2 .
without 6:23, 12:12 .

**witness** 10:17.
**wonky** 10:6.
**word** 10:1, 10:7.
**words** 19:7, 21:15.
**work** 14:15.
**write** 9:9.
.
.
**< Y >**.
**year** 4:8, 13:12, 25:21.
**York** 8:15, 25:3.
**yourself** 2:6.
.
.
**< Z >**.
**Zoom** 3:2, 28:5.