**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-DLB |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
<u>**SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND ....................................................................................................................... 2

    I.      PROCEDURAL HISTORY ......................................................................................... 2

    II.    THE SETTLEMENT TERMS ................................................................................... 6

ARGUMENT .............................................................................................................................. 9

    III.   THE PROPOSED SETTLEMENT WARRANTS
           PRELIMINARY APPROVAL ................................................................................... 9

         A.     Standards for Preliminary Approval of a Proposed Class
               Action Settlement ...................................................................................... 9

         B.     The Court Will Likely Be Able to Approve the Proposed Settlement
               Under Rule 23(e)(2) ................................................................................. 11

             1.     Lead Plaintiffs and Lead Counsel Have Adequately
                    Represented the Settlement Class .................................................. 11

             2.     The Settlement Is the Product of Good Faith, Informed,
                    and Arm's-Length Negotiations by Experienced Counsel ........... 12

             3.     The Settlement Provides Significant and Certain Benefits
                    and Is Well Within the Range of Approval ................................. 14

                   a)     The Effective Process for Distributing Relief
                         to the Class .......................................................... 16

                   b)     Attorneys' Fees .................................................... 18

                   c)     There Is Only a Standard Supplemental Agreement ......... 18

             4.     Class Members Are Treated Equitably Relative to
                    One Another ................................................................................. 19

    IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO
           PERMIT DISSEMINATION OF THE NOTICE ................................................ 20

          A.     The Settlement Class Satisfies the Requirements of Rule 23(a) ............... 20

             1.     The Settlement Class Has Numerosity ........................................ 21

i

           a)      There Are Common Questions Of Law Or Fact ............... 22

           b)      Lead Plaintiffs' Claims Are Typical ................................. 22

           c)      Lead Plaintiffs Have Fairly And Adequately Protected The Settlement Class's Interests ........................ 23

     2.      Common Questions Of Law Or Fact Predominate And A Class Action Is Superior For Adjudicating The Controversy ....... 24

V.      NOTICE TO THE SETTLEMENT CLASS IS APPROPRIATE ........................ 25

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................... 27

CONCLUSION ................................................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abubaker v. Dominion Dental USA, Inc*,
2021 WL 6750844 (E.D. Va. Nov. 19, 2021)..........................................................................13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................................20, 24, 25

*Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS §1031
Tax Deferred Exch. Litig.*),
2012 WL 13124593 (D.S.C. July 12, 2012) ..............................................................25

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................................25

*Beaulieu v. EQ Indus. Servs. Inc.*,
2009 WL 2208131 (E.D.N.C. July 22, 2009) ............................................................25

*Boger v. Citrix Sys., Inc.*,
2023 WL 1415625 (D. Md. Jan. 31, 2023)................................................................26

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.,
HQ*,
322 F. Supp. 3d 676 (D. Md. 2018) ...........................................................................25

*Curtis v. Genesis Eng'g Sols., Inc.*,
2022 WL 1062024 (D. Md. Apr. 8, 2022)....................................................................9

*Donaldson v. Primary Residential Mortg., Inc.*,
2021 WL 2187013 (D. Md. May 28, 2021).......................................................11, 12, 13, 14

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)....................................................................................................26

*In re BearingPoint Inc. Sec. Litig.*,
232 F.R.D. 534 (E.D. Va. 2006) .....................................................................21, 22, 24

*In re Celecoxib Antitrust Litig.*,
2018 WL 2382091 (E.D. Va. Apr. 18, 2018) .............................................................18

*In re Comput. Scis. Corp. Sec. Litig.*,
288 F.R.D. 112 (E.D. Va. 2012) ............................................................................22, 25

*In re Emergent Biosolutions Inc.*,
No. 8:21-cv-0955-PWG (D. Md.)..................................................................................3

iii

*In re Kirschner Med. Corp. Sec. Litig.*,
   139 F.R.D. 74 (D. Md. 1991)......................................................................................21

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales
   Pracs. & Prods. Liab. Litig.*,
   952 F.3d 471 (4th Cir. 2020) ....................................................................................12

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ..............................................................................19

*In re MicroStrategy*, *Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) ..................................................................14, 19

*In re Mills Corp. Sec. Litig.*,
   257 F.R.D. 101 (E.D. Va. 2009) ........................................................................21, 22, 24

*In re Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ........................................................................13, 20

*In re NeuStar Inc. Sec. Litig.*,
   2015 WL 5674798 (E.D. Va. Sept. 23, 2015)........................................14, 20, 25, 26

*In re Titanium Dioxide Antitrust Litig.*,
   2013 WL 5182093 (D. Md. Sept. 12, 2013) ............................................................10

*In re Titanium Dioxide Antitrust Litig.*,
   2013 WL 6577029 (D. Md. Dec. 13, 2013)..............................................................18

*In re Under Armour Sec. Litig.*,
   631 F. Supp. 3d 285 (D. Md. 2022)..........................................................................21

*Kamakana v. City & County of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ..................................................................................19

*Klein v. Altria Grp., Inc.*,
   2022 WL 16946243 (E.D. Va. Mar. 31, 2022).........................................................24

*Kovacs v. Ernst & Young* (*In re Jiffy Lube Securities Litigation*),
   927 F.2d 155 (4th Cir. 1991) ..............................................................10, 12, 13, 14

*Longman v. Food Lion, Inc.*,
   1994 WL 686624 (M.D.N.C. Oct. 17, 1994)......................................................21, 23

*Miller v. Asensio & Co.*,
   364 F.3d 223 (4th Cir. 2004) ....................................................................................16

*Palm Tran, Inc – Amalgamated Transit Union Local 1577 Pension Plan v.*
    *Emergent BioSolutions Inc.*,
    No. 21-cv-00955 (D. Md. Apr. 19, 2021) ...................................................................2

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
    2021 WL 1659848 (E.D. Va. Apr. 23, 2021) .............................................................18

*Roth v. Emergent BioSolutions Inc.*,
    No. 8:21-cv-01189-PWG (D. Md.).............................................................................3

*S.C. Nat'l Bank v. Stone*,
    139 F.R.D. 325 (D.S.C. 1991) ............................................................................22, 24

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)................................................................................9

*Seaman v. Duke Univ.*,
    2019 WL 4674758 (M.D.N.C. Sept. 25, 2019)........................................................18

*Weiss v. Emergent BioSolutions Inc.*,
    No. 8:21-cv-01368-PWG (D. Md.).............................................................................3

*Winingear v. City of Norfolk*,
    2014 WL 3500996 (E.D. Va. July 14, 2014)......................................................10, 16

*Zeidman v. J. Ray McDermott & Co.*,
    651 F.2d 1030 (5th Cir. 1981) ..................................................................................21

**Statutes**

15 U.S.C. § 78j(b) ..........................................................................................................3

15 U.S.C. § 78t(a) ..........................................................................................................3

15 U.S.C. § 78u-4 .....................................................................................................18, 25

Private Securities Litigation Reform Act of 1995 ................................................. *passim*

Securities Exchange Act of 1934 ...............................................................................3, 22

**Rules**

Fed. R. Civ. P. 11 ...........................................................................................................8

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Lead Plaintiffs, the Nova Scotia Health Employees' Pension Plan ("NSHEPP") and City of Fort Lauderdale Police & Firefighters' Retirement System ("Fort Lauderdale"), individually and on behalf of themselves and all other members of the proposed Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Fed. R. Civ. P. 23(e), for preliminary approval of the proposed Settlement of this Action, as set forth in the Stipulation of Settlement dated September 12, 2024 (the "Stipulation"), [1] and for approval of the forms and manner of providing notice of the Settlement to the Settlement Class.

## PRELIMINARY STATEMENT

As detailed in the Stipulation, the Settlement provides a gross cash recovery of $40 million to resolve this securities fraud class action against Defendants Emergent BioSolutions Inc. ("Emergent"), Robert G. Kramer, Sr. ("Kramer"), and Syed T. Husain ("Husain") and former Defendant Richard S. Lindahl ("Lindahl") (together "Settling Defendants"). With the approval of Lead Plaintiffs, after full consideration of the strengths and weaknesses of the parties' respective claims and defenses, including the recovery risks and likelihood of success, Lead Counsel, who have extensive experience in securities class actions, negotiated the Settlement following extensive arm's length mediation overseen by an experienced mediator, Jed Melnick of JAMS. With the benefit of substantial briefing, a motion to dismiss Order, extensive party and non-party discovery, class certification opening briefing and a class certification expert report, a class certification Order, detailed written mediation papers, a full-day mediation session, and an exhaustive ensuing discussion of the strengths and weaknesses of their respective positions, an agreement in principle was accepted by all Parties and memorialized in the Stipulation dated September 12, 2024.

---

[1]     Unless otherwise noted, all citations are omitted, all emphasis is added, and all capitalized terms herein have the meanings ascribed to them in the Stipulation. *See* Exhibit ("Ex.") 1 to the Declaration of Matthew L. Tuccillo ("Tuccillo Decl."), filed herewith.

1

Lead Plaintiffs and Lead Counsel approve of the Settlement.  Lead Plaintiffs are sophisticated investors, with billions of dollars of assets under management and experience in securities fraud litigation.  Lead Counsel have substantial securities litigation experience, have litigated hundreds of cases to resolution with billions of dollars recovered for investors, and are recognized as leading experts in the field.  Lead Plaintiffs retained these attorneys specifically because of their expertise and acumen in complex securities matters like this one.  Lead Plaintiffs and Lead Counsel understood that there were serious risks in continued litigation, and while Lead Plaintiffs believe strongly in the merits of their case, they recognize that Defendants do as well. At trial, Lead Plaintiffs would have had the burden of proving each element of their claims.  Trial would have been lengthy and very expensive, and either party could have prevailed.  Inevitable post-trial appeals would have added to the length, expense, and uncertainty of this proceeding.

At the preliminary approval stage of a Fed. R. Civ. P. 23 class action settlement like this one, the Court must: (i) evaluate its terms under Rule 23(e) and Fourth Circuit standards; and (ii) certify a settlement class for settlement purposes.  The proposed $40 million Settlement represents a very favorable recovery that is well within possible approval range, and easily meets all Rule 23(e) factors and Fourth Circuit precedent.  If the Court grants preliminary approval, notice will be given to Settlement Class Members, informing them, *inter alia*, of their right to object to or opt out of the Settlement and the deadlines, the claims submission procedure and deadline, and the final Settlement Fairness Hearing.  Lead Plaintiffs respectfully ask the Court to take this first step and preliminarily approve the proposed Settlement and certify the proposed Settlement Class.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On April 19, 2021, Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan filed a securities class action complaint styled *Palm Tran, Inc – Amalgamated Transit Union*

*Local 1577 Pension Plan v. Emergent BioSolutions Inc.*, No. 21-cv-00955 (D. Md. Apr. 19, 2021) (ECF 1) against Emergent, Kramer, Husain, and Lindahl, asserting claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) & 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5.  The Court's December 23, 2021 Order (ECF 44) consolidated two related actions with this first-filed action,[2] adopted the caption *In re Emergent Biosolutions Inc.*, No. 8:21-cv-0955-PWG (D. Md.), and appointed Nova Scotia and Fort Lauderdale as Lead Plaintiffs, Pomerantz LLP as Lead Counsel, and Cohen Milstein Sellers & Toll PLLC as Liaison Counsel.

After extensive investigation, on March 19, 2022, Lead Plaintiffs filed the First Amended Complaint (the "FAC") (ECF 54) alleging that Defendants made material misstatements and omissions between March 10, 2020 and November 4, 2021, both dates inclusive ("Settlement Class Period").

Significant contested motion practice ensued.  On May 19, 2022, Settling Defendants filed their motion to dismiss the FAC (ECF 72), supported by extensive materials of which Defendants asked the Court to take judicial notice (ECFs 72-3 – 72-53).  On July 19, 2022, Lead Plaintiffs filed an opposition to the motion to dismiss the FAC (ECF 80), supported by extensive materials of which Lead Plaintiffs asked the court to take judicial notice (ECFs 79-2 – 79-38) via a motion for judicial notice (ECF 77).  On July 20, 2022, Lead Plaintiffs filed a motion to partially lift the PSLRA's statutory discovery stay (ECF 86).  On August 2, 2022, the Court held a status conference regarding the ongoing motion practice (ECF 96).  On August 5, 2022, Settling Defendants filed oppositions to Lead Plaintiffs' motion for judicial notice (ECF 98) and motion to partially lift the discovery stay (ECF 99).  On August 12, 2022, Lead Plaintiffs filed replies in

---

[2]    *Roth v. Emergent BioSolutions Inc.*, No. 8:21-cv-01189-PWG (D. Md.) and *Weiss v. Emergent BioSolutions Inc.*, No. 8:21-cv-01368-PWG (D. Md.), respectively.

further support of their motion for judicial notice (ECF 100) and their motion to partially lift the discovery stay (ECF 102).  Oral argument on Lead Plaintiffs' motions for judicial notice and a partial lifting of the PSLRA discovery stay was conducted at a motion hearing on February 2, 2023 (ECF 111).  On March 2, 2023, Settling Defendants filed a reply in further support of their motion to dismiss the FAC (ECF 115).  On April 7, 2023, Lead Plaintiffs filed a notice of supplemental authority in further opposition to Defendants' motion to dismiss the FAC (ECF 117).  Oral argument on Defendants' motion to dismiss the FAC was held at a hearing on April 19, 2023 (ECF 118).  Post-argument letter briefs were filed by Lead Plaintiffs on April 20, 2023 (ECF 119) and Defendants (ECF 120) on April 21, 2023.

The Court resolved these cross-motions in a series of Orders.  On February 3, 2023, the Court entered Orders denying Lead Plaintiffs' motion to partially lift the discovery stay and granting Lead Plaintiffs' motion for judicial notice (ECF 113).  On September 1, 2023, the Court entered an Order (ECF 125) and a detailed Memorandum Opinion (ECF 124) granting in part and denying in part Settling Defendants' motion to dismiss the FAC, which dismissed all claims against former Defendant Lindahl.

On October 18, 2023, the Parties submitted their Rule 26(f) report (ECF 150).  The remaining Settling Defendants answered the FAC on October 30, 2023 (ECFs 155, 156).  After a status conference (ECF 158), the Court entered its Scheduling Order on November 21, 2023 (ECF 159).  In accordance therewith, the Parties exchanged Rule 26(a)(1) initial disclosures, exchanged the first set of Rule 33 interrogatories and Rule 34 requests for production, executed an ESI protocol, and exchanged responses and objections to the first set of interrogatories and requests for production.  After the Parties filed their joint proposals (ECFs 161-162), the Court entered

Orders addressing confidentiality and privilege waivers (ECFs 163-164) on December 13, 2023. Lead Plaintiffs served Defendants with preservation letters in February 2024.

Thereafter, the parties engaged in substantial reciprocal discovery, enabling them to gain a fulsome understanding of the strengths and weaknesses of their claims and defenses. Lead Plaintiffs' initial requests asked Defendants to produce documents they provided to Congress, and U.S. and foreign regulators, in response to which Defendants made rolling productions totaling approximately 115,000 documents. Lead Plaintiffs also made productions of documents, including NSHEPP's and Fort Lauderdale's production of investment management documents on April 12, 2024 and NSHEPP's production of emails and attachments on July 23, 2024.

Starting in late November 2023, Lead Plaintiffs also served subpoenas on third parties identifiable primarily from relevant, publicly available Congressional reports and pursued FOIA or similar requests from multiple U.S. regulators, and their counterparts from Canada, the European Union, and South Africa. Lead Plaintiffs' subpoenas and requests focused on documents produced to various governmental entities, and the third-party subpoena recipients produced approximately 3,800 documents. On August 23, 2024, Lead Plaintiffs began to subpoena third parties for depositions.

On February 9, 2024, Lead Plaintiffs filed their motion for class certification and appointment of class representatives and class counsel (ECF 165). Responsive notices to the motion were filed by Defendants on April 15, 2024 (ECF 167) and Lead Plaintiffs on April 16, 2024 (ECF 168). On June 18, 2024, the Court granted Lead Plaintiffs' motion for class certification and appointment of class representatives and class counsel (ECF 178).

On February 13, 2024, counsel for Lead Plaintiffs and the Settling Defendants, along with certain insurance carriers, participated in a full-day mediation before Jed Melnick of JAMS. In

5

advance of that session, the Parties exchanged detailed, confidential, mediation statements addressing liability and damages, and Lead Plaintiffs also served a responsive mediation statement, all of which also were provided to the mediator.  No settlement was reached at the mediation.

As negotiations continued for over 4 months, discovery continued apace.  Lead Plaintiffs propounded upon Defendants supplemental requests for production of documents, interrogatories, and requests for admissions in April 2024.  Lead Plaintiffs researched and prepared deposition outlines for 10 former and current Emergent employees and consultants, including the Individual Defendants, with respect to which they served a notice on June 22, 2024 and an amended notice on July 22, 2024.  Lead Plaintiffs served Defendants with a motion to compel responses to their requests for admissions on July 1, 2024, and the Parties agreed to extensions of Defendants' deadline to respond to provide time to potentially resolve this matter.

After extensive negotiations, often including weekly discussions between the Parties' counsel, the Parties reached an understanding in principle to settle the Action, and, after execution of a Memorandum of Understanding ("MOU") on August 26, 2024 and subsequent continued negotiations, entered into the Stipulation.  The Stipulation memorializes the agreement between the Parties to fully and finally settle the Action and to fully release all Released Claims against the Released Parties with prejudice in return for specified consideration.

## II.    THE SETTLEMENT TERMS

This Settlement requires Emergent to pay or cause to be paid $40 million into the Escrow Account within 30 calendar days of entry of the Court's preliminary approval order.  This amount, plus all accrued interest, comprises the Settlement Fund.  Stipulation, ¶2.0.

Notice to the Settlement Class and the cost of settlement administration ("Notice & Administration Costs") will be funded by the Settlement Fund.  Stipulation, ¶2.7.  Lead Plaintiffs have retained a nationally recognized class action settlement administrator, Strategic Claims

Services, subject to the Court's approval.  The proposed notice plan and plan for claims processing is discussed below in §VI.

When moving for final approval, Lead Counsel will also submit an application for: (a) an award of attorneys' fees not to exceed 30% of the Settlement Amount; (b) payment of expenses incurred in prosecuting the Action not to exceed five hundred thousand dollars ($500,000.00); and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Stipulation §II.H.; Stipulation, Ex. B1 at 1-2, 9.  Lead Plaintiffs intend to seek an amount not to exceed eighty thousand dollars ($80,000.00) in the aggregate, pursuant to the PSLRA, in connection with their representation of the Settlement Class.  Any such amounts the Court awards shall be paid from the Settlement Fund.  *Id.*

Once Notice and Administration Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses, and any award to the Lead Plaintiffs pursuant to the PSLRA have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Settlement Class Members equitably based on the timing of their Emergent common stock purchases, acquisitions, and sales.  Stipulation, ¶1.21; Stipulation, Ex. B1 at 13-18.

Lead Plaintiffs and Settling Defendants entered into a standard Supplemental Agreement providing that if prior to the Settlement Hearing, requests for exclusion from the Settlement Class exceed a certain threshold, Settling Defendants may terminate the Settlement.  Stipulation, ¶2.13.

The Stipulation sets forth mutual, reciprocal releases, which were the subject of hard-fought, arm's length negotiations.  In exchange for the benefits provided under the Settlement,

Settlement Class Members will release any and all claims against Settling Defendants and Released Defendant Parties relating to or arising from: (i) the purchase or acquisition of Emergent common stock during the Settlement Class Period; and (ii) the allegations, transactions, facts, matters or occurrences, representations or omissions involved or set forth in, or related to the FAC. Stipulation, ¶¶1.27, 5.1. As a material condition of the dismissal with prejudice of the Action, Settling Defendants will release any and all claims against Lead Plaintiffs, all Settlement Class Members, all Released Plaintiff Parties, and Lead Plaintiffs' Counsel relating to or arising from the institution, prosecution, or settlement of the claims against them, including, without limitation, for violation of Fed. R. Civ. P. 11. Stipulation, ¶¶1.26, 5.2. Claims related to the enforcement of the Stipulation are exempted from these reciprocal releases.

Any Settlement Class Member who wishes to object to the Settlement's fairness must, by no later than twenty-one (21) days prior to the Settlement Fairness Hearing, file an objection with the Court and mail copies thereof to the Court, Lead Counsel, and Settling Defendants' counsel. Stipulation, Ex. A ¶13. Any Settlement Class Member who does not timely do so shall be foreclosed, unless otherwise ordered by the Court, from making any objection to the Settlement's fairness, reasonableness, or adequacy; to the Stipulation; to the Plan of Allocation; to the Fee and Expense Award; or to Lead Plaintiffs' compensatory awards. *Id*., ¶14.

Any Settlement Class Member who wishes to be excluded as a Settlement Class Member may submit a written Request for Exclusion to the Claims Administrator, to be received no later than twenty-one (21) days prior to the Settlement Fairness Hearing. *Id*., ¶12.

8

**ARGUMENT**

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Under Rule 23(e), a class-action settlement must be presented to the Court for approval and should be approved if "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate [] in class actions." *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990); *see also Curtis v. Genesis Eng'g Sols., Inc.*, 2022 WL 1062024, at *2 (D. Md. Apr. 8, 2022) ("There is an overriding public interest in favor of settlement, particularly in class action suits.").

District court review of a class action settlement proposal is a two-step process. 4 William B. Rubenstein, Newberg on Class Actions §13:12 (6th ed.), Westlaw (database updated June 2024). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id*. §13:13; Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e) was amended to specify that the focus of a court's preliminary approval evaluation is whether notice should be provided to the class after considering the likelihood that the court will be able to finally approve the settlement, given the Rule 23(e)(2) factors, and be able to certify the settlement class. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)    class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

> (i)    the costs, risks, and delay of trial and appeal;
>
> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23 amendments, which became effective in December 2018, have not changed the overall standard for approving a settlement, *i.e.*, whether the settlement is fundamentally fair, adequate, and reasonable.

"Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is fair, reasonable, and adequate." *Winingear v. City of Norfolk*, 2014 WL 3500996, at *2 (E.D. Va. July 14, 2014); *see also In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3 (D. Md. Sept. 12, 2013).

At final approval, the Court will also consider the Fourth Circuit's traditional fairness and adequacy factors set forth in *Kovacs v. Ernst & Young* (*In re Jiffy Lube Securities Litigation*), 927 F.2d 155, 159 (4th Cir. 1991), which are consistent with the Rule 23(e)(2) factors.[3]

---

[3]    Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." 927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Id.* Under the second *Jiffy Lube* threshold factor of the adequacy of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id.*

10

**B.    The Court Will Likely Be Able to Approve the Proposed Settlement Under Rule 23(e)(2)**

        **1.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class**

In determining whether to approve a class action settlement, the Court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Donaldson v. Primary Residential Mortg., Inc.*, 2021 WL 2187013, at *6 (D. Md. May 28, 2021).

Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in their vigorous prosecution of the Action and zealous negotiation and achievement of the Settlement. Lead Plaintiffs have been active and informed participants in the litigation and were consulted on, and approved, the terms of the Settlement. For example, Lead Plaintiffs reviewed court filings, received case updates from Lead Counsel, collected and produced documents to Defendants.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims through, *inter alia*: (i) thorough investigation of the facts, including review and analysis of Emergent's SEC filings, public statements, and other publicly available information about Emergent, review of Congressional reports and supporting documents published by Congress, and identification and interviews of fact witnesses including former Emergent employees who provided details of the alleged wrongdoing; (ii) extensive contested briefing, including requests for judicial notice of Congressional materials and an opposition to Settling Defendants' motion to dismiss, which provided insight into their defenses; (iii) extensive discovery efforts focused on documents provided to U.S. and foreign regulators, yielding 115,000 documents produced by Settling Defendants and 3,800 documents produced by third parties, all of which were reviewed

11

and analyzed; (iv) preparing and filing a motion for class certification, backed with an expert report, which led to this Court's class certification Order; (v) preparing for and noticing a dozen depositions of current and former Emergent employees, including the Settling Defendants; (vi) reviewing Settling Defendants' positions on liability and damages in their mediation statement; and (vii) benefiting from the neutral perspective of an experienced mediator. In consultation with their damages expert, Lead Counsel evaluated potential class-wide damages and negotiated vigorously to settle this Action on a favorable basis to the Settlement Class, without unduly prolonging the litigation and without incurring the further expense and risk of trial. Accordingly, and consistent with the Court's determination during the lead plaintiff process, Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing a class action settlement at final approval, the Court considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Similarly, under *Jiffy Lube*, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of the class action litigation." *Donaldson*, 2021 WL 2187013, at *4 (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)). These factors demonstrate that the Settlement here was reached through arm's-length negotiations after vigorous litigation and with no hint of collusion.

The relatively advanced posture of this case and the significant amount of discovery conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *See*

12

*Jiffy Lube*, 927 F.2d at 159 (inference of collusion due to settlement being reached at a very early stage and prior to any formal discovery offset by other factors, *inter alia*, plaintiffs' informal discovery, substantial concessions made by both sides, and experience of plaintiffs' counsel in realistically assessing litigation).   Here, the Settlement was not reached until the litigation had proceeded far into discovery.  *See supra* Section I.  The Parties had already litigated Settling Defendants' motion to dismiss the FAC and progressed fully into fact discovery, including Lead Plaintiffs' review of well over 118,000 documents produced by Defendants and third parties; propounding supplemental requests for documents, interrogatories, and requests for admission; serving a motion to compel responses to requests for admissions; and researching, preparing, and noticing a dozen depositions – all while intensive Settlement negotiations were ongoing.  These steps are more than enough to justify the Settlement.  *See Abubaker v. Dominion Dental USA, Inc*, 2021 WL 6750844, at *5 (E.D. Va. Nov. 19, 2021) ("The parties exchanged preliminary discovery during [arm's length negotiations] that allowed Plaintiffs' Counsel to effectively value the Plaintiffs' claims and the Settlement.").  Additionally, Lead Plaintiffs filed their class certification motion, including a market efficiency expert report, which the Court granted.  When "discovery has been substantial and several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("*Mills II*"); *see also Donaldson*, 2021 WL 2187013, at *4 ("parties were able to assess accurately the merits of the case, the defenses, and their respective positions" following pre-suit investigation, briefing of a motion to dismiss, discovery, and mediation).

Highly experienced class-action litigators conducted months-long settlement negotiations with the assistance of an experienced mediator.  On February 13, 2024, Lead Plaintiffs and Defendants participated in a full-day mediation session with Jed Melnick of JAMS, a preeminent

mediator for complex litigation. Beforehand, the Parties exchanged detailed mediation statements and exhibits, also provided to the mediator, addressing liability and damages. No settlement was reached at the mediation or a Zoom session shortly thereafter. Only after nearly six months of negotiations did the Parties reach an understanding in principle to settle the Action, memorialized in a late August 2024 MOU, and, after subsequent negotiations, enter into the Stipulation.

The extensive discovery and motion practice in this case gave each side with the necessary insight to evaluate the merits of the Parties' claims and defenses and laid the groundwork for the extensive arm's-length negotiations that ultimately resulted in the Settlement. Lead Counsel, who are very experienced in prosecuting complex class actions (*see* ECF 165-7 (firm resume)), therefore had a clear view of the strengths and risks of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See In re MicroStrategy*, *Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001); *see also Donaldson*, 2021 WL 2187013, at \*5 (finding plaintiffs' counsel experienced and thus "able to evaluate the merits of the Class claims and the risks associated with litigation"). Moreover, Lead Plaintiffs actively supervised this litigation and recommended the Settlement be approved.

These factors favor preliminary approval.

### 3.    The Settlement Provides Significant and Certain Benefits and Is Well Within the Range of Approval

The proposed Settlement readily satisfies Rule 23(e)(2)(C). To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. *See, e.g.*, *In re NeuStar Inc. Sec. Litig.*, 2015 WL 5674798, at \*11 (E.D. Va. Sept. 23, 2015) (the *Jiffy Lube*

14

adequacy analysis "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement"). The $40 million recovery, which is nearly three times the median recovery in securities class actions in 2023,[4] is objectively an excellent result for the Settlement Class. Given the risks of continued litigation and potential trial outcomes, Lead Plaintiffs believe the Settlement falls well within the range of possible approval. While Lead Plaintiffs believe that the claims asserted against Settling Defendants were strong and that substantial evidence to support the allegations has been adduced, they recognize that there are significant risks to establishing both liability and damages and recovering a litigated judgment greater than the Settlement Amount.

As an initial matter, Lead Plaintiffs would face challenges in proving to the ultimate fact finder that the statements made by Defendants were materially false and misleading and that Defendants acted with scienter. Settling Defendants argued at the motion to dismiss, and would continue to maintain at summary judgment and trial, that (among other things) Lead Plaintiffs would not be able to prove that Defendants' statements that survived the motion to dismiss were materially false and misleading. Defendants would have also likely argued that even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter). Additionally, Defendants will likely continue to assert that certain of the Defendants' insider sales do not support an inference of scienter because they purportedly were pursuant to nondiscretionary trading plans and that increased holdings during the Class period negated the inference of scienter.

That Lead Plaintiffs overcame, in part, Settling Defendants' motion to dismiss was not a guarantee of ultimate success of the remaining claims. Lead Plaintiffs faced ongoing risks associated with Defendants' summary judgment motions, *in limine* motions, trial, and likely appeals, which

---

[4] The $40 million Settlement far exceeds the median reported recovery in securities class actions in 2023, which was $15 million, and the median of $11.7 million from 2018 through 2022. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis*, (Cornerstone Research 2024), at 1, Tuccillo Decl., Ex. 2.

would extend the litigation for years and might lead to a smaller recovery or no recovery at all. While the Court granted Lead Plaintiffs' motion for class certification, class certification may be reviewed at any stage of the litigation prior to entry of final judgment. The Court's denial of class certification or granting of summary judgment in Defendants' favor could have resulted in zero recovery.

Further, additional litigation would have required expenditure of substantial time and resources, including possibly litigating a motion to compel responses to Lead Plaintiffs' requests for admissions, additional party and third-party document productions, party and non-party depositions, e-discovery costs, and expert reports and expert discovery regarding market efficiency, price impact, and damages. Lead Plaintiffs also faced ongoing difficulty and delays gathering evidence from international regulatory bodies that conducted inspections of Emergent's facilities.

Even surviving summary judgment in full and prevailing at trial would not have guaranteed a recovery larger than the $40 million Settlement. *See Miller v. Asensio & Co.*, 364 F.3d 223, 235 (4th Cir. 2004) (affirming judgment on jury verdict determining liability but awarding zero damages to plaintiffs). Also, applicable insurance policies could have been depleted by the costs of litigating this Action through summary judgment and trial (as well as related derivative actions), potentially leaving next to nothing for Lead Plaintiffs and class members.

The Settlement eliminates these challenges and other risks and achieves a fair and certain result. The fact that the Settlement eliminates substantial delay and expense strongly weighs in favor of preliminary approval. *See Winingear*, 2014 WL 3500996, at *2.

In sum, the proposed Settlement would satisfy Rule 23(e)(2)(C)(i).

### a) The Effective Process for Distributing Relief to the Class

The proposed notice and claims administration program satisfies Rule 23(e)(2)(C)(ii). The notice plan includes direct mail notice, substantially in the form of Stipulation Ex. B1 or B2 (as the Court may order), to all who can be reasonably identified, supplemented by publication of the

16

Summary Notice, substantially in the form of Stipulation Ex. C, over a U.S. national newswire service. The notice describes in plain English the Settlement's key terms.

For the mailing, Lead Plaintiffs and Lead Counsel have given the Court a choice between a traditional long-form notice (Ex. B1), which is longer, denser, and far more costly to mail, or a postcard short-form notice (Ex. B2), which is more streamlined, far cheaper to mail, and directs recipients to a settlement-specific website where they access key documents, including the Stipulation, the full long-form notice, the Proof of Claim and Release, and the Preliminary Approval Order. Stipulation, ¶¶1.15, 4.0-4.1. The more streamlined notice is in line with recent amendments to the Federal Rules of Civil Procedure (*see, e.g.*, Fed. R. Civ. P. 23(c)(2)(B)), has been authorized by numerous other federal courts, and fully satisfies due process requirements.

The claims process is also effective and includes a standard claim form (Stipulation, Ex. D), which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation that will govern how Settlement Class Members' claims are calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared by Lead Plaintiffs' damages consultant, with input and oversight of Lead Counsel, and is based on an analysis estimating the amount of artificial inflation in the prices of Emergent common stock at various times during the Settlement Class Period, and the timing of a Settlement Class Member's transactions in Emergent common stock. The Plan of Allocation affords greater weight to damaged shares purchased during the portion of the Settlement Class Period upheld by the Court's motion to dismiss Order and encompassed in the Court's class certification Order and lesser weight to damaged shares purchased during the other time period. A thorough claim review process, including how deficiencies are addressed, is explained in the Stipulation. Stipulation, ¶¶6.4-6.7. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

17

**b)**      **Attorneys' Fees**

Rule 23(e)(2)(C)(iii) addresses the proposed award of attorney's fees.  As discussed above (at §II) and as disclosed by the notice program, Lead Counsel intend to seek an award of attorneys' fees not to exceed thirty percent (30%) of the Settlement Amount and expenses in an amount not to exceed five hundred thousand dollars ($500,000.00), plus interest on both amounts.  A review of attorneys' fees in other settlements approved in the Fourth Circuit in similar securities class actions supports the reasonableness of the 30% request.  *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (awarding one-third of $25 million settlement fund in securities class action); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding one-third fee of $163.5 million settlement); *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019) (noting that awards of one-third are "common" in the Fourth Circuit and awarding one-third fee of 54.5 million recovery); *In re Celecoxib Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding one-third fee of $94 million settlement).

Further as disclosed by the notice program, Lead Plaintiffs intend to request an amount not to exceed eighty thousand dollars ($80,000.00) in the aggregate pursuant to the PSLRA, in connection with their representation of the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4). As sophisticated institutional investors, Lead Plaintiffs devoted time and resources to the oversight of this litigation over multiple years, monitoring and directing the efforts of Lead Counsel and authorizing the Settlement, and producing documents in discovery.

Accordingly, the proposed Settlement would satisfy Rule 23(e)(2)(C)(iii).

**c)**      **There Is Only a Standard Supplemental Agreement**

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties.  The Parties have entered into a standard Supplemental Agreement, which provides that if the total opt

18

outs from the Settlement Class exceed an agreed-upon threshold, Settling Defendants shall have the option (but not the obligation) to terminate the Settlement. Stipulation, ¶2.13.[5]

### 4.    Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) looks at whether Settlement Class Members are treated equitably. As reflected in the Plan of Allocation (Stipulation, Ex. B1 at 13-18), the Settlement treats Settlement Class Members equitably relative to each other, based on the timing of their Emergent common stock purchases or acquisitions and their sales, and by providing that Authorized Claimants receive *pro rata* shares of the Net Settlement Fund based on recognized losses calculated under the Plan of Allocation. All damaged shares purchased or acquired during the part of the Settlement Class Period the Court upheld at the Rule 12(b)(6) stage and included in its class certification Order are treated identically, with greater weighting reflecting those Orders. All damaged shares purchased or acquired during the earlier part of the Settlement Class Period are treated identically, with lesser weighting reflecting the more challenging posture flowing from those Orders and the fact that those claims required greater efforts in discovery and potential appeals. Authorized Claimants can have damaged shares in one or both categories, which once calculated and totaled, will result in a *pro rata* payment from the Net Settlement Fund. Stipulation, Ex. B1 at 17; *see MicroStrategy*, 148 F. Supp. 2d at 668-69 (approving plan of allocation that "fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"); *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249

---

[5]    There are "compelling reasons" for keeping the Supplemental Agreement confidential. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Keeping confidential the threshold number of exclusions that gives Defendants the option to terminate the Settlement is necessary to avoid enabling one or more stockholders to selfishly use this knowledge to insist on a higher payout for themselves while threatening to eviscerate the Settlement, which would be detrimental to the interests of the Settlement Class.

F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO PERMIT DISSEMINATION OF THE NOTICE

The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before granting final approval to a proposed settlement.  Fed. R. Civ. P. 23(e)(1)(B).  One ground for a decision to give notice is a "showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal."  *Id.*  Certification of the proposed Settlement Class for purposes of the Settlement is appropriate under Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure.

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement.  *See, e.g.*, *NeuStar*, 2015 WL 5674798, at \*2; *Mills II*, 265 F.R.D. at 266. A settlement class, like other certified classes, must satisfy all requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (when determining whether to certify a settlement class, courts need not consider the last factor, "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *NeuStar*, 2015 WL 5674798, at \*8.

Here, the class certification requirements are met, as discussed below and in Lead Plaintiffs' previously filed motion for class certification and supporting materials, *see* ECFs 165-165-8.[6]

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

---

[6]   Defendants did not oppose Lead Plaintiffs' motion for class certification.  *See* ECFs 167, 168.  This Court entered an Order granting the motion.  *See* ECF 178.

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1.    The Settlement Class Has Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class has so many members that joinder of all is "impracticable."  Fed. R. Civ. P. 23(a)(1).  A "class of as few as 25 to 30 members raises the presumption that joinder would be impracticable." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991).  "[P]laintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirement[] that joinder is impracticable where such a conclusion is clear from reasonable estimates." *Id.*  The numerosity requirement is "seldom disputed in securities fraud cases." *In re BearingPoint Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006); *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 104-05 (E.D. Va. 2009) ("*Mills I*") (same).  In cases involving publicly listed companies, "the numerosity requirement has been met by a showing that a large number of shares were outstanding and traded during the relevant period." *Longman v. Food Lion, Inc.*, 1994 WL 686624, at *2 (M.D.N.C. Oct. 17, 1994).

Here, Lead Plaintiffs allege that millions of shares of Emergent common stock were outstanding at the time the relevant conduct occurred.  *See* FAC ¶323.  This figure "relie[s] on a common-sense assumption" – and "indeed a reasonable one" – that "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.'" *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981); *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 300 (D. Md. 2022) ("numerosity prong is easily satisfied" where "thousands of investors" purchased stock during the class period). Numerosity is thus satisfied for purposes of this proposed Settlement.

### a)    There Are Common Questions Of Law Or Fact

Rule 23's "commonality" requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality does not "require that members of the class have identical factual and legal claims in all respects." *BearingPoint*, 232 F.R.D. at 538.  Where "various of defendants' acts and omissions are at the center of th[e] case, it follows that there are a number of questions of both law and fact common to all members of the proposed class." *Id.* at 539. "[M]embers of a proposed class in a securities case are especially likely to share common claims and defenses." *Mills I*, 257 F.R.D. at 105.

The common questions here include whether the Exchange Act was violated by Defendants' acts as alleged in the FAC, to what extent the members of the Settlement Class have sustained damages, and the proper measure of damages.  Courts have repeatedly held that these types of common questions satisfy Rule 23(a)(2)'s requirement of common issues.  *See, e.g.*, *BearingPoint,* 232 F.R.D. at 539; *Mills I*, 257 F.R.D. at 105.

### b)    Lead Plaintiffs' Claims Are Typical

Rule 23(a)'s "typicality" requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). As with commonality, the "typicality" requirement "does not mean that members of the class must have 'identical factual and legal claims in all respects.'"  *Mills I*, 257 F.R.D. at 105.  Rather, it "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Comput. Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 117-18 (E.D. Va. 2012).  "Typicality is rarely lacking in securities class actions."  *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991).

Here, the same facts establish commonality and typicality.  Lead Plaintiffs purchased Emergent stock when its public trading price was allegedly inflated by misrepresentations and

omissions that also caused absent Settlement Class Members to pay higher prices for the stock, and Lead Plaintiffs allegedly suffered damages as a result of the same corrective events that allegedly caused absent Settlement Class Members' damages. Thus, typicality is established.

      **c)**      **Lead Plaintiffs Have Fairly And Adequately Protected The Settlement Class's Interests**

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The requirements for adequate representation under Rule 23(a)(4) are that the named plaintiffs have no conflict of interest with the class and that a qualified and experienced attorney is obtained for the purpose of litigation." *Longman*, 1994 WL 686624, at *2-3.

Lead Plaintiffs are unquestionably adequate. They purchased Emergent common stock during the Class Period and were injured by the same material misrepresentations and omissions that injured the other Settlement Class Members. Also, no Lead Plaintiff has any interest in conflict with the interests of absent Settlement Class Members. Like all absent Settlement Class Members, each of the Lead Plaintiffs has a strong interest in proving that the alleged statements were materially false or misleading, were made with scienter, and caused damages to Settlement Class Members.

Lead Plaintiffs have demonstrated their commitment to monitor and supervise prosecution of this Action on behalf of the Settlement Class. Lead Plaintiffs have maintained an active role in this litigation, including by seeking appointment as Lead Plaintiffs, reviewing drafts of pleadings and key motions, participating in discovery, and regularly communicating with counsel regarding the status of and developments in this case. Further, Lead Plaintiffs were kept apprised before the mediation and during the extended negotiation of this Settlement, and ultimately concluded that it was fair and appropriate after due consideration and an opportunity to formally approve.

Finally, Lead Plaintiffs have protected the interests of the Settlement Class by retaining Lead Counsel to represent the class. *S.C. Nat'l Bank*, 139 F.R.D. at 331 ("[C]ourts generally hold that the employment of competent counsel assures vigorous prosecution."). Lead Plaintiffs respectfully submit that their counsel satisfy Rule 23(a)(4)'s adequacy requirement. Lead Counsel are nationally recognized for their work prosecuting large, complex securities class actions such as this one. As discussed above, Lead Counsel are among the most experienced class action law firms in the country, with proven track records of success, including within this Circuit. *See, e.g.*, *Klein v. Altria Grp., Inc.*, 2022 WL 16946243 (E.D. Va. Mar. 31, 2022) (approving $90 million dollar settlement, certifying settlement class, and finding Pomerantz LLP to be adequate lead counsel).

### 2. Common Questions Of Law Or Fact Predominate And A Class Action Is Superior For Adjudicating The Controversy

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15. Certification of the Settlement Class for settlement serves these purposes. Courts have explained that "[s]ecurities fraud actions typically meet the Rule 23(b)(3) requirement because the claims relate to acts or omissions of the same defendants and damages of individual class members might be too small to provide incentive for the individuals to sue." *Mills I*, 257 F.R.D. at 109; *BearingPoint*, 232 F.R.D. at 542 (same).

24

The predominance and superiority requirements are readily satisfied. Questions common to all Settlement Class Members predominate over any questions affecting only individual Settlement Class Members.  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625; *see also NeuStar*, 2015 WL 5674798, at *5. When, as here, securities traded in an efficient market, class-wide reliance is presumed.  *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *see also, e.g.*, *NeuStar*, 2015 WL 5674798, at *7 ("Trading volume of this magnitude on a prominent national exchange . . . is sufficient to justify a strong presumption of market efficiency.") (citing *Comput. Scis.*, 288 F.R.D. at 119).

Proceeding as a class action is also superior to other methods for resolution of the Settlement Class Members' claims.  *See, e.g.*, *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc., HQ*, 322 F. Supp. 3d 676, 685-86 (D. Md. 2018) ("Securities fraud cases are thought to be particularly appropriate for treatment under Rule 23(b)(3) because the elements of the claim tend to relate to the conduct of the defendants, not to the individual plaintiffs.").

## V.    NOTICE TO THE SETTLEMENT CLASS IS APPROPRIATE

The mechanics of the notice process are left to the discretion of the Court. *See Beaulieu v. EQ Indus. Servs. Inc.*, 2009 WL 2208131, at *28 (E.D.N.C. July 22, 2009) ("While [Rule 23] does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'").  The contents of the notice should describe the settlement and class members' ability to seek exclusion "clearly and concisely . . . in plain, easily understood language." *Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS §1031 Tax Deferred Exch. Litig.*), 2012 WL 13124593, at *7 (D.S.C. July 12, 2012).  Notice must also satisfy the requirements set forth in the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7).

25

Guided by recent Rule 23(c) amendments, which permit more cost-efficient notice including "electronic means, or other appropriate means," Lead Plaintiffs have given the Court the option of approving distribution by First-Class mail of either the full long-form notice (Stipulation, Ex. B1) or a shorter, far more cost-effective postcard version (Stipulation, Ex. B2) to each Settlement Class Member who reasonably can be identified and to each nominee who was a security holder of record for Settlement Class Members who purchased or acquired Emergent common stock during the Settlement Class Period. The postcard notice advises Settlement Class Members how to access the Preliminary Approval Order and the Stipulation and its Exhibits, including the long-form notice and the Proof of Claim and Release (Stipulation, Ex. D), on the Settlement website. In recent years, Lead Counsel have found federal courts appreciate being offered these two options, and when presented, invariably choose the short-form version. Courts regularly allow notice by postcard. *See, e.g.*, *Boger v. Citrix Sys., Inc.*, 2023 WL 1415625, at *11 (D. Md. Jan. 31, 2023) (preliminarily approving settlement involving postcard notice). The Stipulation also provides the Summary Notice (Stipulation, Ex. C) to be published once over a national business newswire. The notice program details the Settlement's terms and the rights of Settlement Class Members to share in the recovery, to object to the Settlement, or to request exclusion. It also provides the date, time, and place of the Settlement Fairness Hearing and the right of Settlement Class Members to be heard at the hearing. Finally, it provides the name, address, and phone number of Lead Counsel's representatives for inquiries. The form and manner of this notice fulfill all requirements of Fed. R. Civ. P. 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (finding notice program to be the "best notice practicable under the circumstances" where it includes "individual notice to all members who can be identified through reasonable effort"); *see also NeuStar*, 2015 WL 5674798, at *12 (same).

26

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In connection with preliminary approval of the Settlement, Lead Plaintiffs respectfully ask the Court to set a final approval hearing date, dates for mailing the Notice (in either form B1 or B2) and publication of the Summary Notice, and deadlines for objecting to the Settlement, submitting requests for exclusion, and filing papers in support of the Settlement.  Lead Plaintiffs respectfully propose the following schedule.

| Event | Deadline for Compliance |
|---|---|
| Deadline for commencing mailing of the Notice and Claim Form to Settlement Class Members (the "Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for publication of Summary Notice | 28 calendar days after the entry of the Preliminary Approval Order |
| Deadline for filing initial papers in support of final approval of the Settlement, Plan of Allocation, and application for an award of attorneys' fees and expenses | 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline for submitting objections and requests for exclusion | 21 calendar days prior to the Settlement Fairness Hearing |
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement and Plan of Allocation, or in support of application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Approximately 135 calendar days after the Notice Date, at the Court's convenience |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |
| Declaration of mailing and publishing notice, and list of all who have submitted a Request for Exclusion | Prior to Settlement Hearing |

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant the requested relief. The Parties' agreed-upon form of proposed Preliminary Approval Order is submitted as Stipulation Ex. A.

DATED: September 12, 2024

Respectfully submitted,

**POMERANTZ LLP**

/s/ Matthew L. Tuccillo
Matthew L. Tuccillo (admitted *pro hac vice*)
Jeremy A. Lieberman (admitted *pro hac vice*)
Jennifer Banner Sobers (admitted *pro hac vice*)
Zachary Denver (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: mltuccillo@pomlaw.com
jalieberman@pomlaw.com
jbsobers@pomlaw.com
zdenver@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Stuart Kaufman (*pro hac vice* applications forthcoming)
7080 NW 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com
stu@robertdklausner.com

28

***Additional Counsel for City of Fort Lauderdale Police & Firefighter's Retirement System***

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
(*pro hac vice* applications forthcoming)
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

***Liaison Counsel for Lead Plaintiffs***

29

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2024, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Matthew L. Tuccillo*
Matthew L. Tuccillo