**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-DLB <br><br> <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: <br><br> All Actions | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
CERTIFICATION OF THE SETTLEMENT CLASS,
<u>AND APPROVAL OF PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................... 1

II.    THE LITIGATION AND SETTLEMENT ................................................................ 3

III.   PRELIMINARY SETTLEMENT APPROVAL & NOTICE TO THE CLASS ................ 6

IV.    ARGUMENT ........................................................................................................... 7

       A.   The Law Favors & Encourages Settlement Of Class Actions ............................... 7

       B.   The Proposed Settlement Warrants Final Approval ............................................... 8

            1.   The Settlement Is Fair, Reasonable, & Adequate Under Rule 23(e)(2) ......8

            2.   Fairness & Adequacy Are Confirmed Under *Jiffy Lube* ...........................17

            3.   Court-Approved Notice Satisfied Rule 23(c)(2)(B) & Due Process .........21

       C.   The Proposed Settlement Class Satisfies Rule 23 & Should Be Certified ........... 23

            1.   The Rule 23(a)(1)-(4) Requirements Are Met ...........................................23

            2.   The Rule 23(b)(3) Requirements Are Met ................................................26

       D.   Proposed Plan Of Allocation Should Be Approved As Fair And Reasonable ..... 28

V.     CONCLUSION ....................................................................................................... 30

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
  28 F.4th 513 (4th Cir. 2022) ................................................................................10, 17

*Albert v. Glob. Tel\*Link Corp.*,
  2024 WL 4644631 (D. Md. Oct. 31, 2024) ...................................................................10

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................................23, 27

*Birks v. Small Cmty. Specialists, L.L.C.*,
  2024 WL 5344437 (D. Md. Dec. 10, 2024)...................................................................10

*Boger v. Citrix Sys., Inc.*,
  2023 WL 1415625 (D. Md. Jan. 31, 2023).................................................................7, 17

*Boger v. Citrix Sys., Inc.*,
  2023 WL 3763974 (D. Md. June 1, 2023).....................................................................22

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).................................................................14

*Ciarciello v. Bioventus Inc.*,
  2024 WL 5155539 (M.D.N.C. Dec. 18, 2024) ...........................................18, 19, 24, 28

*Erny ex rel. India Globalization Cap., Inc. v. MuKunda*,
  2020 WL 3639978 (D. Md. July 6, 2020)......................................................................20

*Feinberg v. T. Rowe Price Grp., Inc.*,
  610 F. Supp. 3d 758 (D. Md. 2022)..................................................................19, 28, 30

*Hacker v. Elec. Last Mile Sols. Inc.*,
  2024 WL 5102696 (D.N.J. Nov. 6, 2024) .....................................................................15

*In re 2U, Inc. Sec. Class Action*,
  2022 WL 19762167 (D. Md. Oct. 28, 2022) .................................................................11

*In re 2U, Inc. Sec. Class Action*,
  2022 WL 22839218 (D. Md. Dec. 9, 2022)..................................................................9, 11

*In re Aqueous Film-Forming Prods. Liab. Litig.*,
  2024 WL 4866717 (D.S.C. Nov. 22, 2024)....................................................................13

*In re BearingPoint Inc. Sec. Litig.*,
    232 F.R.D. 534 (E.D. Va. 2006) ....................................................................................23

*In re Comput. Scis. Corp. Sec. Litig.*,
    288 F.R.D. 112 (E.D. Va. 2012) ....................................................................................24

*In re Genworth Fin. Sec. Litig.*,
    210 F. Supp. 3d 837 (E.D. Va. 2016) .....................................................................12, 18, 30

*In re Initial Pub. Offering Sec. Litig.*,
    2010 WL 2834894 (S.D.N.Y. July 7, 2010) .................................................................22

*In re Innocoll Holdings Pub. Ltd. Sec. Litig.*,
    2022 WL 16533571 (E.D. Pa. Oct. 28, 2022)..............................................................15

*In re Jeld-wen Holding, Inc. Sec. Litig.*,
    2021 WL 1186326 (E.D. Va. Mar. 29, 2021) ...............................................................26

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) ................................................2, 10, 11, 17, 18, 19, 20

*In re Kirschner Med. Corp. Sec. Litig.*,
    139 F.R.D. 74 (D. Md. 1991).....................................................................................24, 27

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................17, 29

*In re MicroStrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) .............................................8, 12, 16, 18, 19, 20, 25, 29

*In re MicroStrategy, Inc. Sec. Litig.*,
    150 F. Supp. 2d 896 (E.D. Va. 2001) .........................................................................10, 11

*In re Mills Corp. Sec. Litig.*,
    257 F.R.D. 101 (E.D. Va. 2009) ...............................................................................24, 26, 28

*In re Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ....................................................8, 11, 12, 18, 29

*In re Montgomery Cnty. Real Est. Antitrust Litig.*,
    83 F.R.D. 305 (D. Md. 1979)......................................................................................17

*In re NeuStar, Inc. Sec. Litig.*,
    2015 WL 5674798 (E.D. Va. Sept. 23, 2015)..............................................................10

*In re Stable Road Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .............................................................14

iii

*In re Under Armour Sec. Litig.*,
    631 F. Supp. 3d 285 (D. Md. 2022) ....................................................................................28

*Kay Co. v. EQT Prod. Co.*,
    2019 WL 13160142 (N.D.W. Va. July 22, 2019) ............................................................14, 15

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................................................................22

*Longman v. Food Lion, Inc.*,
    1994 WL 686624 (M.D.N.C. Oct. 17, 1994) ..................................................................24, 25

*Miller v. Asensio & Co.*,
    364 F.3d 223 (4th Cir. 2004) ..............................................................................................12

*Morris v. Wachovia Sec., Inc.*,
    223 F.R.D. 284 (E.D. Va. 2004) .........................................................................................28

*Rosi v. Aclaris Therapeutics, Inc.*,
    2021 WL 5847420 (S.D.N.Y. Dec. 9, 2021) ......................................................................14

*S.C. Nat'l Bank v. Stone*,
    139 F.R.D. 325 (D.S.C. 1991) ............................................................................................24

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2022 WL 409702 (N.D. Cal Feb. 10, 2022) ......................................................................22

*Shames v. Hertz Corp.*,
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) .....................................................................22

*Shiring v. Tier Techs., Inc.*,
    244 F.R.D. 307 (E.D. Va. 2007) .........................................................................................25

*Stewart v. Baptist Mem'l Health Care Corp.*,
    2024 WL 4360602 (W.D. Tenn. Sept. 30, 2024) ...............................................................22

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
    890 F. Supp. 499 (E.D. Va. 1995) ......................................................................................19

*Taylor v. First Union Corp. of S.C.*,
    857 F.2d 240 (4th Cir. 1988) ..............................................................................................12

*Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*,
    2023 WL 185178 (D. Md. Jan. 13, 2023) .........................................................................8, 17

## **Statutes**

15 U.S.C. §78u-4 ....................................................................................................16, 21, 27

iv

28 U.S.C. §1658(b)(1) ..............................................................................................................27

Exchange Act §10(b) .......................................................................................................3, 24, 27

Exchange Act §20(a)........................................................................................................3, 24, 27

Freedom of Information Act ...................................................................................................5, 18

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

## Rules

Fed. R. Civ. P. 12(b)(6).............................................................1, 2, 3, 11, 16, 23, 26, 29

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Fed. R. Civ. P. 26...................................................................................................................4

Fed. R. Civ. P. 42.................................................................................................................27

L.R. 104.8(a) ..........................................................................................................................5

SEC Rule 10b-5 ......................................................................................................................3

Pursuant to Fed. R. Civ. P. 23(e), Court-appointed Lead Plaintiffs, Court-Certified Class Representatives, and proposed Settlement Class Representatives Nova Scotia Health Employees' Pension Plan ("NSHEPP") and City of Fort Lauderdale Police & Firefighters' Retirement System ("Fort Lauderdale") respectfully submit this memorandum, on behalf of themselves and all other Settlement Class members, in support of their unopposed motion for final approval of the proposed Settlement of the above-captioned Action, approval of the proposed plan of allocation for the Settlement proceeds ("Plan of Allocation"), and certification of the proposed Settlement Class.[1]

## I.    INTRODUCTION

The Parties agreed to settle this Action, with class-wide releases spanning the Settlement Class Period, for a $40 million cash payment.  The Settlement terms are set forth in the Stipulation (ECF 185-3) and its exhibits, including the long-form notice detailing the proposed Plan of Allocation (ECF 185-5 at 13-18).  The Settlement Class includes investors who purchased or acquired Emergent stock between March 10, 2020 and November 4, 2021, the class period pled in the FAC, which incorporates the  prior-certified class (July 6, 2020 – November 4, 2021).  *See* ECF 178.  Lead Plaintiffs respectfully submit that the Settlement is an excellent outcome, and the Court should grant final approval, approve the Plan of Allocation, and certify the Settlement Class.

All requirements of Fed. R. Civ. P. 23(e)(2) are met.  Lead Plaintiffs and Lead Counsel have no interests antagonistic to the Settlement Class, which they have represented for years.  Lead Counsel, highly experienced in securities class actions, overcame significant Rule 12(b)(6) challenges, engaged in extensive discovery, understood the strengths and weaknesses of the claims, and engaged in arm's length mediator-assisted settlement negotiation, including written mediation statements, a full-day mediation, a follow-up mediator Zoom session, and six months

---

[1]    Unless otherwise noted, all capitalized terms herein have the meanings assigned in the Stipulation of Settlement (ECF 185-3) ("Stipulation") and all internal quotations and citations are omitted throughout.

of regular telephonic negotiations.  The $40 million Settlement Fund compares favorably against other securities settlements, nationally and in this Circuit, particularly given Emergent's going concern warnings.  Lead Plaintiffs and the Settlement Class faced substantial additional costs, risks, and delays in continuing to litigate the case, with no guarantee of recovery, while the Settling Defendants' available insurance, the vast majority of which was paid into the Settlement Fund, would have been further depleted.  The experienced claims administrator will efficiently process Settlement Class member claims in line with well established procedures in similar cases.  Lead Plaintiffs' counsel litigated on a fully contingent basis, fronting all costs, and is simultaneously moving for awards of attorneys' fees and out-of-pocket expenses.  Aside from the Stipulation, the Parties have only a standard supplement agreement, regarding the opt-out threshold allowing Settling Defendants to terminate the Settlement.  All Settlement Class members are treated equitably, with each receiving a *pro rata* share of the Settlement Fund, after applying a 25% discount to claims arising from the March 10 and July 5, 2020 time period, which is included in the Settlement Class despite omission from the prior-certified class.

The Settlement's fairness and adequacy are confirmed under the multi-factor tests of in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).  It is fair because the case was at an advanced stage, following Rule 12(b)(6) litigation and extensive discovery, negotiations were protracted and involved an experienced JAMS mediator, and both sides were represented by experienced, nationally recognized counsel.  It is adequate because while Lead Plaintiffs believed in the merits of their case, securities fraud claims are recognized as being difficult to prove, and the Court's prior Orders already dismissed claims against one Settling Defendant on scienter grounds.  Moreover, further litigation would take years, involve further dispositive motions and battles of experts, greatly depleting Settling Defendants' available insurance, while Emergent's

solvency was publicly known to be at risk.  Significantly, Settlement Class members have not objected to any aspect of the Settlement.

The Court-approved notice program satisfied Rule 23(c)(2)(B) and due process.  As detailed in the claims administrator's declaration, notice was published over the *Globe Newswire*, over 130,000 postcard notices were mailed, over 4,400 unique users visited the Settlement webpage, and over 11,000 claims (and five exclusion requests) have been received to date, a response rate comparable to other class action notice programs nationwide.

The proposed Settlement Class – like the prior Court-certified class (ECF 178) – satisfies all requirements of Rule 23(a)(1)-(4) and (b)(3).  Numerosity, commonality, and typicality are readily established, and Lead Plaintiffs and Lead Counsel demonstrated adequacy through effective, multi-year litigation that overlapped with their persistent work to negotiate a resolution. Common issues of liability and damages predominate, and a class action is the only viable method for resolving the Settlement Class's claims.

Finally, the Plan of Allocation, which was developed in consultation with experts and set forth in the long-form notice, is fair and reasonable.  It treats all Settlement Class members equally, requires submission and validation of eligible Emergent trades to secure a recovery, and applies a 25% discount to trades during the time period treated differently in the Court's prior Rule 12(b)(6) and class certification rulings.

For all these reasons, Lead Plaintiffs respectfully ask that the Court grant their motion.

## II.    THE LITIGATION AND SETTLEMENT

On April 19, 2021, Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan filed a securities class action complaint (ECF 1) against Settling Defendants Emergent, Kramer, Husain, and Lindahl, asserting violations of Exchange Act §§10(b) and 20(a) and SEC Rule 10b-5.  The Court's December 23, 2021 Order consolidated two related actions with this first-

filed action, and appointed NSHEPP and Fort Lauderdale as Lead Plaintiffs, Pomerantz as Lead Counsel, and Cohen Milstein as Liaison Counsel (ECF 44).

Based on extensive investigation, drawing from CW statements by former Emergent employees and Congressional reports and evidence, Lead Plaintiffs filed the FAC (ECF 54) on March 19, 2022, alleging a fraud between March 10, 2020 and November 4, 2021.

On May 19, 2022, Settling Defendants moved to dismiss the FAC (ECF 72), supported by extensive judicial notice materials (ECFs 72-3 – 72-53). Lead Plaintiffs opposed on July 19, 2022 (ECF 80), backed by a motion and detailed brief (ECFs 77-78) outlining the Congressional investigations and presenting extensive judicial notice materials (ECFs 79-2 – 79-38), and a motion to partially lift the PSLRA's discovery stay (ECF 86). After an August 2, 2022 status conference (ECF 96), Settling Defendants opposed Lead Plaintiffs' motions on August 5, 2022 (ECFs 98-99), and Lead Plaintiffs filed their reply briefs on August 12, 2022 (ECFs 100, 102). Oral argument on Lead Plaintiffs' motions was conducted on February 2, 2023 (ECF 111). Motion to dismiss briefing concluded with Settling Defendants' reply brief on March 2, 2023 (ECF 115) and Lead Plaintiffs' notice of supplemental authority on April 7, 2023 (ECF 117). Oral argument on Defendants' motion was held on April 19, 2023 (ECF 118). Lead Plaintiffs and Defendants filed post-argument letter briefs on April 20-21, 2023 (ECFs 119, 120).

The Court granted Lead Plaintiffs' motion for judicial notice while denying their lift-stay motion on February 3, 2023 (ECF 113), and it largely denied Defendants' motion to dismiss by an Order and Memorandum Opinion (ECFs 124-125) on September 1, 2023.

The Parties' Rule 26(f) conference was on September 14, 2023, and after an interim update on October 2, 2023 (ECF 132), filed a Rule 26(f) report on October 18, 2023 (ECF 150). Settling Defendants Emergent, Kramer, and Husain filed Answers on October 30, 2023 (ECFs 155-156).

4

After a status conference (ECF 158), the Court's Scheduling Order entered November 21, 2023 (ECF 159).  The Parties executed an ESI protocol and exchanged Rule 26(a)(1) initial disclosures, first Rule 33 interrogatories and Rule 34 requests for production, responses and objections thereto, and preservation letters.  *See* Tuccillo Decl. ¶23.  After an interim update on December 5, 2023 (ECF 160), the Parties filed joint proposals (ECFs 161-162), and the Court entered Orders addressing confidentiality and privilege waivers (ECFs 163-164) on December 13, 2023.

On February 9, 2024, Lead Plaintiffs filed their class certification motion, memorandum, declarations, and expert report (ECFs 165 – 165-8).  The Parties made responsive filings on April 15-16, 2024 (ECFs 167-168).  The Court granted the motion on June 18, 2024 (ECF 178).

Meanwhile, extensive discovery informed the Parties' understanding of the strengths and weaknesses of the claims and defenses.  *See* Tuccillo Decl. ¶¶23-26.  After initial requests and responses in November-December 2023 and supplemental requests and responses in April-May 2024, Defendants made rolling productions of ~115,000 documents (416,484 pages) previously given to Congress and regulators, while Lead Plaintiffs produced investment management documents in April 2024 and NSHEPP's responsive emails in July 2024.  *Id.* ¶¶23, 25-26.  Beyond pursuing FOIA requests from U.S., Canadian, European, and South African regulators, Lead Plaintiffs served document and deposition subpoenas from November 2023 – August 2024 on third parties, including J&J and AstraZeneca, who produced ~4,400 total documents (25,064 pages) by the time of settlement.  *Id.* ¶¶24-25.  Lead Plaintiffs outlined depositions of the Individual Defendants and a dozen former Emergent employees and served notices on June 22, 2024 and July 22, 2024.  *Id.* ¶25.  On July 1, 2024, Lead Plaintiffs served a motion to compel Defendants' responses to their April 2024 requests for admissions, pursuant to L.R. 104.8(a), and agreed to extend the opposition deadline to permit resolution discussions.  *Id.* ¶¶23, 28.

On February 13, 2024, Lead Counsel, defense counsel, and insurance carriers did a full-day, in-person mediation before Jed Melnick, Esq. of JAMS, preceded by mediation statements addressing liability and damages. *See* Tuccillo Decl. ¶30. The mediator hosted a follow-up Zoom session on February 22, 2024. *Id.* When these efforts failed, the Parties advanced discovery while engaging in regular, often weekly, telephonic negotiations over the next six months. *Id.* ¶31. An agreement in principle to settle was memorialized in an MOU executed on August 26, 2024. *Id.*

## III. PRELIMINARY SETTLEMENT APPROVAL & NOTICE TO THE CLASS

The Parties negotiated the Stipulation and its exhibits (ECF 185-3 – 185-9), executed September 12, 2024, memorializing an agreement to fully and finally settle the Action, with class-wide releases, in return for a $40 million all-cash Settlement Fund. The Stipulation proposed a class-wide notice program, consisting of the publication notice (ECF 185-7), short-form notice (ECF 185-6), and long-form notice (ECF 185-5), as well as a proof of claim form (ECF 185-8), all to also be posted on a claims administrator website. The long-form Notice includes a Plan of Allocation, crafted by Lead Counsel with expert assistance to fairly account for differing positions of Settlement Class members (ECF 185-5 at 13-16; Tuccillo Decl. ¶¶47-50). As disclosed to the Court (ECF 185-1 at 18-19 & n.5), the Parties also executed a standard supplemental agreement with an opt-out threshold necessary to trigger Settling Defendants' ability to terminate the Settlement. Lead Counsel also conducted a competitive bidding process before selecting Strategic Claims Services ("Strategic") as claims administrator. *See* Tuccillo Decl. ¶32.

Lead Plaintiffs moved for preliminary approval of the Settlement, including its class member notice program, on September 12, 2024 (ECF 185), and filed a notice of non-opposition on September 30, 2024 (ECF 186). On October 4, 2024, the Court entered its preliminary approval Order (ECF 187), which, at Lead Plaintiffs' request, it amended on October 16, 2024 (ECF 189).

Lead Counsel also retained the Escrow Agent and created the Escrow Accounts, which were fully funded between October 28 and November 4, 2024.  Since then, Lead Counsel has overseen investment of the escrowed Settlement Fund monies in interest-bearing Treasury bills, paying Strategic's invoices from the notice and administration account, while otherwise awaiting future distribution(s) to the Settlement Class if the Settlement is approved.  *See* Tuccillo Decl. ¶36.

Pursuant to the amended preliminary approval Order, the Court-appointed Claims Administrator, Strategic, mailed the short-form notice to potential Settlement Class members and their nominees.  *See* Declaration of Margery Craig of Strategic Claims Services ("Craig Decl.") ¶5.  As of February 3, 2025, there have been ***no objections*** and only five requests for exclusion, two of which are valid but all of which Lead Counsel respectfully asks the Court to honor.  *Id.* ¶¶12-13; Tuccillo Decl. ¶65.  Lead Plaintiffs will file reply papers no later than February 20, 2025, addressing any objections or additional requests for exclusion if they are later received.

## IV.    ARGUMENT

### A.    The Law Favors & Encourages Settlement Of Class Actions

"The claims…of a certified class – or a class proposed to be certified for purposes of settlement – may be settled…only with the court's approval." Fed. R. Civ. P. 23(e).  The proposed Settlement Class implicates both considerations.  Most Emergent investors encompassed by the FAC's alleged class definition were part of the previously certified class (ECF 178), and all are proposed Settlement Class members now.  Long-recognized public and judicial policy favoring settlement, particularly in class actions, should guide the Court's evaluation of the proposed Settlement.  *See, e.g.*, *Boger v. Citrix Sys., Inc.*, 2023 WL 1415625, at *3 (D. Md. Jan. 31, 2023) ("[T]here is an overriding public interest in favor of settlement, particularly in class action suits."); *Ciarciello v. Bioventus Inc.*, 2024 WL 5155539, at *6 (M.D.N.C. Dec. 18, 2024) (in PSLRA case, "'[i]t has long been clear that the law favors settlement.'  This is particularly true in class actions");

7

*In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009) (in PSLRA case, "there is a strong initial presumption that the compromise [of a class action] is fair and reasonable") (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001)).

### B.      The Proposed Settlement Warrants Final Approval

#### 1.      The Settlement Is Fair, Reasonable, & Adequate Under Rule 23(e)(2)

The proposed Settlement would bind Settlement Class members.  As such:

[T]he court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

   A.  the class representatives and class counsel have adequately represented the class;
   B.  the proposal was negotiated at arm's length;
   C.  the relief provided for the class is adequate, taking into account:
      (i)  the costs, risks, and delay of trial and appeal;
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
      (iv) any agreement required to be identified under Rule 23(e)(3); and
   D.  The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  The Proposed Settlement satisfies all these Rule 23(e)(2) elements, such that its final approval is warranted.

Adequacy of Representation (Rule 23(e)(2)(A)).  "The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation." *Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, 2023 WL 185178, at \*7 (D. Md. Jan. 13, 2023) (quoting *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009)).  First, Lead Plaintiffs and Lead Counsel have no antagonistic interests vis-à-vis the Settlement Class, which they skillfully represented by prosecuting the Action against skilled opposing counsel, engaging in substantial discovery, and negotiating a hard-fought

Settlement. Lead Plaintiffs were well-informed and actively oversaw Lead Counsel, monitoring progress and authorizing and approving the Settlement. *See* Declaration of Stefan Cowell on Behalf of NSHEPP ("Cowell Decl.") ¶¶6-8; Declaration of Lynn Wenguer on Behalf of Fort Lauderdale ("Wenguer Decl.") ¶¶6-8. No Settlement Class member has objected to any aspect of the Settlement. Second, Lead Plaintiffs' counsel are respected, experienced, and highly qualified in securities litigation. *See* Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Decl."), Ex. 1 (Pomerantz firm resume); Declaration of Daniel S. Sommers ("Sommers Decl."), Ex. 1 (Cohen Milstein firm resume); Declaration of Robert D. Klausner ("Klausner Decl."), Ex. 1 (Klausner Kaufman firm resume). Lead Counsel's experience includes litigating and resolving securities class actions in this District. *See, e.g.*, *In re 2U, Inc. Sec. Class Action*, 2022 WL 22839218, at *2 (D. Md. Dec. 9, 2022) (in approving $37 million settlement, stating "Plaintiffs and [Pomerantz as lead counsel] have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively").[2]

Arm's Length Negotiations (Rule 23(e)(2)(B)). Lead Counsel engaged in years of hard-fought litigation, overcoming a contested motion to dismiss, pursuing extensive discovery, serving a motion to compel responses, and noticing depositions of the Settling Defendants and a dozen former Emergent employees. In parallel, Lead Counsel engaged in a lengthy, mediator-assisted settlement process, involving written mediation statements, a full-day mediation with an experienced JAMS mediator, a follow-up mediator Zoom session, and months of continued

---

[2]    *See also Sinnathurai v. Novavax, Inc.*, No. 21-2910 (D. Md. May 24, 2024), ECF 151 (approving $47 million securities settlement after finding, *inter alia*, that Pomerantz as co-lead counsel adequately represented settlement class); *Tchatchou v. India Globalization Cap., Inc.*, No. 18-cv-03396 (D. Md.), ECF 90 at 1 (Mar. 16, 2022) & ECF 98 (Apr. 13, 2022) (approving $1 million securities settlement after finding, *inter alia*, that Pomerantz, as co-lead counsel, fairly and adequately represented settlement class).

telephonic, mediator-assisted negotiations.  *See* Tuccillo Decl. ¶¶30-31.  By any measure, these efforts were arm's length.  *In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 902 (E.D. Va. 2001) (in PSLRA case, arm's length negotiations where parties began with "widely disparate views," had a mediation, and took six months to overcome initial impasse); *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *11 (E.D. Va. Sept. 23, 2015) (in PSLRA case, arm's length negotiations where parties exchanged mediation statements supported by evidence and expert analysis and mediation before a JAMS mediator).[3]  Moreover, as discussed in §IV.B.2., *infra*, the Settlement's fairness is confirmed under the Fourth Circuit's *Jiffy Lube* factors.

Adequacy of Relief (Rule 23(e)(2)(C)).  The $40 million Settlement is adequate, comparing favorably to recent securities settlements.  The median securities fraud class action settlement in 2023 was $14 million, roughly one-third of the Settlement here.  *See* Tuccillo Decl. Ex. 5, Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: *2023 Full-Year Review* at 1 (NERA Econ. Consulting Jan. 23, 2024).  The Settlement recovered between 3.44% and 12.75% of class-wide damages, as estimated by Lead Plaintiffs' experts under several models and scenarios.  *See* Tuccillo Decl. ¶¶42-43.  This percentage recovery exceeds those in comparable, national securities class action settlements.  *See* Tuccillo Decl. Ex. 4 (ECF 185-10), Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024) (median settlements recovered 2.6% of total damages from 2014 to 2022 and 2.0% in 2023 for cases exceeding $1 billion in damages; 4.3% from 2014-2022 and 3.5%

---

[3]      *See also 1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) (affirming finding of arm's length negotiations after motion practice, discovery involving 7,500 documents, and unsuccessful mediation); *Birks v. Small Cmty. Specialists, L.L.C.*, 2024 WL 5344437, at *4 (D. Md. Dec. 10, 2024) (arm's length negotiations where parties engaged in "adversarial" litigation and mediated before a JAMS mediator); *Albert v. Glob. Tel*Link Corp.*, 2024 WL 4644631, at *11 (D. Md. Oct. 31, 2024) (arm's-length negotiations "spanned multiple months" and involved exchanges of "multiple proposals and drafts" of settlement papers).

in 2023 for cases with $500 million to $1 billion in damages; and 3.3% from 2014-2022 and 4.6% in 2023 for cases with $250 million to $500 million in damages). It also compares favorably to other securities class action settlements in this Circuit. *See, e.g.*, *Sinnathurai v. Novavax, Inc.*, No. 21-2910 (D. Md.), ECF 132 at 16 (Apr. 11, 2024) (motion for approval of $47 million settlement representing 5.12% of maximum damages) & ECF 151 at 5-6 (May 24, 2024) (order approving settlement).[4] The Settlement's adequacy is bolstered by Emergent's going concern warnings, which appeared in its public filings starting in Q3 2022 (*see* Tuccillo Decl. ¶45), and competing drains on available insurance. The Settlement Class risked recovering nothing, yet through Lead Counsel's efforts, the bulk of insurance coverage has been paid into the Settlement Fund. Moreover, Settlement Class members overwhelmingly support this outcome, with zero objections.

The Rule 23(e)(2)(C) subparts all support the Settlement's adequacy, as further confirmed under the Fourth Circuit's *Jiffy Lube* factors, as discussed in §IV.B.2., *infra*.

Costs, Risks, Delay of Trial & Appeal (Rule 23(e)(2)(C)(i)). "Securities cases, like the present one, are 'notably difficult and notoriously uncertain.'" *Mills*, 265 F.R.D. at 255 (quoting *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1426 (D.S.C. 1990)). Lead Plaintiffs largely overcame Defendants' challenges at the Rule 12(b)(6) stage (*see* ECF 72-1), but would face them again, on a full record after discovery, at summary judgment and trial, both involving costly battles of experts. *See* Tuccillo Decl. ¶42. The Scheduling Order (ECF 159) called for summary judgment briefing into September 2025, a deadline likely to change given the parties' three discovery

---

[4]     *See also Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, No. 19-cv-00982 (E.D. Va.), ECF 92 at 11 (Mar. 19, 2021) (motion to approve $25 million settlement representing 7.6% of maximum likely recoverable damages) & ECF 97 (2021 WL 1659848) (Apr. 23, 2021) (order granting settlement); *MicroStrategy*, 150 F. Supp. 2d at 898, 905 n.21 (in PSLRA case, approving $55 million settlement against auditor representing ~8% of maximum damages for claims against auditor); *In re 2U, Inc. Sec. Class Action*, 2022 WL 19762167 (D. Md. Oct. 28, 2022) (motion for approval of $37 million settlement) & 2022 WL 22839218, at *1 (D. Md. Dec. 9, 2022) (granting approval of settlement as fair and adequate without comparing to recoverable damages).

deadline extensions.  Also, Defendants' non-opposition to Lead Plaintiffs' class certification motion (ECF 167) reserved rights to challenge reliance and loss causation rulings favoring the Settlement Class.  Despite prior success, Lead Plaintiffs' and Lead Counsel's "confidence may be especially misplaced in cases like the present, where 'elements such as scienter, materiality of misrepresentation and reliance by the class members often present significant barriers to recovery in securities fraud litigation,'" and "when viewed against the substantial and certain benefits that a settlement would provide, these considerations support approval of the proposed [] settlement." *Mills*, 265 F.R.D. at 256 (quoting, *inter alia*, *MicroStrategy*, 148 F. Supp. 2d at 666); *see also In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 842 (E.D. Va. 2016) ("Even with a strong case, the plaintiffs nonetheless face a large risk before a jury.").

Serious economic risks follow.  Even if Defendants' arguments only partially succeeded, they could reduce the class period's size, exclude investors from the class, and lower (or eliminate) recoverable damages.  *See* Tuccillo Decl. ¶¶42-43 (discussing range of potential class-wide damages scenarios assessed by damages experts); *see also MicroStrategy*, 148 F. Supp. 2d at 667 ("[T]he damages issue would have become a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury.").  Post-trial motions or appeals could reverse a favorable judgment or reduce a damages award.  *See Miller v. Asensio & Co.*, 364 F.3d 223, 235 (4th Cir. 2004) (affirming judgment on jury verdict determining liability but awarding zero damages to plaintiffs); *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 243, 247 (4th Cir. 1988) (after two trials, reversing jury verdict on material misrepresentation grounds).  Moreover, the backdrop was Emergent's going concern warnings (*see* Tuccillo Decl. ¶45), and the ongoing drain on insurance policies that could deplete Settlement Class members' primary source of recovery.  *See, e.g.*, *Mills*, 265 F.R.D. at 257 (settlement adequate "when also considering the solvency of the defendants"

and their "significant financial hardships during the pendency of this suit").  Significantly, the Settlement secured the vast majority of available insurance policy proceeds.  Tuccillo Decl. ¶46.

Effectiveness of methods to process claims and distribute relief (Rule 23(e)(2)(C)(ii)). Lead Counsel used a competitive bidding process to choose a claims administrator from among several reputable, national firms and selected Strategic as the most cost-effective to administer this Settlement, as disclosed to the Court in the preliminary approval motion papers (ECF 185-1 at 6-7) and thereafter ordered by the Court (ECF 189 at 3).  Strategic has administered 550+ class action settlements since 1999 and will apply its experience and well-tested protocols to efficiently process Settlement Class member claims, including attempts to cure any deficiencies.  As is customary in securities class actions, to seek a recovery, all Settlement Class members must submit the Court-approved Claim Form (ECF 185-8).  As of February 3, 2025, Strategic has received 11,001 claims. *See* Craig Decl. ¶14.  As disclosed to the Settlement Class (*see* ECF 185-5 at 17-18), based on the trade information provided by claimants, Strategic determines eligibility to participate by, *inter alia*, calculating a "Recognized Loss" based on the Plan of Allocation, as may be approved by the Court (*see* §IV.D., *infra*), and ultimately calculating a *pro rata* share of the Net Settlement Fund for each eligible claimant, including Lead Plaintiffs.  Where settlement funds are distributed in accordance with such a court-approved plan, final approval is appropriate.  *See In re Aqueous Film-Forming Prods. Liab. Litig.*, 2024 WL 4866717, at *9 (D.S.C. Nov. 22, 2024) (Rule 23(e)(2)(C)(ii) is met when settlement funds will be distributed via court-approved "allocation procedures"). Claimants can address questions or concerns to Strategic using the contact information in the notice (*see* ECF 185-5 at 3).  The Settlement webpage has had 4,406 unique visitors, and Strategic has handled phone inquiries as they arise.  *See* Craig Decl. ¶¶10-11.

As described in the long-form notice (*see* ECF 185-5 at 18) and as provided in the

13

Stipulation (ECF 185-3), after Settlement's Effective Date (ECF 185-3 ¶8.0), the Net Settlement Fund is calculated after payment of Court-approved fees, expenses, and awards (*id.* ¶¶1.14, 6.3), and all Settlement Class member claims are received and processed (*id.* ¶¶6.3-6.4), in accordance with the Court's future distribution Order,[5] Strategic will distribute the Net Settlement Fund to Authorized Claimants, in accordance with the Plan of Allocation (*id.* ¶6.7). Under Lead Counsel's supervision, Strategic will repeat redistributions, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will be distributed *cy pres*, by a Court-approved method. *Id.* ¶6.7. These methods for processing claims and distributing relief are well-established, as is Strategic's performance in implementing them, and support the Settlement's adequacy. *See, e.g.*, *Kay Co. v. EQT Prod. Co.*, 2019 WL 13160142, at *6 (N.D.W. Va. July 22, 2019) (method of distributing relief satisfied Rule 23(e)(2)(C)(ii) where class member's damages would be calculated then used to determine proportionate share of net settlement fund after payment of attorneys' fees, costs, and class representative awards); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (in PSLRA case, method of distribution where Strategic will review and process claims, give claimants a chance to cure deficiencies, and mail or wire authorized claimants a *pro rata* share of net settlement fund under court-approved plan of allocation is the "type of claims processing and method for distributing settlement proceeds [that] is standard in securities and other class actions and is effective").[6]

---

[5]      Once the Court grants final approval, Strategic will work expeditiously to process (and as needed, cure) all Settlement Class member claims to the point of being ready to distribute the Net Settlement Fund. At that point, Lead Counsel will prepare and file Lead Plaintiffs' distribution motion asking the Court to enter a distribution Order authorizing release of the funds.

[6]      *See also Rosi v. Aclaris Therapeutics, Inc.*, 2021 WL 5847420, at *4, *6 (S.D.N.Y. Dec. 9, 2021) (having Strategic allocate settlement fund *pro rata* based on class members' proportionate trading and differences in estimated inflation in defendant's securities on transaction dates is an effective method of distributing relief to the class); *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *7 (C.D. Cal. Apr. 23, 2024) (procedure where Strategic will process claims under lead counsel supervision, claimants have a chance to cure deficiencies, and Strategic will mail or wire claimants a *pro rata* share of settlement

The terms and timing of attorney's fees (Rule 23(e)(2)(C)(iii)).  To date, Lead Plaintiffs' counsel have not been paid any fees while litigating the Action and pursuing the Settlement.  As discussed more in their contemporaneous motion for attorneys' fees, reimbursement of expenses, and compensatory awards, the PSLRA expressly authorizes fees be paid as a percentage of the Settlement Fund, which is warranted here.  Lead Counsel ensured the Settlement Fund was fully funded and deposited with the Escrow Agent and has since overseen its investment in interest-bearing Treasury bills.  In accordance with the Stipulation (ECF 185-3 ¶7.1), upon entry of the Court's Order, Lead Counsel shall be paid the awarded fees, plus interest thereon, from the Settlement Fund.  The remaining monies remain in the Escrow Account and invested until the Net Settlement Fund is ready for distribution.  This approach satisfies Rule 23(e)(2)(C)(ii).  *See, e.g.*, *Kay Co.*, 2019 WL 13160142, at *6 (granting final approval; ordering a 1/3 contingency fee award, expenses reimbursement, and compensatory awards to class representatives be paid from settlement fund; and ordering retention of net settlement fund until distribution).

Agreements that must be disclosed under Rule 23(e)(3) (Rule 23(e)(2)(C)(iv)).  Fed. R. Civ. P. 23(e)(3) states, "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Aside from the Stipulation of Settlement, the parties only entered into a standard Supplemental Agreement, providing an opt-out threshold, which would give Settling Defendants the option to terminate the Settlement.  Tuccillo Decl. ¶33.  The Supplemental Agreement was disclosed both within the Stipulation (¶¶1.41, 2.13) and Lead Plaintiffs' preliminary approval motion papers (*see* ECF 185-1 at 18-19 & n.5).

---

fund method is "well-established and effective"); *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 5102696, at *10 & n.7 (D.N.J. Nov. 6, 2024) (procedure where Strategic calculates *pro rata* shares per plan of allocation after class members file claim forms with proof of transactions by mail or via settlement website is effective under factor test overlapping with Rule 23(e)(2)(C)(ii)); *In re Innocoll Holdings Pub. Ltd. Sec. Litig.*, 2022 WL 16533571, at *8 (E.D. Pa. Oct. 28, 2022) (procedure overseen by Strategic is reasonable, fair, and typical where class members submit claim forms and proof of transactions).

Equitable Treatment of Class Members (Rule 23(e)(2)(D)).   The Settlement provides Authorized Claimants with *pro rata* payments from the Net Settlement Fund based on Recognized Losses calculated under the Plan of Allocation.  As explained in §IV.D., *infra*, the Plan of Allocation (ECF 185-5 at 13-18), which Lead Counsel prepared in consultation with experts, is fair and reasonable and should be approved.  It treats Settlement Class members equitably relative to each other, based on the timing of their stock purchases or acquisitions and their sales.  *See* Tuccillo Decl. ¶¶47-50.  The Settlement Class Period spans March 10, 2020 through November 4, 2021, inclusive – the full class period pled in the FAC.  The Court previously upheld most of that period, from July 6, 2020 through November 4, 2021, at the Rule 12(b)(6) stage (*see* ECF 125), and investors who purchased or acquired Emergent shares during those dates were included in the Court-certified class (*see* ECF 178 at 1).  All damaged shares purchased or acquired in that part of the Settlement Class Period are treated identically, with greater weighting reflecting those rulings, while those purchased or acquired between March 10 and July 5, 2020 are also treated identically, with a 25% discount applied to Recognized Losses, reflecting the riskier posture flowing from those rulings and the greater efforts needed in further litigation stages.  Authorized Claimants – including Lead Plaintiffs – can have damaged shares in one or both categories, which once calculated and totaled, will result in a *pro rata* payment from the Net Settlement Fund.[7]  *See* ECF 185-5 at 17.  This approach was explained in the notice (ECF 185-5 at 13-18), and to date Settlement Class members raised no objections.  *See MicroStrategy*, 148 F. Supp. 2d at 668-69 (approving plan of allocation that "fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative

---

[7]     Separately, Lead Plaintiffs are also seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to their oversight of the Action, pursuant to the PSLRA, which does not constitute preferential treatment.  *See* 15 U.S.C. §78u-4(a)(4) (authorizing reimbursement of plaintiff's costs and expenses in addition to the expected *pro rata* portion of the settlement fund).

16

strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"); *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

### 2.    Fairness & Adequacy Are Confirmed Under *Jiffy Lube*

The Fourth Circuit has articulated its own multi-factor tests for "examining [a] proposed [class action] settlement for fairness and adequacy under Rule 23(e)" in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) (applying *In re Montgomery Cnty. Real Est. Antitrust Litig.*, 83 F.R.D. 305 (D. Md. 1979)).  The *Jiffy Lube / Montgomery* standards still apply, despite more recent Rule 23 amendments.[8]  *See, e.g.*, *1988 Tr.*, 28 F.4th at 525-26 (applying *Jiffy Lube* fairness and adequacy analysis after 2018 amendments); *Boger*, 2023 WL 1415625, at *8-9 (same).  That said, courts have observed that the Rule 23(e)(2) factors "almost completely overlap" with the *Jiffy Lube* factors and "the outcomes are the same under both."  *Yost*, 2023 WL 185178, at *4 (quoting *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020)).

Fairness.  As regards a settlement's fairness, a "court [can] determine[ ] that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation."  *Jiffy Lube*, 927 F.2d at 158-59 (citing *Montgomery*, 83 F.R.D. at 315 (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975),

---

[8]    The Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by a court of appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments.

*cert. denied*, 424 U.S. 967 (1976))). In *Jiffy Lube*, "the settlement was reached at a very early stage in the litigation and prior to any formal discovery, raising questions of possible collusion," which the district court determined – appropriately in the Fourth Circuit's view – were "offset" by "plaintiffs' informal discovery, substantial concessions made by both sides, and the parties' common interest in preventing [the company's] bankruptcy, coupled with the experience of plaintiffs' counsel in realistically assessing the effect such bankruptcy might have on the availability of funds to satisfy any ultimate judgment on the merits." *Id.*

The proposed Settlement here more strongly satisfies *Jiffy Lube*'s fairness test. Lead Counsel secured an Order certifying the class, based on fulsome briefing and an expert report, and conducted extensive pre-Settlement discovery from Defendants and subpoenaed third parties – including review of ~120,000 documents produced by Emergent and key third parties like J&J and AstraZeneca. Lead Counsel engaged in a full-day mediation and follow-up Zoom session with an experienced JAMS mediator, then months of mediator-assisted negotiations. Lead Counsel's experience in securities class actions, like that of Defendants' counsel, is well-established,[9] and each side zealously advocated for their clients, who were kept informed. During negotiations, Lead Counsel advanced the litigation by serving additional discovery requests, briefing a motion to compel requests for admission responses, meeting and conferring with subpoenaed third parties and governmental FOIA staff, producing more of Lead Plaintiffs' documents, and prepping and noticing depositions of the Individual Defendants and a dozen fact witnesses. Lead Counsel was

---

[9]    *See, e.g.*, *Mills*, 265 F.R.D. at 255 (where "Class Counsel are 'nationally recognized members of the securities litigation bar,'" court would "pay heed to their judgment in approving, negotiating, and entering into a putative settlement") (citing *MicroStrategy*, 148 F. Supp. 2d at 665); *Ciarciello*, 2024 WL 5155539, at *8 (in PSLRA case, "[t]he experience of counsel also supports a finding of fairness"); *MicroStrategy*, 148 F. Supp. at 665 (in PSLRA case, granting final approval of settlement given the "experience and ability" of counsel); *Genworth*, 210 F. Supp. 3d at 841 (in PSLRA case, granting final approval of settlement where "[c]lass counsel in this case have many years of experience in complex securities class actions and have secured large cash recoveries for clients in the past").

mindful of Emergent's going concern warnings in its SEC filings from Q3 2022 onward (*see* Tuccillo Decl. ¶45), which raised solvency issues like those supporting fairness in *Jiffy Lube*. This record confirms the Settlement's fairness. *See Ciarciello*, 2024 WL 5155539, at *7-8 (in PSLRA case, *Jiffy Lube* fairness factors support final approval where plaintiffs had experienced counsel, motion to dismiss and class certification briefed, and "both parties understood the merits of their respective positions" after discovery and engaged in negotiations with an independent mediator).[10]

Adequacy.  A court's assessment of a settlement's adequacy should weigh the settlement amount against "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159 (citing *Montgomery*, 83 F.R.D. at 316).  In *Jiffy Lube*, the district court acted appropriately, in the Fourth Circuit's view, by giving "great weight to the fact that only one of over 12,000 class members notified expressed opposition to the terms of [the] settlement" and by finding that documents and evidence obtained by plaintiffs, despite no formal discovery, yielded facts supporting the extent of the company's insolvency and the difficulties in proving defendant's fraudulent intent. *Id.*  "The focus of the adequacy prong is 'the agreement's substantive propriety,'" and the first two factors are the most important. *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 768 (D. Md. 2022).

---

[10]    *See also MicroStrategy*, 148 F. Supp. 2d at 664-65 (in PSLRA case, *Jiffy Lube* fairness factors "persuasively" supported partial settlement reached after a contested motion to dismiss, where experienced counsel "participated in numerous meetings and extensive and intensive discussions extending over a period of months"); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501-02 (E.D. Va. 1995) (in pre-PSLRA case, securities settlement met *Jiffy Lube* fairness criteria, despite predating discovery, where plaintiffs retained counsel experienced and knowledgeable in securities class actions, fairly evaluated case merits via informal discovery and investigation, and engaged in extended settlement negotiations).

Here, after a larger notice program, with 130,184 notices sent and 11,001 claims received as of February 3, 2025, no Settlement Class members objected to any aspect of the Settlement and only five sought to opt-out.  *See* Craig Decl. ¶¶7, 12-14.  Courts find settlements fair and adequate under such circumstances.  *See Erny ex rel. India Globalization Cap., Inc. v. MuKunda*, 2020 WL 3639978, at *3 (D. Md. July 6, 2020) ("Finally, and perhaps most importantly, this settlement remains unopposed.").[11]  After extensive discovery, Lead Plaintiffs and Lead Counsel understood both Emergent's going concern issues and the difficulties in proving falsity and especially scienter – the basis for the Court's dismissal of the FAC's claims against Settling Defendant Lindahl.  *See* ECF 124 at 56-57.  As to the other *Jiffy Lube* factors, Defendants reserved their rights to seek dismissal on loss causation and reliance grounds for class members who purchased after May 19, 2021, and to seek to decertify the class.  *See* ECF 167 at 1-2.  Lead Plaintiffs would have faced hard battles through trial and appeals to prove the alleged misstatements' falsity and materiality, Defendants' scienter, the efficiency of the market for Emergent stock giving rise to a class-wide presumption of reliance, and loss causation.  The Scheduling Order called for dispositive and *Daubert* briefing into September 2025 (*see* ECF 159 at 2), but the parties already asked to extend the discovery deadlines three times (*see* ECFs 170, 175, 181) by the time of settlement, a sign that further deadline extensions were likely needed.  Thus, the litigation had years remaining, at great expense, both in attorney time and hard costs, judging from Lead Counsel's declaration.  This record also confirms the proposed Settlement's adequacy.

---

[11]     *See also MicroStrategy*, 148 F. Supp. 2d at 667-68 ("it is quite significant that, although more than 57,000 members of the class were sent the notice and proof of claim, no member…filed and pursued an objection" and "[a] finding of adequacy here is also bolstered by the fact that only seven class members have chosen to opt-out in response to the notice") (citing *Strang*, 890 F. Supp. at 502 (settlement fair and adequate where "not a single class member has objected…and only a small number have opted-out")).

### 3.   Court-Approved Notice Satisfied Rule 23(c)(2)(B) & Due Process

The Court-approved notice program, implemented per the Court's amended preliminary approval Order (ECF 189), satisfied the applicable Fed. R. Civ. P. 23 requirements and due process.  The Court-approved notice program consisted of a publication notice (ECF 185-7), a cost-effective postcard notice mailed to all Settlement Class members with identifiable addresses (ECF 185-6), and a long-form notice (ECF 185-5) made publicly available on a Settlement webpage maintained by Strategic (https://www.strategicclaims.net/emergent/),[12] which Settlement Class members locate by following directions in the publication and short-form notices or by using a typical search engine.  As approved by the Court, the notices "clearly and concisely state in plain, easily understood language"[13] the information required by the PSLRA, 15 U.S.C. §78u-4(a)(7),[14] and Fed. R. Civ. P. 23(c)(2)(B).[15]  Upon entry of the preliminary approval Order, Strategic caused the publication notice (a/k/a summary notice) to be transmitted by *Globe Newswire* on October 25, 2024 (Craig Decl. ¶9); began mailing copies of the Postcard Notice on October 25, 2024, and to

---

[12]      Also available on the Settlement webpage are the publication and short-form notices, the proof of claim form (ECF 185-8), the Stipulation of Settlement (ECF 185-3), and the Court's amended preliminary approval Order (ECF 189), along with reminders of significant Settlement-related deadlines.

[13]      The notice program benefits from including the publication and postcard notices, which emphasize clear and concise presentation of the Settlement's core points, and the long-form notice, which fleshes out the details, includes a Q&A section, and sets forth the entire Plan of Allocation verbatim.

[14]      The PSLRA requires that the notice contain, and a cover page summarize: a "Statement of plaintiff recovery" including the amount of the Settlement proposed to be distributed to the parties, both in the aggregate and on an average per-share basis (*see* 15 U.S.C. §78u-4(a)(7)(A)); a "Statement of potential outcome of case" including a statement as to the parties' disagreement on the amount of per-share damages (*see* 15 U.S.C. §78u-4(a)(7)(B)); a "Statement of attorneys' fees or costs sought" disclosing that Lead Plaintiffs' counsel sought a 30% fee and reimbursement of up to $500,000 in expenses, average per-share allocation of those fees and expenses, and the bases for the request (*see* 15 U.S.C. §78u-4(a)(7)(C)); an "Identification of lawyers' representatives" disclosing the name and contact info of counsel for Lead Plaintiffs and the Settlement Class (and that of Strategic) (*see* 15 U.S.C. §78u-4(a)(7)(D)); and the "Reasons for settlement" briefly describing the settlement rationale (*see* 15 U.S.C. §78u-4(a)(7)(E)).

[15]      Rule 23(c)(2)(B) requires that the notice state: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

date 130,184 notices were sent to potential Settlement Class members by Strategic or nominees (*id.* ¶¶5-7); and promptly established the Settlement webpage, which has had 4,406 unique visitors (*id.* ¶¶10-11).  This program has been effective.  To date, Strategic has received 11,001 submitted claims and five exclusion requests, a response rate of 8.45% versus total notices mailed, which is comparable to (or exceeds) rates from other class action notice programs.  *See, e.g.*, *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2022 WL 409702, at *5, *9 (N.D. Cal Feb. 10, 2022) (in PSLRA case, granting final approval of settlement where 2,149 claims received after 169,578 notices mailed (1.27%)); *In re Initial Pub. Offering Sec. Litig.*, 2010 WL 2834894, at *1-2 (S.D.N.Y. July 7, 2010) (in PSLRA case, denying objector's motion seeking audit of claims administrator mailing process due to response rate where "5.5% response rate in this action is not outside the norm").[16]

In satisfaction of Fed. R. Civ. P. 23, the Court-approved notice program was "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" (Rule 23(c)(2)(B)) and was "reasonable" (Rule 23 (e)(1)), *i.e.*, it "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Boger v. Citrix Sys., Inc.*, 2023 WL 3763974, at *12 (D. Md. June 1, 2023) (quoting *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022)).  It also satisfied due process, because it was "reasonably calculated, under all the circumstances, to apprise absent class members of the pendency of the action and afford them an opportunity to present their objections."  *Id.* (quoting *McAdams*, 26 F.4th

---

[16]     *See also Shames v. Hertz Corp.*, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) (overruling objection to final antitrust settlement based on claim rate where 4.9% response rate was "on par with similar class action settlements" and collecting cases of response rates of 2% - 9%); *Stewart v. Baptist Mem'l Health Care Corp.*, 2024 WL 4360602, at *2-3, *7 (W.D. Tenn. Sept. 30, 2024) (in FCRA case, granting final approval of settlement with 5.33% response rate); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324-25 (S.D. Fla. 2005) (in case challenging currency-conversion policies, granting final approval of settlement where 831,017 class members responded to 8,822,803 notices (9.42%)).

at 157-58 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))).

### C.    The Proposed Settlement Class Satisfies Rule 23 & Should Be Certified

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes …."). *Amchem* advised that the portions of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions [] demand undiluted, even heightened, attention in the settlement context" because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* Here, Lead Plaintiffs substantially litigated the case, including Rule 12(b)(6) briefing arising a sweeping factual record, written and document discovery, and a class certification motion supported by an expert report, which prompted the Court's prior class certification Order (ECF 178). Thus, for the reasons below and those in Lead Plaintiffs' class certification and preliminary approval motions (ECFs 165-2; 185-1), the Settlement Class passes muster under Rule 23(a) and (b)(3) and should be certified.

### 1.    The Rule 23(a)(1)-(4) Requirements Are Met

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." The Settlement Class meets each of these requirements, which the Court's class certification Order (ECF 178) found were met for a class period just four months shorter.

Numerosity (Rule 23(a)(1)). Numerosity is "seldom disputed in securities fraud cases." *In re BearingPoint Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006). The Settlement Class Period is than the period covered by the Court's prior class certification Order (ECF 178), which found

23

numerosity. As stated in the long-form notice (ECF 185-5 at 1), Lead Plaintiffs' experts estimated 20.5 million shares were damaged in the Settlement Class Period. Over 130,000 Postcard Notices were mailed, leading to 11,001 submitted claims as of February 3, 2025. Craig Decl. ¶8, 14.[17]

Commonality (Rule 23(a)(2)). "Members of a proposed class in a securities case are especially likely to share common claims and defenses." *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009) (quoting *BearingPoint*, 232 F.R.D. at 539). The Court already found common questions existed for the certified class. *See* ECF 178. The slightly broader Settlement Class is likewise centered around common questions, including: (i) whether Defendants' alleged actions violated the Exchange Act and whether they acted with scienter; (ii) whether the Settlement Class members were damaged by Defendants' violations; and (iii) the proper measure of damages.

Typicality (Rule 23(a)(3)). "Typicality is rarely lacking in securities class actions." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991). The Court's prior typicality finding in certifying the class (ECF 178) still applies. Like Lead Plaintiffs, all Settlement Class members claim Defendants made misstatements and omissions with scienter, causing artificial inflation in Emergent's stock during the Settlement Class Period when they purchased or acquired shares, which damaged them when corrective events removed that fraud inflation. *See, e.g.*, *In re Comput. Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 117-18 (E.D. Va. 2012) (typicality where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability"); *Stone*, 139 F.R.D. at 329 ("allegations that the plaintiffs' securities purchases arose out of the defendants' common course of conduct" suffice). That the Settlement Class is broader than the prior Court-certified class does not negatively impact

---

[17] *See, e.g.*, *Longman v. Food Lion, Inc.*, 1994 WL 686624, at \*2 (M.D.N.C. Oct. 17, 1994) (in cases involving publicly listed companies, numerosity where "a large number of shares were outstanding and traded during the relevant period"); *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) ("[A] class of as few as 25 to 30 members raises the presumption that joinder would be impracticable.").

24

typicality.  *See, e.g.*, *Ciarciello*, 2024 WL 5155539, at \*4 (in PSLRA case, certifying settlement class where class representative sold shares before final corrective disclosure, because "the claims of the class representative and the claims of the class need not 'be perfectly identical or perfectly aligned'") (quoting *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006)); *MicroStrategy*, 148 F. Supp. 2d at 661 n.12 (approving securities settlement where settlement class expanded, to include more defendants and more trading dates, a previously-certified subclass).

Adequacy (Rule 23(a)(4)).  In the context of a settlement class, Rule 23(a)(4) is "redundant" to the adequacy requirements of Rule 23(e)(2)(A).  *See* 4 William B. Rubenstein, Newberg & Rubenstein on Class Actions (6th ed.), Westlaw (database updated Nov. 2024), §13:48 (*Final Approval Criteria – Rule 23(e)'s Multifactor Test*) & §13.49 (*Final Approval Criteria – Rule 23(e)(2)(A): Adequate Representation*).  Thus, the Rule 23(e)(2)(A) argument set forth in §IV.B.1., *supra*, applies and is incorporated here by reference.  "The adequacy requirement is meant to protect the due process rights of absent class members" and "requires that the putative class representative must 'have a sufficient interest in the outcome of the case to ensure vigorous advocacy' and 'not have interests antagonistic to those of the proposed class'" and that "the representative's attorneys must be qualified, experienced, and generally able to conduct the litigation."  *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 315 & n.12 (E.D. Va. 2007); *see also Longman*, 1994 WL 686624, at \*3 ("The requirements for adequate representation under Rule 23(a)(4) are that the named plaintiffs have no conflict of interest with the class and that a qualified and experienced attorney is obtained for the purpose of [the] litigation.").  Lead Plaintiffs were appointed under the PSLRA after demonstrating both the largest financial interests in the case from among those who filed motions at the PSRLA deadline and that they otherwise satisfied the requirements of Rule 23.  *See* ECF 43 at 11-12.  Lead Plaintiffs lacked any conflicts of interest

25

with Settlement Class members, as demonstrated by, *inter alia*, their vigorous litigation to overcome Defendants' Rule 12(b)(6) motion (*see* ECFs 124, 125), their pursuit of extensive written and document discovery, and their prior appointment as class representatives (*see* ECF 178). Throughout, Lead Plaintiffs maintained an active role and were kept apprised before mediation and during the extended Settlement negotiation, and ultimately concluded the Settlement was fair and appropriate after due consideration and an opportunity to formally approve. *See* ECF 185-1 at 23-24; Cowell Decl. ¶¶4-8; Wenguer Decl. ¶¶4-8; Tuccillo Decl. ¶62. Lead Counsel is both qualified and experienced, *see* Rule 23(e)(2)(A) argument in §IV.B.1, *supra*, and conducted skillful, diligent, and successful pursuit of the Action and the Settlement.

### 2.    The Rule 23(b)(3) Requirements Are Met

Under Rule 23(b)(3), certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." It adds, "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by…class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

The Settlement Class satisfies the Rule 23(b)(3) requirements. "Securities fraud cases are particularly appropriate candidates for treatment under Rule 23(b)(3) since the elements of the cause of action generally relate to the acts or omissions of the defendants and because individual damages might be too paltry to justify bringing individual cases." *In re Jeld-wen Holding, Inc. Sec. Litig.*, 2021 WL 1186326, at *4 (E.D. Va. Mar. 29, 2021) (quoting *BearingPoint*, 232 F.R.D. at 542 (citing *Amchem*, 521 U.S. at 625)); *see also Mills*, 257 F.R.D. at 109 (similar). Under Rule

26

23(b)(3), certification is appropriate if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3)  adds, "The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by…class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

The Settlement Class satisfies the Rule 23(b)(3)(A)-(C) requirements.  Here, Settlement Class members have not demonstrated any interest in individually controlling the prosecution of separate actions.  Only a handful of small retail investors, for whom individual litigation would not be cost-effective, have indicated a desire to opt-out of the Settlement Class (*see* Craig Decl. ¶12, Exs. E, F), no opt-out actions were ever filed, and the statute of limitations to bring Exchange Act §10(b) claims expired two years from discovery of the facts at issue in the FAC (filed in March 2022).  *See* 28 U.S.C. §1658(b)(1).  It is highly desirable to concentrate this sort of lawsuit before a single court, and indeed, pursuant to Fed. R. Civ. P. 42 and in accordance with the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(ii), the order appointing Lead Plaintiffs consolidated multiple class action lawsuits before this Court.  *See* ECF 43 at 6-7.  So, Rule 23(b)(3)(A)-(C) support the Settlement. Rule 23(b)(3)(D) is inapplicable to the Settlement Class: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620 (citing Rule 23(b)(3)(D)).

Moreover, here, Lead Plaintiffs and the Settlement Class members share Defendants'

liability as a common issue, evidencing predominance. *See Kirschner*, 139 F.R.D. at 80 ("[I]f the liability issue is common to the class, common questions are held to predominate over individual ones."). "Plaintiffs' claims arise entirely from a single alleged course of conduct by the Defendants, with alleged damages susceptible to common proof." *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 311 (D. Md. 2022); *see also Ciarciello*, 2024 WL 5155539, at *6 n.5 ("Courts look to the elements of the cause of action to decide if common questions of law or fact predominate.") (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). Given that reality, there is Rule 23(b)(3) predominance, notwithstanding any differences among Settlement Class members arising from the number of Emergent shares they traded, the timing of their purchases within the Settlement Class Period, their amount of recoverable damages, or their treatment under the Plan of Allocation. *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 299 (E.D. Va. 2004) ("[D]ifferences in damages among the potential class members do not generally defeat predominance if liability is common to the class."); *Mills*, 257 F.R.D. at 109 (same). There is superiority because, consistent with the Court's prior class certification Order (ECF 178), the Settlement Class is the only viable method for resolving the Settlement Class's claims and accomplishing a Court-approved class-wide release spanning the entire Settlement Class Period for the Settling Defendants. *See Under Armour*, 631 F. Supp. 3d at 311 (Rule 23(b)(3) met where, *inter alia*, "a class action is the only suitable vehicle for litigating a case of this volume").

      **D.**      **Proposed Plan Of Allocation Should Be Approved As Fair And Reasonable**

Lead Plaintiffs also seek approval of the proposed Plan of Allocation. "The plan of allocation must also meet the standards of fairness, reasonableness, and adequacy." *Feinberg*, 610 F. Supp. 3d at 769 (quoting *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014)). Significantly, however, "[t]he proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need

28

only have a reasonable and rational basis." *Id.* (quoting *Boyd*, 299 F.R.D. at 461).

The Plan of Allocation is detailed in the long-form notice, which was filed with this Court and posted by Strategic on the Settlement webpage to which the mailed postcard notice and publication notice point. *See* ECF 185-5 at 13-18. Lead Counsel developed it in consultation with damages experts, who calculated estimated artificial inflation in the per-share prices of Emergent common stock, based on the alleged corrective disclosures and related stock price declines. *See* ECF 185-5 at 14; *see also Mills*, 265 F.R.D. at 258 (approving plan of allocation in part because class counsel was assisted by experts). Under the Plan of Allocation, Strategic calculates a "Recognized Loss" for each purchase or acquisition of Emergent stock during the Settlement Class Period that a claimant lists on the Claim Form and supports with adequate documentation. ECF 185-5 at 15-16. It accounts for higher recovery risks for shares purchased or acquired between March 10, 2020 and July 5, 2020, the early period with respect to which the Court granted Defendants Rule 12(b)(6) motion (*see* ECF 124 at 25-26; ECF 125) and which the Court omitted from its class certification Order (*see* ECF 178 at 1), by applying a 25% discount to the Recognized Loss arising from those transactions. *See* ECF 185-5 at 15; *see also MicroStrategy*, 148 F. Supp. 2d at 668-69 (approving plan of allocation that "sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"). The sum of each Authorized Claimant's Recognized Losses for all their purchases or acquisitions of Emergent common stock during the Settlement Class Period is the basis for deriving their *pro rata* recovery from the Net Settlement Fund, by comparison against the total Recognized Losses for all Authorized Claimants. ECF 185-5 at 17-18; *see also Merrill Lynch*, 249 F.R.D. at 135 ("A plan of allocation that calls for the *pro rata*

29

distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").[18]

Lead Counsel believes that the Plan of Allocation provides a fair, reasonable, and adequate method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the alleged misconduct. *Feinberg*, 610 F. Supp. 3d at 769 ("the allocation need only have a reasonable and rational basis" because qualified counsel endorses it) (quoting *Boyd*, 299 F.R.D. at 461). Moreover, after 130,184 notices were sent and 11,001 claims received, Settlement Class members made no objections to the Plan of Allocation.

Thus, Lead Plaintiffs respectfully ask that the Plan of Allocation be approved.

## V. CONCLUSION

For the reasons discussed above, Lead Plaintiffs respectfully request that the Court (i) grant final approval to the Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair, reasonable, and adequate; (iii) certify the Settlement Class for settlement purposes; (iv) dismiss the Action with prejudice as to the Defendants; and (v) enter Final Judgment substantially in the form previously submitted to the Court as Exhibit E to the Stipulation (ECF 185-9). Proposed orders will be submitted with Lead Plaintiffs' reply papers.

---

[18] *See also MicroStrategy*, 148 F. Supp. 2d at 668-69 (plan of allocation "fairly treats" class members by giving them a *pro rata* recovery from the settlement fund); *Ciarciello*, 2024 WL 5155539, at *10 (approving plan of allocation that "links distribution of the settlement fund to the number of shares a claimant acquired during the relevant period, with the fund divided among claimants *pro rata* based on their total estimated damages"); *Genworth*, 210 F. Supp. 3d at 842-43 (approving plan of allocation that distributes settlement fund on a *pro rata* basis accounting for when claimants purchased their securities and for how long they held the stock).

DATED: February 6, 2025

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo (admitted *pro hac vice*)
Jeremy A. Lieberman (admitted *pro hac vice*)
Jennifer Banner Sobers (admitted *pro hac vice*)
Zachary Denver (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: mltuccillo@pomlaw.com
jalieberman@pomlaw.com
jbsobers@pomlaw.com
zdenver@pomlaw.com

**POMERANTZ LLP**
Jennifer Pafiti (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiffs and the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner
Stuart Kaufman
7080 NW 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232
Email: bob@robertdklausner.com
stu@robertdklausner.com
*Additional Counsel for City of Fort Lauderdale Police & Firefighter's Retirement System*

31

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
1100 New York Avenue N.W.
Suite 800, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

32

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2025, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Matthew L. Tuccillo*
Matthew L. Tuccillo