## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE EMERGENT BIOSOLUTIONS INC. SECURITIES LITIGATION | Civil No. 8:21-cv-00955-DLB <br><br> <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: <br><br> All Actions | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT
OF EXPENSES, AND COMPENSATORY AWARDS FOR LEAD PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................ 4

        A.      Factual Allegations, Procedural History, & Settlement Negotiations ................... 4

        B.      Lead Counsel's Efforts To Obtain The Settlement ................................................ 4

III.    ARGUMENT ...................................................................................................... 8

        A.      The Court Should Approve The Requested 30% Attorneys' Fee Award .............. 8

                1.      A "Percentage-Of-The-Fund" Fee Is Appropriate ..................................... 8

                2.      A 30% Fee Request Is Comparable To Awards In Similar Cases ........... 10

                3.      The 30% Fee Request Is Reasonable Under Applicable Factors .............. 11

                        i.      The *Gunter* And *Johnson* Multi-factor Tests Are Used ............... 11

                        ii.     The *Gunter* And *Johnson* Factors Support A 30% Fee ............... 14

                4.      A Lodestar Cross-Check Confirms The 30% Fee's Reasonableness ....... 23

        B.      The Requested Reimbursement Of Expenses Is Reasonable ............................... 28

        C.      The Requested PSLRA Compensatory Awards Are Reasonable ........................ 29

IV.     CONCLUSION .................................................................................................. 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Archbold v. Wells Fargo Bank, N.A.*,
  2015 WL 4276295 (S.D. W. Va. July 14, 2015) ........................................................................9

*Barber v. Kimbrell's Inc.*,
  577 F.2d 216 (4th Cir. 1978) ........................................................................................12, 13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ........................................................................................................22

*Blum v. Stenson*,
  465 U.S. 886 (1984) (Brennan, J., concurring) ..................................................................19

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ........................................................................................................8

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) .........................................................................................13

*Brown v. Charles Schwab & Co.*,
  2010 WL 11534521 (D.S.C. Nov. 9, 2010) .......................................................................21

*Brown v. Charles Schwab & Co.*,
  2011 WL 13199227 (D.S.C. July 26, 2011) .......................................................................25

*Ciarciello v. Bioventus Inc.*,
  2024 WL 5155539 (M.D.N.C. Dec. 18, 2024) ...............................................10, 20, 25, 27, 29

*Decohen v. Abbasi, LLC*,
  299 F.R.D. 469 (D. Md. 2014) .....................................................................................19, 26

*Deem v. Ames True Temper, Inc.*,
  2013 WL 2285972 (S.D. W. Va. May 23, 2013) ................................................................10

*Earls v. Forga Contracting, Inc.*,
  2020 WL 3063921 (W.D.N.C. June 8, 2020) .................................................................10, 19

*Gagliastre v. Captain George's Seafood Restaurant, LP*,
  2019 WL 2288441 (E.D. Va. May 29, 2019) ...................................................................13, 23

*Galloway v. Williams*,
  2020 WL 7482191 (E.D. Va. Dec. 18, 2020) .....................................................................13

*Garcia v. Decalo Med. Grp., LLC*,
  2015 WL 9311984 (D. Md. Dec. 23, 2015) .............................................................................19

*Goldenberg v. Marriott PLP Corp.*,
  33 F. Supp. 2d 434 (D. Md. 1998) ........................................................................................26

*Good v. W. Va.-Am. Water Co.*,
  2017 WL 2884535 (S.D.W. Va. July 6, 2017) ......................................................................16

*Grissom v. Mills Corp.*,
  549 F.3d 313 (4th Cir. 2008) ................................................................................................12

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000).....................................................11, 12, 13, 14, 15, 17, 18, 22, 23

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ................................................................................................24

*In re 2U, Inc. Sec. Class Action*,
  2022 WL 22839218 (D. Md. Dec. 9, 2022).............................................................10, 20, 30

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)...............................................................................................24

*In re Celebrex (Celecoxib) Antitrust Litig.*,
  2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ..............................................................11, 12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)..................................................................................................13

*In re Comput. Sci. Corp. Sec. Litig.*,
  2013 WL 12155436 (E.D. Va. Sept. 20, 2013)............................................................29, 30

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................................25

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ...................10, 13, 14, 15, 16, 17, 23, 24, 26, 28, 29, 30

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).............................................................................................25

*In re Massey Energy Co. Sec. Litig.*,
  2014 WL 12656719 (S.D.W. Va. June 4, 2014).....................................................................30

*In re MicroStrategy, Inc. Sec. Litig.*,
  172 F. Supp. 2d 778 (E.D. Va. 2001) ...............................................................................22, 24

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) .............................9, 10, 11, 12, 15, 16, 17, 19, 22, 23, 28, 30

*In re Neustar, Inc. Sec. Litig.*,
2015 WL 8484438 (E.D. Va. Dec. 8, 2015) ....................................................11, 13, 17, 23, 29

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006) ......................................................................................26

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .........................................................................................25

*In re Schering-Plough Corp. ENHANCE Sec. Litig.*,
2013 WL 12174570 (D.N.J. Aug. 28, 2013),
*R & R adopted*, 2013 WL 5505744 (D.N.J. Oct. 1, 2023).....................................................25

*In re Titanium Dioxide Antitrust Litig.*,
2013 WL 6577029 (D. Md. Dec. 13, 2013)...........................................................................11

*In re Under Armour Sec. Litig.*,
2024 WL 4715511 (D. Md. Nov. 7, 2024) .......................................................................26, 30

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020),
*R & R adopted*, 2021 WL 358611 (D.N.J. Feb. 1, 2021) ......................................................24

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ......................................11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 23

*Jones v. Dominion Res. Servs., Inc.*,
601 F. Supp. 2d 756 (S.D. W. Va. 2009)....................................................9, 16, 22, 23, 24, 26

*Kanefsky v. Honeywell Int'l Inc.*,
2022 WL 1320827 (D.N.J. May 3, 2022) .............................................................................15

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022)..........................................................................27

*Klein v. Altria Grp., Inc.*,
2022 WL 16946243 (E.D. Va. March 31, 2022) ...................................................................30

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)..........................................................11, 24, 26

*Lee v. Agape Health Mgmt., Inc.*,
2024 WL 3565309 (4th Cir. July 29, 2024)...........................................................................12

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ...........................................................9

*Marks Constr. Co. v. Huntington Nat'l Bank*,
    2010 WL 3418329 (N.D.W. Va. Aug. 27, 2010)......................................................27

*McAdams v. Robinson*,
    26 F.4th 149 (4th Cir. 2022) ............................................................................10, 19

*McCune v. Faneuil Inc.*,
    2024 WL 3811411 (E.D. Va. Aug. 13, 2024)...........................................................26

*McCurley v. Flower Foods, Inc.*,
    2018 WL 6650138 (D.S.C. Sept. 10, 2018)..............................................20, 21, 22

*Miller v. Asensio & Co.*,
    364 F.3d 223 (4th Cir. 2004) ...................................................................................18

*Missouri v. Jenkins ex rel. Agyei*,
    491 U.S. 274 (1989)............................................................................................10, 18

*PC Medics, Inc. v. BellSouth Telecomms., Inc.*,
    2010 WL 11646909 (D.S.C. Sept. 30, 2010)............................................................20

*Pelczynski v. Orange Lake Country Club, Inc.*,
    2014 WL 2095173 (D.S.C. May 20, 2014)...............................................................22

*Phillips v. Triad Guar. Inc.*,
    2016 WL 2636289 (M.D.N.C. May 9, 2016) ...........................9, 12, 13, 20, 27, 29

*Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*,
    2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ...........................................10, 20, 26

*Reaching Hearts Int'l v. Prince George's Cty.*,
    478 F. App'x 54 (4th Cir. 2012) ..............................................................................25

*Reed v. Big Water Resort, LLC*,
    2016 WL 7438449 (D.S.C. May 26, 2016).................................................................22

*Reynolds v. Fidelity Invs. Institutional Operations Co.*,
    2020 WL 92092 (M.D.N.C. Jan. 8, 2020) ...........................................................19, 28

*Rineholdt v. HFS Fin. LLC*,
    2024 WL 1243844 (D. Md. Mar. 21, 2024)..............................................................26

*Robinson v. Carolina First Bank NA*,
    2019 WL 2591153 (D.S.C. June 21, 2019)...........................................13, 19, 23

*Savani v. URS Pro. Sols. LLC*,
  2014 WL 172503 (D.S.C. Jan. 15, 2014)................................................................................20

*Schuler v. Meds. Co.*,
  2016 WL 3457218 (D.N.J. June 24, 2016) ............................................................................24

*Seaman v. Duke Univ.*,
  2019 WL 4674758 (M.D.N.C. Sept. 25, 2019)......................................................................18

*Shealy v. Dixon Hughes, PLLC*,
  2011 WL 13323837 (D.S.C. Oct. 24, 2011) ...............................................................19, 21, 25

*Singleton v. Domino's Pizza, LLC*,
  976 F. Supp. 2d 665 (D. Md. 2013) ...........................................................................11, 26, 28

*Smith v. Krispy Kreme Doughnut Corp.*,
  2007 WL 119157 (M.D.N.C. Jan. 10, 2007) ....................................................................15, 20

*Spell v. McDaniel*,
  852 F.2d 762 (4th Cir. 1988) .................................................................................................28

*Sponn v. Emergent Biosolutions Inc.*,
  2019 WL 11731087 (D. Md. Jan. 25, 2019).........................................................................30

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
  890 F. Supp. 499 (E.D. Va. 1995) .......................................................................................9, 10

*Taylor v. First Union Corp. of S.C.*,
  857 F.2d 240 (4th Cir. 1988) .................................................................................................18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).................................................................................................................22

*Thomas v. FTS USA, LLC*,
  2017 WL 1148283 (E.D. Va. Jan. 9, 2017),
  *R & R adopted*, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) ...................................10, 14, 23

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ...............................................................................................9, 12

*United States v. Efploia Shipping Co.*,
  2016 WL 4275982 (D. Md. July 22, 2016),
  *R & R adopted*, 2016 WL 4286040 (D. Md. Aug. 15, 2016) ................................................18

## Statutes

15 U.S.C. §78u-4 .................................................................................1, 2, 3, 8, 11, 29

Exchange Act §10(b) ..........................................................................................5, 16

Exchange Act § 20(a).......................................................................................5, 16

Freedom of Information Act ..........................................................................6, 17, 28

Private Securities Litigation Reform Act......................................................... *passim*

## Rules

Fed. R. Civ. P. 23...............................................................................................1, 8

Fed. R. Civ. P. 26...............................................................................................5, 6

Fed. R. Civ. P. 36..................................................................................................6

Fed. R. Civ. P. 37..................................................................................................6

Local Rule 104.7....................................................................................................6

Local Rule 104.8....................................................................................................6

Securities & Exchange Commission Rule 10b-5..............................................................5

Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iii), 23(h), and 54(d)(2)(A)-(B) and the PSLRA, 15 U.S.C. §78u-4(a)(4) and (a)(6), Court-appointed Lead Plaintiffs, Court-certified Class Representatives, and proposed Settlement Class Representatives Nova Scotia Health Employees' Pension Plan ("NSHEPP") and City of Fort Lauderdale Police & Firefighters' Retirement System ("Fort Lauderdale") respectfully submit this brief supporting their unopposed motion for these payments from the Settlement Fund: (i) an award of attorneys' fees in the amount of thirty percent (30%) of the Settlement Fund, or twelve million dollars ($12,000,000.00), plus interest, in accordance with the PSLRA, 15 U.S.C. §78u-4(a)(6), to Lead Counsel Pomerantz LLP, for distribution in its discretion amongst other Lead Plaintiffs' counsel,[1] (ii) reimbursement of Lead Plaintiffs' counsel's expenses totaling $278,526.00, in accordance with the PSLRA, 15 U.S.C. §78u-4(a)(6), and (iii) compensatory awards for NSHEPP and Fort Lauderdale of $37,499.25 and $3,000.00, respectively, pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4).[2]

## I.    INTRODUCTION

Through diligent, effective litigation, Lead Counsel, supported by other Lead Plaintiffs' counsel, achieved a forty-million-dollar ($40,000,000.00) Settlement for Settlement Class members who purchased or acquired Emergent shares during the Settlement Class Period and held past at least one corrective disclosure.  Counsel devoted 11,365.00 total hours, mostly by Lead Counsel, to obtain this all-cash recovery through their skill, experience, and advocacy while facing considerable risks of nonrecovery and Settling Defendants' forceful defense.  *See* Declaration of Matthew L. Tuccillo, Esq. ("Tuccillo Decl.") ¶¶54-55, submitted herewith.  Lead Counsel

---

[1]    Lead Plaintiffs were also represented by Liaison Counsel Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), and Fort Lauderdale was also represented by additional counsel Klausner Kaufman Jensen & Levinson ("Klausner Kaufman").

[2]    Unless otherwise defined, all capitalized terms herein have the meanings assigned in the Stipulation and Agreement of Settlement (ECF 185-3) ("Stipulation") and its exhibits.

conducted an extensive investigation of a sweeping factual record; largely overcame Defendants' complex motion to dismiss; zealously pursued written discovery, served a motion to compel, and secured and reviewed ~120,000 documents produced by Defendants and key non-parties in discovery; noticed depositions of Settling Defendants Kramer, Husain, and Lindahl and a dozen Emergent employees and prepared examinations; and achieved pre-settlement class certification based on robust briefing supported by an expert report. *Id.* ¶¶4-37.

This Action was prosecuted entirely on a contingency fee basis without any guarantee of payment or reimbursement of expenses. All work to date has been uncompensated and any legal fees have been wholly contingent upon the results achieved. Lead Counsel's significant work demonstrated thoroughness, preparation, and willingness to take this case to trial absent a negotiated resolution that provided fair, reasonable, and adequate relief to the Settlement Class.

Despite the considerable risks, Lead Plaintiffs' counsel spent 11,365.00 hours in aggregate (after write-downs detailed *infra*), worth $8,414,263.49 in uncompensated lodestar, the vast majority by Lead Counsel, litigating and advancing discovery in parallel to protracted resolution negotiations, before pursuing the Settlement through final approval. *See* Tuccillo Decl. ¶55, Ex. 2 (Pomerantz lodestar); Declaration of Daniel S. Sommers ("Sommers Decl.") ¶6, Ex. 2 (Cohen Milstein lodestar); Declaration of Robert D. Klausner ("Klausner Decl.") ¶¶6 Ex. 2 (Klausner Kaufman lodestar). As compensation, Lead Plaintiffs respectfully request an attorneys' fee award of thirty percent (30%) of the gross Settlement Fund (equal to $12,000,000.00) plus interest earned while the Settlement Fund has been escrowed, in accordance with the PSLRA, 15 U.S.C. §78u-4(a)(6). The requested fee is within the typical range of attorneys' fees awarded in similar complex class actions in the Fourth Circuit. All factors cited by courts in this Circuit support the request. A cross-check against lodestar results in a 1.426 multiplier, well within the customary range

awarded in comparable settlements, confirming the fee's fairness and reasonableness. The 30% fee figure was in NSHEPP's retainer agreement and is lower than the fee (33.4%) in Fort Lauderdale's retainer, and both NSHEPP and Fort Lauderdale support the request. *See* Declaration of Stefan Cowell on behalf of NSHEPP ("Cowell Decl.") ¶9; Declaration of Lynn Wenguer on behalf of Fort Lauderdale ("Wenguer Decl.") ¶9. The 30% fee was publicized through the Court-approved notice program and prompted zero Settlement Class member objections.

Lead Plaintiffs seek reimbursement of $278,526.00 in total out-of-pocket expenses incurred by their counsel in prosecuting this Action, in accordance with the PSLRA, 15 U.S.C. §78u-4(a)(6). *See* Tuccillo Decl. ¶59, Ex. 3 (Pomerantz expenses); Sommers Decl. ¶9, Ex. 3 (Cohen Milstein expenses). These expenses were reasonable and necessary, are the kind regularly reimbursed in this Circuit, and were well below the five hundred thousand dollars ($500,000.00) publicized in the Court-ordered notice program, which prompted zero Settlement Class member objections. Lead Plaintiffs also support this request. *See* Cowell Decl. ¶9; Wenguer Decl. ¶9.

Lead Plaintiffs also seek compensatory awards of $37,499.25 to NSHEPP and $3,000.00 to Fort Lauderdale, pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), in connection with representing the Settlement Class. Their declarations describe the bases for these awards and their time spent overseeing the litigation for the Settlement Class's benefit. *See* Cowell Decl. ¶10; Wenguer Decl. ¶10. Lead Plaintiffs reviewed and approved motions and other Court filings, produced documents in discovery, oversaw Lead Counsel via periodic communications, authorized pursuit of mediation and continued negotiations, approved the Settlement, and otherwise represented the certified Class and proposed Settlement Class throughout the litigation. *See* Tuccillo Decl. ¶62; Cowell Decl. ¶¶6, 8; Wenguer Decl. ¶¶6, 8. Such efforts are regularly compensated in this Circuit by similar awards. The $40,499.25 in total compensatory awards is

closer to half of the eighty thousand dollars ($80,000.00) publicized in the Court-ordered notice, which prompted zero Settlement Class member objections.

Settlement Class members support all aspects of the Settlement, including the attorneys' fees, expenses, and compensatory awards sought herein, lodging zero objections, with the deadline expiring today (*see* ECF 189 at 8). *See* Declaration of Margery Craig of Strategic Claims Services ("Craig Decl.") ¶13; Tuccillo Decl. ¶65. This favorable response by Settlement Class members, over 11,000 of whom have submitted claim forms (*Id.* ¶14), strongly supports the reasonableness of the requested attorneys' fee award, expenses reimbursement, and compensatory awards.

Thus, Lead Plaintiffs respectfully request that the Court grant this Motion.

## II.    BACKGROUND

### A.    Factual Allegations, Procedural History, & Settlement Negotiations

The relevant facts supporting this Motion, along with the procedural history and settlement negotiations, are detailed in the accompanying motion seeking final approval of the Settlement (in §§II-III) and in the Tuccillo Decl. ¶¶4-37, 54-62. They are incorporated herein by reference.

### B.    Lead Counsel's Efforts To Obtain The Settlement

Lead Counsel undertook this case knowing success was uncertain. To survive the pleading stage, Lead Plaintiffs had to allege that: (i) Defendants made false and misleading statements regarding Emergent's operations and performance and the capabilities, equipment, staffing, training and anti-contamination measures of its Bayview facility – before and after a March 31, 2021 *New York Times* report that 15 million dose-equivalents of J&J COVID-19 vaccine manufactured at Bayview were discarded due to contamination; (ii) Defendants knew or recklessly disregarded that their statements or omissions were materially false or misleading; and (iii) investors suffered injury as a result. Lead Counsel reviewed and distilled dense regulatory filings, Defendants' public statements, Congressional reports and evidence, and party and non-party

discovery.  Specifically, Lead Counsel performed the following tasks (Tuccillo Decl. ¶¶4-37, 52):

- Reviewed and analyzed Emergent's SEC filings, annual reports, press releases, and other public statements from before, during, and after the Settlement Class Period;

- Reviewed analyst reports and major financial news service reports on Emergent;

- Reviewed and analyzed Congress's published reports, findings, and evidence;

- Reviewed and analyzed stock trading data relating to Emergent;

- Worked with a private investigator to locate and interview numerous former Emergent employees as confidential witnesses with knowledge of relevant events;

- Consulted with experts on loss causation, market efficiency, and damages;

- Based on that extensive, ongoing investigation, drafted and filed the robust, 223-page FAC asserting claims under Exchange Act §§10(b) and 20(a) and SEC Rule 10b-5;

- Drafted and filed a 55-page opposition to Defendants' motion to dismiss the FAC;

- Based on continued post-FAC investigation, drafted and filed a 35-page request for judicial notice of extensive materials in opposing dismissal and a reply brief;

- Drafted and filed a motion to lift the PSLRA's stay of discovery and a reply brief;

- Prepared for and presented argument at the Court's August 2, 2022 status conference and the February 2, 2023 hearing regarding the pending motions;

- Drafted and filed a notice of supplemental authority;

- Prepared for and presented oral argument at the April 19, 2023 hearing on Defendants' motion to dismiss the FAC and filed a post-argument letter brief;

- After the Court entered its MTD Order, engaged in a Fed. R. Civ. P. 26(f) teleconference and thereafter drafted and negotiated the Rule 26(f) case management report with Defendants over the ensuing weeks, providing the Court with an interim update;

- Drafted and negotiated a stipulated confidentiality order, ESI Protocol, and a stipulated order on non-waiver of privilege and work product protection for document discovery;

- Conducted extensive party discovery, including drafting and serving Rule 26(a)(1) initial disclosures, preservation letters, first and second Rule 33 interrogatories, first and second Rule 34 requests for production, and Rule 36 requests for admission, as well as drafting and serving responses and objections to Defendants' discovery;

- Drafted and served detailed deficiency letters on Defendants outlining meet and confer issues arising from Defendants' initial and ongoing document productions;

- Drafted and filed a status report to the Court seeking an order requiring updates by Defendants on the status of government and regulatory investigations;

- Served over a half-dozen document and/or deposition subpoenas on third parties, including J&J and AstraZeneca, implicated in the Congressional investigation;

- Conducted meet and confer teleconferences with subpoena recipients to negotiate search and production parameters, responses and objections, and production deficiencies;

- Drafted and served FOIA (or similar) requests on multiple regulatory agencies in the United States, Canada, the European Union, and South Africa, and engaged in subsequent meet and confer sessions with regulatory and compliance staff at the entities to advance the requests;

- Reviewed rolling productions totaling approximately 115,000 Defendant documents and 4,400 documents from third parties, including J&J and AstraZeneca;

- Identified a dozen fact deponents, prepared examinations for them and the Settling Defendants, and drafted and served initial and amended deposition notices on Defendants;

- Drafted and served, pursuant to Fed. R. Civ. P. 36 and 37 and Local Rules 104.7 and 104.8, a motion to compel Defendants' responses to requests for admission, supported by a

memorandum of law, and negotiated opposition extensions to permit settlement discussions;

- Collected, searched, reviewed, and produced Lead Plaintiff documents, including NSHEPP's and Fort Lauderdale's investment management documents and NSHEPP's emails and attachments, with work on a second Fort Lauderdale production underway when the case settled;

- Consulted with class certification experts regarding the fraud's impact on Emergent's stock price, class-wide damages, and the efficiency of the market for Emergent stock;

- Drafted and filed a successful class certification motion, supported by an expert report, a notice of non-opposition, a status report update, and a letter to the Court;

- Drafted and served opening and responsive mediation statements and engaged in an in-person, full-day mediation on February 13, 2024, with a follow-up Zoom mediator session on February 22, 2024, summarized for the Court in a subsequent status update;

- Engaged in numerous telephonic settlement discussions and negotiations with defense counsel, at times weekly, over six months, while negotiating discovery extensions;

- After extensive arm's-length negotiations, obtained a verbal agreement to settle;

- Negotiated and executed a settlement Memorandum of Understanding;

- Negotiated, drafted, and finalized the Settlement Stipulation and its exhibits, after consultation with experts on the proposed Plan of Allocation, and a supplemental agreement;

- Drafted and filed the motion papers and related documents necessary to obtain preliminary approval of the Settlement and to provide notice of it to Settlement Class members;

- Obtained competing claims administration bids from four reputable companies, selected the most cost-effective, Strategic Claims Services, and negotiated its retainer;

- Secured and executed the Escrow Agent's contract, created the Escrow Accounts, and, after the Settlement was funded, have overseen investment of the escrowed monies;

- After preliminary Settlement approval, oversaw the Claims Administrator's work to effectuate notice, address Settlement Class member inquiries, and advance its administration;

- Worked with the Claims Administrator on its declaration filed herewith;

- Drafted the motion papers and related documents, filed contemporaneously herewith, necessary to obtain final approval of the Settlement; and

- Will conduct the final approval hearing on February 27, 2025.

Lead Plaintiffs' other counsel worked in support, likewise without compensation. *See* Tuccillo Decl. ¶54; Sommers Decl. ¶¶5-6; Klausner Decl. ¶¶5-6. Given the excellent results achieved, the risks undertaken, and the expedient resolution obtained for the Settlement Class, Lead Plaintiffs respectfully submit that the requested 30% fee, plus interest, and reimbursement of $278,526.00 in out-of-pocket costs, are reasonable and should be approved.

### III.    ARGUMENT

#### A.    The Court Should Approve The Requested 30% Attorneys' Fee Award

#### 1.    A "Percentage-Of-The-Fund" Fee Is Appropriate

As the Supreme Court recognizes, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is based on the federal court's inherent powers to "prevent … inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The PSLRA explicitly authorizes the percentage-of-the-fund method for calculating attorneys' fee awards to in securities class actions. 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount

of any damages and prejudgment interest actually paid to the class."). This method bases an award on a percentage of the class's recovery, set by the court based on several factors. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009).

Significantly, there is a "near-universal adoption of the percentage method in securities cases," due in large part to the PSLRA's explicit authorization. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012). Courts in this Circuit are in harmony. *See, e.g.*, *Mills*, 265 F.R.D. at 260 (PSLRA case); *Phillips v. Triad Guar. Inc.*, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016) (in PSLRA case, stating that "'[o]verwhelmingly,' courts prefer the percentage method") (quoting *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758-59 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.")).[3] Indeed, courts in this Circuit (and the vast majority of courts nationwide) "consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases" of all kinds. *Mills*, 265 F.R.D. at 260; *see also, e.g.*, *Archbold v. Wells Fargo Bank, N.A.*, 2015 WL 4276295, at *5 (S.D. W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored the percentage method.").

These courts recognize that the percentage-of-the-fund method is "more efficient and less burdensome than the traditional lodestar method and offers a more reasonable measure of compensation for common fund cases," *Strang*, 890 F. Supp. at 503, and better aligns class

---

[3]     This approach even predates the PSLRA. *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) (in pre-PSLRA securities fraud case, "the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases").

counsel's and class members' interests by tying the attorneys' fee award to the result achieved, rather than the attorney hours expended. *Thomas v. FTS USA, LLC*, 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017), *R & R adopted*, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017); *see also Deem v. Ames True Temper, Inc.*, 2013 WL 2285972, at *5 (S.D. W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure.'") (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

By contrast, the lodestar method begins with counsel's lodestar, multiplying the number of hours worked by counsel by reasonable hourly rates, then adjusting the product with a "multiplier." *Mills*, 265 F.R.D. at 260 (explaining lodestar method). Where courts in this Circuit use a lodestar analysis, it is a cross-check against the requested percentage fee as a final, confirmatory step. *See, e.g.*, *id.* at 261 (using lodestar method as a cross-check in PSLRA case); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (same).

### 2.    A 30% Fee Request Is Comparable To Awards In Similar Cases

The Supreme Court has "consistently looked to the marketplace as our guide to what is 'reasonable.'" *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989). In the Fourth Circuit, "contingent fees of roughly 33% are common." *Earls v. Forga Contracting, Inc.*, 2020 WL 3063921, at *4 (W.D.N.C. June 8, 2020); *see also McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (affirming award of 43% of $3 million settlement fund). Notably, contingent fees of 30% or more of a settlement fund are commonly awarded in comparably-sized PSLRA cases. *See, e.g.*, *In re 2U, Inc. Sec. Class Action*, 2022 WL 22839218, at *3 (D. Md. Dec. 9, 2022) (awarding 33.4% of $37 million settlement fund); *Ciarciello v. Bioventus Inc.*, 2024 WL 5155539, at *8, *15 (M.D.N.C. Dec. 18, 2024) (awarding 33% of $15.25 million settlement fund); *Plymouth Cnty. Ret. Sys. v. GTT Commc'ns, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (awarding one-

third of $25 million settlement fund).  The same is true for other common fund settlements, even

larger ones.  *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 6577029, at *1 (D. Md.

Dec. 13, 2013) (awarding 33.33% of $163.5 million settlement fund); *In re Celebrex (Celecoxib)*

*Antitrust Litig.*, 2018 WL 2382091, at *5 (E.D. Va. Apr. 18, 2018) (awarding one-third of $94

million settlement fund); *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *1-2 (M.D.N.C.

Sept. 29, 2016) (awarding 33.33% of $32 million settlement fund).

Thus, the requested fee of 30% of the $40 million Settlement is consistent with the practice

of courts in this Circuit and the market for complex class action counsel.

### 3.    The 30% Fee Request Is Reasonable Under Applicable Factors

#### i.    The *Gunter* And *Johnson* Multi-factor Tests Are Used

The PSLRA is a common fund statute explicitly authorizing the percentage-of-the-fund

method.  15 U.S.C. §78u-4(a)(6).  Yet, "[t]he Fourth Circuit has not yet identified factors for

district courts to apply when using the 'percentage of recovery' method" in PSLRA or other

common fund cases.  *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013).

Courts in this Circuit use multi-factor tests from the Third Circuit (the majority approach) and/or

the Fifth Circuit (the minority approach) to assess the reasonableness of attorneys' fees requests.

Most district courts use the Third Circuit's seven-factor test for common fund cases from

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000).  *See In re Neustar, Inc. Sec.*

*Litig.*, 2015 WL 8484438, at *7 (E.D. Va. Dec. 8, 2015) (in PSLRA case, "[w]hen evaluating Class

Counsel's fee request under the percentage-of-recovery method, the Court will apply the seven-

factor approach that other district courts in this Circuit have adapted from [*Gunter.*]"); *Mills*, 265

F.R.D. at 261 (following "the lead of other district courts in this Circuit and apply[ing] the seven-

factor approach derived from the Third Circuit" in PSLRA case).  The *Gunter* factors are: "(1) the

size of the fund created and the number of persons benefitted; (2) the presence or absence of

substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases." *Gunter*, 223 F.3d at 195 n.1.[4]

Less commonly, district courts apply the 12-factor test of *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), for securities fraud cases, relying on *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978), which adopted the *Johnson* factors outside of the common fund context. *See Phillips*, 2016 WL 2636289, at *4 ("this Court is persuaded that the *Barber* factors [adopted from *Johnson*] … apply to the analysis of the reasonableness of Lead Counsel's request for attorneys' fees" in PSLRA case).[5]  The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Union*, 669 F.3d at 642 n.25 (quoting *Johnson*, 488 F.2d at 717-719)).

A hybrid approach has also evolved.  Absent specific Fourth Circuit guidance for common fund cases, there is "confusion regarding whether the proper test is the 12-factor *Johnson* test from

---

[4]    Certain courts in this Circuit have applied a variation of this standard, replacing factor six with public policy considerations. *See, e.g.*, *Celebrex*, 2018 WL 2382091, at *4; *Mills*, 265 F.R.D. at 261.

[5]    The *Barber / Johnson* factors are typically used in fee-shifting cases where a prevailing party is paid attorneys' fees by a losing opponent. *See Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see also Lee v. Agape Health Mgmt., Inc.*, 2024 WL 3565309, at *2 (4th Cir. July 29, 2024) ("Although our cases fleshing out [the reasonableness] standard have largely involved statutory fee-shifting, [it] is not 'limited to the fee shifting context.'") (quoting *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 243 (4th Cir. 2010)).  The Fourth Circuit has not adopted these factors for percentage-of-the-fund analyses.

the Fifth Circuit or the seven-factor *Gunter* test from the Third Circuit."[6]  *Galloway v. Williams*, 2020 WL 7482191, at *5 (E.D. Va. Dec. 18, 2020).  "To address this ambiguity, some courts in this circuit have begun applying both tests to assess the reasonableness of attorneys' fees calculated using the percentage of the fund method."  *Id.*; *see also Phillips*, 2016 WL 2636289, at *3 (same, in PSLRA case).  Among them, some courts apply the *Johnson* factors, if at all, in a lodestar cross-check.  *See, e.g.*, *Gagliastre v. Captain George's Seafood Restaurant, LP*, 2019 WL 2288441, at *5 (E.D. Va. May 29, 2019) (in common fund case, "[o]nce the Court determines the appropriate 'percentage of the funds,' [using the *Gunter* factors] it then evaluates the twelve 'lodestar' reasonableness factors set forth in *Johnson*"); *Robinson v. Carolina First Bank NA*, 2019 WL 2591153, at *14-15 (D.S.C. June 21, 2019) (using *Gunter* factors with *Johnson* factors as a check in common fund case).  That approach is used in PSLRA cases.  *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 843 (applying *Gunter* factors to test reasonableness and *Barber* factors for lodestar cross-check); *Neustar*, 2015 WL 8484438, at *7-9 (same).

Many *Johnson* factors overlap with the *Gunter* factors or are "subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate."  *Galloway*, 2020 WL 7482191, at *6, *10-11; *see also Genworth*, 210 F. Supp. 3d at 843.  Also, "fee award reasonableness factors 'need not be applied in a formulaic way' because each case is different…."  *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (quoting *In re AT & T Corp.*, 455 F.3d 160, 166 (3d Cir. 2006)).  Here, all *Gunter* and *Johnson* factors support approval of the requested 30% fee.  Given the overlap in the factors and the practice of courts in this Circuit, all the *Gunter* and *Johnson* factors are addressed below.

---

[6]    Some district courts refer to the *Johnson* factors as the *Barber* factors and some district courts refer to the *Gunter* factors as the *Cendant* factors (referring to *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)).  For simplicity herein, the factors are referred to as the *Johnson* factors and the *Gunter* factors.

ii.    The *Gunter* And *Johnson* Factors Support A 30% Fee

Results Obtained for the Class (*Gunter* 1 / *Johnson* 8): *Gunter* factor 1 looks at "the size of the fund created and the number of persons benefitted," and *Johnson* factor 8 looks at "the amount involved and the results obtained." "The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843 (PSLRA case); *see also Thomas*, 2017 WL 1148283, at *3 (in common fund case, "the Court gives the most weight to the results obtained"). The $40 million Settlement compares favorably to recent securities settlement data. The median securities class action settlement in 2023 was $14 million, roughly one-third of the Settlement here. *See* Tuccillo Decl. Ex. 5, Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: *2023 Full-Year Review* (NERA Economic Consulting January 23, 2024) at 1. The Settlement recovered 3.44% to 12.75% of class-wide damages, as estimated by Lead Plaintiffs' experts under several models and scenarios. *See* Tuccillo Decl. ¶¶42-43. This percentage recovery exceeds those in comparable securities class actions settlements. *See* Tuccillo Decl. Ex. 4 (ECF 185-10), Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2023 Review and Analysis* (Cornerstone Research 2024) (median settlements recovered 2.6% of total damages from 2014 to 2022 and 2.0% in 2023 for cases of $1 billion+ in damages; 4.3% from 2014-2022 and 3.5% in 2023 for cases with $500 million to $1 billion in damages; and 3.3% from 2014-2022 and 4.6% in 2023 for cases with $250 to $500 million in damages). The Settlement was also beneficial, given Emergent's going concern warnings in public filings starting in Q3 2022 *See* Tuccillo Decl. ¶45. The recovery was achieved by Lead Counsel's effective advocacy and efficient litigation, facing a stiff defense and competing drains on insurance. There was great risk the Settlement Class would recover nothing, and the favorable results, embraced by its members, strongly support the requested 30% fee.

Objections by Class Members (*Gunter* 2): *Gunter* factor 2 looks at "the presence or absence

of substantial objections by members of the class to the settlement terms and/or fees requested by counsel." "A lack of objections by class members as to fees requested by counsel weighs in favor of the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844 (PSLRA case). To date, no Settlement Class member has objected to the Settlement or the 30% attorneys' fee request. *See* Craig Decl. ¶13. Thus, this factor strongly supports the requested 30% fee.

The Skill and Efficiency of Plaintiffs' Counsel (*Gunter* 3 / *Johnson* 3 and 9): *Gunter* factor 3 looks at "the skill and efficiency of the attorneys involved," *Johnson* factor 3 looks at "the skill required to perform the legal service adequately," and *Johnson* factor 9 looks at "the experience, reputation, and ability of the attorneys." "The skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law also weighs in favor of supporting the substantial attorneys' fees award in this case." *Genworth*, 210 F. Supp. 3d at 844 (PSLRA case). Lead Counsel has substantial experience litigating securities class action cases nationwide and in the Fourth Circuit, with a track record of results. *See* Tuccillo Decl. ¶51; Ex. 1;[7] *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *11 (D.N.J. May 3, 2022) (*Gunter* factor 3 supports fee due to "zealous advocacy … by Plaintiffs' counsel [including Pomerantz] and Defendants' counsel, both highly reputable firms with experience in complex class actions and civil litigation"). Defense counsel are skilled litigators at leading firms. *See, e.g.*, *Mills*, 265 F.R.D at 262 (in PSLRA case, evaluating plaintiffs' counsel's skill in light of "experienced and sophisticated defense attorneys"); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("[a]dditional skill is required when the opponent is a sophisticated corporation with sophisticated counsel" in common fund case). These factors support a 30% fee.

The Complexity, Difficulty, and Duration of the Litigation (*Gunter* 4 / *Johnson* 2): *Gunter*

---

[7] Cohen Milstein and Klausner Kaufman, who had supporting roles, are also skilled in securities class actions. *See* Sommers Decl. ¶4, Ex. 1; Klausner Decl. ¶4, Ex. 1.

factor 4 looks at "the complexity and duration of the litigation," and *Johnson* factor 2 looks at "the novelty and difficulty of the issues."  Courts recognize that "there are good reasons to award higher-than-typical fees when the issues in a case are particularly 'novel and complex.'"  *Good v. W. Va.-Am. Water Co.*, 2017 WL 2884535, at *25 (S.D.W. Va. July 6, 2017).  Securities cases are particularly complex as they "require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'"  *Genworth*, 210 F. Supp. 3d at 844 (quoting *Mills*, 265 F.R.D. at 263).  "In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement and the amount and nature of discovery."  *Jones*, 601 F. Supp. 2d at 761.  Here, the claims involved the complexities of both establishing securities fraud violations and understanding vaccine manufacturing, FDA inspection reports, Emergent FDA responses, and pharmaceutical industry manufacturing practices.  Lead Plaintiffs' investigation supporting the FAC and pre-Settlement fact discovery required analysis of these topics to understand how and why the Defendants' statements violated the Exchange Act.

Against this difficult backdrop, Lead Counsel efficiently achieved the Settlement through hard-fought, multi-year litigation, which included filing the 220-page+ FAC after a comprehensive investigation by, *inter alia*, (i) review and analysis of Emergent's SEC filings, Congress's findings and supporting documents, FDA inspection materials, and interviews of former Emergent employees and other potential witnesses (many cited in the FAC as confidential witnesses); (ii) fully briefing and arguing Defendants' motion to dismiss, as well as supporting motions for judicial notice of post-FAC facts and to lift the PSLRA discovery stay; (iii) extensive discovery including document productions by Defendants and third-parties, pursuit of foreign and domestic FOIA

requests, briefing a motion to compel, and participating in numerous meet and confer calls with Defendants and third-parties; (iv) briefing a successful class certification motion, with supporting expert report; and (v) preparing written mediation statements and engaging in a full-day mediation, a follow-up mediator Zoom, and months of telephonic negotiations to achieve the Settlement. These efforts attest to the case's novelty and complexity and support the 30% fee request.

The Risk of Nonpayment (*Gunter* 5 / *Johnson* 6): *Gunter* factor 5 looks at "the risk of nonpayment," and *Johnson* factor 6 looks at "whether the fee is fixed or contingent." Lead Plaintiffs' counsel undertook this case on a fully contingent basis with big risks of no recovery. Tuccillo Decl. ¶54; Sommers Decl. ¶5; Klausner Decl. ¶5. The non-recovery risk is an important factor in evaluating an award of attorneys' fees. *See, e.g.*, *Mills*, 265 F.R.D. at 263 (in PSLRA case, "[t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation") (quoting *Muhammad v. Nat'l City Mortg., Inc.*, 2008 WL 5377783, at *8-9 (S.D.W. Va. Dec. 19, 2008)). Lead Counsel alone worked 11,048.35 hours on this matter (after write-downs, noted herein), yielding a lodestar of $8,116,414.75 while incurring $277,070.44 in expenses. *See* Tuccillo Decl. ¶¶55, 59. Lead Plaintiffs' counsel together worked 11,365.00 hours, equating to $8,414,263.49 in lodestar, while incurring $278,526.00 in combined expenses. *Id.* ¶¶55, 59; Sommers Decl. ¶¶6, 9; Klausner Decl. ¶¶6, 9. Here, "beyond mere risk of nonpayment, Class Counsel stood to lose substantial sunk costs if this case ended with an unfavorable judgment on the merits." *Neustar*, 2015 WL 8484438, at *8 (acknowledging substantial risk of nonpayment in PSLRA case). Even if Lead Counsel succeeded at trial, appeals "could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844. Numerous securities claim successes have turned to failure on appeal. *See, e.g.*, *Miller v. Asensio & Co.*, 364 F.3d 223, 235 (4th Cir. 2004)

(affirming judgment but awarding zero damages to plaintiffs); *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 243, 247 (4th Cir. 1988) (reversing jury verdict).  This factor supports a 30% fee.

The Amount of Time Expended (*Gunter* 6 / *Johnson* 1 and 4): *Gunter* factor 6 looks at "the amount of time devoted to the case by plaintiffs' counsel," *Johnson* factor 1 looks at "the time and labor required," and *Johnson* factor 4 looks at "the preclusion of other employment by the attorney because he accepted this case."  Lead Plaintiffs' counsel devoted 11,365.00 total hours (as written-down), for a lodestar of $8,414,263.49.  Tuccillo Decl. ¶55; Sommers Decl. ¶6; Klausner Decl. ¶6.  Counsel could have spent this time litigating other matters, which favors the requested fee.  *See, e.g.*, *Seaman v. Duke Univ.*, 2019 WL 4674758, at *4 (M.D.N.C. Sept. 25, 2019) (in common fund case, "attorneys and staff have worked over 12,500 hours since it began" which "was time and money the attorneys could have directed to other simpler and less risky opportunities" and which supported the fee request).  These factors support a 30% fee.

Awards in Similar Cases (*Gunter* 7 / *Johnson* 12) & Customary Fee For Similar Work (*Johnson* 5): *Gunter* factor 7 and *Johnson* factor 12 both look at "awards in similar cases," while Johnson factor 5 looks at the "customary fee for similar work in the community."  The Fourth Circuit has a "preference that lower courts examine the reasonableness of an attorney's fee not in light of 'some hourly rate in the abstract,' but, rather, in light of 'whether the fee is an acceptable fee for the work performed' considering what would be a customary fee for such work."  *United States v. Efploia Shipping Co.*, 2016 WL 4275982, at *13 (D. Md. July 22, 2016) (quoting *Abrams*, 605 F.3d at 248), *R & R adopted*, 2016 WL 4286040 (D. Md. Aug. 15, 2016).  Court-awarded fees should approximate what counsel would receive in the marketplace.  *See Missouri*, 491 U.S. at 285-86.  If this was a non-representative action, the customary fee arrangement would be contingent and 30%-33% of the recovery.  *See Blum v. Stenson*, 465 U.S. 886, 903 n.* [sic] (1984)

("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).  Lead Plaintiffs, both sophisticated institutional investors experienced in securities class action litigation, entered into retainers memorializing a contingent fee arrangement at or above the 30% requested fee.  *See* Cowell Decl. ¶9 (30% contingent fee in NSHEPP retainer); Wenguer Decl. ¶9 (33.4% contingent fee in Fort Lauderdale retainer).

"Generally, contingent-fee arrangements are allowed, and sometimes even preferred, in many common-fund cases."  *Garcia v. Decalo Med. Grp., LLC*, 2015 WL 9311984, at *4 (D. Md. Dec. 23, 2015); *see also Robinson*, 2019 WL 2591153, at *16 ("Contingency fee arrangements are customary in class action cases …").  A contingency fee of 30% or more is customary for complex plaintiff-side litigation resulting in common funds.  *See Shealy v. Dixon Hughes, PLLC*, 2011 WL 13323837, at *4-5 (D.S.C. Oct. 24, 2011) ("Class Counsel's requested fee is well below the average in the private marketplace, where contingency fee arrangement[s] ranging from 33.33 to 40 percent of the gross recovery are standard."); *Robinson*, 2019 WL 2591153, at *16 ("Contingency fee arrangements are customary in class action cases and such arrangements are usually one-third or higher."); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482 (D. Md. 2014) (requested fee of one-third of common fund was "in line with those awarded in consumer class actions involving a similar degree of complexity and risk to counsel"); *Reynolds v. Fidelity Invs. Institutional Operations Co.*, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) ("[T]he one-third share [of the fund] requested is in line with or less than the customary rates charged in this type of case [class wage and hour]."); *Earls*, 2020 WL 3063921, at *4 ("[C]ontingent fees of roughly 33% are common."); *McAdams*, 26 F.4th at 162 (affirming award of 43% of common fund settlement).

PSLRA cases are no different, where courts look "to fee awards in analogous cases to determine the reasonableness of the percentage requested."  *Mills*, 265 F.R.D. at 263-64.  As

discussed in §III.A.2 *supra*, a 30% fee is comparable, or below, fee awards in similar PSLRA securities class action settlements. *See, e.g.*, *2U*, 2022 WL 22839218, at *3 (awarding 33.4% of $37 million settlement fund); *Ciarciello*, 2024 WL 5155539, at *8, *15 (awarding 33% of $15.25 million settlement fund); *GTT Commc'ns*, 2021 WL 1659848, at *5 (awarding one-third of $25 million settlement fund); *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014) (noting "[w]hen plaintiffs' counsel accept[s] a case on a contingency basis, it is customary to charge one-third (33.3%) or more of any amount recovered for the client"); *Phillips*, 2016 WL 2636289, at *6 (30% of settlement "is in line with typical fees awarded for securities litigation.").

These factors all clearly support the requested 30% fee.

<u>Time Limitations Imposed (*Johnson* 7)</u>: *Johnson* factor 7 looks at "time limitations imposed by the client or the circumstances." Lead Counsel faced numerous, Court-imposed deadlines for, *inter alia*, investigating and filing the FAC, opposing Defendants' motion to dismiss, moving for class certification, and advancing discovery toward substantial completion. *See* ECF 159. Indeed, there are inherent time pressures in complex securities class actions requiring expeditious work to litigate and obtain party and non-party discovery while simultaneously pursuing settlement. These time pressures precluded Lead Counsel from pursuing other work. *See, e.g.*, *Krispy Kreme*, 2007 WL 119157, at *2 (demands of the litigation precluded other work, supporting reasonableness of one-third contingent fee request from common fund) (quoting *Johnson*, 488 F.2d at 718 ("Priority work that delays the lawyer's other work is entitled to some premium."))[8] Lead Counsel reviewed ~120,000 documents in a period of months, while preparing

---

[8]    *See also McCurley v. Flower Foods, Inc.*, 2018 WL 6650138, at *5 (D.S.C. Sept. 10, 2018) (in non-common-fund case, noting time limitations "frequently required class counsel to take time away from other matters, and devote substantial resources to particular deadlines," supporting a fee premium); *PC Medics, Inc. v. BellSouth Telecomms., Inc.*, 2010 WL 11646909, at *4 (D.S.C. Sept. 30, 2010) (in non-common-fund case, noting "[m]ajor deadlines requiring intensive research and writing—including deadlines for class certification and defense of dispositive motions—loomed throughout the case. Thus,

for depositions, thereby confirming the Settlement's reasonableness.  *See* Tuccillo Decl. ¶25, 40.

There was also pressure to settle arising from Emergent's going concern warnings in its public

filings from Q3 2022 onwards.  *Id.* ¶45.  This factor thus supports the requested 30% fee.

The Undesirability of the Case (*Johnson* 10): *Johnson* factor 10 looks at "the undesirability

of the case."  "Courts may enhance attorney's fees 'when the prevailing party can establish that,

absent an adjustment, [the plaintiff] "would have faced substantial difficulties in finding counsel

in the local or other relevant market.""  *McCurley*, 2018 WL 6650138, at *6 (quoting *Lewis v.*

*J.P. Stevens & Co.*, 1998 WL 60546, at *4 (4th Cir. 1988)).  "Lawsuits that are undesirable, either

because of novelty of the issue or difficulty of the litigation, are eligible for premium attorney's

fees."  *Id.*  While there was a competing lead plaintiff movant, "[c]courts have recognized that the

financial burden and time demands of complex securities cases make them in some sense

'undesirable.'"  *Shealy*, 2011 WL 13323837, at *4 (in common fund case); *Brown v. Charles*

*Schwab & Co.*, 2010 WL 11534521, at *5 (D.S.C. Nov. 9, 2010) (same, in common fund state law

securities class action).  Indeed, the Action required thousands of hours of uncompensated work

over several years, while Lead Plaintiffs' counsel incurred $278,526.00 in out-of-pocket costs.

Counsel undertook these burdens with no guaranty of payment absent a settlement or judgment,

an undesirable proposition for many attorneys.  *Id.*  This factor supports a 30% fee.

Nature and Length of Representation (*Johnson* 11): *Johnson* factor 11 looks at "the nature

and length of the professional relationship with the client."  Pomerantz has represented NSHEPP

in securities litigation since 2013, both as an opt-out litigant and a PSLRA lead plaintiff overseeing

three other class actions.  Cowell Decl. ¶5.  Fort Lauderdale has retained Pomerantz since August

2018 and is currently represented by Pomerantz as a named plaintiff and proposed class

_____

the time limitations imposed … support the reasonableness of the requested fee.").

representative in another matter. Wenguer Decl. ¶6. Even absent these relationships, where, as here, Lead Plaintiffs are satisfied with counsel's performance after working closely together during the case, this factor supports a fee request. *See McCurley*, 2018 WL 6650138, at *6 (non-common-fund case); *Reed v. Big Water Resort, LLC*, 2016 WL 7438449, at *11 (D.S.C. May 26, 2016) (same); *Pelczynski v. Orange Lake Country Club, Inc.*, 2014 WL 2095173, at *6 (D.S.C. May 20, 2014) (in non-common-fund case, no evidence of preexisting relationship, but noting the action lasted over two years). Thus, this factor supports the 30% fee request.

Public Policy Considerations (Alternate *Gunter* 6): Some courts apply a variant of *Gunter* factor 6, looking at "public policy." *See Mills*, 265 F.R.D. at 261 (citing *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001)). The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions…." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement" of the securities laws and "are a necessary supplement to [SEC] action") (quotation omitted). A "central factor in fixing the amount of attorneys' fees is 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class.'" *Mills*, 265 F.R.D. at 260 (quoting *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001)). In complex securities cases, courts enhance fee awards "to provide an incentive for competent lawyers to pursue such actions in the future." *MicroStrategy*, 172 F. Supp. 2d at 788; *see also Jones*, 601 F. Supp. 2d at 765 (in common fund case, public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves"). "The cost and difficulty [of bringing a meritorious complex class action] naturally

stands as a deterrent from doing so, and … an award of attorneys' fees should … counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills*, 265 F.R.D. at 263.  This factor supports a 30% fee.

### 4.    A Lodestar Cross-Check Confirms The 30% Fee's Reasonableness

Courts in the Fourth Circuit often supplement their reasonableness analysis of attorneys' fees with a lodestar cross-check.  *See Neustar*, 2015 WL 8484438, at *7 (in PSLRA case, adopting "the common practice within this Circuit; the Court will apply the percentage-of-recovery method and then use the lodestar method as a 'cross-check'") (citing *Mills*, 265 F.R.D. at 260).  "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier."  *Genworth*, 210 F. Supp. 3d at 845 (describing use of lodestar cross check in PSLRA case).  With a lodestar cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee."  *Thomas*, 2017 WL 1148283, at *6 (common fund case); *see also Jones*, 601 F. Supp. 2d at 765 (in common fund case, when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").[9]  That outcome is logical as the lodestar method is most typically employed in fee-shifting cases, where the losing party is paying the attorney's fees of the prevailing party.

To encourage efficient, competent litigation, courts recognize that fee awards in securities

---

[9]    However, the lodestar method is based on the *Johnson* factors.  *See Gagliastre*, 2019 WL 2288441, at *5 (after determining the appropriate percentage of the fund under the *Gunter* factors, using the 12 *Johnson* factors to evaluate the lodestar reasonableness); *Robinson*, 2019 WL 2591153, at *14-15 (using *Gunter* factors with *Johnson* factors as a check); *Genworth*, 210 F. Supp. 3d at 843 (same).  As explained in §III.A.3.ii *supra*, every *Johnson* factor supports the requested fee's reasonableness.  Thus, even under heightened scrutiny, a lodestar cross-check confirms the reasonableness of the 30% fee request.

class actions should "include a reward or enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *MicroStrategy*, 172 F. Supp. 2d at 787 (fee in PSLRA case should "adequately compensate lead counsel for the time expended on the case"); *see also Genworth*, 210 F. Supp. 3d at 845 (in PSLRA case, lodestar cross-check "typically" results in a "positive multiplier").   Multipliers encourage efficiency and compensate for the payment delay and increased risk because, unlike defense firms that are paid immediately, win or lose, plaintiffs' counsel are only paid at the end of a successful case.  *MicroStrategy*, 172 F. Supp. 2d at 788 (because PSLRA cases are essentially contingent fee cases, "there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").   Thus, risk multipliers are commonly approved in PSLRA cases. *See, e.g.*, *Schuler v. Meds. Co.*, 2016 WL 3457218, at *10-11 (D.N.J. June 24, 2016) (in PSLRA case, justifying high multiplier "in light of the high risk of non-payment and the excellent result achieved in this Settlement"); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *15 (D.N.J. June 15, 2020) (in PSLRA case, 4.4 lodestar multiplier proper due to "[t]he complexity of the [l]itigation and risks of nonpayment … [and] to reward [] and incentivize counsel to pursue the best possible result for the Class and not punish counsel for negotiating an advantageous settlement on behalf of the Class at the early stages of the litigation"), *R & R adopted*, 2021 WL 358611 (D.N.J. Feb. 1, 2021); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (in PSLRA case, high risk of non-payment justified lodestar multiplier).[10]

---

[10]     *See also Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (remanding because district court did not apply a risk multiplier); *Kruger*, 2016 WL 6769066, at *4 (in common fund case noting, "in cases where 'the risks of the litigation are immense and [there is a] risk of receiving little or no recovery,' like this one, the court may apply a risk multiplier to compensate the attorneys for the risk of nonpayment in the event the litigation was unsuccessful") (quoting *Savani v. URS Pro. Sols. LLC*, 121 F. Supp. 3d 564, 572 (D.S.C. 2015)); *Jones*, 601 F. Supp. 2d at 758 (in common fund case, in the lodestar cross-check, "the court may then adjust the lodestar figure using a 'multiplier' derived from a number of factors, such as the benefit achieved for the class and the complexity of the case"); *Shealy*, 2011 WL 13323837, at *2 (in

Lead Plaintiffs' counsel together spent 11,365.00 hours (after write-downs) litigating and settling this Action, with a total lodestar of $8,414,263.49, yielding a 1.426 multiplier, assuming a 30% fee award.[11] Lead Counsel worked 11,048.35 hours (after write-downs), yielding a lodestar of $8,116,414.75. *See* Tuccillo Decl. ¶55, Ex. 2. These totals consist of: (a) 2,577.75 Partner hours with a $2,961,192.50 lodestar; (b) 1,245.50 Of Counsel hours with a $1,058,675.00 lodestar; (c) 2,481.75 Associate hours with a $1,759,470.00 lodestar; (d) 24.00 Staff Attorney hours with a $13,560.00 lodestar; (e) 4,530.15 Project Associate hours with a $2,255,534.25 lodestar; and (f) 189.20 Paralegal hours with a $67,983.00 lodestar. Lead Counsel's reported hours and lodestar reflect voluntary, manual time write-offs by the Partner in charge of this Action and exclude all time spent working on this fee application. *See* Tuccillo Decl. ¶55.[12] Lead Plaintiffs' supporting

---

common fund case, noting "[i]t is an abuse of discretion to fail to apply a risk multiplier when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky").

[11]     Except in some instances where written-down by Lead Counsel, the hourly rates reported by all firms are their current billing rates, which have increased during the course of this multi-year litigation. It is well-established that attorneys' fee applications in securities class action settlements can use current, updated billing rates for lodestar calculations. *See Shealy*, 2011 WL 13323837, at *5 (in common fund case, under lodestar analysis "it is appropriate to use current billing rates, rather than historical rates, in order to compensate for the delay in payment for the attorney's services"); *Brown v. Charles Schwab & Co.*, 2011 WL 13199227 (D.S.C. July 26, 2011) (same, in common fund state law securities class action); *Ciarciello*, 2024 WL 5155539, at *13 (in PSLRA case conducting lodestar cross-check, explaining "[t]o decide a reasonable billing rate, courts look to the prevailing market rates, including the attorneys' actual billing rate"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) (in PSLRA case, "[t]o compensate for delay in receiving fees, counsel have properly used their current billing rates") (citing *Missouri*, 491 U.S. at 283-84); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 103 n.11 (D.N.J. 2001) (in PSLRA case, court may base fee on current billing rates "[t]o adjust for delay in payment of attorneys' fees"); *In re Schering-Plough Corp. ENHANCE Sec. Litig.*, 2013 WL 12174570, at *28 (D.N.J. Aug. 28, 2013) (in PSLRA case, in cross-check, lodestar is calculated by multiplying hours by "current hourly rates"), *R & R adopted*, 2013 WL 5505744 (D.N.J. Oct. 1, 2023); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000) (in PSLRA case, in cross-check, "[e]ach attorney's hourly rates were appropriately calculated by reference to current rather than historic rates"). That is also an accepted practice in non-common-fund contingent cases. *Reaching Hearts Int'l v. Prince George's Cty.*, 478 F. App'x 54, 60 (4th Cir. 2012) (compensating for delay in attorneys' fees payment by use of current hourly rates instead of historical ones).

[12]     The write-offs included applying a blanket 5% write-off of the total time billed by the Partner in charge; reducing the hourly rates of four other Partner-level billing attorneys from the $1,050-$1,150 range to the $950-$975 range; and completely writing off two low-billing attorneys. *See* Tuccillo Decl. ¶55.

counsel expended 316.65 hours, equating to $297,848.75 in additional lodestar.  *See* Sommers Decl. ¶6, Ex. 2; Klausner Decl. ¶6, Ex. 2.

"Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."  *Singleton*, 976 F. Supp. 2d at 689 (common fund case).  The 1.426 multiplier here is lower and compares favorably to typical multipliers in PSLRA cases and other complex common fund cases in the Fourth Circuit.  *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 845 (1.97 lodestar multiplier "eminently reasonable" in PSLRA case, given multipliers regularly approved by Fourth Circuit district courts); *In re Under Armour Sec. Litig.*, 2024 WL 4715511, at *1 (D. Md. Nov. 7, 2024) (~1.89 lodestar multiplier in PSLRA case); *In re 2U, Inc. Sec. Class Action*, No. 19-cv-3455, ECF No. 242 at 19; ECF No. 258 at 7 (D. Md. Dec. 9, 2022) (~1.8 lodestar multiplier in PSLRA case); *Klein v. Altria Grp., Inc.*, No. 3:20-cv-00075, ECF No. 310 at 18, ECF No. 320 at 10-11 (E.D. Va. Mar. 31, 2022) (~1.88 multiplier in PSLRA case); *GTT Commc'ns*, 2021 WL 1659848, at *6 (~1.55 multiplier in PSLRA case); *Rineholdt v. HFS Fin. LLC*, 2024 WL 1243844, at *6 (D. Md. Mar. 21, 2024) (1.89 lodestar multiplier in common fund case "within the range of multipliers courts have traditionally found appropriate"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (2.57 lodestar multiplier in common fund case); *Kruger*, 2016 WL 6769066, at *5 (fee award of "3.69 times the lodestar" in common fund case); *Decohen*, 299 F.R.D. at 483 (fee award of "3.9 times the lodestar" in common fund case); *Jones*, 601 F. Supp. 2d at 766 ("lodestar multiplier between 3.4 and 4.3" in common fund case); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439 n.6 (D. Md. 1998) (3.6 multiplier in common fund case); *McCune v. Faneuil Inc.*, 2024 WL 3811411, at *7 (E.D. Va. Aug. 13, 2024) (1.95 multiplier in common fund case was "below the range that courts in this circuit have consistently held as reasonable").

As regards Lead Counsel's billing rates, which may be at the high end for this District,[13] "[w]here it is reasonable to retain attorneys from other communities, a court may also consider those rates." *See Marks Constr. Co. v. Huntington Nat'l Bank*, 2010 WL 3418329, at *10 (N.D.W. Va. Aug. 27, 2010) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994)).  The market for PSLRA class action attorneys is national with its own rate structure.  *See, e.g.*, *Phillips*, 2016 WL 2636289, at *7 ("Lead Counsel's hourly rates are much higher than the hourly rates generally charged in this jurisdiction.  However, they are 'within the range of reasonableness for PSLRA cases, where the market is nationwide and populated by very experienced attorneys with excellent credentials.'") (quoting *Microstrategy*, 172 F. Supp. 2d at 788); *see also Ciarciello*, 2024 WL 5155539, at *13 (in PSLRA case, assessing lodestar in reference to "national market rates" for "attorneys of comparable skill in similar circumstances").  Lead Counsel's rates are based on periodic analyses of rates used by firms performing comparable, specialized work and are regularly approved by other courts.  *See* Tuccillo Decl. ¶57, Ex. 1; *see also, e.g.*, *Roofer's Pension Fund v. Papa*, No. 16-CV-02805 (D.N.J. Sept. 5, 2024), ECF 449 at 6; *Solomon v. Sprint Corp.*, No. 19-cv-05272 (S.D.N.Y. Aug. 14, 2023), ECF 98 at 7; *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6  (S.D. Cal. June 6, 2022); *In re Toronto-Dominion Bank Sec. Litig.*, No. 1:17-cv-1665 (D.N.J. Oct. 4, 2019), ECF 129 at 7-8.

As detailed in the Tuccillo Decl. ¶¶4-37, Lead Counsel's time spent was reasonable and necessary, given the complexity of legal and factual issues involved, time pressures, and defense counsel's skill.  Lead Counsel anticipates spending more time administering and distributing the Settlement, for which it will not seek more compensation.  Thus, the lodestar cross-check confirms the reasonableness of the requested 30% fee.

---

[13]    As noted above, the Partner in charge's write-downs included manually lowering the billing rates of four Partners at Lead Counsel who contributed work in advancing the Action.

**B.      The Requested Reimbursement Of Expenses Is Reasonable**

Lead Plaintiffs also request an award of $278,526.00 in reasonable and necessary expenses incurred by their counsel to date.  "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award."  *Singleton*, 976 F. Supp. 2d at 689.  Such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services."  *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).

Lead Plaintiffs' counsel's declarations list expenses incurred by categories and amounts, including, *e.g.*: experts ($154,420.54 total); mediator costs ($29,921.88 total); e-discovery vendor and database charges ($29,304.35 total); investigation services ($23,468.08 total); FOIA charges, record request fees, and other discovery costs ($21,859.43); as well as legal research and Bloomberg fees, travel / lodging / meals, filing and service fees, press releases, overtime costs, photocopies, and postage. *See* Tuccillo Decl. ¶59, Ex. 3; Sommers Decl. ¶9, Ex. 3.  These are the types of costs routinely paid by hourly clients in non-contingent private litigation. *See, e.g.*, *Reynolds*, 2020 WL 92092, at *4 (in common fund case, "mailing costs, online legal research, … expert and mediator fees, travel expenses for mediation and court proceedings, and court filing fees .… are 'reasonable out-of-pocket expenses … normally charged to a fee-paying client, in the course of providing legal services'") (quoting *Singleton*, 976 F. Supp. 2d at 689).  They are the type Fourth Circuit courts award to plaintiffs' counsel from common fund settlements.  *See* *Genworth*, 210 F. Supp. 3d at 845-46 (in PSLRA case, awarding $3.8 million+ in experts, travel, court reporters, and e-discovery costs "eminently reasonable in light of the complexity of this case"); *Mills*, 265 F.R.D. at 265 (in PSLRA case, reimbursing $3 million+ where the costs— including expert fees, reproduction costs, mediation costs, and court costs—were all related to

counsel's representation of the class).[14]

Moreover, because the costs were incurred with no guarantee of recovery, Lead Plaintiffs' counsel had a strong incentive to keep them as low as reasonably possible and did so.  Indeed, the total expenses of $278,526.00 are less than (and only 56% of) the $500,000.00 figure disclosed in the Court-approved notice program (*see* ECF 185-5 at 1, 9), which prompted no objections.  The positive Settlement Class reaction strongly supports granting the requested expenses award.

### C.    The Requested PSLRA Compensatory Awards Are Reasonable

Lead Plaintiffs also request that the Court grant them reasonable compensatory awards to reimburse the "reasonable costs and expenses (including lost wages) directly relating to the representation of the class," pursuant to 15 U.S.C. §78u-4(a)(4).  District courts in the Fourth Circuit have approved such awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for the "hours of . . . time related to the supervision of [the] action."  *Genworth*, 210 F. Supp. 3d at 846; *see also Ciariello*, 2024 WL 5155539, at *14.

NSHEPP and Fort Lauderdale request awards of $37,499.25 and $3,000.00, respectively, for time spent representing the Settlement Class.  *See* Cowell Decl. ¶10; Wenguer Decl. ¶10.[15]

---

[14]    *See also In re Comput. Sci. Corp. Sec. Litig.*, 2013 WL 12155436, at *1 (E.D. Va. Sept. 20, 2013) (in PSLRA case, awarding $3 million+ in expenses); *Ciariello*, 2024 WL 5155539, at *14 (in PSLRA case, reimbursing $600,000+ in expert fees, litigation vendor fees, mediation fees, court reporters, service and filing fees, computer research, transportation, travel, and mailing); *Phillips*, 2016 WL 2636289, at *9 (in PSLRA case, approving reimbursement of reasonable expenses such as "(1) filing, witness, service, and other fees, (2) publication of notice pursuant to PSLRA, (3) transportation, hotels, and meals, (4) court hearing transcript, (5) private investigators, … (7) photocopies, (8) legal and financial research, …"); *Neustar*, 2015 WL 8484438, at *10 (in PSLRA case, reimbursing $100,000+ in litigation expenses including "expert fees, computer research fees, transportation expenses, mediation fees, and various expenses for document printing, filing, and delivery").

[15]    NSHEPP's requested award is higher due, *inter alia*, to its CEO and CFO overseeing the litigation and its having completed a substantial discovery effort to export the inboxes of its CEO and CFO for search, review, and production efforts.  Specifically, NSHEPP personnel devoted 230.90 total hours to prosecuting this Action, including 35.80 CEO hours; 33.70 CFO hours; 4.80 Board member hours; 149.55 IT hours, and 7.05 other staff hours, which based on estimated hourly rates for these non-hourly roles equated to roughly $37,499.25.  *See* Cowell Decl. ¶10.  While Fort Lauderdale did not complete its email production, its Executive Director still devoted 30 hours to overseeing the litigation.  *See* Wenguer Decl. ¶10.

These awards are in line with ones in similar cases in this Circuit. *See, e.g.*, *Under Armour*, 2024 WL 4715511, at *2 (awarding over $45,000 total in compensation for time devoted to case and $30,000 to lead plaintiff supported by declaration); *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 total to lead plaintiffs related to hours spent on case, supported by declaration); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time spent by class representative employees and $32,024 for expenses, supported by declaration).[16]

Significantly, the requested awards are less than half the $80,000.00 total figure publicized in the Court-ordered notice program (*see* ECF 185-5 at 2, 9), to which the Settlement Class members raised no objections. For all these reasons, Lead Plaintiffs respectfully submit that the requested compensatory awards are reasonable and should be granted.

## IV.    CONCLUSION

For these reasons, Lead Plaintiffs respectfully ask that the Court: (i) award Lead Counsel attorneys' fees in the amount of 30% of the gross Settlement Fund ($12,000,000.00), plus interest, for distribution in its discretion among other Lead Plaintiffs' counsel; (ii) approve reimbursement of Lead Plaintiffs' counsel's expenses to date in the total amount of $278,526.00; and (iii) grant compensatory awards of $37,499.25 to NSHEPP and $3,000.00 to Fort Lauderdale.[17]

---

[16]    *See also 2U*, 2022 WL 22839218, at *4 (awarding lead plaintiff $30,000 for time spent on case, supported by declarations); *Klein v. Altria Grp., Inc.*, 2022 WL 16946243, at *5 (E.D. Va. March 31, 2022) (awarding $20,000, $20,000, and $28,775 to three lead plaintiffs for time on the action, supported by declarations); *Sponn v. Emergent Biosolutions Inc.*, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) (awarding $32,700 to class representative for time spent on case, supported by declarations); *Mills*, 265 F.R.D. at 265 (reimbursing lead plaintiffs $42,419.50 total for time spent on case, supported by declaration); *In re Massey Energy Co. Sec. Litig.*, 2014 WL 12656719, at *2 (S.D.W. Va. June 4, 2014) (reimbursing lead plaintiff $33,889.18 for time spent on case, supported by declaration).

[17]    Lead Plaintiffs submitted a proposed order at preliminary approval (ECF 185-9). They will submit a revised version with their reply papers on this motion, which will address any objections or exclusions.

DATED: February 6, 2025                        Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*

Matthew L. Tuccillo (admitted *pro hac vice*)
Jeremy A. Lieberman (admitted *pro hac vice*)
Jennifer Banner Sobers (admitted *pro hac vice*)
Zachary Denver (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: mltuccillo@pomlaw.com
jalieberman@pomlaw.com
jbsobers@pomlaw.com
zdenver@pomlaw.com

**POMERANTZ LLP**

Jennifer Pafiti (admitted *pro hac vice*)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com

***Lead Counsel for Lead Plaintiffs and the Class***

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

Robert D. Klausner
Stuart Kaufman
7080 NW 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com
stu@robertdklausner.com
(*pro hac vice applications pending*)

***Additional Counsel for City of Fort Lauderdale Police & Firefighter's Retirement System***

31

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
(*pro hac vice application pending*)
1100 New York Avenue N.W.
Suite 800, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Liaison Counsel for Lead Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2025, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: *<u>/s/ Matthew L. Tuccillo</u>*
Matthew L. Tuccillo